UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS - AUSTIN DIVISION

| | |
|---|---|
| JEREMY STORY and DUSTIN CLARK,  §<br>  *Plaintiffs*,  §<br>  §<br>v.  §<br>  §<br>SUPERINTENDENT HAFEDH AZAIEZ, et al.  §<br>  *Defendants*.  §  | Civil Action No.<br>1:22-cv-448 |

**PLAINTIFFS' RESPONSE AND OBJECTION TO
ROUND ROCK INDEP. SCHOOL DISTRICT'S MOTION TO DISMISS**

COMES NOW Plaintiffs Story and Clark, filing this response and objection in opposition to the Motion to Dismiss and Brief (ECF No. 17, "Motion") filed by Defendant Round Rock Indep. School District ("RRISD") under Rule 12(b)(6).

Summarizing, RRISD asserts in its Brief that Plaintiffs have no valid claims, arguing that its seat-limiting rule did not violate the First Amendment, "an independent intermediary" determined that probable cause existed for Plaintiffs' arrest, the claimed damages were de minimis injury, and Plaintiffs have failed to allege sufficient facts to support the claims made.

With this response, Plaintiffs have filed concurrently their First Amended Complaint ("Compaint"), which adds relevant facts to answer the Motion's arguments about missing allegations to support their claims and show that RRISD's actions violated the First Amendment, facially and as-applied, and RRISD's actions violated the Texas Open Meetings Act, against which it has no immunity, as well as additional support for the Fourth and Fourteenth Amendments.

**I.    RESPONSES TO ARGUMENTS REGARDING FIRST AMENDMENT CLAIMS**

**a.    Plaintiffs' claim that RRISD's Public Comment Rule facially violates the First Amendment is properly pleaded and should not be dismissed.**

1.    Defendant RRISD argues that case law supports the Limited Public Comment Rule, citing inapposite case law, e.g., *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200,

215 (2015) (discussing a refusal to force the State of Texas to offer specialty license plates with a Confederate battle flag), *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 426–27 (5th Cir. 2020); *accord Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 346 (5th Cir. 2001). These cases support Plaintiffs' position, describing the way in which a government entity may restrict speech, and Defendant RRISD even quotes the relevant section, "The government can restrict speech in a limited public forum ... as long as the restriction is (1) reasonable in light of the purpose served by the forum and (2) does not discriminate against speech on the basis of viewpoint."[1]

2. Defendant RRISD argues that the Limited Public Comment rule is "hornbook definition of a limited—not designated—public forum, in which "the State is not required to and does not allow persons to engage in every type of speech." quoting *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 759 (5th Cir. 2010), and then conclusorily states that the school board meeting's rule as described by the BED (Local) policy takes no account of speaker's viewpoints, followed again by more case law, without factual comparisons between the language enforced in those cases, and the language enforced by RRISD, and ignoring the as-applied claim in this case.

3. The comparison is enlightening. RRISD's strongest case is *Fairchild v. Liberty Indep. Sch. Dist.*, in which Fairchild, a teacher's aide, filed suit against the school district she was aiding for a facial First Amendment violation (but made no as-applied claim).[2] The aide was allowed to make a presentation during the school board's open comment section and was handling the matter as a grievance within the school district. Her suit revolved around the inability to force the board to adjudicate her Level 3 grievance in an open meeting. The board asked Fairchild to sign a document that issues regarding a specific district employee may necessitate a closed session.

4. Additionally, the board had an enforcement policy:

---

[1] *Freedom From Religion Found.*, 955 F.3d at 426–27.
[2] *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 759 (5th Cir. 2010).

> "The Board shall not tolerate disruption of the meeting by members of the audience. If, after at least one warning from the presiding officer, any person continues to disrupt the meeting by his or her words or actions, the presiding officer may request assistance from law enforcement officials to have the person removed from the meeting.

*Id*. at 753. Plaintiffs' case differs from *Fairchild* substantially. As the appeals court explained, "Ultimately, during the August 16 meeting Fairchild presented her petition in the comment session without interruption -- not mentioning school employees by name." *Id*.

5. The plaintiffs in this case were not so treated; Plaintiff Story was not given the opportunity to finish his comments peacefully, with or without a requirement that they refrain from mentioning Azaiez. Plaintiff Clark was removed for simply participating in the meeting by informing the board that the Defendant RRISD was breaking the Texas Open Meetings Act and holding an illegal vote to raise taxes. (Section 44.004(f) of the Texas Education Code requires that "any taxpayer of the district may be present *and participate* in the meeting.")

