## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS – AUSTIN DIVISION

| | | |
|---|---|---|
| JEREMY STORY and DUSTIN CLARK, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| SUPERINTENDENT HAFEDH AZAIEZ, | § | CIVIL ACTION NO. 1:22-cv-448-RP |
| TRUSTEES AMBER FELLER, TIFFANIE | § | |
| HARRISON, AMY WEIR, JUN XIAO, | § | |
| CORY VESSA; OFFICERS JEFFREY | § | |
| YARBROUGH, JAMES WILLIBY, | § | |
| DEBORAH GRIFFITH, MILTON POPE, | § | |
| FRANK PONTILLO, SAMUEL CHAVEZ, | § | |
| individually, and ROUND ROCK INDEP'T | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| *Defendants.* | § | |

---

## OFFICERS JEFFREY YARBROUGH, JAMES WILLIBY, LAUREN GRIFFITH, MILTON POPE, FRANK PONTILLO, AND SAMUEL CHAVEZ'S MOTION TO DISMISS PLAINTIFFS JEREMY STORY AND DUSTIN CLARK'S FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT

---

### THOMPSON & HORTON LLP

**KATHRYN E. LONG**
State Bar No. 24041679
klong@thompsonhorton.com

**K. ADAM ROTHEY**
State Bar No. 24051274
arothey@thompsonhorton.com

500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

**PATRICK GRUBEL**
State Bar No. 24106034
pgrubel@thompsonhorton.com

8300 N. MoPac Expressway, Suite 220
Austin, TX 78759
(512) 615-2350 – Telephone
(713) 583-8884 – Facsimile

### ATTORNEYS FOR THE ROUND ROCK ISD DEFENDANTS

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiffs Jeremy Story and Dustin Clark attempt to state First, Fourth, and Fourteenth Amendment claims against certain Round Rock Independent School District ("Round Rock ISD" or the District") police officers. Plaintiffs' claims relate to their removal from District Board meetings and subsequent arrests based on charges that they hindered those proceedings through their disorderly conduct. Plaintiffs' Fourth Amendment claims are barred because an independent intermediary determined there was probable cause to issue warrants for their arrest. There are no additional allegations regarding Clark's arrest. And Story's amended allegations do not change the outcome because video evidence corroborates the information in his warrant affidavit and, even excluding any allegedly false information, probable cause still existed. Story's excessive force claim fails because he still does not plead that any of the officers caused the complained-of injuries, and alleges only *de minimis* injuries caused by reasonable amounts of force given his protracted defiance of police orders.

Plaintiffs' First Amendment claims fail because their speech was not protected. Moreover, Plaintiffs were removed from the Board meetings due to their alleged criminal conduct, not their speech. And their removals were supported by reasonable suspicion and probable cause that Plaintiffs were committing a crime as determined by an independent intermediary. Plaintiffs' Fourteenth Amendment claims—including their amended "class of one" claim—fail because the First and Fourth Amendments provide the explicit basis for their claims and should therefore govern the analysis. Plaintiffs also do not plead facts to state a viable failure to supervise or train claim or a 42 U.S.C. § 1985 conspiracy claim against any police officer defendants. Finally, the police officer defendants are entitled to dismissal of all claims on the basis of qualified immunity.

## RELEVANT FACTUAL ALLEGATIONS

Plaintiffs' claims against Former Chief of Police Jeffrey Yarbrough, Assistant Chief of Police James Williby, Detective Sergeant Laura Griffith, Sergeant Milton Pope, Sergeant Samuel Chavez, and

Officer Frank Pontillo (collectively, the "Officer Defendants"), primarily arise out of: (1) the removal of Story from a Board meeting on August 16, 2021 (the "August 16 meeting"); (2) the alleged forceful prevention of Story from entering, and the removal of Clark from a Board meeting on September 14, 2021 (the "September 14 meeting"); and (3) Story's and Clark's September 17, 2021, arrests by the Williamson County Sheriff's Department arising out of their conduct at these Board meetings.[1]

## I.      The August 16 Meeting

Story claims that in July 2021—after the Board's June 14, 2021, vote to hire Dr. Azaiez as its Superintendent—he became aware of allegations of personal misconduct by Dr. Azaiez. Dkt. 20, ¶¶ 13–16. Story made the Board aware of the allegations via emails and social media. *Id.* ¶¶ 19–23.[2]

The August 16 meeting was a "special" meeting under District policy BED(Local), which limited public comment to "items on the agenda" for the meeting. *Id.* ¶¶ 17–18. The August 16 meeting had two agenda items: (1) COVID-19 Employee Leave; and (2) Fall 2021 COVID-19 Health and Safety Protocols. *Id.* ¶ 30. Griffith was in the parking lot outside the location of the August 16 meeting, had previous contact with Story, and advised other unidentified officers when Story entered the building where the Board meeting was held. *Id.* ¶ 32; Dkt. 1-1, p. 170. Pope told Story he could not enter the Board meeting room because there were no empty seats. Dkt. 1-1, p. 170. Story protested, and Pope and Pontillo allowed Story to enter. *Id.* Story had "an outburst" during the meeting. *Id.* The outburst compelled Yarbrough to give Story "a verbal warning about his behavior." *Id.* Story denies he had an "outburst." Dkt. 20, ¶ 220. But Plaintiffs allege that Yarbrough approached

---

[1]      The following summary is based on the factual allegations in the First Amended Complaint (the "Complaint," Dkt. 20), as well as the documents and recordings attached to, referenced in, or in the prior appendix (Dkt. 1-1) incorporated into the Complaint (*see* Dkt. 20, p. 69), which, under Federal Rule of Civil Procedure 12(b)(6), are assumed to be true.

