**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS – AUSTIN DIVISION**

| | | |
|---|---|---|
| JEREMY STORY and DUSTIN CLARK, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| SUPERINTENDENT HAFEDH AZAIEZ, | § | |
| TRUSTEES AMBER FELLER, TIFFANIE | § | CIVIL ACTION NO. 1:22-cv-448-RP |
| HARRISON, AMY WEIR, JUN XIAO, | § | |
| CORY VESSA; OFFICERS JEFFREY | § | |
| YARBROUGH, JAMES WILLIBY, | § | |
| DEBORAH GRIFFITH, MILTON POPE, | § | |
| FRANK PONTILLO, SAMUEL CHAVEZ, | § | |
| individually, and ROUND ROCK INDEP'T | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| *Defendants*. | § | |

---

**ROUND ROCK INDEPENDENT SCHOOL DISTRICT TRUSTEES AMBER FELLER,**
**TIFFANIE HARRISON, AMY WEIR, JUN XIAO, AND CORY VESSA'S,**
**AND SUPERINTENDENT DR. HAFEDH AZAIEZ'S**
**MOTION TO DISMISS PLAINTIFFS JEREMY STORY AND DUSTIN CLARK'S**
**FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT**

---

**THOMPSON & HORTON LLP**

**KATHRYN E. LONG**
State Bar No. 24041679
klong@thompsonhorton.com

**K. ADAM ROTHEY**
State Bar No. 24051274
arothey@thompsonhorton.com

500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

**PATRICK GRUBEL**
State Bar No. 24106034
pgrubel@thompsonhorton.com

8300 N. MoPac Expressway, Suite 220
Austin, TX 78759
(512) 615-2350 – Telephone
(713) 583-8884 – Facsimile

**ATTORNEYS FOR THE ROUND ROCK ISD DEFENDANTS**

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiffs assert First and Fourteenth Amendment claims against Round Rock ISD Trustees Amber Feller, Tiffanie Harrison, Cory Vessa, Amy Weir, and Jun Xiao (the "Trustee Defendants") and Superintendent Dr. Hafedh Azaiez. Plaintiffs' claims relate to events at an August 16, 2021 "special" Board meeting (the "August 16 meeting") and a September 14, 2021 regular Board meeting (the "September 14 meeting"). Plaintiffs plead no actions taken by Trustees Feller, Harrison, Vessa, or Xiao, individually, to violate Plaintiffs' constitutional rights. And the only alleged actions taken by Trustee Weir were in her role as Board President and presiding officer at Board meetings. Plaintiffs, likewise, plead limited, conclusory allegations regarding any actions taken against them by Dr. Azaiez.

Plaintiffs' First Amendment claims center on Board policy BED(Local), which limits public comment to agenda items at special Board meetings, and a seating capacity rule used at the September 14 meeting as a COVID-19 precaution. These viewpoint-neutral rules are not facially unconstitutional and do not constitute a prior restraint. And Plaintiffs provide no well-pleaded facts that the Trustee Defendants or Dr. Azaiez applied these rules to them in an unconstitutional manner. Plaintiffs' retaliation claims fail because their speech was not protected and they were removed from the meetings due to their misconduct, not their speech. Moreover, Plaintiffs' arrests were supported by probable cause, as determined by an independent intermediary. Plaintiffs' Fourteenth Amendment claims fail because the First Amendment provides the explicit basis for their claims. There are, additionally, no pleaded facts to show that Dr. Azaiez is liable under a failure to train theory or that Plaintiffs have a viable 42 U.S.C. § 1985 claim against the Trustee Defendants or Dr. Azaiez.

Finally, the Trustee Defendants are entitled to absolute immunity because their actions were legislative in nature. The Trustee Defendants and Dr. Azaiez are entitled to qualified immunity because Plaintiffs fail to plead the violation of a clearly established constitutional right or that the Trustee Defendants' or Dr. Azaiez's actions were objectively unreasonable.

1

## RELEVANT FACTUAL ALLEGATIONS[1]

Jeremy Story and Dustin Clark are Round Rock ISD taxpayers. Dkt. 20, ¶ 12. Dr. Azaiez is the District's Superintendent. *Id.* ¶ 8. Feller, Harrison, Vessa, Weir, and Xiao are elected trustees of Round Rock ISD's Board. *Id.* ¶ 9. As then-Board President, Weir served as presiding officer at Board meetings. *Id.* ¶¶ 10, 212; Dkt. 1-1, pp. 5–6.

In July 2021, after the Board hired Dr. Azaiez, Story became aware of allegations of personal misconduct by Dr. Azaiez. Dkt. 20, ¶¶ 13–16. In July and August, Story repeatedly contacted the Trustees to notify them of the allegations against Dr. Azaiez. *Id.* ¶¶ 19, 22, 27, 29; Dkt. 1-1, pp. 154–56. Story "urge[d] the board to call an immediate meeting" to "discuss[] this matter," Dkt. 1-1, p. 154, and "request[ed] the opportunity to . . . testify" at the next meeting, *see id.*, p. 155. In an August 12, 2021 email, Story accused the Trustee Defendants of "intentionally avoiding setting up a special board meeting or even adding an agenda item . . . on this subject." *Id.* p. 156.

Four days later, on August 16, the Board held a special meeting to discuss two agenda items: (1) COVID-19 Employee Leave; and (2) Fall 2021 COVID-19 safety protocols. Dkt. 20, ¶ 30.[2] Because it was a "specially called meeting," Board policy BED(Local) limited public comment to "items on the agenda" for the meeting. *Id.* ¶¶ 18, 31; Dkt. 1-1, p. 5. The Board heard several hours of

---

[1]   The following summary is based on the factual allegations in the Amended Complaint (the "Complaint," Dkt. 20), as well as the documents and recordings attached, referenced in, or the prior appendix (Dkt. 1-1) incorporated into the Complaint (*see* Dkt. 20, p. 69), which, under Federal Rule of Civil Procedure 12(b)(6), are assumed to be true for purposes of this Motion.