6. As Defendant RRISD notes, Plaintiffs have alleged that the Public Comment Rule gave the Board "unbridled discretion", and then without comparing the facts of Fairchild to the case at bar, proclaims that the Fifth Circuit's opinion there supports RRISD's position, stating that a warning precludes a challenge on vagueness grounds, citing *Fairchild* (597 F.3d at 762).

7. Contrary to *Fairchild*, where a teacher's aide wanted to openly discuss a personnel matter personal to her specific case, and she was allowed to speak, and the district was handling the issue through a grievance process, and there was no allegation that others were allowed to speak on the same issue, the case at bar is distinguishable in substantive ways:

   a. The rule regarding what could be discussed was clear in *Fairchild*. Here, RRISD stated that comments "related to the agenda" were permitted, and Story was referring to issues regarding the safety of the students; the agenda includes Fall 2021 COVID-19 Health and

Safety Protocols, and Story was prepared to show how the relative danger of COVID to a dangerous Superintendent compared.[3]

b. Even RRISD admits that case law approves of restrictions only when they are viewpoint neutral, citing *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 426–27 (5th Cir. 2020) and *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 347 (5th Cir. 2001) ("As with limited public forums, "the government can restrict access to a nonpublic forum 'as long as the restrictions are reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view.'"). The Complaint state explicitly that other speakers were able to opine on Azaiez and many other matters without ejection and arrest.

8. Defendant RRISD wishes to take too much of its multitude of cases which generally state that school districts can limit public comment, but refuses to see any limits, and stretches to adopt any statement made by a controlling court as relevant to the case at bar, *e.g.*, *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100 (1987), for the proposition that "plaintiff may bring facial challenge if "no set of circumstances exists under which [a law] would be valid." (ECF No. 17, p. 4.) But RRISD needs to read more closely – the Fifth Circuit limits this teaching, stating explicitly that it *does not apply to First Amendment challenges*:

> A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that the Bail Reform Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since <u>we have not recognized an "overbreadth" doctrine outside the limited context of the First Amendment</u>.[4]

*United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100 (1987). (Underlining added for emphasis.) The very paragraph cited by RRISD states that the teaching is not controlling when

---

[3] Exhibit 8, Agenda for the August 16 RRISD Called Meeting.

[4] *Schall* v. *Martin, supra*, at 269, n. 18.

1:22-cv-448, Response and Obj. to RRISD's Motion to Dismiss                                                                                   4

discussing First Amendment challenges. Because this case is precisely about First Amendment issues in a school board meeting context, *Freedom From Religion Foundation* cases give the clear instruction – the restrictive rule must be (1) reasonable in light of the purpose served by the forum and (2) does not discriminate against speech on the basis of viewpoint.[5]

9.     While it may be reasonable to require past employees and volunteers to use a grievance process against individual teachers, as in *Fairchild*, RRISD here argues that its rule is reasonable when it prevents Story from commenting on a superintendent accused of assaulting his pregnant mistress on a night where the Board is discussing safety of the students.

10.    Nowhere in all of case law does any court find that a person cannot simply inform a school board of facts that a trial court has determined was cause to issue a protective order against a school superintendent, or bring up other dangers to children while discussing how strict to be in addressing another danger. Would Story have been out of line for discussing the exemption from school vaccines in discussing how RRISD should handle COVID, because the agenda was COVID and not smallpox? Or would Story have been allowed to discuss allowing kids to bike to school in comparing the danger to COVID? As the Complaint specifies, many other speakers spoke on many ancillary items, insulting political enemies and extolling the virtues of their superintendent, but the Board generally let supporters say what they wanted. Similarly, as long as bystanders in the illegal tax hike meeting were making supportive statements, RRISD was perfectly fine with outbursts and insults thrown, but Clark was not permitted to point out that the Board was acting illegally.

**b.     RRISD's Public Comment Rule violated Plaintiffs' right to free speech and right to petition by using it to punish based on content.**

11.    As stated above, Plaintiffs have shown that, even if the Public Comment Rule was facially constitutional, its application in this case was certainly not.

---

[5] *Freedom From Religion Found. v. Abbott*, 955 F.3d at 426–27.

      i.    <u>The RRISD Board did not employ the Limited Public Comment Rule neutrally.</u>

12. The Complaint describes with great detail many examples showing how the Rule was employed over different times and meetings, without ever being amended.

13. When a government entity is determining what comments should be allowed, the determination should be toward the more liberal policy, rather than the more restrictive, as even *Fairchild* demonstrates.