[2]      As of the time Story entered the August 16 meeting, the Board knew he was the "leader of those who want[ed] to replace the superintendent … ." Dkt. 20, ¶ 215(c).

Story during the August 16 meeting, demanded that he leave the room to speak outside, and "unconstitutionally threatened Story." *Id.* ¶¶ 33–34.

Story remained in the August 16 meeting after his encounter with Yarbrough and addressed the Board during public comment. *Id.* ¶¶ 35–38. According to video of the meeting, as Story approached the microphone to speak, Weir remarked that Story had previously written to the Board and stated his belief that he could speak on matters unrelated to the agenda items.[3] Dkt. 20, ¶ 35, n.11; Dkt. 1-1, p. 170 (the recording of events related to Story's public comments begins at hour 2:47:10 and continues to approximately 2:49:35). Board President Amy Weir told Story he could not speak on topics not on the agenda. *Id.* Story spoke for a few moments on items ostensibly related to the agenda, but then began speaking about the allegations against Dr. Azaiez. *Id.* Story attempted to frame his speech in a manner that questioned the authenticity of the Board's concerns about health and safety, which he alleges aligned with the agenda item regarding COVID-19 Health and Safety Protocols. *Id.* But because he was speaking on items not on the agenda, Weir directed Story to stop speaking and directed Pope and Pontillo to remove Story from the meeting when he refused to do so. *Id.* Pope and Pontillo complied with Weir's directions and removed Story from the meeting. *Id.*; Dkt. 20, ¶ 37. Story does not allege he suffered any physical injuries in connection with his removal from the August 16 meeting. Story alleges he spoke with Yarbrough on August 19, 2021 about his removal

---

[3]      Plaintiffs request that the Court take judicial notice of the public video recording of the August 16 meeting available at https://roundrockisdtx.new.swagit.com/videos/130528. Dkt. 20, ¶¶ 39 n.12. What transpired at the August 16 meeting is central to Plaintiffs' claims; therefore, the may consider the recording to determine whether Plaintiffs have stated a claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (*quoting Venture Assocs. Corp. v. Zenith State Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). The Officer Defendants likewise ask the Court to take judicial notice of the Board meeting video under FED. R. EVID. 201(c)(2). *Van Deelen v. Cain*, 628 F.App'x 891, 894, n.1 (5th Cir. 2015). When considering video evidence in a motion to dismiss, "the court is not required to favor the plaintiff's allegations over the video evidence," *Scott v. White*, No. 1:16-CV-1287-RP, 2018 WL 2014093, at *1 (W.D. Tex. Apr. 30, 2018) (quoting *Hartman v. Walker*, 685 F.App'x 366, 368 (5th Cir. 2017)), if it "provides so much clarity that a reasonable jury could not believe [the plaintiff's] account," *id.* (quoting *Darden v. City of Fort Worth*, 880 F.3d 722, 730 (5th Cir. 2018)).

from the August 16 meeting. Dkt. 20, ¶ 44. Yarbrough explained to Story that he was removed because he could only speak about items on the Board agenda. *Id.*

## II.    The September 14 Meeting

At the September 14 meeting, Plaintiffs allege that the District limited seating capacity in the meeting room to eighteen seats, spaced at least six feet apart. Dkt. 20, ¶ 50. The meeting room allegedly had a seating capacity of 375. *Id.*[4] Plaintiffs allege that the Trustees "used RRISD police officers to … prevent parents from entering the [ ] meeting room … ." *Id.* Specifically, Plaintiffs allege that Pope and Pontillo prevented Story from entering the meeting room citing COVID restrictions as the basis. *Id.* ¶ 66–67. Story asked unidentified officers to specify who directed them to restrict access to the meeting but got no response. *Id.* ¶ 68. At one point, an unidentified police officer allegedly "nodded to indicate that … Yarbrough told them to block the doors." *Id.* ¶ 70. Once the Board meeting started, unidentified police officers allegedly allowed some people into the meeting, apparently based on who was scheduled to participate in public comment, while refusing entry to others. *See id.* ¶ 71.

Story attempted to enter the meeting room multiple times but was blocked by Pope and Pontillo. Dkt. 20, ¶ 72. Plaintiffs and others argued with police officers for more than forty-five minutes about the law governing access to Board meetings. *See id.* ¶¶ 68, 77–80. During these arguments, Williby allegedly observed unidentified officers using force against Story "by bear-hugging him around a pole, cutting his back, and slamming him to the ground … ." *Id.* ¶ 82. Story alleges that "RRISD Officer Defendants caused [his] injury," though he does not specify *who* actually caused the injury. *Id.* ¶ 83. Williby allegedly did not intervene. *Id.* ¶ 85. Plaintiffs allege Yarbrough later

---

[4]    Plaintiffs ask that the Court take judicial notice of the video recording of the September 14 meeting, available at https://roundrockisdtx.new.swagit.com/videos/139574. Dkt. 20, ¶ 52 n.25, ¶ 88 n.29. The Officer Defendants join in that request. *See supra* n.3.

commented that his officers only had typical municipal street patrol training, not school resource officer training. *Id.* ¶ 86.

At some point, Clark entered the meeting room. *See id.* ¶ 97. Clark "was observed speaking out of turn in the board meeting, interrupting board members while they were speaking, and interrupting those citizens who rightfully had the floor … ." Dkt. 1-1, p. 208. Weir warned Clark several times to stop disturbing the meeting, but Clark continued to interrupt the meeting. *See id.*; Dkt. 20, ¶ 97. Wier instructed Williby to remove Clark from the meeting.[5] Dkt. 20, ¶ 98. Chavez and Williby removed Clark from the meeting. Dkt. 1-1, p. 208.