[2]   Plaintiffs request that the Court take judicial notice of the videorecording of the August 16 meeting available at https://roundrockisdtx.new.swagit.com/videos/130528. Dkt. 20, ¶ 39 n.20. The Trustee Defendants and Dr. Azaiez echo that request. *See Van Deelen v. Cain*, 628 F.App'x 891, 894, n.1 (5th Cir. 2015). What transpired at the meeting is central to Plaintiffs' claims and the Court may consider the recording to determine whether they have stated a claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). When considering video evidence in a motion to dismiss, "the court is not required to favor the plaintiff's allegations over the video evidence," if it "provides so much clarity that a reasonable jury could not believe [the plaintiff's] account." *Scott v. White*, No. 1:16-CV-1287-RP, 2018 WL 2014093, at *1 (W.D. Tex. Apr. 30, 2018) (citations omitted).

public comment—including from Clark and Story. Dkt. 1-1, pp. 158–61. When he began speaking, Story "asserted that his comments *were* going to be germane to the agenda [items], specifically agenda item 2 about Fall 2021 COVID-19 policies" and the decision not to follow the Governor's Executive Order which prohibited mask mandates. Dkt. 20, ¶ 35. Story acknowledges that he, then, "questioned . . . the Board's concerns about . . . oversight of the Superintendent" and "presented . . . that the board knew about the protective order . . . against Azaiez but was suppressing discussion on the matter." *Id.* ¶ 36.[3] The Complaint alleges that when "Story mentioned this protective order, he was interrupted . . . by Weir" and escorted out of the meeting by Round Rock ISD police officers. *Id.* ¶ 37. According to the Complaint, other speakers' public comments were "not germane" to the posted agenda items, but those speakers were not treated as "harshly" as Story. *Id.* ¶¶ 39–40.

At the September 14, 2021 meeting, Round Rock ISD spaced chairs in the meeting room about six feet apart as a COVID-19 precaution, which allegedly limited seating to eighteen chairs. *Id.* ¶¶ 49–50, 63.[4] There was an overflow room where attendees could watch the meeting, as well as remote access to the meeting. *Id.* ¶ 50 n.24.[5] Plaintiffs allege that District police officers prevented Story and others from entering the meeting room, citing COVID-19 safety protocols. *Id.* ¶ 66.

---

[3]   *See also* Dkt. 1-1, pp. 167, 170, 198 (Story "suddenly transitioned into an unrelated topic about the superintendent and a protective order," Weir "instructed Story to stop speaking on the unrelated subject," "Story ignored Weir's request and continued to speak about an unrelated topic," and while "discussing the unrelated topic Story also had several outbursts"); *see also* video of August 16 meeting https://roundrockisdtx.new.swagit.com/videos/130528 (at 2:47:10–2:49:35).

[4]   This safety protocol was an administrative decision implemented by Dr. Azaiez. Dkt. 20, ¶¶ 55, 89. The Board conducted a procedural vote to enforce the safety protocol. *Id.* ¶ 56.

[5]   Plaintiffs ask the Court to take judicial notice of the videorecording of the September 14 meeting. *See* Dkt. 20, ¶¶ 52 n.25, 72 n.29. The Trustee Defendants and Dr. Azaiez make the same request. The recording of the September 14 meeting is located at https://roundrockisdtx.new.swagit.com/videos/139574. The video reveals the ability for the public to view the meeting and make public comment through the remote feed. Around the 49:00 mark, the video discusses the use of an overflow room for the public to watch the meeting.

Once the meeting started, unidentified police officers began allowing some people into the meeting based on who was scheduled to participate in public comment, while refusing entry to others. *See id.* ¶ 71. Story attempted to enter the meeting room multiple times. *Id.* ¶ 72. At some point, Clark was allowed to enter the meeting room. *See id.* ¶ 97. Clark spoke "out of turn in the board meeting, interrupt[ed] board members while they were speaking, and interrupt[ed] . . . citizens who rightfully had the floor to speak." *See* Dkt. 1-1, p. 208; *id.*, pp. 184–85 (Clark was not speaking in public comment). Weir warned Clark several times to stop disturbing the meeting, but Clark continued to interrupt the meeting. *Id.* p. 208, Dkt. 20, ¶ 97. Weir asked Clark to leave the room because he failed to heed her warnings, but Clark remained and continued to yell for several minutes while others tried to speak. *See* https://roundrockisdtx.new.swagit.com/videos/139574 at 31:00–32:45. After this sustained disruption, Weir instructed Assistant Chief of Police Williby to remove Clark from the meeting, Dkt. 20, ¶ 98, and he did so. Dkt. 1-1, p. 208.[6] The Board cut the meeting short because the disruptions made it too difficult to conduct business. Dkt. 20, ¶¶ 52, 105.

On September 17, 2021, the Williamson County Sheriff's Department arrested Plaintiffs on charges of Hindering Proceedings by Disorderly Conduct under warrants executed by a Williamson County Magistrate. Dkt. 20, ¶ 115; Dkt. 1-1, pp. 198–201, 208–11. The Magistrate "determined that probable cause does exist for the issuance of a warrant of arrest." Dkt. 1-1, pp. 201, 211.

## ARGUMENT AND AUTHORITIES

**I.     The Trustee Defendants and Dr. Azaiez are entitled to qualified or absolute immunity.**

School officials are "entitled to qualified immunity if their 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Longoria v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 264 (5th Cir. 2019) (quoting *Harlow v.*

---

[6]     Clark resisted removal and can be heard yelling off-camera for almost a minute until the door closes behind him. *See* https://roundrockisdtx.new.swagit.com/videos/139574 at 34:10–35:15.

*Fitzgerald*, 457 U.S. 800, 818 (1982)). "If, at the time of the events underlying the litigation, 'insufficient precedent existed to provide school officials with "fair warning" that the defendants' conduct violated the [law],' the defendants are entitled to qualified immunity." *Id.* (quoting *Jackson v. Ladner*, 626 F.App'x 80, 88 (5th Cir. 2015)). Plaintiffs can defeat qualified immunity only if they plead facts that (i) the official violated a clearly established constitutional right, and (ii) the official's conduct was objectively unreasonable "in light of clearly established law at the time[.]" *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000); *see also Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021).