14. With respect to Plaintiff Story, at the very least, RRISD should have allowed him to explain why his particular topic was related to COVID and student safety; for RRISD to disallow the comparison between COVID and a physically abusive superintendent with a pattern of collecting extra-marital affairs, one would think that the government body would err on the side of caution – unless the goal is to protect that individual and his supporters at all costs, including the abrogation of its duty to protect children and provide a proper platform to express an opinion.

      ii.    <u>The RRISD Board used the Public Comment Rule with special meetings to deprive Plaintiffs Story and Clark of their Right to Petition.</u>

15. Plaintiffs incorporate Plaintiffs' First Amended Complaint section IV. Even if the Public Comment Rule might be constitutional or reasonable in a vacuum void of context, the RRISD practice was to eliminate opportunity for open dialogue by unnecessarily holding only meetings where its board members could impermissibly and unconstitutionally control the subject matter until parents were tired from the fighting and backed down.

16. As described in the Complaint, the 18-seat capacity at the September 14 meeting was required to control narrative, since the Limited Public Rule was not applicable to a general meeting. The assertion that a tax hike meeting that must be open to the public should be restricted to 18 people cannot pass the laugh test, let alone any argument that the restriction was appropriate, particularly when many people were waiting for an opportunity to participate.

      iii.    <u>Plaintiffs' as-applied claims of RRISD's violation of Plaintiffs' right to free speech and right to petition are validly alleged and should survive.</u>

17. Plaintiffs have added allegations to their Amended Complaint to answer RRISD's claims that insufficient facts were originally alleged. No reasonable person reading through the many variations of responses would say that the Board applies its rule neutrally, and certainly in a motion to dismiss, where the complaint's allegations must be taken as true, plaintiff has pleaded a valid claim, and the trier of fact ought to be allowed to determine these matters.

18. Defendants asserted in their Motion that paragraph 38 of the Original Complaint was insufficiently detailed with respect to the factual allegations of disfavored speech in comparison to others. The Complaint has been amended to clarify, and now gives more specifics regarding these facts, which are available to watch at any time from RRISD's website.[6,7] The comments by Elaine Lee and others show that wide latitude was given to many speakers but not to Story.

19. Plaintiffs ask the Court to deny the Defendant's Motion to Dismiss, particularly as to Plaintiffs' claim that RRISD infringed Plaintiffs' right to petition and free speech, as they are protected by the First Amendment, based on RRISD's application of its Public Comment Rule and its over-zealous seating rule, which was used to stifle Plaintiffs' speech by a non-neutral application of the Rule, and by preventing Plaintiffs from effectively participating in an open meeting when RRISD is directed by law to provide the public the opportunity to participate.

**c.   RRISD's Public Comment Rule constitutes an unconstitutional prior restraint because it is overbroad, as RRISD demonstrated.**

20. The parties agree that *Freedom From Religion Foundation*, *Freedom From Religion Found. v. Abbott*, 955 F.3d 417 (5th Cir. 2020) is good law governing these types of disputes. In

---

[6] The RRISD Board Meeting for August 16, 2021 can be viewed (last checked August 16, 2022) in its entirety at https://roundrockisdtx.new.swagit.com/videos/130528.
[7] The September 14, 2021 meeting of the RRISD Board (last checked August 16, 2022) at https://roundrockisdtx.new.swagit.com/videos/139574.

*Freedom,* the Supreme Court taught that the unbridled discretion doctrine had to include neutral criteria when a school denied the plaintiffs' ability to distribute flyers about a religious club, and reasonableness of a policy alone was not enough.  *Id*. at 428-49. Where the parties differ is that Defendant RRISD wants to restrict free speech so that Plaintiff cannot mention a forbidden subject while speaking about another subject. Story's full statement is now in the Complaint.

21.     Defendant cites *Preminger v. Sec'y of Veterans Affairs*, 517 F.3d 1299, 1303 (Fed. Cir. 2008) in its conclusory statement that RRISD's rule "requiring speakers to stick to prescribed topics is facially viewpoint neutral and creates no special risk of "undetectable viewpoint discrimination." (Dkt. 17 § I. C.). Defendants' interpretation is not supported by a fair analysis of the case. In *Preminger*, the Federal Circuit taught that the VA's rule against partisan activities was an effective adequate standard and saw "little risk that the VA will be able to use the regulation to engage in undetectable viewpoint discrimination." *Id*. Thus, Defendant's assertion that a statement that "requiring speakers to stick to prescribed topics is facially viewpoint neutral and creates no special risk of undetectable viewpoint discrimination" is not a statement found in *Preminger*. And the Public Comment Rule does not "require speakers to stick to prescribed topics" but does say that speakers' comments must be "related to items on the agenda," a far less obvious line to draw, and one that invites viewpoint discrimination.