### III.   Story's and Clark's Arrests

On September 17, 2021, warrants issued for the arrest of Story and Clark. Dkt. 20, ¶ 115. Griffith prepared the warrant affidavits based on information provided by Pope in the case of Story's warrant affidavit and Chavez in the case of Clark's warrant affidavit. Dkt. 1-1, pp. 198–99, 208–09. Plaintiffs allege the warrant affidavit for Story contained "errors" or "falsehoods" of which Griffith was aware. Dkt. 20, ¶¶ 217, 245. Plaintiffs do not allege the warrant affidavit for Clark contained any "errors" or "falsehoods." A Williamson County Magistrate (the "Magistrate") examined and signed the warrant affidavits and arrest warrants after he "determined that probable cause does exist for the issuance of a warrant of arrest for the individual[s] accused therein." Dkt. 1-1, pp. 199, 209. The Magistrate executed the arrest warrants based on charges of Hindering Proceedings by Disorderly Conduct, a Class A Misdemeanor. *Id.* p. 201, 211. Plaintiffs allege the Magistrate was not independent but was either a co-conspirator or was provided with false information. Dkt. 20, ¶ 244. The Williamson County Sheriff's Department arrested Plaintiffs on September 17, 2021. *Id.* ¶ 116. Plaintiffs allege they somehow learned that "Azaiez communicated via text and other means with the Williamson County

---

[5]      Events related to Clark's removal are viewable from 31:00 to 35:15 of the recording available at https://roundrockisdtx.new.swagit.com/videos/139574.

Judge and other county officials to encourage the county to arrest Plaintiffs." *Id.* ¶ 118. Plaintiffs also allege that the "Individual Defendants" "possibly [conspired] with county officials," to retaliate against Plaintiffs for exercising their free speech rights and unlawfully causing their arrest and injury. *Id.* ¶ 206. Plaintiffs do not plead any facts that Dr. Azaiez or any other defendant communicated or conspired with the Magistrate who signed the warrants for Plaintiffs' arrests.

## ARGUMENT AND AUTHORITIES

### I.   Overview of qualified immunity.

Individual defendants may invoke the defense of qualified immunity to section 1983 claims. Public servants are immune from suit unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). The availability of qualified immunity is a question of law. *Siegert v. Gilley*, 500 U.S. 226, 231-32 (1991). Courts must determine (i) whether the plaintiffs have described a violation of a constitutional right; and (ii) whether the right was "clearly established" at the time of the official's conduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Under the first prong a court must decide "whether the plaintiff[s] ha[ve] alleged a violation of a constitutional right." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008) (citations omitted). The second prong requires a court to determine whether the right was clearly established at the time of the incident. *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 326 (5th Cir. 1998). If so, the court must evaluate whether the conduct of the official was objectively unreasonable under clearly established law. *Id.*; *Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008).

Plaintiffs bear the burden to show the official violated clearly established law. *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 347 (5th Cir. 2017); *Kovacic v. Villareal*, 628 F.3d 209, 212 (5th Cir. 2010), *cert. denied*, 564 U.S. 1004 (2011). Plaintiffs must identify the violation of a "particularized" right so that it is apparent to the official that his actions are unlawful in light of pre-existing law.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Plaintiffs may not defeat immunity by describing a "general proposition" of constitutional law, such as a right to equal protection. *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011). To defeat immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law *in the circumstances*." *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) (emphasis in original) (citations omitted). This means that "existing precedent" must have placed the question "beyond debate." *Al-Kidd*, 536 U.S. at 741.

In addition, plaintiffs must allege with specificity how the defendant violated the particularized right. *Kovacic*, 628 F.3d at 212; *Babb v. Dorman*, 33 F.3d 472, 479 (5th Cir. 1994). "The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution … as alleged by the plaintiff." *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (emphasis in original). If "officers of reasonable competence could disagree on the issue, immunity should be recognized." *Hope v. Pelzer*, 536 U.S. 730, 752 (2002). The reasonableness of an official's actions is based on the information available to the official at the time of the event. *Morgan v. Swanson*, 755 F.3d 757, 760 (5th Cir. 2014). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Al-Kidd*, 563 U.S. at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see also Jordan v. Brumfield*, 687 F.App'x 408, 412 (5th Cir. 2017).

Once a defendant asserts qualified immunity, plaintiffs must respond with specificity and "fairly engage" the immunity defense. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). The standard requires more than conclusory assertions. *See Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996). Plaintiffs must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.     Plaintiffs do not state a violation of their Fourth Amendment rights.

Plaintiffs claim the Officer Defendants violated their right to be free from false arrest and excessive force. Dkt. 20, ¶¶ 235–45. They complain that the criminal charges against them "did not constitute a basis for arrest because Plaintiffs were simply exercising their constitutional right to participate in the board meeting[s]." *Id.* ¶ 241. The Fourth Amendment protects the rights of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. U.S. CONST. amend XIV. "A constitutional claim for false arrest … through the vehicle of § 1983, 'requires a showing of no probable cause.'" *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019) (internal citations omitted). But the Constitution does not guarantee that only the guilty will be arrested. *Baker v. McCollan*, 443 U.S. 137, 145 (1979). An arrest based on a valid warrant is not a false arrest, is not unconstitutional, and cannot form the basis of a Fourth Amendment claim. *Smith v. Gonzalez*, 670 F.2d 522, 526 (5th Cir. 1982). A "complaint based on such an arrest is subject to dismissal for failure to state a claim." *Id.* If a warrant is issued by an intermediary magistrate judge, the causal chain is broken, and the initiating party is insulated. *Russell v. Altom*, 546 F.App'x 432, 436–37 (5th Cir. 2013); *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010); *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988).