The first prong requires Plaintiffs to allege an actual violation of a clearly established constitutional right. *See Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 866 (5th Cir. 2012). A right is clearly established if "the contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 455 (5th Cir. 1994) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Plaintiffs also must identify a "particularized" right that has been violated, *Anderson*, 483 U.S. at 640; they cannot defeat qualified immunity by alleging a violation of a "general proposition" of constitutional law, such as equal protection or free speech, *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011). To satisfy the second prong, Plaintiffs must show the official's conduct was objectively unreasonable; that "*all* reasonable officials in the [official]'s circumstances would have then known that [their] conduct violated the . . . Constitution . . . as alleged by the plaintiff." *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001) (emphasis in original). If "officers of reasonable competence could disagree on the issue, immunity should be recognized." *Hope v. Pelzer*, 536 U.S. 730, 752 (2002).

Public officials acting in a legislative capacity also enjoy absolute immunity from liability for those actions, even if they are not legislators. *Bogan v. Scott-Harris*, 523 U.S. 44, 48-49 (1998); *Bryan v. City of Madison*, 213 F.3d 267, 272 (5th Cir. 2000). The Fifth Circuit has set forth guidelines for determining whether a particular activity is "legislative," including (1) the nature of the facts used to

5

reach a given decision, and (2) the "particularity of the impact of the state action." *Bryan*, 231 F.3d at 273. As to (1), "[i]f the underlying facts on which the decision is based are 'legislative facts,' such as 'generalizations concerning a policy or state of affairs,' then the decision is legislative." *Id.* As to (2), "[i]f the action involves the establishment of a general policy, it is legislative . . . ." *Id.* Here, the general enforcement of BED(Local) or the vote to enforce the safety protocol, are "legislative" actions under these guidelines, which entitle the Trustee Defendants to absolute immunity from liability.

## II.     The Complaint does not state a First Amendment violation.

Plaintiffs seem to assert six theories to support a First Amendment claim: (1) the limited public comment rule in BED(Local) is facially unconstitutional; (2) BED(Local) was unconstitutionally applied to Story at the August 16 meeting; (3) the limited public comment rule serves as a prior restraint on speech; (4) the limitation on seating capacity at the September 14 meeting violated the First Amendment; (5) Plaintiffs' arrests were retaliatory; and (6) violations of their right to petition. Dkt. 1, ¶¶ 133–66. Plaintiffs, however, do not state a plausible First Amendment claim against any Trustee Defendant or Dr. Azaiez, individually, or overcome their qualified or absolute immunity.

### A.     The limited public comment rule does not violate the First Amendment.

At the outset, Round Rock ISD's Board, *as a body corporate*, has exclusive policymaking authority for the District. *See* TEX. EDUC. CODE § 11.151(b); *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). Only the Board, as a body corporate, could adopt the limited public comment rule in BED(Local). Thus, this First Amendment theory is a claim against Round Rock ISD, not Dr. Azaiez or any individual Trustee Defendant. Plaintiffs plead no facts that Dr. Azaiez had any role in promulgating BED(Local). Rather, BED(Local) was issued on March 3, 2021, before the District hired Dr. Azaiez. Dkt. 1-1, p. 5. Similarly, the Complaint lacks factual content regarding actions of any Trustee Defendant, individually, regarding the adoption of BED(Local). Accordingly, Plaintiffs do not state a claim on this theory against Dr. Azaiez or the Trustee Defendants.

Moreover, the rule does not violate the First Amendment. Under BED(Local), in special and called meetings, "public comment shall be limited to items on the agenda."[7] Dkt. 1-1, p. 5. At regular meetings, the public may speak on any topic, "regardless of whether the topic is . . . on the agenda." *Id.* A governmental entity may establish a "limited public forum" that is open to speech by "certain groups or for the discussion of certain topics." *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 215 (2015) (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)). "The government can restrict speech in a limited public forum . . . as long as the restriction is (1) reasonable in light of the purpose served by the forum and (2) does not discriminate against speech on the basis of viewpoint." *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 426–27 (5th Cir. 2020). Round Rock ISD Board meetings are limited public forums. School board meetings that limit public comment to the "time and topic of the meeting . . . fit[] the hornbook definition of a limited—not designated—public forum, in which 'the State is not required to and does not allow persons to engage in every type of speech.'" *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 759 (5th Cir. 2010) (quoting *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001)) (regarding another school's BED(Local)).

The limitation of public comments to posted agenda items takes no account of speakers' viewpoints, and the limitation is reasonable given the meetings' twin purposes of allowing the Board to conduct business in the open and allowing the public to share their thoughts with the Board. "Plainly, public bodies may confine their meetings to specified subject matter." *Fairchild*, 597 F.3d at 759. In limited-public-forum meetings, "a government[al] entity 'is justified in limiting its meeting to discussion of specified agenda items and in imposing reasonable restrictions to preserve the civility and decorum necessary to further the forum's purpose of conducting public business.'" *Wenthold v. City of Farmers Branch*, No. 11-748, 2012 WL 467325, at *7 (N.D. Tex. Feb. 14, 2012) (quoting *Steinburg*

---

[7]   *See* TEX. GOV'T CODE § 551.002 (identifying classes of meetings: regular, special, and called).