22.     The problem in this case is that the Public Comment Rule limiting comments to those "related to items on the agenda" allows the presiding officer of the meeting to decide that comments about Ted Cruz are "related" and can be allowed, but comments about safety concerns that include discussion of an abusive superintendent are not. This is particularly true when the agenda item is described with a short phrase and little detail. Story actually quoted an agenda resolution in his speech; not another speaker referred to the words of the resolution.

23. RRISD's Motion points out correctly that the District could not limit access to the meeting to allow pro-mask speech but silence anti-mask speech. That is not the nature of the question, and points out the unbridled discretion at issue here. Story did not go to the lectern and start to tell the RRISD Board about his recent trip to Dallas, or something that was unrelated to COVID and safety concerns of the students at RRISD; he did go to the lectern and start to use his time to talk about student safety, comparing the Board's superficially-imposed COVID policies touted against the analytical foil of a real-world example the Board was ignoring: the danger of Azaiez to RRISD students and faculty members.

24. Story was preparing to explain a related concern to COVID dangers, and he believed it "related to items on the agenda." RRISD disagreed, but it is certainly arguable that safety concerns for students are related. The Complaint now includes additional facts showing that other comments allowed which were clearly no more "related to" the agenda than Story's comments.

25. Although RRISD asserts that the public comment rule is not a prior restraint because it does not authorize preemptive denial of participation, Story experienced exactly that with the pretextual seating capacity issues. The police approached Story and asked him to leave the room because they had removed most chairs, and Story had to have a seat. Only after Trustee Bone called them out from the dais and stated that they were acting inappropriately, the police retreated, and a community member offered her seat. Thus, RRISD was misusing the seating capacity rule to deny access to the meeting and to deny speech and petitioning of the Board.

26. Additionally, Story experienced prior restraint because he was not permitted to speak or even say anything substantive before he was cut-off and dragged out of the room. RRISD can assert that is not a prior restraint, but Story was clearly preemptively denied participation when he wanted to explain how these matters were related.

27.     Additionally, Story was not warned to stop. RRISD's Motion asserting that Story was warned is simply in error. Plaintiffs incorporate Plaintiffs' Amended Complaint section IV A. 1. ¶ 38-39, VII A. 4. ¶ 216(b), VII C. ¶ 246. The Complaint now gives more details as to those few minutes and the video agrees with Story. Besides Story's concerns about safety and the relative dangers of COVID and the Board's sincerity, use of a related empirical example is part and parcel of normal human conversation. If that sort of comparison violated the Limited Public Comment Rule, RRISD would have to take every parent to jail that supports an argument with a personal empirical story about their own experience to make a point.

28.     Contrary to the Motion's version of events, Story was not removed when "he continued to deviate from speaking about the posted-agenda item." Story was interrupted before beginning and removed for mentioning the Azaiez protective order, before receiving a warning based on his actual speech, which was related to an agenda item.

29.     Plaintiffs have shown that the Limited Public Comment Rule was vague and used precisely to favor some and an excuse to stop Plaintiff Story from even speaking.

**d.      RRISD's seating capacity rule unconstitutionally prevented the right to petition and thus a violation of the First and 14th Amendments.**

30.     RRISD argues that seating restrictions are not speech, citing inapposite case law concerning signature collection during COVID and in light of social distancing rules, referencing *Morgan v. White*, 964 F.3d 649, 652 (7th Cir. 2020) (per curiam) and others. In none of the cases could the plaintiff point to evidence supporting his pretext argument.

31.     This is not a COVID-related case. Plaintiffs are not complaining that a genuine seat spacing rule is unconstitutional. Plaintiffs are complaining that RRISD employed an irrational regulation as a pretext in order to strip meaningful participation from the public during the one meeting a year

where a tax hike is discussed, and state law specifically requires that any taxpayer in the district may be present and participate in the meeting. See Tex. Educ. Code § 44.004(f).

32.     As proof of this, the Complaint alleges that the Board decided to consider and vote on the 18-seat capacity policy during the meeting, after it saw that the public was very interested. The seat-spacing rule was not enforced anywhere else in the entirety of RRISD's properties. The effect was to diminish the "low tax" voice in the public discussion.