### A.     No Fourth Amendment violation related to their arrests.

The Officer Defendants did not arrest Plaintiffs. Nevertheless, Plaintiffs attempt to hold all Officer Defendants responsible by alleging that their arrests were "the result of conspiracy among all [ ] Individual Defendants." Dkt. 20, ¶¶ 243, 245. As an initial matter, only Griffith prepared the warrant affidavits based on information she received from Pope (with respect to Story) and Chavez (with respect to Clark). Dkt. 1-1, pp. 198–99, 208–09. Accordingly, any false arrest claims against Yarbrough, Williby, and Pontillo should be dismissed with prejudice since they are not alleged to have been involved in the warrant application process. *Melton v. Phillips*, 875 F.3d 256, 263 (5th Cir. 2017)

(en banc) (an officer must have assisted in the preparation of or otherwise presented or signed the warrant application to be subject to liability for misstatements or omissions in a warrant affidavit under *Franks v. Delaware*, 438 U.S. 154 (1978)). And Plaintiffs cannot state false arrest claims against Griffith, Pope, or Chavez—or any of the Officer Defendants—because the independent Magistrate signed the warrants and warrant affidavits and acknowledged he had "examined the foregoing affidavit[s] and ha[d] determined that probable cause does exist for the issuance of a warrant of arrest for the individual[s] accused therein." Dkt. 1-1, pp. 198–99, 201, 208–09, 211. Because the facts supporting Plaintiffs' arrests were "placed before an independent intermediary such as a magistrate … the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009). As a result, Plaintiffs fail to state a claim that Griffith, Pope, Chavez, or any of the Officer Defendants violated their right to be free from false arrest.[6] *Russell*, 546 F.App'x at 436–37; *Cuadra*, 626 F.3d at 813; *Hand*, 838 F.2d at 1427.

Plaintiffs do not plead facts regarding any false or misleading statements in the warrant affidavit supporting Clark's arrest. To avoid application of the independent intermediary rule as to Story, however, Plaintiffs now allege that either the Magistrate was part of the alleged conspiracy, or the warrant affidavit for Story contained "errors" or "falsehoods." Dkt. 20, ¶ 245. Plaintiffs' allegations that the Magistrate was part of the conspiracy are insufficient to state a claim because they are conclusory and an improper attempt to impute ill-intent to the Magistrate based on vague allegations of collusion between everyone at the County *other* than the Magistrate.[7] *See* Dkt. 20, ¶ 244 (alleging "unlawful cooperation with individuals at the county," such as the County Sheriff, County

---

[6]   Plaintiffs do not allege the use of excessive force or injury in connection with their arrests by the Williamson County Sheriff's Department. As a result, Plaintiffs fail to state an excessive force claim in connection with their arrests.

[7]   Although a court must accept well-pleaded facts as true, neither conclusory allegations nor "legal conclusions masquerading as factual conclusions" are entitled to a presumption of truth. *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009).

Attorney, County Judges, and Williamson County Judge). Moreover, the Complaint's allegations and the video evidence do not demonstrate that the warrant affidavit for Story's arrest contains "errors" or "falsehoods." And, even without the allegedly false information, there remains sufficient undisputed content in the warrant affidavit to support a finding of probable cause. *See Terwilliger v. Reyna*, 4 F.4th 270, 281–82 (5th Cir. 2021); *Thornton v. Lymous*, 850 F.App'x 320, 321–22 (5th Cir. 2021).

"Probable cause is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Terwilliger*, 4 F.4th at 282 (cleaned up). In deciding whether probable cause exists, courts look at the totality of the circumstances and decide whether the facts, viewed from the standpoint of an objectively reasonable police officer, demonstrate "a probability or substantial chance of criminal activity." *Id.* Here, the warrant affidavit asserts that Story committed the offense of Hindering Proceedings by Disorderly Conduct, a violation of Texas Penal Code section 38.13. "A person commits [such] an offense if he intentionally hinders an official proceeding by noise or violent or tumultuous behavior or disturbance." Tex. Penal Code § 38.13(a). Although Story takes issue with several assertions in the warrant affidavit, he does not and cannot—based on the video evidence— dispute the assertions in the warrant affidavit that: (1) Weir informed Story he could only speak on posted agenda items; (2) he acknowledged Weir's warning; (3) Weir instructed Story to stop speaking when he veered into topics unrelated to agenda items; and (4) he continued to speak after Weir instructed him to stop. *See* https://roundrockisdtx.new.swagit.com/videos/130528 (from 2:47:10- 2:49:35); Dkt. 1-1, p. 198. These indisputable facts are sufficient to support the Magistrate's determination that there was a probability that Story had intentionally hindered an official proceeding by noise or tumultuous behavior or disturbance.[8] As a result, Story cannot show that Griffith, Pope,

---

[8]     Story's specific objections to alleged "falsehoods" in the warrant affidavit amount to little more than hyper-technical disputes over word choice on issues largely irrelevant to the question of whether probable cause existed as to the alleged offense. For example, Story disputes that he agreed

Chavez, or any Officer Defendant tainted the Magistrate's determination of probable cause, which shields them from any liability for false arrest. Further, qualified immunity applies if the corrected affidavit supports a finding of probable cause as it does here. *Garcia v. Orta*, 47 F.4th ---, 2022 WL 3652971, at *5 (5th Cir. 2022).