*v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 385 (4th Cir. 2008)), *aff'd*, 532 F.App'x 474 (5th Cir. 2013); *accord Ream v. City of Heath*, No. 14-4338, 2015 WL 4393307, at \*3 (N.D. Tex. July 16, 2015). Because school boards can limit public comments to certain times and certain topics, the Complaint fails to state a facial challenge, which is viable only when "no set of circumstances exists under which [a law] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

Plaintiffs also claim the rule is unconstitutionally vague because it gives the Board "unbridled discretion" to determine what speech is "germane" to the agenda items. Dkt. 20, ¶¶ 190, 192, 229–30. They are really attacking the concept of a limited public forum, which rests on the idea that the government *can* regulate speech based on its relation to approved subjects. Hence in *Fairchild*, the Fifth Circuit rejected a similar argument that a school's policy barring discussion of certain topics at board meetings gave the board unconstitutional "unfettered discretion" to suppress speech. 597 F.3d at 762 n.56. Moreover, "[a] plaintiff whose speech is clearly proscribed," as here, "cannot raise a successful vagueness claim." *Expressions Hair Design v. Schneiderman*, 137 S.Ct. 1144, 1151–52 (2017) (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010)). Warning a speaker that his speech is outside the bounds of the limited public forum precludes a vagueness challenge to the forum rules. *Fairchild*, 597 F.3d at 762. Story received both direct and indirect warnings (when earlier speakers broached the same subject) that the Superintendent's protective order was not related to the agenda items.[8]

Based on the foregoing, the limited public comment rule does not violate the First Amendment. Even if this claim applied to the Trustee Defendants individually, they are entitled to absolute immunity. And because it was not clearly established that the rule violated the First Amendment, Plaintiffs cannot overcome the Trustee Defendants or Dr. Azaiez's qualified immunity.

---

[8]   Dkt. 1-1, pp. 167, 170, 198; *see also* video of August 16 meeting, https://roundrockisdtx. new.swagit.com/videos/130528 at 1:34:30, 2:09:00, 2:26:30, 2:47:15.

**B.      Neither the Trustee Defendants nor Dr. Azaiez unconstitutionally applied the limited public comment rule.**

Plaintiffs plead no facts that Dr. Azaiez or any Trustee Defendant, other than Weir as the presiding officer, applied the limited public comment rule to them. With respect to Feller and Harrison, the Complaint only asserts they "stated that Story should leave" the meeting because his public comment was not related to an agenda item. Dkt. 20, ¶¶ 30, 139. With respect to Vessa, Xiao, and Dr. Azaiez, the Complaint is silent. Accordingly, the Complaint fails to state a claim against any of them. The Complaint does not allege the rule was ever applied to Clark. Moreover, the pleaded facts do not show the rule was unconstitutionally applied to Story.[9]

The Complaint admits that Story began his comments by addressing "agenda item 2 about Fall 2021 COVID-19 policies" and was interrupted by Weir *after* he veered off-topic to discuss Dr. Azaiez's personal life. *Id.* ¶¶ 35–36.[10] Stopping off-topic speech in a limited public forum does not violate the First Amendment when the speaker is not selectively restrained because of his viewpoint. *Fairchild*, 597 F.3d at 760. Here, Story was allowed to speak about a topic on the agenda and was stopped from speaking about a topic not on the agenda. He "seems to be claiming an entitlement to speak without interruption despite straying off-topic," but such an entitlement would be inconsistent with the concept of a limited public forum. *See Wenthold*, 2012 WL 467325, at *10 (city council did not unlawfully restrict speech when it allowed plaintiff to speak at meeting and "only interrupted when he departed from the agenda topic"); *cf. Gjemre v. Leffingwell*, No. 13-CA-729-SS, 2015 WL 433506, at *6 (W.D. Tex. Feb. 2, 2015) (no violations regarding removing speaker from meeting after he, "despite multiple warnings, engaged in behavior [the moderator] considered outside the rules of decorum and

---

[9]   The Complaint challenges the application of the rule to Story's speech at the August 16 meeting only. Dkt. 20, ¶¶ 148, 31–38. The rule was not in operation at the September 14 regular meeting.

[10]   *See also* https://roundrockisdtx.new.swagit.com/videos/130528, at 2:47:00–2:50:00. Clark spoke in opposition to a mask requirement without interruption. *Id.* at 1:21:00–1:23:00.

unrelated to the discussion of the particular agenda item at issue"). The Complaint does not plausibly allege that Weir (or any Trustee Defendant or Dr. Azaiez) unconstitutionally applied the limited public comment rule to Story, much less did so in a manner that violated his clearly established rights.[11]

While Plaintiffs attempt to show Weir stopped Story's public comment based on his viewpoint, the Complaint lacks well-pleaded facts that other speakers with different viewpoints about matters *not posted on the agenda* were treated more favorably despite engaging in the same conduct. The Complaint alleges that "[o]ther speakers spoke on the same theme" and "were treated unequally and with more latitude on the boundaries than Story." Dkt. 20, ¶ 39. But the examples provided illustrate that speakers were allowed to express all kinds of views about the wisdom of a mask requirement but that people who spoke on unrelated topics, such as unrelated allegations against the Superintendent or general political commentary about anti-mask members of the Board, were admonished to stay on topic. *Id.* ¶ 39a–f. What the examples do not show is that the Trustee Defendants or Dr. Azaiez allowed anyone to express a different viewpoint about the allegations against the Superintendent, that any speaker with a different viewpoint disregarded a warning to stay on topic and was allowed to continue talking without consequence, or even that the rule was used to silence anti-mask speakers generally. The Complaint lacks any well-pleaded facts showing that Story was interrupted because of his viewpoint rather than because he spoke about a disallowed topic.[12]

---

[11]   To the extent Plaintiffs assert an "as applied" challenge based on vagueness, "[a] plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim." *Schneiderman*, 137 S.Ct. at 1151–52 (quoting *Holder*, 561 U.S. at 20); *Fairchild*, 597 F.3d at 762.

[12]   The videorecording shows that Plaintiffs and others were allowed to express opposition to a mask requirement without interruption, even when they aimed their comments at Board members or the Superintendent. *See* https://roundrockisdtx.new.swagit.com/videos/130528 at 1:36:15, 2:01:50, 2:05:20, 2;13:20, 2:35:00. Story himself explicitly accused the Board and Superintendent of disregarding the rule of law without being interrupted. *Id.* at 2:48:00. And Clark expressed the same views without being interrupted since he did not try to address topics outside the agenda. *Id.* at 1:21:50.