33.     RRISD presents the seat-spacing rule as a reasonable regulation, but the Complaint faithfully reports that the true goal was to minimize public input was the real motivation, as seen by the way it was hastily put together and voted on, a violation of the Texas Open Meetings Act, adopted only when board members recognized that they were going to have to deal with many people who wanted to participate. The rule is clearly nothing more than a means to restrict people, using COVID as a pretext. To say that it did nothing to prevent anyone's speech is to ignore that dozens of people, including Jeremy Story, were unable to address the Board.

34.     As the Complaint alleges and contrary to RRISD's Motion that everyone could participate, the Board did not even fill empty chairs as some individuals left after speaking. Many people were simply not allowed in.  RRISD used the reduced seating rule to diminish the voices of those who prefer lower taxes because it could not use the Limited Public Comment Rule, its usual tool.

**e.      The Complaint now states a plausible First Amendment retaliation claim based on RRISD's actions leading to Plaintiffs' arrest.**

35.     RRISD argues that Plaintiffs' First Amendment retaliation claim fails because a warrant precludes a retaliation claim because a warrant establishes probable cause, and the Magistrate signing the warrant constitutes an independent intermediary that insulates the defendants from liability. Dkt. 17 § I. E.

36.     RRISD's analysis fails because Plaintiffs have alleged the absence of probable cause in the Amended Complaint more fully, and also because the signed warrants only establish a presumption of probable cause, as RRISD's cited case states, "[A] warrant *presumptively* establishes probable cause."[8] The individuals involved in creating the warrants work for RRISD, and cannot be said to be neutral in this manner, separating this case from *Terwilliger*.

37.     The Complaint now has additional facts showing the "independence" of the independent intermediary is in question, as the arrests of the two plaintiffs appears to have been a political decision and series of actions. The Plaintiffs warrants originated from two different incidents on two different days, but the two crews of law enforcement who came to arrest them at the same time functioned as a clear message to board critics that they can be jailed for opposing the Board, even when misdemeanor arrestees were not permitted to be jailed to avoid COVID spread.

38.     Plaintiffs even found that one person with a similar level of offense tried to turn himself in based on a judge's order. He begged for admission because he had traveled from Houston and no place to go. The jailers would not take him. In comparison, Story and Clark were jailed in spite of COVID on the day after Story's grievance was filed.

39.     Case law teaches that the chain of causation is not broken by an intermediary's decision if "it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." In other words, "the chain of causation is broken only where all the facts are presented to the grand jury, where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary...."[9]

40.     Because the circumstances of the simultaneous arrest and the deliberate jailing at a time when misdemeanor defendants were not kept in jail, Plaintiffs believe that they were treated as

---

[8] *Terwilliger v. Reyna*, 4 F.4th 270, 285 n.10 (5th Cir. 2021) (emphasis added).
[9] *Russell v. Altom*, 546 F. App'x 432, 436-37 (5th Cir. 2013) (citations omitted).

political dissidents and would ask the Court to either deny dismissal of their claims outright, or abate the question until discovery can follow the evidence, as Plaintiffs have reasonably alleged that the beginning of the events were political, and their treatment in jail was political, it stands to reason that the "deliberations of that intermediary were in some way tainted by the actions of" RRISD, and thus were politically motivated.

41. RRISD combines its conclusions that Plaintiffs' speech was not protected, and Plaintiffs have not alleged any animus by any District official to find a third conclusion that Plaintiffs have failed to show that their speech was the "but for" cause of their arrests.

42. To the extent that the Plaintiffs have not made sufficient factual allegations on this issue, Plaintiffs incorporate Plaintiffs' First Amended Complaint Section IV ¶ 73, 83, 115-118.

**f.    Plaintiffs' claims against RRISD for infringing the Right to Petition is solidly based on RRISD's Public Comment Rule, Seat Capacity Rules, and Plaintiffs' arrests.**

43. The parties agree that a right to petition and right to free speech are generally considered similarly, but Plaintiffs here bring at least two sets of allegations regarding the right to petition. The impact of ongoing use of special meetings instead of a regular meeting as described above and in the Amended First Complaint allowed RRISD to unduly control the right to petition the RRISD Board to take action regarding its hiring of Azaiez and discuss his personal matters which impact the district and the moral standing of its leadership.