### B. No Fourth Amendment violations related to removal from the Board meetings.

It is not clear whether Plaintiffs assert Fourth Amendment claims related to their removals from the August 16 and September 14 meetings. *See* Dkt. 20, ¶¶ 237, 240–45. Plaintiffs do not allege they were detained by Round Rock ISD Police when they were escorted from the Board meetings or, that once escorted from the meetings, they were not free to leave. On the contrary, Plaintiffs allege they were arrested days later by the Williamson County Sheriff's Department, implying that they were "free to leave" once escorted from the meetings. *See Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. 2021) ("In the Fourth Amendment context, 'a seizure occurs when, under the totality of the circumstances,

---

with Weir's statement that he could not speak on topics unrelated to agenda items. Dkt. 20, ¶ 244(a). But whether Story agreed with Weir's statement is irrelevant to the elements of the offense for which he was charged. Next, although Story argues the warrant incorrectly implies Weir interrupted him to tell him his comments were non-germane, he admits the video shows Weir banging her gavel and yelling "That's inappropriate" when Story begins to speak on items not on the agenda, which implies that Weir viewed his comments as not germane to the agenda items. *Id.* ¶ 244(b). The video shows that after Story began speaking about a protective order against Dr. Azaiez—which was not an agenda item—Weir told Story that his comments "were not part of [agenda items] D.1 or D.2" and he could "not speak on that." *See* https://roundrockisdtx.new.swagit.com/videos/130528 at 2:48:55–2:49:10. The video corroborates the warrant affidavit's assertion that Weir instructed Story to stop speaking on unrelated topics. Story next argues the warrant affidavit's assertion that he had several outbursts while speaking is false. Dkt. 20, ¶ 244(c), (d). The warrant affidavit asserts that "while Story was discussing the unrelated topics, Story had several outbursts," and that after being warned, "Story continued to have verbal outbursts." Dkt. 1-1, p. 198. The video corroborates these statements, showing Story's continued attempts to speak over Weir and other district officials in the room and yell at trustees up through the time he was removed. *See* https://roundrockisdtx.new.swagit.com/videos/130528 at 2:48:55–2:49:35. Story's final issues with the warrant affidavit relate to Pope's authority to remove him and alleged omissions from the affidavit regarding officers' alleged attempts to remove Story from the meeting before it even started. Dkt. 20, ¶ 245(e), (f). But these issues are irrelevant to the question of whether probable cause existed to issue an arrest warrant on the offense of hindering proceedings by disorderly conduct.

a reasonable person would have thought he was not free to leave.'"). Even if their removal did constitute a temporary seizure, Plaintiffs cannot state an *unreasonable* seizure claim. The Constitution only prohibits unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 11 (1968). "A temporary, warrantless detention of an individual constitutes a seizure for Fourth Amendment purposes and must be justified by reasonable suspicion that criminal activity has taken or is currently taking place … ." *United States v. Garza*, 727 F.3d 436, 440 (5th Cir. 2013). Reasonable suspicion requires more than a hunch, but "obviously less [proof] than is necessary for probable cause." *Navarette v. California*, 572 U.S. 393, 397 (2014). Here, the basis for removing Plaintiffs from the Board meetings—hindering proceedings by disorderly conduct—also formed the basis for their ultimate arrests, which the Magistrate found to be supported by probable cause. *See* Dkt. 1-1, pp. 198–99, 208–09. Because their arrests on charges of hindering proceedings by disorderly conduct were supported by probable cause as determined by an independent intermediary, their removals from the Board meetings for the same misconduct based on the less demanding reasonable suspicion standard were likewise not unreasonable. *See United States v. Tarango-Hinojos*, 791 F.2d 1174, at 1176 (5th Cir. 1986).

### C.     No Fourth Amendment violation for excessive force.

The Complaint's only allegations of excessive force relate to Story's efforts to force his way into the September 14 meeting after being repeatedly told by law enforcement he could not do so. While Story and others argued with officers about entering the meeting for nearly an hour, Story alleges that Williby observed as unnamed "officers he managed" used "force against Story by bear-hugging him around a pole, cutting his back, and slamming him to the ground … ." Dkt. 20, ¶ 82. At the outset, Plaintiffs do not allege that Griffith or Yarbrough were involved in the alleged use of force to maintain any excessive force claim against them. And these allegations do not state an excessive force claim against Pope, Pontillo, Chavez, Williby, or any of the other Officer Defendants.

To state a claim of excessive force against one or more of the Officer Defendants, Story must allege an injury that resulted directly and only from a use of force by one or more of the Officer Defendants that was clearly excessive, and the excessiveness was clearly unreasonable. *See Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016); *Deville*, 567 F.3d at 167. Moreover, the allegations must demonstrate he suffered some form of injury that is more than *de minimis*. *Buehler v. Dear*, 27 F.4th 969, 983 (5th Cir. 2022). The injury necessary to establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstance. *Williams v. Bramer*, 180 F.3d 699, 703–04 (5th Cir. 1999). The vantage point of the Court is "the perspective of a reasonable officer on the scene, rather than … the 20/20 vision of hindsight." *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022). Various factors guide the analysis, including the severity of the crime at issue, whether the suspect poses an immediate safety threat to officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.*

Story does not state an excessive force claim against any Officer Defendant because he does not allege any particular Officer Defendant caused his injuries. The Complaint vaguely asserts that unnamed "officers … managed" by Williby used force against Story. Dkt. 20, ¶ 82. Nowhere does Story plead who the officers were, only that Pope, Pontillo, and Chavez prevented his entry by "physically block[ing]" the doors and explaining the legal basis for their refusal to allow him into the meeting. Dkt. 20, ¶¶ 66–77. Story never explicitly pleads that any Officer Defendant caused his alleged injuries. Failing to do so, Story does not state a claim of excessive force against the Officer Defendants collectively or individually.[9] Furthermore, Williby cannot be held vicariously liable for the alleged actions of the "officers he managed." *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2004).