Plaintiffs' allegations about enforcement of the limited public comment rule at a September 22, 2021 Board meeting fail to show Story experienced viewpoint discrimination at the August 16 meeting. *Id.* ¶¶ 120–26. The Complaint does not allege that Story attended or spoke at the September 22 meeting, and it does not allege that anyone was allowed to express any view on the allegations against the Superintendent despite that issue not appearing on the agenda. What Plaintiffs' examples show is that Weir attempted to enforce the limited public comment rule at the September 22 meeting against speakers on different sides of an issue and to manage a loud and disruptive audience that Plaintiffs admit "appeared to be even[ly]" split on the topic at hand. *Id.*, ¶ 62.

Accordingly, Plaintiffs do not show the rule was unconstitutionally applied to Story to state a claim. Moreover, the Complaint lacks factual content to show any Trustee Defendant or Dr. Azaiez violated Story's clearly established rights or acted unreasonably to overcome their qualified immunity.

### C.    The Complaint does not allege a prior restraint on Plaintiffs' speech.

Plaintiffs claim the limited public comment rule is an unconstitutional prior restraint on speech because it gave Weir too much discretion in determining Story's speech was not related to agenda items. *Id.* ¶¶ 35, 190–91, 198. This theory is, once again, properly asserted against Round Rock ISD or the Board as a body, and not against an individual. Even if a valid theory against an individual, the Complaint contains no facts showing the rule is a prior restraint, whether facially or as-applied.

"[T]he regulations [the Supreme Court] have found invalid as prior restraints have 'had this in common: they gave public officials the power to deny use of a forum in advance of actual expression.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 795 n.5 (1989) (quoting *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975)). "The relevant question is whether the challenged regulation *authorizes* suppression of speech in advance of its expression." *Id.* (emphasis in original). "[P]rior restraints on speech in limited public forums must contain neutral criteria sufficient to prevent (1) censorship that is unreasonable in light of the purpose served by the forum and (2) viewpoint-based censorship."

*Freedom From Religion Found.*, 955 F.3d at 429 (emphasis removed). Rules prescribing topics of discussion and rules of decorum are the prototypical "reasonable" regulations of speech in public meetings. A rule requiring speakers to stick to prescribed topics is facially viewpoint-neutral and creates no special risk of "undetectable viewpoint discrimination." *Id.* (quoting *Preminger v. Sec'y of Veterans Affairs*, 517 F.3d 1299, 1303 (Fed. Cir. 2008)). It would be easy to detect, for example, if the Board allowed pro-mask speech but silenced anti-mask speech. Nothing of the sort happened.

Here, the limited public comment rule defines permitted times and topics for public comment. Dkt. 1-1, p. 5. It does not authorize preemptive denial of anyone's right to participate in the forum. *Id.* Consequently, Plaintiffs do not show the rule is a prior restraint on its face. The Complaint also lacks facts showing the rule was wielded as an unconstitutional prior restraint on Story's access to the forum. Quite the opposite, the pleaded facts establish that Story participated in the forum and was restrained only *after* he willfully violated the rules of the forum and disregarded warnings to stop. Dkt. 20, ¶¶ 35–37. Even if Story's removal could be a prior restraint, the Complaint does not show his removal was unconstitutional because he was removed after he continued to deviate from speaking about the posted-agenda item in violation of the reasonable limited public comment rule.

Plaintiffs' prior restraint claim is not a claim against the Trustee Defendants or Dr. Azaiez. Even if it were, the Trustee Defendants are entitled to absolute immunity. And the Complaint lacks facts that the Trustee Defendants or Dr. Azaiez unconstitutionally applied the rule to Story, much less violated a clearly established right or acted unreasonably to overcome their qualified immunity.

### D. The seating capacity limitation did not violate the First Amendment.

Plaintiffs claim the decision to limit seating at the September 14 meeting violated their First Amendment rights. *Id.* ¶¶ 50, 207. Free speech claims are analyzed in three steps. The court first must decide whether the regulated activity "is speech protected by the First Amendment[.]" *Cornelius v. NAACP*, 473 U.S. 788, 797 (1985). If it is, the court "must identify the nature of the forum," and then

"assess whether the justifications for exclusion from the relevant forum satisfy the requisite standard." *Id.* Social distancing rules, like the one used at the September 14 meeting, "concern conduct . . ., not what anyone may write or say," and thus do not "limit . . . speech." *Morgan v. White*, 964 F.3d 649, 652 (7th Cir. 2020) (per curiam); *Nowlin v. Pritzker*, No. 1:20-CV-1229, 2021 WL 669333, at *5 (C.D. Ill. Feb. 17, 2021), *aff'd* 34 F.4th 629, 635 (7th Cir. 2022). The social distancing rule imposed at the September 14 meeting regulated how many people could sit in the meeting room and how closely together they could sit, but it did nothing to restrict anyone's speech. The Complaint pleads no facts that people in the meeting room had any greater right to make public comment than the people waiting in the overflow area outside the meeting room or following remotely from home.[13]

While the Complaint alleges that Clark was removed from the meeting, Dkt. 20, ¶ 98, he was removed not because he violated the social distancing rule but because he ignored multiple warnings not to disrupt the meeting by yelling while others were speaking, Dkt. 1-1, pp. 208–09. The only alleged consequence to either Plaintiff caused by the operation of the *social distancing rule* was that Story had to observe the meeting from outside the room. Dkt. 20, ¶¶ 72, 78. The Complaint does not allege that the social distancing rule burdened Plaintiffs' speech, so it fails to state a free speech claim.

Even if this rule did somehow restrain Plaintiffs' protected speech, the Complaint does not allege facts plausibly showing the seating arrangement was unconstitutional. As discussed *supra*, the Board's meetings are limited public forums in which speech restrictions must be reasonable and viewpoint-neutral.[14] Promoting social distancing is facially unrelated to viewpoint, and the Complaint

---

[13]   The Complaint alleges that some people were unable to speak at the meeting, Dkt. 20, ¶ 51, but recognizes the meeting was cut short due to continued disruptions by Plaintiffs and others, *see id.* ¶¶ 52, 105. Even if the Court credits Plaintiffs' baseless theory that the disruption was a pretext to end the meeting before the Round Rock City police arrived, *id.*, the Complaint still does not allege that the meeting, or public speaking time, was cut short *because of* the social distancing rule.