44. Additionally, the RRISD's pretextual and irrational excuse of COVID to restrict seating from 375 to 18 during the tax vote meeting is clearly a violation of state law and an unconstitutional violation of the right to petition. Many people, including Plaintiff Story, signed up to speak, but were unable to say their piece to the RRISD Board at a time and meeting that is statutorily set for that purpose. The Amended Complaint makes this clearer to avoid ambiguity. Based on the well-pleaded claims for violations of the right to petition, the Motion should be denied.

## II.   RESPONSES SUPPORTING PLAINTIFFS' FOURTH AMENDMENT CLAIMS

### a.   Plaintiffs' claims for the illegal arrest they suffered are valid.

45.   RRISD argues that Plaintiffs have no claim for a violation of their rights because Plaintiffs must show that no probable cause existed, and once again states that a valid warrant cannot support a Fourth Amendment claim and should be dismissed. RRISD also repeats the independent intermediary liability shield argument described above.

46.   The issue comes down to whether Plaintiffs were in their rights to speak as they did, or whether they were not. If their speech was protected, then no probable cause existed, the warrants were not valid, and RRISD's case against Plaintiffs must fail.

47.   Plaintiffs incorporate Plaintiffs' First Amended Complaint Section VII ¶ 245-246. If the magistrate was not told of these issues, then the exception applies, and the shield of independence evaporates because the process was tainted by Defendants actions.

### b.   Plaintiffs' removal violated the Fourth Amendment.

48.   Plaintiffs incorporate factual allegations from Plaintiffs' First Amended Complaint Section IV ¶ 33-39. A police officer has no authority to perfunctorily remove a person from an open meeting because he suspects that the speaker's words may not be as "related to" an agenda item as the officer would like. When Story later asked Yarborough to explain his authority came from with regard to his authority to remove Story, Yarborough stated specifically that his authority arose from Texas Educ. Code 37.105 and Texas Penal Code 38.13 and 42.05. None of these sections of Texas law are applicable here, as described in the Complaint at para. 74-79, 240-241, 211, among others. Each of these laws includes at least an element not present:

   a. Section 37.105 of the Texas Education Code allows removal if a person refuses to leave and he poses a substantial risk of harm, or he is behaving inappropriately and has received a verbal warning that he will be removed and he persists.

  b. Section 38.13 of the Texas Penal Code allows removal when a person "intentionally hinders an official proceeding by noise or violent or tumultuous behavior or disturbance." Story just wanted to speak at the lectern for their appointed time. Clark was removed for attempting to convince the Board to follow state law. Neither can be said to be *intentionally* hindering the meeting by noise or tumultuous behavior or disturbance.

  c. Section 42.05 describes an offense when a person obstructs or interferes with a meeting by physical action or verbal utterance with intent to prevent or disrupt a lawful meeting.

49. Based on the above, Police Chief Yarborough, an agent of RRISD who is tasked with leading other law enforcement personnel, claimed the above three sections of the law supported removal of Story from the August 16th meeting. Only the most biased person who wants to see a charge of some sort can conclude that peacefully speaking at a lectern constitutes "intentionally hindering an official proceeding." This Court is not so obligated.

**c. Plaintiffs' excessive force claim under the Fourth Amendment is valid.**

50. Story articulated a claim for RRISD's agents' actions slamming him to the ground, as RRISD recollects properly. Story is obligated to show that he suffered more than *de minimis* damage and the force applied was clearly excessive and unreasonable. The Amended Complaint shows that Story was physically hurt and bleeding due to his unnecessary treatment, which the trier of fact could certainly find was more than *de minimis*, so this claim should not be dismissed.

## III. RESPONSES SUPPORTING PLAINTIFFS' FOURTEENTH AMENDMENT CLAIMS

51. RRISD argues that Plaintiffs' Fourteenth Amendment claims are invalid repackaging of Plaintiffs' First and Fourth Amendment claims, because they more properly protect Plaintiffs from the events alleged, and the Fourteenth is left for more generalized issues. Dkt. 17 §§ III and IV.

52. Plaintiffs note that RRISD argues that the seating capacity issue is neither a violation of the Right to Petition or Right to Free Speech. Plaintiffs recognize Defendants' argument, but when RRISD uses COVID as mere pretext to restrict the relevant rights, such action distinguishes this

case from those cases where some action has an ancillary impact. Here, the Individual Defendants sought to restrict the right to petition and free speech, and they were successful.

53.     Plaintiffs' Complaint claims that RRISD violated Plaintiffs' right to due process by arbitrarily creating a rule that prevented taxpayers from participating in a statutorily open meeting. RRISD has responded by asserting that the public was able to participate, albeit not in the usual method; the limited participation during the tax hike meeting was no First Amendment violation.