---

[9]     This is especially true where the Complaint admits there is video evidence of these events. Dkt. 20, ¶ 80 n.28. Indeed, publicly-posted video shows Story's repeated efforts to defy police orders and force his way through police standing in a doorway, which unsurprisingly results in the use of minimal force to deter him. *See* https://freeworldnews.tv/watch?id=61434bc3eeeef101e044964b (last visited Sept. 15, 2022). The video does not show Story being slammed to the ground, blood on Story's

Even if Story had alleged an injury directly caused by any Officer Defendant, his alleged injury is *de minimis*—a single cut on his back—and does not give rise to a constitutional violation. *Buehler*, 27 F.4th at 983 (abrasions to face, head, and triceps, and mental trauma were *de minimis*); *Westfall v. Luna*, 903 F.3d 534, 549–50 (5th Cir. 2018) (abrasions, bruises, bloody urine and high blood pressure were *de minimis*).[10] Moreover, the Complaint does not allege that Story sought or received any medical treatment for the injury, which suggests the injury was minor. *See Buehler*, 27 F.4th at 983 (noting a plaintiff's failure to seek medical treatment suggests the injury was minor). But, even if his injury is more than *de minimis*, Story's allegations demonstrate the use of force was reasonable because he was actively confronting law enforcement for more than forty-five minutes (Dkt. 20, ¶ 68) and repeatedly defying law enforcement instructions by attempting to force his way through police into a Board meeting (*id.*, ¶ 72). As a result, the alleged force described was not objectively unreasonable and was constitutionally permissible under the circumstances. *See, e.g.*, *Buehler*, 27 F.4th at 981 ("Not every push or shove … violates the Fourth Amendment.") (cleaned up); *Solis v. Serrett*, 31 F.4th 975, 982–93 (5th Cir. 2022) (restraint of plaintiff's arms, takedown, and force necessary to apply handcuffs was reasonable due to plaintiff's "interjections, comments toward them, her resistance, and her indignation on being told she would be arrested … ."); *Betts*, 22 F.4th at 582–84 (tasing plaintiff stopped for minor traffic infraction reasonable where plaintiff adopted confrontational stance, repeatedly contested why he had been stopped, ignored dozens of commands, and disputed officer's authority).

---

shirt, or Williby watching through a window. The Officer Defendants ask that the Court consider the video because it is referenced in and central to Plaintiffs' claims. *See supra* n.3.

[10]      *See also Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (placing handcuffs too tightly on detainee causing swelling does not amount to excessive force); *Williams*, 180 F.3d at 703–04 (dizziness, coughing, temporary loss of breathing caused by choking detainee while searching detainee's mouth is not injury giving rise to constitutional violation).

**D.    The Officer Defendants are entitled to qualified immunity.**

Even if the Complaint's allegations were sufficient to show that any Officer Defendant violated their Fourth Amendment rights, Plaintiffs plead no facts to demonstrate that any Officer Defendant's actions were objectively unreasonable in light of clearly established law to overcome their assertions of qualified immunity. The Complaint cites no law that clearly establishes that an officer violates an individual's Fourth Amendment rights by: (1) completing warrant affidavits supported by probable cause as confirmed by an independent magistrate; (2) removing individuals from meetings where reasonable suspicion existed to believe the individuals had committed a crime of hindering those proceedings; or (3) using minimal force to repel efforts by a defiant individual to enter a meeting that officers repeatedly instructed the individual he is not entitled to enter. Even if these rights were clearly established, the Complaint lacks factual content to the actions of any specific Officer Defendant were objectively unreasonable to defeat their qualified immunity.

**III.    Plaintiffs do not plead a First Amendment violation by the Officer Defendants.**

Plaintiffs claim that Board policy BED(Local), which limits public comment at special Board meetings to agenda items, violates the First Amendment and constitutes an impermissible prior restraint.[11] Dkt. 20, ¶¶ 183, 185–203. Plaintiffs may also claim that the social distancing requirement at the September 14 meeting is unconstitutional and constitutes a prior restraint. *Id.* ¶ 199, 207–166. As a threshold matter, the Board has exclusive policymaking authority for the District. *See* TEX. EDUC. CODE § 11.151(b); *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). Only the Board could adopt the limited public comment rule in BED(Local). Plaintiffs admit that the Officer Defendants did not create either the limited public comment rule or the seating requirement. Dkt. 20,

---

[11]    The Complaint challenges the application of the limited public comment rule as to Story's speech at the August 16 meeting only. Dkt. 20, ¶ 196. It does not allege that the limited public comment rule was applied to anyone at the September 14 meeting, including Clark.

¶ 214. Accordingly, Plaintiffs cannot state a First Amendment claim against the Officer Defendants regarding the alleged unconstitutionality of BED(Local) or the social distancing rule, or that these policies and rules constitute a prior restraint.[12] The Complaint, likewise, lacks well-pleaded facts that any Officer Defendant unconstitutionally applied BED(Local) or the social distancing requirements to Plaintiffs based on their viewpoint to state a First Amendment claim against them. On the contrary, Plaintiffs allege the Officer Defendants merely "enforced those two rules," and that Yarbrough allegedly "threatened … to deny," but did not actually deny Story his right to petition. Dkt. 20, ¶¶ 214–15. Any Petition Clause claim Plaintiffs assert against the Officer Defendants also fails for the same reasons as their Free Speech Clause claims because the claims arise out of the same facts and are subject to the same analysis. *See, e.g.*, *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387–90 (2011).