[14]   The "time, place, or manner" framework gives the same result. Time, place, or manner regulations must be content-neutral and satisfy a version of intermediate scrutiny that requires the regulations to "promote[] a substantial government interest that would be achieved less effectively absent the

contains no facts that seats were allocated according to attendees' views. *See Nowlin*, 34 F.4th at 636 (affirming dismissal of free speech claim where rule limiting size of gatherings made no facial distinctions based on viewpoint and plaintiffs provided no evidence of discriminatory enforcement) (citing *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 770 (7th Cir. 2020)). The rule was also reasonable in light of the circumstances (the COVID-19 pandemic) and purpose of the forum. The social distancing rule did not close any paths of expression. And people inside and outside the meeting room had the same ability to make public comment, which preserved the purpose of the forum while reducing the risk of transmission of COVID-19 in the meeting room. That the social distancing rule was employed only temporarily, when COVID-19 risk was perceived to be especially high,[15] *see* Dkt. 20, ¶¶ 59–62, does not plausibly allege that distanced meeting attendees—whose ability to participate in the meeting, again, was undiminished—were targeted for worse treatment because of their views.

Furthermore, the Trustee Defendants are entitled to absolute immunity. And Plaintiffs cannot show that the seating capacity rule violated their clearly established rights, or that Dr. Azaiez's decision to implement the rule or the Trustee Defendants' procedural vote regarding the rule were clearly unreasonable under the circumstances to overcome their qualified immunity.

---

regulation," *Ward*, 491 U.S. at 799, and "leave open ample alternative channels for communication of the information," *id.* at 791. The social distancing rule regulated physical location without reference to the content of any speech. Slowing the spread of COVID-19 is a substantial governmental interest, and that goal would be furthered less effectively by allowing more people into close physical proximity. *E.g. Antietam Battlefield KOA v. Hogan*, 461 F.Supp.3d 214, 235 (D. Md. 2020) (dismissing free speech challenge to gathering size limits), *aff'd*, No. 20-2311, 2022 WL 1449180, at *3 (4th Cir. May 8, 2022); *Global Impact Ministries v. Mecklenburg Cty.*, No. 3:20-CV-00232, 2022 WL 610183, at *8 (W.D.N.C. Mar. 1, 2022) (same). Because the social distancing rule had no effect on anyone's ability to make public comments, the rule left open all alternative channels for communication.

[15]   State data shows the COVID-19 wave at the end of the Summer of 2021 peaked around September 14. https://www.arcgis.com/apps/dashboards/45e18cba105c478697c76acbbf86a6bc.

### E.        Plaintiffs have not alleged a plausible retaliation claim.

The Complaint concludes that all Defendants caused Plaintiffs' arrests[16] in retaliation for their speech at the August 16 and September 14 meetings, but it provides no facts about specific actions of the Trustee Defendants or Dr. Azaiez. Dkt. 20, ¶¶ 206, 208. The absence of well-pleaded facts that any of them took specific action against Plaintiffs in relation to their arrests precludes any retaliation claim against them. Moreover, a "plaintiff pressing a retaliatory arrest claim must plead . . . the absence of probable cause for the arrest" as a threshold requirement. *Nieves v. Bartlett*, 139 S.Ct. 1715, 1724–25 (2019). The Complaint does not plead an absence of probable cause. Rather, the arrest warrants signed by a Williamson County magistrate presumptively establish probable cause. Dkt. 1-1, pp. 199, 209; *Terwilliger v. Reyna*, 4 F.4th 270, 285 n.10 (5th Cir. 2021) ("[A] warrant presumptively establishes probable cause."). The magistrate's decision cuts off liability for any arrest-related harms. *Russell v. Altom*, 546 F.App'x 432, 436–37 (5th Cir. 2013) (citing *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010)); *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008) ("If [probable cause] exists, any argument that the arrestee's speech as opposed to [his] criminal conduct was the motivation for [his] arrest must fail, no matter how clearly that speech may be protected by the First Amendment.").

Plaintiffs contend the magistrate was not an independent intermediary, either because he was biased or the affidavits supporting the warrant contained false information. Dkt. 20, ¶ 244. Plaintiffs allege a conspiracy against them involving everyone in the county *except for* the magistrate who signed the arrest warrants, and they plead no facts that any Trustee Defendant played a role in the affidavits, the arrest warrants, or Plaintiffs' arrests to state a retaliation claim against them. The Complaint alleges that Dr. Azaiez "exchanged texts with the Williamson County Judge . . . regarding Story and Clark," but does not plead any facts establishing he contacted or influenced the magistrate or otherwise played

---

[16]        It does not appear that Plaintiffs assert a Fourth Amendment claim against the Trustee Defendants or Dr. Azaiez. If they do, the claim fails for the same reason as their retaliation claims, as fully articulated in the Officer Defendants' Motion to Dismiss.

any role in Plaintiffs' arrests. *Id.* ¶ 244d. Moreover, the Complaint lacks factual content to plausibly establish the magistrate had any conflict of interest that prevented him from making an independent decision about probable cause. *See, e.g., Almy v. U.S. Dep't of Justice*, 114 F.3d 1191, at *2 (7th Cir. 1997) (unpublished) (noting "strong presumption that judges are impartial").