54.     In the Amended Complaint, Plaintiffs include the alternative theory that, historically speaking, residents had the right to attend such meetings, and to deny such access is a violation of due process. Additionally, the right to address a government body during its meetings without fear of retaliation or some other more nefarious action is historically part of the foundation efforts that motivated rebel barons to force King John to accept the Magna Carta, which eventually resulted in the jury system of today. RRISD cannot have it both ways - either these claims are properly pleaded claims for violation of the First and Fourth Amendments, or they are subject to adjudication under the Fourteenth Amendment.

## IV.     Plaintiffs' section 1983 claims exist and are well pleaded to protect rights.

55.     Because Plaintiffs allege section 1983 and 1985 claims against multiple defendants, Plaintiffs have provided a full discussion of those claims in the concurrently filed Plaintiffs' Response to Officer Defendants' Motion to Dismiss and incorporate that response here.

56.     Plaintiffs do not seek conspiracy claims against RRISD itself.

## V.     RESPONSE IN SUPPORT OF PLAINTIFFS' OPEN MEETING ACT CLAIMS
### a.     Plaintiffs' Texas Open Meetings Act claim is valid against RRISD.

57.     Defendant RRISD claims that Plaintiffs' Texas Open Meetings Act ("TOMA") claims are invalid with respect to both Azaiez's hiring and the September 14 tax-rate meeting. Plaintiffs'

claims are valid because Plaintiffs have averred facts showing: (1) Defendant Trustees illegally decided secretly to hire Azaiez; (2) prevented taxpayers from entering the public, open meeting space during the September 14, 2021 tax-rate hearing, and (3) voted to unreasonably limit attendees during the September 14 meeting, and (4) established a remote location viewing for the September 14th meeting, relegating a crowd of critical taxpayers to a non-noticed meeting room.

### a. The Defendant Trustees to Hire Azaiez

58. Defendant RRISD says that Plaintiffs' Complaint "lacks any well-pleaded facts that a quorum of the Board met, considered, deliberated, or voted regarding Azaiez's employment outside of a properly-noticed public meeting to state a TOMA violation." Dkt. 17 § 5. RRISD cites *United Indep. Sch. Dist. v. Gonzalez*, 911 S.W.2d 118 (Tex. App.--San Antonio 1995) in support. *Gonzalez* is inapposite because it addresses Tex. Gov't Code § 551.082, which pertains only to disciplinary matters involving school district employees and students.

59. RRISD's own appendix shows that the May 21, 2021 board meeting was not properly noticed as required by TOMA. The notice of a meeting must inform the public of action taken at the meeting, and an action is subject to judicial invalidation if the notice is inadequate.[10] Notice must be sufficiently specific to inform the general public of the subjects to be considered; more specificity is required when the subject slated for discussion is of special interest to the public.[11] Selection of a new superintendent is of special interest to the public, as found by the Texas Supreme Court in *Cox Enters., Inc. v. Bd. of Trs.*, 706 S.W.2d 956, 959 (Tex. 1986).

60. The agenda for the closed session to take place on May 21, 2021, states that during the closed session, the Board would "deliberate applicants for Superintendent, including the possibility of naming finalists for the position." Dkt. 17-1, App. 4. The plain language of the closed-meeting

---

[10] *Point Isabel Indep. Sch. Dist. v. Hinojosa*, 797 S.W.2d 176, 180 (Tex. App.--Corpus Christi 1990, writ denied).
[11] *Id.* at 180-181.

subject shows that the board would name *multiple* finalists for the superintendent position–not make their final selection for the superintendent position. Yet the Board clearly had jumped to that position, in violation of the state's process governed by Tex. Gov't Code § 552.126, which requires a 21-day notice for the public to evaluate superintendent finalists. Defendant admits that immediately following the closed session, the Board authorized President Weir to negotiate a contract with Azaiez only. The notice of the closed session, quoted above, does not logically contemplate negotiating a contract with Azaiez and only Azaiez. The natural conclusion is that the Board decided to hire Azaiez behind closed doors and without proper notice to the public.

### b. "Walking Quorum" in Violation of TOMA

61. Plaintiffs amended includes additional facts to meet Defendants' argument that insufficient facts are alleged to assert a TOMA violation. Plaintiffs have amended to show additional facts. *But for* Defendants' discussions outside of a properly noticed public meeting, Azaiez would not have been present at the June 14 meeting *prior to* the public vote to fill the superintendent role.