Plaintiffs also claim retaliation in connection with the Officer Defendants' alleged actions to prohibit them from accessing or making comments at the Board meetings and "by arresting them in retaliation for their views and the lawful expression thereof … ." Dkt. 20, ¶ 175. Once again, Plaintiffs do not specify which, if any, of the Officer Defendants allegedly retaliated against them. Plaintiffs allege only that Pope and Pontillo removed Story from the August 16 meeting, that Pope, Pontillo, and Chavez prevented Story from entering the September 14 meeting, that Williby and Chavez removed Clark from the September 14 meeting, and that Griffith prepared the warrant affidavits supporting their arrests. *Id.* ¶¶ 37, 66, 72, 74, 98, 217; Dkt. 1-1, pp. 198, 208. But the Complaint lacks any well-pleaded facts that these actions were motivated by any protected speech. Moreover, Plaintiffs' First Amendment claims against these officers fail for the same reason as their Fourth Amendment

---

[12]      Even if these claims did apply to the Officer Defendants, Plaintiffs fail to show that the limited public comment rule or the social distancing rule violate the First Amendment as set forth in the Trustee Defendants' and Dr. Azaiez's Motion to Dismiss. *See, e.g.*, *Fairchild Liberty Indep. Sch. Dist.*, 597 F.3d 747, 759 (5th Cir. 2010) (holding school board policy limiting public comment at certain meetings did not violate First Amendment); *Morgan v. White*, 964 F.3d 649, 652 (7th Cir. 2020) (social distancing rules "concern conduct . . . , not what anyone may write or say," and thus do not "limit . . . speech.").

claims: Plaintiffs were removed from the meetings and subsequently arrested based on probable cause that they had committed a criminal offense. *See* Dkt. 20, ¶ 44.

To state a First Amendment retaliation claim, plaintiffs must demonstrate: (1) they were engaged in constitutionally protected activity; (2) the officer's action caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the officer's adverse actions were substantially motivated against their exercise of constitutionally protected activity. *Batyukova v. Doege*, 994 F.3d 717, 730 (5th Cir. 2021). Plaintiffs fail to plead sufficient facts to support the first and third elements: they were not engaged in, and the officers' actions were not motivated by constitutionally protected speech. *See* Trustee Defendants' and Dr. Azaiez's Motion to Dismiss. Regardless, "[i]f [probable cause] exists, any argument that the arrestee's speech as opposed to [his] criminal conduct was the motivation for [his] arrest must fail, no matter how clearly that speech may be protected by the First Amendment." *Russell*, 546 F.App'x at 436–37 (quoting *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008)). Because the Magistrate independently determined Plaintiffs' removals and arrests were supported by probable cause, claims that their speech was the motivation for their removal and arrest must fail. *Nieves v. Bartlett*, 139 S.Ct. 1715, 1724 (2019) (a "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest"); *Curtis v. Sowell*, 761 F.App'x 302, 305 (5th Cir. 2019) (First Amendment retaliatory prosecution claim dismissed because probable cause was independently established by grand jury).

Finally, because the Complaint does not show that the Officer Defendants violated Plaintiffs' constitutional right to free speech, they are entitled to qualified immunity. Even if any Officer Defendant had violated a First Amendment right, they would still be entitled to qualified immunity because "the law is not clearly established that an arrest supported by probable cause could violate the First Amendment." *King v. Munoz*, A-16-CV-131-SS-ML, 2017 WL 8948610, at * (W.D. Tex. June 16, 2017); *see also Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 391–92 (5th Cir. 2017) ("Officers are …

entitled to qualified immunity unless there was no actual probable cause for the arrest and the officers

were objectively unreasonable in believing there was probable cause … .").

IV.     **The Complaint does not state cognizable Fourteenth Amendment claims.**

To the extent Plaintiffs assert Fourteenth Amendment due process and class-of-one equal

protection claims related to alleged restrictions on or retaliation for their speech, their removal from

Board meetings, arrests, or claims of excessive force, such claims "must fail." *Wilson v. Birnberg*, 667

F.3d 591, 599 (5th Cir. 2012). "Where a particular Amendment provides an explicit textual source of

constitutional protection against a particular sort of government behavior, that Amendment, not the

more generalized notion of substantive due process, must be the guide for analyzing these claims."

*Albright v. Oliver*, 510 U.S. 266, 273 (1994) (cleaned up). This is true for free speech claims under the

First Amendment. *Wilson*, 667 F.3d at 599. It is also true for Plaintiffs' claims of unreasonable seizure

or excessive force under the Fourth Amendment. *See Arnold v. Williams*, 979 F.3d 262, 270 (5th Cir.

2020). Moreover, there is no substantive due process right to be free from criminal prosecution.

*Albright*, 510 U.S. at 268. And Plaintiffs likewise cannot maintain a class-of-one equal protection claim

that merely restates their First or Fourth Amendment claims. *See Porter v. Valdez*, 424 F.App'x 382,

387 (5th Cir. 2011) (rejecting equal protection class-of-one claim that was restatement of First

Amendment claim); *Williams v. Riley*, 275 F.App'x 385, 390 (5th Cir. 2008) (affirming dismissal of equal

protection claim that restated plaintiffs' First Amendment claim).