As for the alleged "falsehoods" in the warrant application, Dkt. 20, ¶ 245a–f, the Complaint pleads no facts that the Trustee Defendants or Dr. Azaiez made the statements in the affidavits or caused them to be made. The Complaint also fails to plead facts that *anyone* "deliberately or recklessly provid[ed] false, material information . . . that result[ed] in a warrant being issued without probable cause." *Loftin v. City of Prentiss*, 33 F.4th 774, 782 (5th Cir. 2022). The Complaint does not and cannot dispute the core assertions in Story's warrant affidavit that (1) Weir warned Story that he could speak about posted agenda items only, (2) Story acknowledged the warning, (3) Weir instructed him to stop speaking when he departed from agenda topics, and (4) Story disregarded that warning. *See* https://roundrockisdtx.new.swagit.com/videos/130528 (from 2:47:10-2:49:35); Dkt. 1-1, p. 198. These indisputable facts are enough to support the magistrate's finding of probable cause that Story "intentionally hinder[ed] an official proceeding by noise . . . or tumultuous behavior or disturbance." TEX. PENAL CODE § 38.13(a).[17] The Complaint's specific objections to the warrant affidavit amount to little more than quibbling over word choice in statements that are largely irrelevant to the question of probable cause.[18] As a result, Plaintiffs cannot show that any Trustee Defendant or Dr. Azaiez tainted the magistrate's probable cause determination, which shields them from any liability for Story's arrest.

---

[17]   Qualified immunity applies if the corrected affidavit supports a finding of probable cause, *Garcia v. Orta*, 47 F.4th --, 2022 WL 3652971, at *5 (5th Cir. 2022), as it does here.

[18]   For example, Story disputes that he agreed with Weir's statement that he could not speak on topics unrelated to the agenda items, Dkt. 20, ¶ 244a, but his agreement to the rules is irrelevant to the elements of the offense for which he was charged. Story also disputes that Weir interrupted him to tell him his comments were non-germane, but the video shows that after Story began speaking about a protective order against Dr. Azaiez, Weir told Story his comments "were not part of [agenda items] D.1 or D.2" and he could "not speak on that." *See* https://roundrockisdtx.new.swagit.com

Case 1:22-cv-00448-DAE   Document 26   Filed 09/20/22   Page 18 of 22

Because Plaintiffs' arrests were supported by probable cause as determined by an independent intermediary, their retaliation claims must fail at the threshold stage. Even if the Complaint did clear that threshold requirement, it does not plead facts to support the elements of a retaliation claim. To do so, Plaintiffs must demonstrate: (1) they were engaged in constitutionally protected activity; (2) an adverse action caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the actions were substantially motivated by the constitutionally protected activity. *Batyukova v. Doege*, 994 F.3d 717, 730 (5th Cir. 2021). Plaintiffs must show a "but-for" causal connection "between the . . . defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Id.* at 730 (quoting *Nieves*, 139 S.Ct. at 1722).

Plaintiffs do not plead facts to show they were engaged in constitutionally protected speech or that they were arrested because of this protected speech. Rather, they were arrested because they refused to adhere to the rules of the forum and disrupted the orderly conduct of the Board's meetings. Dkt. 1-1, pp. 198–201, 208–11. Speaking outside the bounds of a limited forum's subject-matter restriction is, by definition, not constitutionally protected speech. *See San Antonio Firefighters' Ass'n, Local 624 v. City of San Antonio*, 404 F.Supp.3d 1045, 1063 (W.D. Tex. 2019). Plaintiffs' retaliation claim "fails on this basis alone." *Id.* The Complaint furthermore fails to allege facts demonstrating that a retaliatory animus by any Trustee Defendant or Dr. Azaiez was a but-for cause of their arrests. No other speakers at the meetings are alleged to have engaged in the same conduct as Plaintiffs without

---

/videos/130528, at 2:48:55–2:49:10; Dkt. 20, ¶ 244b. Story further disputes, Dkt. 20, ¶ 244c–d, the affidavit's assertion that he had "several outbursts" while "discussing the unrelated topics" and "continued to have verbal outbursts" after being warned, Dkt. 1-1, p. 198. But the video confirms Story's continued attempts to speak over Weir and yell at the Board throughout his removal. *See* https://roundrockisdtx.new.swagit.com/videos/130528, at 2:48:55–2:49:35. Story's final issues with the warrant affidavit relate to Pope's authority to remove him and alleged omissions from the affidavit regarding the officers' alleged attempts to remove Story from the meeting before it even started. Dkt. 20, ¶ 245(e), (f). But these issues are irrelevant to the question of whether probable caused existed to issue an arrest warrant on the offense of hindering proceedings by disorderly conduct.

being arrested, so there is no basis for concluding that animus, rather than neutral application of a law against disrupting public meetings, was the but-for cause of their arrests.

Even if the Complaint did establish the elements of a retaliation claim, Plaintiffs have not shown any violation of a clearly established First Amendment right or that a Trustee Defendant or Dr. Azaiez acted unreasonably under the circumstances to overcome their qualified immunity.

### F.      The Complaint fails to state a Petition Clause claim.

"Although the right to petition and the right to free speech are separate guarantees, they are related and generally subject to the same constitutional analysis," *Wayte v. United States*, 470 U.S. 598, 611 n.11 (1985), unless "the special concerns of the Petition Clause would provide a sound basis for a distinct analysis," *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 389 (2011). When speech and petition claims arise from the same facts and assert overlapping rights, the petition claim is entitled to no greater First Amendment protection than the speech claim. *See id.* at 387–90; *Sandvig v. Sessions*, 315 F.Supp.3d 1, 31 (D.D.C. 2018). Here, Plaintiffs' Petition Clause claim challenges the same restrictions as their Free Speech Clause claims, pertains to the same events, and asserts the same right to speak at the August 16 and September 14 meetings. *Compare* Dkt. 20, ¶¶ 181–87, *with id.*, ¶¶ 188–89, 196, 207. Because Plaintiffs "'just as easily could have alleged'—and do allege—a Speech Clause violation on the same set of facts," their Petition Clause claim is subject to the same legal analysis and fails for the same reasons. *Sandvig*, 315 F.Supp.3d at 31 (quoting *Guarnieri*, 564 U.S. at 387).