62. Generally, Texas civil courts construe TOMA to guarantee access to the actual decision-making process of a government body when considering a pending issue; in such times, there can be no 'informal' discussion; there is a formal consideration of a matter in compliance with TOMA, or an illegal meeting."[12] "Citizens are entitled not only to know what government decides but to observe how and why every decision is reached. *The explicit command of the statute is for openness at every stage of the deliberations*."[13]

63. A "walking quorum" violates TOMA when a quorum (or more) of a governmental body attempts to avoid TOMA by deliberately meeting in numbers, physically less than a quorum, in

---

[12] *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 300 (Tex. 1990).
[13] *Acker*, 790 S.W.2d 299, at 300 (emphasis added).

closed sessions to discuss public business and, then, ratifying its actions in a physical gathering of the quorum in a later public meeting.[14]

64. Plaintiffs have averred facts establishing that the RRISD Board maintained a "walking quorum" in violation of TOMA, and RRISD has not disputed these facts. In support, Plaintiffs incorporate Plaintiffs' First Amended Complaint, Section IV. A. ¶ 14 & 15.

65. The Board began with multiple candidates for the superintendent position, but the Trustee Defendants picked Azaiez to take the position secretly, bypassing the 21-day notice for public vetting required by § 551.126 the Texas Government Code. They gave him the final interview questions so he would perform well, arranged for his travel and lodging to attend the June 14th meeting, and he was waiting in a back room *prior to* the public vote on June 14, 2021. These facts, taken together, along with the fact that someone at RRISD knew to purchase his insurance before he was even the lone finalist, clearly shows that five RRISD Board Members, outside of an open meeting, selected Azaiez for the superintendent position, without discussing the matter among the full board. RRISD does not deny the facts described above. The totality of the circumstances shows that RRISD failed to maintain "openness at every stage of the deliberations" with respect to hiring Azaiez, violating the Texas Open Meetings Act.

### c.  *Preventing Attendees from Entering the Open Meeting*

66. Defendant RRISD further contends that Plaintiffs' TOMA claim fails with respect to the September 14, 2021 tax-rate hearing because TOMA does not set such standards and because attendees who were not in the meeting room could watch the meeting in an overflow area.

67. Defendants miss the point. TOMA requires that: "The location where the member of the governmental body presiding over the meeting is *physically present* shall be *open to the public*

---

[14] Tex. Gov't Code. § 551.143. *See* Tex. Op. Atty. Gen. GA-0236 (May 18, 2005).

during the open portions of the meeting."[15] RRISD is willfully blind to the explicit purpose of TOMA: the principle that "democracy thrives when citizens monitor their government's workings and participate in their governance."[16] Tax-rate hearings in particular must be open to any taxpayer who wishes to be present and participate in the meeting.[17]

68. Plaintiffs have cited additional facts to support a TOMA claim regarding the tax hearing and incorporate Complaint, para. 88-94, 97-191, among others. RRISD did not allow even most of the attendees who wished to be physically present at the meeting where the tax hearing and vote was held. Plaintiffs have alleged valid TOMA claims, the Motion to Dismiss should be denied.

       d. *Improper Notice of Vote to Remove Attendees*

69. RRISD also violated TOMA during the tax hearing by calling for a vote on an item that was not properly noticed. "The notice of a meeting must inform the public of action taken at the meeting, and an action is subject to judicial invalidation if the notice is inadequate."[18] In support, Plaintiffs incorporate factual statements from the Complaint, ¶ 88-94. Because RRISD did not give proper notice of a new policy to remove attendees not in chairs, RRISD violated TOMA.

    Respectfully submitted,

    Norred Law, PLLC.
    By: /s/ *Warren V. Norred*
    Warren V. Norred, Texas Bar No. 24045094, warren@norredlaw.com
    515 East Border Street; Arlington, Texas 76010
    P: 817-704-3984
    *Attorney for Plaintiffs*

**Certificate of Service:** I hereby certify that on August 22, 2022, the foregoing document was served to counsel of record via CM/ECF. */s/ Warren V. Norred*

---

[15] Tex. Gov't Code. § 551.127(e) (emphasis added).
[16] *City of San Antonio*, 820 S.W.2d 762 at 782.
[17] With regard to tax rate hearings, Tex. Educ. Code § 44.004(f) states, "The board of trustees, at the meeting called for that purpose, shall adopt a budget to cover all expenditures for the school district for the next succeeding fiscal year. ***Any taxpayer of the district may be present and participate in the meeting***." (emphasis added).
[18] *Point Isabel*, 797 S.W.2d 176 at 180.