V.      **Plaintiffs fail to state claims under failure to supervise or train theories.**

Because Plaintiffs do not plead an underlying constitutional violation, they cannot state a

section 1983 claim against Yarbrough or Williby under a failure to supervise or train theory. Even if

they could show an underlying violation, the Complaint lacks well-pleaded facts to state such a claim.

A supervisory official may be held liable only if he (1) affirmatively participates in the acts that cause

the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the

constitutional injury. *Gates v. Tex. Dept. of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). To state a claim based on a failure to supervise or train theory, a plaintiff must show: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounts to deliberate indifference. *Id.*; *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). The infringement of the plaintiff's constitutional rights must be an "obvious" and "highly predictable" consequence of the failure to train. *Parker v. Blackwell*, 23 F.4th 517, 525 (5th Cir. 2022). "Additionally, relief will not typically be available absent a showing of a pattern of constitutional violations, as opposed to a single incident." *Id.* Moreover, "deliberate indifference is a stringent standard or fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Porter v. Epps*, 659 F.3d 440, 447 (5th Cir. 2011) (cleaned up). To demonstrate deliberate indifference, the plaintiff must show (1) the supervisor had actual or constructive notice that a particular part or omission in a training or supervising program causes employees to violate constitutional rights and (2) chose to keep the program as-is anyway. *See id.*

Plaintiffs allege Yarbrough and Williby "were callously indifferent in supervising, failing to train, or both, the subordinates [sic] as to how to investigate a person alleged to have committed an offense, how to prepare an affidavit to apply for and obtain a warrant, and how to execute a warrant," but they provide no well-pleaded facts to support these conclusions. Dkt. 20, ¶ 221. At most, Plaintiffs allege that Yarbrough commented *after-the-fact* that his officers "did not have proper school resource officer training; they only had typical municipal street patrol training," and that the District failed to develop a multi-hazard emergency operations plan required by the Texas Education Code. *Id.* ¶¶ 86, 144. The Complaint, however, lacks well-pleaded facts that the alleged lack of school resource officer training or the alleged lack of an emergency operations plan caused a violation of Plaintiffs' constitutional rights. Indeed, Plaintiffs do not allege facts regarding: the District's training programs

for school resource officers, investigations, or preparing, obtaining, and executing warrant affidavits; any purported deficiencies in these training programs; any facts regarding Yarbrough's or Williby's knowledge of unidentified deficiencies; the supervision Yarbrough or Williby did or did not provide to the Officer Defendants; any actual deficiencies in the supervision Yarbrough or Williby provided; or any knowledge by Yarbrough or Williby regarding such deficiencies in supervision. Nor are there allegations of previous incidents similar in nature, prior First or Fourth Amendment violations by District police officers, or that the alleged misconduct occurred with such frequency that either Yarbrough or Williby were on notice that more training or supervision were needed. Plaintiffs also fail to plead facts establishing a causal link between any failure to supervise or train and the alleged violation of their rights. Plaintiffs plead no facts showing that either Yarbrough or Williby were deliberately indifferent. "Rather, [Plaintiffs] merely provide[] a formulaic recitation of the elements of a failure to train and supervise claim," and such claims should be dismissed. *Parker*, 23 F.4th at 525.

## VI.   Plaintiffs do not state a 42 U.S.C. § 1985 conspiracy claim.

"[A] school board and its employees constitute a single legal entity which is incapable of conspiring with itself" under section 1985. *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994); *see also Max-George v. Houston Police Dept.*, H-17-2264, 2020 WL 6322283, at *3 (S.D. Tex. Oct. 28, 2020) (applying rule to a city and members of its police force). Accordingly, Plaintiffs' section 1985 claims fail as a matter of law. *See* Dkt. 20, ¶ 159.[13]

---

[13]    The Complaint lacks factual content to invoke subsection (2) of section 1985 related to the deprivation of rights in federal courts or participation in federal judicial proceedings. *See* 42 U.S.C. § 1985(2); *Holley v. Blomberg*, No. H-10-2394, 2011 WL 13136513, at *1–2 (S.D. Tex. Jan. 12, 2011) (mem. op.). It also lacks factual content to show any "racial or otherwise class-based invidiously discriminatory animus" behind any of the Officer Defendants' actions to state a claim under 42 U.S.C. § 1985(3). *See Holley*, 2011 WL 13136513, at *1–2; *see also Burns-Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir. 1994); *see also McCleester v. Dep't of Labor & Industry*, No. Civ.A. 3:06-120, 2007 WL 2071616, at *15 (W.D. Pa. July 16, 2007) (collecting cases, including from the First, Third, Fourth, and Sixth Circuits, finding that "class of one" claims are not entitled to the special protection of § 1985(3)).

Respectfully submitted,

*Kathryn E. Long*
KATHRYN E. LONG
State Bar No. 24041679
klong@thompsonhorton.com

K. ADAM ROTHEY
State Bar No. 24051274
arothey@thompsonhorton.com

**THOMPSON & HORTON LLP**
500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

PATRICK GRUBEL
State Bar No. 24106034
pgrubel@thompsonhorton.com

**THOMPSON & HORTON LLP**
8300 N. MoPac Expressway, Suite 220
Austin, TX 78759
(512) 615-2350 – Telephone
(713) 583-8884 – Facsimile

*Attorneys for the Round Rock ISD Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this document has been served upon all counsel of record via the Court's electronic filing system on September 20, 2022.

Warren V. Norred
Norred Law, PLLC
515 East Border Street
Arlington, Texas 76010
warren@norredlaw.com

Stephen D. Casey
Casey Law Office, P.C.
P.O. Box 2451
Round Rock, TX 78680
stephen@caseylawoffice.us

/s/   *Kathryn E. Long*
Kathryn E. Long