### III.   The Complaint does not state a claim under the Fourteenth Amendment.

Plaintiffs claim they were denied equal protection when they were treated differently from other public commenters. Dkt. 20, ¶¶ 228, 234. They also assert the limited public comment rule and the social distancing rule violate the Due Process Clause because they give "unbridled discretion" to censor speech using "vague standards." *Id.* ¶¶ 229–32. These Fourteenth Amendment claims are duplicative of Plaintiffs' First Amendment claims and must be analyzed under the more specific

standards of the First Amendment. *Arnold v. Williams*, 979 F.3d 262, 270 (5th Cir. 2020); *Thompson v. City of Starkville*, 901 F.2d 456, 468 (5th Cir. 1990) (allegation of different treatment because of speech restates viewpoint discrimination claim, and "recourse is solely under the first amendment"). Plaintiffs' equal protection and due process claims therefore should be dismissed. *See Porter v. Valdez*, 424 F.App'x 382, 387 (5th Cir. 2011) (rejecting equal protection class-of-one claim); *Williams v. Riley*, 275 F.App'x 385, 390 (5th Cir. 2008) (affirming dismissal of equal protection claim); *Black Lives Matter v. Town of Clarkstown*, 354 F.Supp.3d 313, 326 (S.D.N.Y. 2018) (rejecting due process claim).

**IV.    Plaintiffs do not state a plausible failure to train or supervise claim against Dr. Azaiez.**[19]

To state a claim based on a failure to supervise or train, Plaintiffs must show: (1) the supervisor failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounts to deliberate indifference. *Gates v. Tex. Dept. of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). "Additionally, relief will not typically be available absent a showing of a pattern of constitutional violations, as opposed to a single incident." *Parker v. Blackwell*, 23 F.4th 517, 525 (5th Cir. 2022). To demonstrate deliberate indifference, the plaintiff must show (1) the supervisor had actual or constructive notice that a particular part or omission in a training or supervision program causes employees to violate constitutional rights and (2) chose to keep the program as-is anyway. *Porter v. Epps*, 659 F.3d 440, 447 (5th Cir. 2011). The Complaint lacks factual content regarding the supervision or training Dr. Azaiez provided to District personnel or police officers regarding the First, Fourth, or Fourteenth Amendments. Moreover, the Complaint does not allege how any particular training program or supervision is constitutionally defective or describe any shortcomings in the training program or supervision of District personnel, including police officers, as needed to state a claim. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2020). Furthermore, the Complaint contains

---

[19]    Plaintiffs do not assert these claims against the Trustee Defendants. *See* Dkt. 21, ¶ 4.

no allegations of prior incidents similar in nature or prior First, Fourth, or Fourteenth Amendment violations by District personnel or police officers, to put Dr. Azaiez (who had been Superintendent for less than two months) on notice that more or different training or supervision was needed. Plaintiffs also fail to plead facts to support a causal link between any unspecified failure to supervise or train and the alleged violation of their rights. And there are no pleaded facts to allow a reasonable inference that Dr. Azaiez was deliberately indifferent. Plaintiffs, therefore, do not state a failure to train or supervise claim and plead no facts to overcome Dr. Azaiez's qualified immunity from suit.

## V.     The Complaint does not state a conspiracy claim under 42 U.S.C. § 1985.

The Complaint concludes that "various groups of Individual Defendants acted in concert . . . to oppress the civil rights of Plaintiffs" in violation of 42 U.S.C. § 1985(2)–(3). Dkt. 20, ¶¶ 158, 249. But "a school board and its employees constitute a single legal entity . . . incapable of conspiring with itself." *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994). Because Plaintiffs' allegations are based solely on actions by District officials or employees, their claim fails as a matter of law.[20]

---

[20]     *See, e.g., Prescott v. Johnson*, No. 6:18-cv-577, 2022 WL 672694, at *14 (E.D. Tex. Mar. 7, 2022) (mem. op.); *Guerra v. City of Pleasanton*, No. 20-CV-00536-XR, 2020 WL 6922632, at *11 (W.D. Tex. Nov. 24, 2020); *Moody v. Jefferson Parish Sch. Bd.*, 803 F.Supp. 1158, 1166 (E.D. La. 1992). The Complaint lacks factual content to invoke subsection (2) of section 1985 related to the deprivation of rights in federal courts or participation in federal judicial proceedings. *See* 42 U.S.C. § 1985(2); *Holley v. Blomberg*, No. H-10-2394, 2011 WL 13136513, at *1–2 (S.D. Tex. Jan. 12, 2011) (mem. op.). It also lacks factual content to show any "racial or otherwise class-based invidiously discriminatory animus" behind the Trustee Defendants' or Dr. Azaiez's actions to state a claim under 42 U.S.C. § 1985(3). *See Holley*, 2011 WL 13136513, at *1–2; *see also Burns-Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir. 1994); *McCleester v. Dep't of Labor & Industry*, No. Civ.A. 3:06-120, 2007 WL 2071616, at *15 (W.D. Pa. July 16, 2007) (collecting cases, including from the First, Third, Fourth, and Sixth Circuits, finding that "class of one" claims are not entitled to the special protection of § 1985(3)).

Respectfully submitted,

/s/    *Kathryn E. Long*
KATHRYN E. LONG
State Bar No. 24041679
klong@thompsonhorton.com

K. ADAM ROTHEY
State Bar No. 24051274
arothey@thompsonhorton.com

**THOMPSON & HORTON LLP**
500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

PATRICK GRUBEL
State Bar No. 24106034
pgrubel@thompsonhorton.com

**THOMPSON & HORTON LLP**
8300 N. MoPac Expressway, Suite 220
Austin, TX 78759
(512) 615-2350 – Telephone
(713) 583-8884 – Facsimile

*Attorneys for the*
*Round Rock ISD Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this document has been served upon all counsel of record via the Court's electronic filing system on September 20, 2022.

| | |
|---|---|
| Warren V. Norred | Stephen D. Casey |
| Norred Law, PLLC | Casey Law Office, P.C. |
| warren@norredlaw.com | stephen@caseylawoffice.us |
| 515 East Border Street | P.O. Box 2451 |
| Arlington, Texas 76010 | Round Rock, TX 78680 |

/s/    *Kathryn E. Long*
Kathryn E. Long