IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Jeremy Story and Dustin Clark, | § | NO. 1:22-CV-448-DAE |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| vs. | § | |
| | § | |
| Hafedh Azaiez, et al., | § | |
| | § | |
| *Defendants*. | § | |
| _____ | § | |

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS

Before the Court are three Motions to Dismiss Jeremy Story ("Story")

and Dustin Clark's ("Clark," and together, "Plaintiffs") First Amended Complaint.

(Dkt. # 20).  The first motion was brought by Defendants Jeffrey Yarbrough,

James Williby, Lauren Griffith, Milton Pope, Frank Pontillo, and Samuel Chavez

(Dkt. # 25); the second by Defendants Amber Feller, Tiffanie Harrison, Amy Weir,

Jun Xiao, Cory Vessa, and Hafedh Azaiez (Dkt. # 26); and the third by Defendant

Round Rock Independent School District (Dkt. #27).  The Court held a hearing on

Defendants' Motions to Dismiss on April 11, 2023.  After careful consideration of

the memoranda filed in support of and in opposition to the motions, as well as the

arguments advanced at the hearing, the Court **GRANTS IN PART** and **DENIES**

**IN PART** Defendants' Motions to Dismiss.

Plaintiffs' Application for Preliminary Injunctive Relief is also before the Court.  (See Dkt. # 20 ¶¶ 258–76.)  Pursuant to Local Rule CV–65, "[a]n application for a temporary restraining order or preliminary injunction shall be made in an instrument separate from the complaint."  Plaintiffs, who are represented by counsel, nevertheless included their application for a temporary restraining order and preliminary injunction in their First Amended Complaint.  Id. Because Plaintiffs' application does not comply with Local Rule CV–65, the Court does not reach the merits of the application, and it is **DENIED WITHOUT PREJUDICE**.

<u>BACKGROUND</u>

Story and Clark allege that five trustees, six police officers, and the superintendent of Round Rock Independent School District ("Round Rock ISD" or the "District") committed a host of constitutional violations while conspiring to deprive Story and Clark of their rights under the First, Fourth, and Fourteenth Amendments of the U.S. Constitution.  (See Dkt. # 20 ¶¶ 5, 6, 181–250.)  Plaintiffs also assert that Round Rock ISD and certain Round Rock ISD trustees violated the Texas Open Meetings Act.  (Id. ¶¶ 246–48, 251–56.)

The events at issue began in the summer of 2021.  That June, the Round Rock ISD Board of Trustees ("the Board") held a special meeting and voted 5-2 to hire Hafedh Azaiez as the District's new superintendent.  (Id. ¶ 13.)

2

Defendants Amber Feller, Tiffanie Harrison, Amy Weir (who also served as Board President), Jun Xiao, and Cory Vessa (collectively, the "Trustee Defendants") all voted in favor of hiring Azaiez.[1]  (Id. ¶¶ 10, 14.)  According to Plaintiffs, the Trustee Defendants, "in conspiracy between themselves and others," had already agreed to hire Azaiez before the meeting.  (Id. ¶ 14.)

 In July, Story learned that allegations of family violence had been made against the Superintendent by a woman who said that Azaiez assaulted her after she refused to abort his child.  (Id. ¶¶ 16, 17.)  That month, the woman obtained a protective order against Azaiez, and Story and others contacted the Board via email and social media to inform them of her allegations.  (Id. ¶ 19.)  Story sent subsequent emails to the Board urging the Trustee Defendants to resign and offering video evidence of the protective order being served on Azaiez at the District's offices.  (Id. ¶ 22; Dkt. # 1, Ex. 6.)

 The Board held a regular meeting in June following Azaiez's hiring; the next three meetings in June, July, and August were special meetings.  (Id. ¶ 17.)  Pursuant to a policy adopted by the Board called BED (Local), public comment at special meetings is "limited to items on the agenda posted with notice of the meeting."  (Dkt. # 1, Ex. 2.)  At regular meetings, on the other hand, the Board "shall permit public comment, regardless of whether the topic is an item on

---

[1] The two trustees who voted against hiring Azaiez have not been sued.  (Id. ¶ 9.)

the agenda posted with notice of the meeting." (Id.) Story notes that because no regular meetings were held in July and President Weir refused to call a special meeting to discuss the Azaiez allegations, he could not speak out about the allegations at the Board's meetings. (Dkt. # 20 ¶¶ 16, 24.)

Story and Clark's constitutional claims arise from two Board meetings that took place in August and September.

I.   <u>August Board Meeting</u>

On August 16, 2021, the Board held a special meeting concerning two agenda items: (1) COVID-19 Employee Leave, and (2) Fall 2021 COVID-19 Health and Safety Protocols. (Id. ¶ 30.) Round Rock ISD Police Detective Sergeant Lauren Griffith was in the parking lot outside the meeting and had been warned of Story's approach by the Trustee Defendants and other officers stationed outside the building. (Id. ¶¶ 32, 33.) Before the meeting's public comment session, Round Rock ISD Chief of Police Jeffrey Yarbrough approached Story and demanded that he leave the meeting room so that they could speak outside. (Id. ¶ 34.) After Story refused several times, Yarbrough "unconstitutionally threatened Story in furtherance of the conspiracy." (Id.)

When Story approached the podium to speak at the public comment portion of the meeting, President Weir "[tried] to stop Story from beginning . . . his speech and even asserted at one point . . . that she did not want to allow him to

even demonstrate whether his comments were going to be germane."  (Id. ¶ 35.)

After Story attested that his comments *were* relevant to the agenda, Story began

delivering his comments:

> Today I speak on the rule of law, I don't envy your choice today.  I
> trust that most people value each other even though they are on
> different sides of the issue, I also understand the seriousness of the
> COVID epidemic.  I understand the rule of law, yet several members
> of this board and Superintendent have another utter disregard for the
> rule of law.  Today you are considering thwarting the Governor's
> order and the legislature and the Supreme Court of Texas.  This will
> result in tremendous fines to the district.  Even today, you violated the
> rule of law by putting officers in the back of this room in the difficult
> position of being asked to illegally enforce a last-minute violation of
> the Open Meetings Act.  An agenda item today includes a resolution
> which includes 80% of the text concerning itself with the safety of
> public employees and students.  The resolutions being considered
> today include statements like, "the Board of trustees has a substantial
> public interest in protecting the health and safety of students and
> community."  It talks about "supervision of the Superintendent" and
> even other things related to public health and public safety.  Several of
> you have demonstrated strong disregard for the rule of law.  You
> consider public safety today by violating the Supreme Court of Texas.
> Still more, our Superintendent has a protective order filed against him.
> . . .

(Id.)

When Story mentioned the protective order involving Azaiez, he was

interrupted by President Weir.  (Id. ¶ 37.)  Without being allowed to explain "how

his speech was related to the agenda items," Story was approached from behind by

Round Rock ISD Officers Milton Pope and Frank Pontillo, who, "in conspiracy

with Weir," grabbed Story's arms and dragged him out of the meeting.  (Id. ¶ 37.)

Trustees Feller and Harrison agreed with President Weir that Story should leave. (<u>Id.</u> ¶ 38.)

Story alleges that other speakers at the meeting who brought up unrelated topics were given considerably more latitude. (<u>Id.</u> ¶ 40.) For example, one speaker who said that the Superintendent "assaulted a pregnant girl" was prevented from speaking further but was not removed by Round Rock ISD police, though she too attempted to keep speaking. (<u>Id.</u> ¶ 39(d).) Another speaker who brought up the protective order against Azaiez was cut off, but similarly was not removed from the meeting. (<u>Id.</u> ¶ 39(f).) Story alleges that he was singled out because of his work "to raise awareness about Azaiez" and because he was "a leader of the Board's critics." (<u>Id.</u> ¶ 40.)

In the days following the meeting, Story attempted to file reports and grievances with various law enforcement entities. (<u>Id.</u> ¶¶ 41, 42.) He submitted a complaint to the Texas Education Agency and filed a grievance with Round Rock ISD's legal department. (<u>Id.</u> ¶¶ 43, 45.)

II.   <u>September Board Meeting</u>

On September 14, 2021, the Board held a regular meeting. (<u>Id.</u> ¶ 49.) Although the meeting room had the capacity for 375 persons, only eighteen chairs (spaced six feet apart) were available for attendees. (<u>Id.</u> ¶ 50.) Attendees were told that they could view the meeting remotely in the cafeteria. (<u>Id.</u> ¶ 50 n.24.)

Story and other parents were physically prevented from entering the meeting room by Officers Pope and Pontillo, while Assistant Chief James Williby watched from within the Board meeting room.  (Id. ¶ 66.)  The officers refused to identify who authorized them to prevent entry, but one officer "nodded to indicate" that Yarborough was the one who had ordered them to block the doors.  (Id. ¶ 70.)

Before the meeting, President Weir announced that the limited seating was Azaiez's decision.  (Id. ¶ 88.)  And then, although Trustee Xiao noted that a vote regarding seating was not on the agenda and President Weir agreed with this, the Board voted 5-2 to enforce the 18-chair limit after the Board's attorney approved the vote.  (Id. ¶¶ 88, 93.)  Trustee Defendants all voted for the seating limit; the other two trustees left the meeting, citing Texas Open Meetings Act concerns.  (Id. ¶¶ 91, 94.)

Plaintiffs assert that the limited seating rule adopted by the Trustee Defendants was "mere pretext to keep out the Board's critics," particularly since one of the topics for discussion that night was COVID-19 masking policies.  (Id. ¶¶ 59, 60.)  Plaintiffs point out that the Board's seating arrangements had been less restrictive in the past, even when COVID-19 cases were higher.  (Id.)  One week later, on September 22, the Board allowed 300 people to attend the meeting even though no health authority had announced a change in the COVID-19 threat level. (Id. ¶ 61.)

"As the board meeting started, the police allowed some people in solely based on the officers' personal judgment, e.g., one person stated that she was speaking first.  Others were prohibited without any discernible reason."  (Id. ¶ 71.)  Clark, who did get a seat in the meeting room, "attempted to instruct the Board that (1) it was violating the Texas Open Meetings Act multiple times in its votes on unannounced topics and arbitrary seating rules, (2) the Board had failed to allow even the 18 chairs to be filled by those who wished to attend the meeting, and (3) the Board was prohibited by law from raising taxes without allowing public participation in the meeting."  (Id. ¶ 97.)  President Weir then instructed Assistant Chief Williby to remove Clark from the meeting, and the Trustee Defendants "seized [the] opportunity to unlawfully vote to set a tax rate."  (Id. ¶¶ 98, 99.)

Story, meanwhile, attempted several times to enter the meeting room. (Id. ¶ 72.)  Williby instructed another Round Rock ISD policer officer, Officer Chavez, to provide those who were refused entry with Texas Education Code § 37.105, but Chavez only read out the first portion of the section (a move that Plaintiffs characterize as "deliberately deceptive").  (Id. ¶¶ 74, 75.)  A protracted discussion about the applicable laws ensued between Story and Officers Pope and Pontillo.  (Id. ¶ 78.)  Williby then watched as his officers "bear-hugg[ed] [Story] around a pole, cutting his back," and "slammed [Story] to the ground."  (Id. ¶ 82.)

At a school board conference after the incident, Chief Yarbrough gave a presentation about school security.  (Id. ¶ 82.)  The president of another school board questioned Yarbrough, concerned that Yarbrough's tactics were too forceful. (Id.)  Yarbrough admitted that his officers only had typical municipal street patrol training, not school resource officer training.  (Id.)

III.    Story and Clark's Arrests

On the night of the September 14, 2021 Board meeting, Story filed a report with the Round Rock City Police about the actions of the Round Rock ISD police officers.  (Id. ¶ 110.)  But by the next morning, the Round Rock Police Department had decided not to investigate the Round Rock ISD officers "at the request of Williamson County Attorney Dee Hobbs."  (Id.)  Story's requests that the Williamson County Attorney's Office investigate the August and September incidents similarly went nowhere.  (Id. ¶¶ 112, 113, 114.)

On September 17, 2021, Round Rock ISD police issued arrest warrants for Story and Clark for the offense of "Hindering Proceedings by Disorderly Conduct," a Class A misdemeanor.  (Id. ¶ 115.)  Story and Clark were arrested at their homes by several officers from the Williamson County Sheriff's Office.  (Id. ¶ 116.)  Both were jailed, despite Williamson County's "COVID-19 rule against jailing individuals for minor offenses."  (Id. ¶ 117.)  "Plaintiffs later learned that Azaiez communicated via text and other means with the Williamson

County Judge and other county officials to encourage the county to arrest

Plaintiffs."  (Id. ¶ 118.)

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a

complaint for "failure to state a claim upon which relief can be granted."  In

analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all

well pleaded facts as true, viewing them in the light most favorable to the

plaintiff.'"  United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d

343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d

191, 205 (5th Cir. 2007)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead

"enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009).  But "the tenet that a court must accept as true all

of the allegations contained in a complaint is inapplicable to legal conclusions."

Id.

<u>ANALYSIS</u>

Plaintiffs have brought claims under 42 U.S.C. § 1983, alleging violations of their First Amendment, Fourth Amendment, and Fourteenth Amendment rights.  Plaintiffs also assert Texas state-law claims for violations of the Texas Open Meetings Act ("TOMA").  All Defendants have moved to dismiss the claims against them, with individual Defendants asserting both immunity and merits grounds for dismissal.  Based on Plaintiffs' version of events, the Court will grant in part and deny in part Defendants' Motions to Dismiss.

I.      <u>First Amendment Claims</u>

Defendants argue that Plaintiffs have failed to state a plausible First Amendment claim.  (Dkts. # 25 at 15–18; # 26 at 6–18; # 27 at 2–10.)  As Defendants note, Plaintiffs appear to offer six theories in support of their claim that their First Amendment rights were violated.[2]  (Dkts. # 25 at 15; # 26 at 6.)  The Court will address each theory in turn.

---

[2] The Court notes that Plaintiffs' Amended Complaint has elements of at least two types of "shotgun pleading" that tend to cloud the legal and factual issues in a case: 1) the inclusion of "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," and 2) the assertion of "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."  See Valadez v. City of San Antonio, No. SA21CV0002JKPRBF, 2022 WL 1608016, at *5, *7 (W.D. Tex. May 20, 2022) (quoting Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1321–23 (11th Cir. 2015)).  As a result, Defendants and this Court have been tasked with deciphering which claims apply to the various defendants.

A.        Facial constitutionality of the public comment rule in BED (Local)

Plaintiffs facially attack the BED (Local) rule that provides public comments at "special meetings" are "limited to items on the agenda posted with notice of the meeting."  (Dkt. # 20 ¶¶ 183–96.)

The parties appear to agree that the Board meetings constitute a "limited public forum," meaning it "is limited to use by certain groups or dedicated solely to the discussion of certain subjects." Pleasant Grove City v. Summum, 555 U.S. 460, 470 (2009) (citing Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n, 460 U.S. 37, 46 n.7 (1983)).  In a limited public forum, the government may subject speech to valid time, place, and manner restrictions, so long as the restrictions are both "viewpoint neutral and reasonable in light of the forum's purpose." Fairchild v. Liberty Indep. Sch. Dist., 597 F.3d 747, 760 (5th Cir. 2010).

In determining whether a restriction is reasonable, viewpoint-neutral restrictions are considered "more creditworthy" if there are other avenues available for speech.  Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the L. v. Martinez, 561 U.S. 661, 690 (2010).  It is not permissible, however, to discriminate against speech on the basis of viewpoint.  Freedom From Religion Found. v. Abbott, 955 F.3d 417, 427 (5th Cir. 2020) (citing Chiu v. Plano Indep. Sch. Dist., 260 F.3d 330, 346–47 (5th Cir. 2001)).

The Board has a strong interest in the productivity of public meetings. Because of this interest, "[c]ourts discussing public comment periods at government meetings have routinely found that the governing body may restrict speakers to the subject at hand, impose time limits on speakers, and prevent disruptions of the meeting." Wenthold v. City of Farmers Branch, No. 3:11-CV-0748-B, 2012 WL 467325, at *8–9 (N.D. Tex. Feb. 14, 2012), aff'd sub nom. Wenthold v. City of Farmers Branch, 532 F. App'x 474 (5th Cir. 2013). As the Sixth Circuit has recognized, "[u]nstructured, chaotic school board meetings not only would be inefficient but also could deny other citizens the chance to make their voices heard." Lowery v. Jefferson Cnty. Bd. of Educ., 586 F.3d 427, 433 (6th Cir. 2009) (citations omitted). See also Rowe v. City of Cocoa, 358 F.3d 800, 803 (11th Cir. 2004) (per curiam) ("As a limited public forum, a city council meeting is not open for endless public commentary speech but instead is simply a limited platform to discuss the topic at hand.").

A facial challenge concerns the text of the policy itself, "not its application to the particular circumstances of an individual." Freedom Path, Inc. v. IRS, 913 F.3d 503, 508 (5th Cir. 2019). On its face, the BED (Local) policy is reasonable. There are other avenues for speech: at regular meetings, BED (Local) provides that the Board "*shall* permit public comment, regardless of whether the topic is an item on the agenda." (Dkt. # 1, Ex. 2.) For a school board to limit

13

discussion at certain meetings "to those subjects that it believes will be illuminated by the views of others" and thus "best serve its informational needs while rationing its time" is not unreasonable.  See City of Madison, Joint Sch. Dist. v. Wis. Emp. Rels. Comm'n, 429 U.S. 167, 180 (1976) (Stewart, J., concurring); see also Cox v. State of La., 379 U.S. 536, 554 (1965) ("The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time.  The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy.").

The text of BED (Local) is also viewpoint neutral: it does not differentiate between speakers' viewpoints when limiting discussion to the agenda items at hand.  Plaintiffs nonetheless assert that BED (Local) is unconstitutional because it gives the Board "unbridled discretion."  (Dkt. 20 ¶¶ 190–92, 229–31.) The Fifth Circuit recently explained that "[u]nbridled discretion runs afoul of the First Amendment because it risks self-censorship and creates proof problems in as-applied challenges."  Freedom From Religion Found., 955 F.3d at 427.  But there is "[n]othing unascertainable here to people of common intelligence." Fairchild, 597 F.3d at 762.  In fact, BED (Local) tracks the language of the Texas Open Meetings Act, which "protects the right of a 'member of the public' to air

their concerns at public governmental board meetings as long as those concerns are 'regarding an item on the agenda for an open meeting.'"  See TEX. GOV'T CODE § 551.007(b).

Plaintiffs' facial challenge to (BED) Local therefore fails.

B.    Constitutionality of the BED (Local) Rule as applied to Story

Story alleges that the BED (Local) rule, as applied to him, constitutes impermissible viewpoint discrimination.  "Viewpoint discrimination exists 'when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.'"  Heaney v. Roberts, 846 F.3d 795, 802 (5th Cir. 2017) (quoting Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819, 829 (1995)).  But there is no First Amendment violation "when the same result would have occurred in the absence of any illegitimate motive."  Id. (quoting Lowery v. Jefferson Cty. Bd. of Educ., 586 F.3d 427, 435 (6th Cir. 2009)).

Again, governmental bodies have a significant interest in conducting orderly and efficient meetings.  "As the Ninth Circuit has explained, 'the usual [F]irst [A]mendment antipathy to . . . control of speech cannot be imported into [government meetings] intact . . . . While a speaker may not be stopped from speaking because the moderator disagrees with the viewpoint he is expressing, it certainly may stop him if his speech becomes irrelevant or repetitious."  Fairchild, 597 F.3d at 760.  In addition, "[a]n erroneous judgment call on the part of a

15

presiding officer does not automatically give rise to liability for a constitutional

tort."  Jones v. Heyman, 888 F.2d 1328, 1334 (11th Cir. 1989).

The Complaint shows that Story was interrupted by President Weir

when he veered off-topic from the posted agenda items.  Because the Complaint

reflects that the same is true for other speakers who veered off-topic from the

agenda items (see Dkt. # 20 ¶¶ 34, 35–36), this cannot sustain Story's as-applied

challenge to the (BED) Local Rule.

However, Story also alleges that, unlike the other speakers who

deviated from the posted agenda items to speak about Azaiez, he alone was

"dragged from the podium by police" and ejected from the meeting at the direction

of President Weir.  (Dkt. # 20 ¶ 40.)  Taking these facts as true and viewing them

in the light most favorable to the plaintiff—as the Court must do at this stage—

Story has stated a claim with respect to his as-applied challenge to the rule.

Still, personal involvement is an essential element of a civil rights

case.  Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).  "Plaintiffs suing

governmental officials in their individual capacities . . . must allege specific

conduct giving rise to a constitutional violation.  This standard requires more than

constitutional assertions: the plaintiff must allege specific facts giving rise to the

constitutional claims."  Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citations

omitted).

16

Story's allegations against many of the Defendants do not meet this heightened standard, save for the allegations against President Weir and Officers Pope and Pontillo.  The Complaint is completely silent about the actions of Trustee Vessa, Trustee Xiao, Azaiez, and the remaining Officer Defendants regarding the application of the BED (Local) policy.  With respect to Trustee Feller and Trustee Harrison, Story asserts that they "stated that Story should leave."  (Dkt. # 20 ¶ 38.) This is not sufficient.  Story's as-applied challenge is dismissed as to these specific Defendants.

      C.    <u>Prior Restraint</u>

Story has failed to allege facts supporting a prior restraint claim.  "The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur."  <u>Alexander v. United States</u>, 509 U.S. 544, 550 (1993) (citation, emphasis, and internal quotation marks omitted).  The (BED) Local policy does not give the Board the power or discretion to prevent participation during public comment in advance of the actual expression.  And Story has not alleged that the rule prevented him from speaking about an agenda item—in fact, according to the Complaint, Story did speak during the public comment session, and was removed when he tried to speak about Azaiez's protective order.

17

The BED (Local) restriction regarding agenda items also cannot reasonably be understood as providing the Board with "undue discretion" to silence speakers at Board meetings.  See Fairchild, 597 F.3d at 762 n.56.  The Fifth Circuit recently explained that the relevant question is whether the rule allows "undetectable viewpoint discrimination."  Freedom From Religion Found., 955 F.3d at 429.  The Court agrees with Defendants that a rule requiring that speakers' comments must relate to items on the agenda is reasonable, viewpoint-neutral, and creates no special risk of undetectable viewpoint discrimination.  (See Dkt. # 26 at 12) ("It would be easy to detect, for example, if the Board allowed pro-mask speech but silenced anti-mask speech.").

As noted above, "[c]ourts discussing public comment periods at government meetings have *routinely* found that the governing body may restrict speakers to the subject at hand."  Wenthold, 2012 WL 467325, at *8–9 (emphasis added).  Ensuring that meetings are orderly and efficient "necessarily demands that the moderator exercise some discretion over the number of speakers and the time allotted for each to speak."  Gilmore v. Beveridge, No. 222CV02032HLTRES, 2022 WL 3139023, at *8 (D. Kan. Aug. 5, 2022) (quoting Lowery, 586 F.3d at 436)).  Plaintiffs' prior restraint claim shall be dismissed.

D.     Constitutionality of the seating capacity limitation

Defendants argue that "social distancing rules, like the one used at the September 14 meeting," concern conduct rather than speech.  (Dkt. # 26 at 13.) They also contend that "[e]ven if this rule did somehow restrain Plaintiffs' protected speech, the Complaint does not allege facts plausibly showing the seating arrangement was unconstitutional."  (Id.)  Plaintiffs respond that the District "employed an irrational regulation as a pretext in order to strip meaningful participation from the public during the one meeting a year where a tax hike is discussed."  (Dkt. # 30 at 15.)

Restrictions on school board meetings "to protect against a public health crisis" have been found to "bear[] a strong and rational relationship to a critical government interest."  See Pete v. Dunn, No. 1:21-CV-546, 2022 WL 2032306, at *5 (E.D. Tex. May 11, 2022), report and recommendation adopted, No. 1:21-CV-0546, 2022 WL 2001779 (E.D. Tex. June 3, 2022) (finding that a plaintiff failed to state a First Amendment claim with respect to a school board meeting held remotely because of a public health crisis).

Plaintiffs claim that "[a]s the board meeting started, the police allowed some people in solely based on the officers' personal judgment . . . . Others were prohibited without any discernible reason."  (Dkt. # 20 ¶ 71.) Plaintiffs further state that "Story and others were never allowed to enter the room,

and some left without being afforded the opportunity to participate."  (Id. ¶ 51.)

Plaintiffs allege that the decision was made by Azaiez, who "knew the politics of

the crowd outside the room on September 14."  (Id. ¶ 62.)

Taking the allegations in the Complaint as true and construing them in

the light most favorable to Plaintiffs, the Court finds that Story has stated a

plausible claim that the seating capacity limitation, as applied,[3] was

unconstitutional.  The Complaint alleged that the Board's seating arrangements

were less restrictive when the rate of COVID-19 cases were higher or the same

(Dkt. # 20 ¶ 61), and that Defendants' motives in enacting the rule were pretextual.

In addition, whether people could not participate in the public comment portion of

the meeting because of the social distancing rule or because the meeting was cut

short due to "continued disruptions by Plaintiffs and others" (Dkt. # 26 at 13)

involves fact questions that the Court cannot resolve at this stage.  The Court finds

that Story has stated a claim against the Trustee Defendants and Azaiez as to this

rule.

E.   First Amendment Retaliation

"[A]s a general matter the First Amendment prohibits government

officials from subjecting an individual to retaliatory actions for engaging in

---

[3] Indeed, Plaintiffs concede that they "are not complaining that a genuine seat
spacing rule is unconstitutional." (See Dkt. # 28 at 9.)

protected speech." Batyukova v. Doege, 994 F.3d 717, 729–30 (5th Cir. 2021) (quoting Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019)).  A First Amendment retaliation claim requires that a plaintiff show (1) he was engaged in constitutionally protected activity, (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct. Keenan v. Tejeda, 290 F.3d 252, 258 (5th Cir. 2002).

Plaintiffs have alleged that they were targeted by Defendants and arrested in retaliation for exercising their rights to free speech and petition.  (Dkt. # 20 ¶¶ 206, 208.)  Defendants argue that because a Williamson County magistrate signed the arrest warrant—and thus Plaintiffs' arrests were supported by probable cause as determined by an independent intermediary—Plaintiffs' retaliation claims must fail.[4]  (Dkt. # 26 at 15; Dkt. # 27 at 8.)  Defendants also contend that Plaintiffs were not engaged in constitutionally protected speech.  (Dkt. # 26 at 17; Dkt. # 27 at 9.)

---

[4] The Court notes that, in some cases, a retaliatory arrest *can* give rise to a First Amendment claim even where there is probable cause.  See Gonzalez v. Trevino, 60 F.4th 906, 909 (5th Cir. 2023); Lozman v. City of Riviera Beach, Fla., 138 S. Ct. 1945, 1955 (2018).

Clark has not alleged facts sufficient to state a claim that he was engaged in constitutionally protected speech.  Again, according to Plaintiffs, Clark was removed from the September 14, 2021 Board meeting when, "[d]uring this meeting," Clark:

> [A]ttempted to instruct the Board that (1) it was violating the Texas Open Meetings Act multiple times in its votes on unannounced topics and arbitrary seating rules, (2) the Board had failed to allow even the 18 chairs to be filled by those who wished to attend the meeting, and (3) the Board was prohibited by law from raising taxes without allowing public participation in the meeting.

(Dkt. # 20 ¶ 97.)  But Plaintiffs do not allege that Clark was attempting to speak during the public comment portion of the meeting.  If Clark was not a recognized speaker when he was making these comments, he was not engaged in constitutionally protected activity.[5]  See Sousa v. Seekonk Sch. Comm., No. 1:22-CV-40120-IT, 2023 WL 349923, at *9 (D. Mass. Jan. 20, 2023) (holding that the plaintiff had "not shown a likelihood of success on the merits of his claim that his speech—which occurred outside of any period where he was a recognized speaker—was protected").  The right to free speech "does not encompass the right to cause disruption."  Startzell v. City of Phila., 533 F.3d 183, 198 (3d Cir. 2008).

---

[5] The BED (Local) policy provides that "[a]udience participation at a Board meeting is limited to the portion of the meeting designated to receive public comment in accordance with this policy" and provides for the removal of disruptive audience members after the disruptive member has received at least one warning.  (Dkt. # 1, Ex. 2.)

Plaintiffs have not pled facts showing that Clark was engaged in other constitutionally protected conduct.

Story, however, has alleged facts sufficient to state a claim that he was engaged in constitutionally protected speech.  An arrest would certainly chill a person of ordinary firmness from continuing to engage in the protected activity. Bailey v. Ramos, No. SA-20-CV-00466-XR, 2023 WL 2147700, at *9 (W.D. Tex. Feb. 17, 2023) (citing Keenan, 290 F.3d at 259).  And Story has alleged that his arrest was substantially motivated by his speech to the Board.  Finally, as discussed in greater deal in Part II(C), Story has adequately stated a claim that an exception to the independent intermediary doctrine applies.  Thus, the Court finds that Story has stated a First Amendment retaliation claim.

However, Story has not adequately alleged the personal involvement of the Trustee Defendants, Officer Pontillo, Sergeant Chavez, or Assistant Chief Williby.  The claim will be dismissed as to these Defendants.

F.      Right to Petition

The Supreme Court has recognized that speech and petition rights are "cognate"—they share "substantial common ground."  Borough of Duryea v. Guarnieri, 564 U.S. 379, 388 (2011).  Yet courts "should not presume there is always an essential equivalence in the two Clauses or that Speech Clause precedents necessarily and in every case resolve Petition Clause claims."  Id. at

23

388.  Rather, "[i]nterpretation of the Petition Clause must be guided by the objectives and aspirations that underlie the right.  A petition conveys the special concerns of its author to the government, and, in its usual form, [requests] action by the government to address those concerns."  Id. at 388–89.

Story has plausibly alleged that the seating limitation rule prevented him from effectively participating in an open meeting.  When the government holds meetings that are open to public participation, excluding particular members of the public may violate the First Amendment right to petition.  See Wis. Emp. Relations Comm'n, 429 U.S. at 175–76; Lee v. Driscoll, 871 F.3d 581, 585 (8th Cir. 2017).  Plaintiffs have stated a claim as to the Trustee Defendants and Azaiez.

II.   Fourth Amendment Claims

Plaintiffs claim that Defendants Jeffrey Yarbrough, James Williby, Lauren Griffith, Milton Pope, Frank Pontillo, and Samuel Chavez (collectively, the "Officer Defendants") violated Plaintiffs' Fourth Amendment rights to be free from excessive force, unreasonable seizure, and false arrest.  (Dkt. # 20 ¶¶ 235–45).

A.   Excessive Force

The Fourth Amendment confers a "right to be free from excessive force during a seizure."  Poole v. City of Shreveport, 691 F.3d 624, 627 (5th Cir. 2012).  To establish that a police officer violated his constitutional right to be free

from excessive force, a plaintiff must show "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Id. at 628 (citing Ontiveros v. City of Rosenberg, 564 F.3d 379, 382 (5th Cir. 2009)).

Defendants argue that any injuries Story sustained during the September Board meeting were *de minimis*, and that the use of force was not clearly excessive. (Dkt. # 25 at 13.) Defendants also note that "Story never explicitly pleads that any Officer Defendant caused his alleged injuries." (Dkt. # 25 at 13.) In response, Story points to the minor nature of the crime and "the fact that he posed no threat to the officers." (Dkt. # 29 at 14.)

The Fifth Circuit has stated that "although a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances." Brown v. Lynch, 524 Fed. App'x 69, 79 (5th Cir. 2013). Thus, "[a]ny force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only." Byrd v. Cornelius, 52 F.4th 265, 274 (5th Cir. 2022) (quoting Alexander v. City of Round Rock, 854 F.3d 298, 309 (5th Cir. 2017)). "[A]s long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting

from an officer's unreasonably excessive force."  Id. (quoting Alexander, 854 F.3d at 309).

Viewing the facts in the light most favorable to Story, his injuries meet Alexander's "some injury" test.  See Sam v. Richard, 887 F.3d 710, 714 (5th Cir. 2018) (holding the same with respect to alleged injuries that caused "minor bleeding").  Determining the reasonableness of the force used "requires careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight."  Trammell v. Fruge, 868 F.3d 332, 340 (5th Cir. 2017) (quoting Graham v. O'Connor, 490 U.S. 386, 396 (1989)).  Here, the severity of the crime (if any—Story was not arrested) was minor and Defendants do not contend that Story posed an immediate threat or was fleeing.

The Court is mindful that "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' . . . violates the Fourth Amendment."  Graham v. Connor, 490 U.S. at 396 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).  However, Story contends that he was "slammed" to the ground by the officers, and no allegations explain why this amount of force was necessary.  Thus, the Court finds that Story has plausibly stated a claim for excessive force.

As Defendants note, however, "Story never explicitly pleads that any Officer Defendant caused his alleged injuries." (Dkt. # 25 at 13.) Again, "a plaintiff bringing a section 1983 action must specify the personal involvement of each defendant." Murphy v. Kellar, 950 F.2d 290, 292 (5th Cir. 1992). Plaintiffs *imply* that the officers were Sergeant Pope and Officer Pontillo, but do not ever state so definitively. And even though Defendants put Plaintiffs on notice about this issue in their Motion to Dismiss, Plaintiffs' Response in Opposition did not resolve the issue. In Green v. Strickland, the district court dealt with this issue by dismissing the plaintiff's excessive force claims with an instruction to either identify the defendants involved in each specific alleged violation by name or plead an inability to identify a specific defendant. No. CV 20-601, 2022 WL 855294, at *5 (W.D. La. Mar. 22, 2022). The Court dismisses Story's excessive force claim with this same instruction.

Plaintiffs did specifically identify Assistant Chief Williby. According to Plaintiffs, as Story was "bear-hugg[ed] . . . around a pole" and "slam[med]" to the ground, Williby was watching from inside the meeting room.[6] (Dkt. # 20 ¶ 80.)

---

[6] It appears that Plaintiffs rely on a theory of supervisory liability rather than bystander liability for their claims against Williby—Plaintiffs make no mention of bystander liability. But even if Plaintiffs have pleaded facts that would support a bystander liability claim, Plaintiffs have "failed to provide clearly established law that put the illegality of the bystander[']s actions beyond debate" in order to overcome Williby's assertion of qualified immunity. Martinez v. Harris Cnty., No.

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). To establish supervisor liability for constitutional violations committed by subordinate employees, a plaintiff must show that the supervisor acted, or failed to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates. Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011).

A supervisor is liable if he (1) "affirmatively participates in the acts that cause the constitutional deprivation," or (2) "implements unconstitutional policies that causally result in the constitutional injury." Gates v. Tex. Dep't of Prot. & Reg. Servs., 537 F.3d 404, 435 (5th Cir. 2008).

Plaintiffs do not allege that Williby himself used excessive force against Story, or that he ordered his officers to use force. The only allegation regarding an order from Williby is that he "hastily instructed" Sergeant Chavez "to reference a statute." (Dkt. # 29 at 11.) And Plaintiffs have pled no facts that Williby implemented unconstitutional policies.

Plaintiffs also lodged a "failure to train or supervise" claim against both Williby and Chief Yarbrough, alleging that they "were callously indifferent in

---

4:22-CV-00547, 2023 WL 1997118, at *9 (S.D. Tex. Feb. 14, 2023) (citing Joseph v. Bartlett, 981 F.3d 319, 345-46 (5th Cir. 2020)).

supervising, failing to train, or both, their subordinates as to how to investigate a person alleged to have committed an offense, how to prepare an affidavit to apply for and obtain a warrant, and how to execute a warrant."  (Dkt. # 20 ¶ 220.)  For a failure to supervise or train claim, the plaintiff must show that (1) the defendant failed to supervise or train the alleged bad actor, (2) there is a causal connection between the infringement of the plaintiff's constitutional rights and the lack of supervision or training, and (3) the failure to supervise or train exhibited deliberate indifference to the plaintiff's constitutional rights.  Peña v. City of Rio Grande City, 879 F.3d 613, 623 (5th Cir. 2018).  "Relief will not typically be available absent a showing of a pattern of constitutional violations, as opposed to a single incident."  Parker v. Blackwell, 23 F.4th 517, 525 (5th Cir. 2022) (citing Cozzo v. Tangipahoa Par. Council-President Gov't, 279 F.3d 273, 286 (5th Cir. 2002)).

Plaintiffs' allegations are inadequate.  As to training, Plaintiffs allege that Yarbrough later admitted that "his officers only had typical municipal street patrol training, not school resource officer training."  But Plaintiffs do not explain the import of this, beyond stating that "a police officer dealing with public schools, parents, and their minor children have different practices from those on patrol looking for criminal behavior."  (Dkt. # 20 ¶ 228(h) n.48.)  Plaintiffs also do not identify previous similar incidents or allege any facts that "the alleged abusive conduct occurred with such frequency" that Yarbrough and Williby were on notice

that training or supervision was needed.[7]  <u>Parker</u>, 23 F.4th at 525.  Thus, Story's

claims for excessive force shall be dismissed.

     B.       <u>Unreasonable Seizure</u>

       Story and Clark also appear to allege that they were seized in violation

of their Fourth Amendment rights when they were removed from the meetings in

August and September, respectively.  "A person has been 'seized' within the

meaning of the Fourth Amendment only if, in view of all of the circumstances

surrounding the incident, a reasonable person would have believed that he was not

free to leave . . . ."  <u>United States v. Mendenhall</u>, 446 U.S. 544, 545 (1980).  The

Fifth Circuit has previously stated that it was "convinced" that an interaction

between an officer and a speaker at a meeting "was a seizure under the Fourth

Amendment" when speaker was forced to leave the meeting.  <u>Heaney v. Roberts</u>,

846 F.3d 795, 805 (5th Cir. 2017).

       Even so, the Constitution only prohibits unreasonable seizures.  <u>Terry</u>

<u>v. Ohio</u>, 392 U.S. 1, 9, 88 (1968) (citing Elkins v. United States, 364 U.S. 206, 222

(1960)).  As for Story, the Court cannot say that his removal was reasonable, given

the factual disputes present here.  But Plaintiffs have failed to state a claim of

---

[7] Plaintiffs' allegations of a failure to train or supervise on the part of Azaiez are
deficient for the same reasons.  (<u>See</u> Dkt. # 20 ¶ 228.)  For example, Plaintiffs
allege that Azaiez "failed to ensure that the District developed a multi-hazard
emergency operations plan," (<u>id.</u> ¶ 144), but do not expound on the relevance of
this failure.

unreasonable seizure as to Clark.  Plaintiffs do not contend that Clark was a recognized speaker or that he did not receive a warning, and Plaintiffs have failed to establish that an exception to the independent intermediary doctrine applies to the magistrate's determination that there was probable cause to believe that Clark hindered an official proceeding.

Story has also only alleged the personal involvement of Officers Pope and Pontillo.  Story's claim will be dismissed as to the remaining individual Defendants.

C.    <u>False Arrest</u>

Citizens have a right under the Fourth Amendment to be free from arrest unless the arrest is supported by either a properly issued arrest warrant or probable cause.  <u>Flores v. City of Palacios</u>, 381 F.3d 391, 402 (5th Cir. 2004).  The Officer Defendants assert Plaintiffs have not stated a valid claim for false arrest because an "independent intermediary"—the Williamson County magistrate— determined that probable cause existed for Plaintiffs' arrest.  (Dkt. # 25 at 9.)

"It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party."  <u>McLin v. Ard</u>, 866 F.3d 682, 689 (5th Cir. 2017) (quoting <u>Deville v. Marcantel</u>, 567 F.3d 156, 170 (5th Cir. 2009)).  A properly secured arrest warrant

thus will shield a defendant who has committed or initiated a false arrest; the doctrine applies even if the officer acted with malice. Buehler v. City of Austin/Austin Police Dep't, 824 F.3d 548, 553–54 (5th Cir. 2016) (citing Hand v. Gary, 838 F.2d 1420, 1427 (5th Cir. 1988)).

However, the intermediary must be truly independent. "[T]he initiating party may be liable for false arrest if the plaintiff shows that 'the deliberations of that intermediary were in some way tainted by the actions of the defendant.'" Deville, 567 F.3d at 170 (quoting Hand, 838 F.2d at 1428 (5th Cir. 1988)). The Fifth Circuit has sometimes referred to this principle as the "taint exception." See McLin, 866 F.3d at 689.

The Fifth Circuit has also recognized that a Franks claim acts as a functional exception to the independent intermediary doctrine. Wilson v. Stroman, 33 F.4th 202, 208 (5th Cir.). "[A]n officer can be liable under Franks for 'deliberately or recklessly' including a material false statement or omission in a warrant application submitted to a magistrate." Wilson, 33 F.4th at 206 (quoting Melton v. Phillips, 875 F.3d 256, 264 (5th Cir. 2017) (en banc)); see Franks v. Delaware, 438 U.S. 154 (1978). Because this case involves only one intermediary, "allegations that prove a Franks claim will do double duty as the allegations that also establish the taint exception." Wilson, 33 F.4th at 209–10.

Story and Clark were both charged with the offense of "Hindering Proceedings by Disorderly Conduct."  According to the Texas Penal Code:

(a) A person commits an offense if he intentionally hinders an official proceeding by noise or violent or tumultuous behavior or disturbance.

(b) A person commits an offense if he recklessly hinders an official proceeding by noise or violent or tumultuous behavior or disturbance and continues after explicit official request to desist.

(c) An offense under this section is a Class A misdemeanor.

Texas Penal Code § 38.13.

Plaintiffs allege that "Azaiez arranged for the military arm of his operation, the RRISD Officer Defendants, to create the false warrant and then encourage the retaliatory arrests by communicating with the Williamson County Judge and other county officials to facilitate the retaliatory arrests of Plaintiffs." (Dkt. # 20 ¶ 143.)  Plaintiffs also state that Azaiez "communicated via text and other means with the Williamson County Judge and other county officials to encourage the county to arrest Plaintiffs."  (Id. ¶ 118.)

The Complaint details the "falsehoods" or "errors" included within the warrant affidavit for Story's arrest.[8]   Defendants, meanwhile, deny that the

---

[8] The Court agrees with Defendants that the Malley exception to the intermediary doctrine does not apply here.  Malley would apply if the warrant affidavits presented to the magistrate were "so lacking in indicia of probable cause as to render official belief in its existence unreasonable."  See Malley v. Briggs, 475

warrants contained any false information but contend that "even without the allegedly false information, there remains sufficient undisputed content in the warrant affidavit to support a finding of probable cause."  (Dkt. # 25 at 10.)

Story's warrant affidavit, which was based on the incident at the August Board meeting, was prepared by Detective Sergeant Griffith based on information provided to her by Sergeant Pope.  The Court has reviewed the warrant affidavit[9] and finds that, setting aside the "material that is the subject of the alleged falsity or reckless disregard," and taking Plaintiffs' allegations as true, Plaintiffs have stated a plausible claim as to Story's arrest.  Plaintiffs claim that—contrary to several statements in the affidavit—Story did not have "several outbursts while speaking." (Dkt. # 20 ¶ 245.)  This raises a factual dispute that the Court cannot resolve at this juncture.  See Sinegal v. City of El Paso, No. EP-19-CV-107-KC, 2020 WL 13442013, at *5 (W.D. Tex. July 6, 2020) ("Either the allegations in [the plaintiff's complaint] are untrue, or the allegations in the reports and affidavits of the Officers are untrue.  Such a fundamental factual dispute cannot be resolved by the Court . . . on a motion to dismiss.")

---

U.S. 335 (1986). The warrant affidavits in this case facially supply probable cause to arrest Story and Clark.

[9] Pleadings in the Rule 12(b)(6) context include attachments to the complaint.  In re Katrina Canal Breaches Litig., 495 F.3d at 205.  Plaintiffs included the warrant affidavits as an attachment to the Complaint.  (See Dkt. # 1 at 198–211.)

However, Plaintiffs do not allege that the warrant affidavit for Clark contained any specific "errors" or "falsehoods."  Clark's warrant affidavit was prepared by Detective Sergeant Griffith based on information provided to her by Sergeant Chavez.  "[M]ere allegations of taint may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference." McLin, 866 F.3d at 690.  But Plaintiffs have not sufficiently alleged that any of the Officer Defendants or Azaiez withheld relevant information or otherwise misdirected the intermediary.[10]  See Shaw v. Villanueva, 918 F.3d 414, 418 (5th Cir. 2019) (finding that the plaintiff did not establish an exception to the independent intermediary doctrine because the plaintiff pleaded no specific facts that the officers misdirected the magistrate into issuing the arrest warrant).

In addition, in the Fifth Circuit, "a law enforcement officer 'must have assisted in the preparation of, or otherwise presented or signed a warrant application in order to be subject to liability under Franks.'"  Terwilliger v. Reyna, 4 F.4th 270, 283 (5th Cir. 2021) (quoting Melton v. Phillips, 875 F.3d 256, 263 (5th Cir. 2017)).  If an officer does not present or sign the affidavit, liability

---

[10] In their Response, Plaintiffs did not meaningfully address Defendants' assertion that Plaintiffs did not plead facts about any false or misleading statements in the warrant affidavit supporting Clark's arrest.  (See Dkt. # 25 at 10.)  Thus, Clark's false arrest claim may also be dismissed on the grounds of waiver.  See, e.g., Slaughter v. Torres, No. CV 18-362-JWD-EWD, 2023 WL 2507578, at *4–5 (M.D. La. Mar. 14, 2023).

attaches only if the officer prepared information for use in the warrant application.
Id.

As Defendants note, Yarbrough, Williby, Pontillo, and Chavez were not alleged to have been involved in the warrant application process for Story's arrest.  (Dkt. # 25 at 8.)  Thus, only the claims against Griffith and Pope can survive.

III.    Fourteenth Amendment Claim

To maintain an equal protection claim, a plaintiff must allege and prove that he "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent."  Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001).  Story has plausibly alleged that he was treated differently than other speakers at the August Board Meeting.  "Government action that suppresses protected speech in a discriminatory manner may violate both the First Amendment and the Equal Protection Clause."  See Schnekloth v. Deakins, No. 21-CV-5131, 2022 WL 1050380, at *7 (W.D. Ark. Apr. 7, 2022) (quoting Dariano v. Morgan Hill Unified Sch. Dist., 767 F.3d 764, 779 (9th Cir. 2014)).

As noted above, Story alleges that, unlike other speakers who deviated from the posted agenda items to speak about Azaiez, he alone—due to his status as a vocal critic of the Board—was "dragged from the podium by police" and

expelled from the meeting at the direction of President Weir.  (Dkt. # 20 ¶ 40.)
"Even if [Defendants] possess a legitimate government interest in removing
disruptive participants from school board meetings, the legitimacy of their decision
to remove Plaintiff from the [August 16] school board meeting cannot be resolved
at this stage."  Miller v. Goggin, No. CV 22-3329-KSM, 2023 WL 3294832, at
*22–23 (E.D. Pa. May 5, 2023) (citing Montanye v. Wissahickon Sch. Dist., 327 F.
Supp. 2d 510, 520 (E.D. Pa. 2004)).  Taking the pleaded facts as true and viewing
them in the light most favorable to Plaintiffs, Story has stated a plausible equal
protection "class-of-one" claim.

However, Story has only pled the personal involvement of President
Weir, Sergeant Pope, and Officer Pontillo in Story's ejection from the meeting.
This claim is thus dismissed as to the remaining individual Defendants.

IV.   _Monell_ Claims

"A municipal entity, such as an independent school district, cannot be
held vicariously liable under § 1983 for the individual acts of its employees."
Maxwell v. Mesquite Indep. Sch. Dist., No. 3:20-CV-3581-S, 2021 WL 4260756,
at *2–3 (N.D. Tex. Sept. 19, 2021); see Monell v. New York City Dep't of Soc.
Servs., 436 U.S. 658 (1978).  To impose § 1983 liability on the District, Plaintiffs
must show (1) an official policy or custom; (2) a policymaker who can be charged
with actual or constructive knowledge of the policy; and (3) a violation of

constitutional rights whose "moving force" is the policy or custom.  See Piotrowski

v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).  "Under Texas law, the final

policymaking authority in an independent school district rests with the

district's board of trustees."  Maxwell, 2021 WL 4260756, at *2–3 (N.D. Tex.

Sept. 19, 2021) (citing Eugene v. Alief Indep. Sch. Dist., 65 F.3d 1299, 1304 (5th

Cir. 1995).

A.        Board policy or custom

The Fifth Circuit has defined an "official policy" that can lead to

liability on the part of a governmental entity as:

> 1. A policy statement, ordinance, regulation, or decision that is
> officially adopted and promulgated by the municipality's lawmaking
> officers or by an official to whom the lawmakers have delegated
> policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees,
> which, although not authorized by officially adopted and promulgated
> policy, is so common and well settled as to constitute a custom that
> fairly represents municipal policy.  Actual or constructive knowledge
> of such custom must be attributable to the governing body of the
> municipality or to an official to whom that body had delegated policy-
> making authority.

Shemwell v. Cannon, 352 F. Supp. 3d 690, 698–99 (N.D. Tex. 2019) (quoting

Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam)).

Defendants admit that the limited public comment rule in BED

(Local) and the seating limitation rule "are claims involving Board action for

which the District could be held liable under section 1983 if Plaintiffs could show

they caused a violation of their constitutional rights." (Dkt. # 27 at 15.)  The Court has already found that Plaintiffs' facial challenge to BED (Local) cannot survive a motion to dismiss, but that the challenge to the seating limitation rule does.  A claim thus survives against the District.

Defendants also contend that "[t]he Complaint pleads no fact regarding a widespread practice or custom of such violations." (Id.)  The Court agrees that Plaintiffs have failed to allege sufficient facts regarding a widespread custom or practice.  (Indeed, Story's as-applied challenge to BED (Local) and Fourteenth Amendment "class-of-one" claim turn on his allegation that he was the only person ejected from the August meeting.)

"To prevail on a widespread practice or customary policy claim, [Plaintiffs] must ultimately prove a pattern of similar unconstitutional acts that 'have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct.'" Sinegal, 414 F. Supp. 3d at 1009 (quoting Zarnow v. City of Wichita Falls, Tex., 614 F.3d 161, 169 (5th Cir. 2010)).  In other words, a pattern "requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'"  "A pattern also requires similarity and specificity." Id.  Because Plaintiffs have not identified similar prior incidents, claims against the District that rely on a widespread practice or customary policy will be dismissed.

B.        Failure to supervise or train

Plaintiffs also do not state a claim against the District based on a failure to train or supervise.  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  Connick v. Thompson, 563 U.S. 51, 61 (2011).

As noted previously, to state a claim based on a failure to supervise or train, Plaintiffs must show that (1) the supervisor failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounts to deliberate indifference.  Gates, 537 F.3d at 435.  As with a widespread practice claim, allegations of multiple incidents of fairly similar unconstitutional conduct are typically necessary to survive dismissal.  See Speck v. Wiginton, 606 F. App'x 733, 736 (5th Cir. 2015) (citing Connick, 563 U.S. at 62).  To establish deliberate indifference, Plaintiffs must show that (1) the supervisor had "actual or constructive notice that a particular part or omission in a training or supervision program causes . . . employees to violate citizens' constitutional rights," and (2) nonetheless chose to retain the program.  Porter, 659 F.3d at 447 (quoting Connick, 563 U.S. at 61).

The Court agrees with Defendants that Plaintiffs' allegations "are unsupported, conclusory assertions that the District needed more training regarding

40

arrests, warrants, and general police conduct." (Dkt. # 27 at 17.) The Complaint lacks well-pleaded facts as to the Board's awareness of a deficiency in its training or a pattern of similar violations such that the Board should have been on notice.

V.    Immunity and Individual Liability

All individual Defendants assert the defense of qualified immunity; the Trustee Defendants and Azaiez also assert absolute immunity.

A.    Absolute Immunity

The Trustee Defendants and Azaiez assert that they are entitled to absolute legislative immunity. (Dkt. # 26 at 4–5.) "Legislative immunity protects officials fulfilling legislative functions even if they are not 'legislators.'" Bryan v. City of Madison, 213 F.3d 267, 272 (5th Cir. 2000). In determining whether legislative immunity applies, courts have distinguished between (1) establishing a policy, act, or law, and (2) enforcing or administering it. Hughes v. Tarrant Cnty., 948 F.2d 918, 920 (5th Cir. 1991). The Fifth Circuit "uses two tests to determine whether a defendant's actions were 'functionally legislative' so as to warrant protection under the doctrine of absolute legislative immunity." Gatehouse Water LLC v. Lost Pines Groundwater Conservation Dist., No. A-22-CV-00132-LY, 2022 WL 3362287, at *3 (W.D. Tex. Aug. 15, 2022) (citing Hughes, 948 F.2d at 920)).

The first test examines the nature of the underlying facts used to reach the challenged action or decision: the action is legislative if the underlying facts on which the decision is based pertain to "legislative facts" like "generalizations concerning a policy or state of affairs," and the action is *not* legislative "if the underlying facts are more specific and relate to a particular individual or situation." Id. (citing Hughes, 948 F.2d at 920)). The second test focuses on the "particularity of the impact" of the challenged action or decision: "[i]f the action involves establishment of a general policy, it is legislative," but "[i]f the challenged action or decision singles out 'specific individuals and affect[s] them differently from others, it is administrative.'" Id. (quoting Hughes, 948 F.2d at 920)).

Applying the tests to the facts, the Court finds that the Trustee Defendants and Azaiez are entitled to legislative immunity with respect to the limited seating rule. But the enforcement of BED (Local) was not based on legislative facts and did not purport to establish a general policy. See Hughes, 948 F.2d 921 (5th Cir. 1991). There is no entitlement to absolute legislative immunity for that decision.

B.      Qualified Immunity

When the defense of qualified immunity is raised via a Rule 12(b)(6) motion, it is the defendant's conduct *as alleged* in the complaint that is scrutinized for purposes of the qualified immunity analysis. See Behrens v. Pelletier, 516 U.S.

299, 309 (1996).  A defendant cannot succeed on a qualified immunity defense at this stage if the pleadings on their face show an unreasonable violation of a clearly established constitutional right.  Shipp v. McMahon, 234 F.3d 907, 912 (5th Cir. 2000), overruled on other grounds, McClendon v. City of Columbia, 305 F.3d 314 (5th Cir. 2002)).

The remaining claims that survive Defendants' Motions to Dismiss—certain of Story's First and Fourth Amendment claims, as well as his Fourteenth Amendment claim—involve issues of factual interpretation.  Where claims against individual Defendants are proceeding, this Court will revisit the application of qualified immunity at the summary judgment stage on a complete record.

VI.  Conspiracy Claim

"To state a claim under 18 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy involving two or more persons; (2) for the purpose of depriving directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." Texas Democratic Party v. Abbott, 961 F.3d 389, 410 (5th Cir. 2020) (quoting Hillard v. Ferguson, 30 F.3d 649, 652–53 (5th Cir. 1994)).  The facts alleged in the complaint must show the conspiracy was motivated by racial or

class-based animus.  <u>Horiast v. Doctor's Hosp. of Opelousas</u>, 255 F.3d 261, 271 (5th Cir. 2001).

      "A conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."  <u>Terwilliger v. Reyna</u>, 4 F.4th 270, 285 (5th Cir. 2021) (citing <u>Twombly</u>, 550 U.S. at 557, 127 S. Ct. at 1966); <u>see also</u> <u>Arsenaux v. Roberts</u>, 726 F.2d 1022, 1024 (5th Cir. 1982) (holding that conclusory allegations of conspiracy, without reference to material facts, could not survive a motion to dismiss).  Although Plaintiffs' Complaint is riddled with allegations of conspiracy, it has not sufficiently pled facts from which a conspiratorial agreement to violate Plaintiffs' constitutional rights can be plausibly inferred.  (<u>See</u> Dkt. # 20 ¶ 249) ("At all times, various groups of Individual Defendants acted in concert, both privately and overtly, with a meeting of the minds, to oppress the civil rights of Plaintiffs and are liable under 42 U.S.C. § 1985 for such violations.").  Nor have Plaintiffs alleged that Defendants acted out of a race- or class-based animus.[11]  Plaintiffs' § 1985(3) claims must be dismissed.

---

[11] As Defendants point out, Plaintiffs also may have not stated a claim because the Fifth Circuit has held that "a school board and its employees constitute a single legal entity which is incapable of conspiring with itself for the purposes of § 1985(3)."  <u>Hilliard v. Ferguson</u>, 30 F.3d 649, 653 (5th Cir. 1994).  <u>But see</u> <u>Hill v. City of Houston</u>, 991 F. Supp. 847, 851 (S.D. Tex. 1998) (stating that the court was "unconvinced, for purposes of a Rule 12(b)(6) Motion to Dismiss, that the single entity doctrine should be applied to preclude Plaintiffs' conspiracy claims" where three separate departments of the City of Houston were alleged to have conspired with each other).

VII.   <u>Texas Open Meetings Act Claims</u>

Finally, Defendants argue that the Complaint fails to state a TOMA violation.  Plaintiffs allege that the Board violated TOMA by "secretly hiring Azaiez" and restricting public attendance at the September 14 Board meeting through the limited seating rule.  (Dkt. # 28 at 16.)

The Court finds that Plaintiffs have not stated a claim that the Board violated TOMA with respect to Azaiez's hiring.

Plaintiffs claim that the language of the notice, which provided that the Board would "deliberate applicants for Superintendent, including the possibility of naming finalists for the position," did not provide sufficient notice to the public that the Board would name Azaiez as the sole finalist and authorize Weir to negotiate a contract with Azaiez.  (Dkt. # 20 ¶ 252.)  The Texas Supreme Court has held that notices of meetings of governmental bodies must provide "full and adequate notice, particularly where the subject slated for discussion [is] one of special interest to the public"—for instance, the selection of a new school superintendent.  <u>Cox Enters., Inc. v. Bd. of Trustees of Austin Indep. Sch. Dist.</u>, 706 S.W.2d 956, 959 (Tex. 1986).  But Texas case law is also clear that "although the reader needs to know the topic of discussion, the notice need not state all of the possible consequences resulting from consideration of the topic."  <u>Washington v. Burley</u>, 930 F. Supp. 2d 790, 807 (S.D. Tex. 2013) (quoting <u>Rettberg v. Tex. Dep't</u>

of Health, 873 S.W.2d 408, 411 (Tex. App.—Austin 1994, no writ)).  "[T]hat

better language could have been chosen to describe the subject of the Meeting does

not mean the language actually used is inadequate under Texas law."[12]  Palacios v.

City of Crystal City, No. DR-11-CV-53-AM-VRG, 2014 WL 11320459, at *6

(W.D. Tex. Sept. 30, 2014), aff'd sub nom. Palacios v. City of Crystal City, 634 F.

App'x 399 (5th Cir. 2015) (citations omitted).  The Court finds that the language of

the notice in this case adequately alerts the reader to the subject of discussion.  And

Plaintiffs' arguments regarding a "walking quorum" do not contain any well-

pleaded facts that a quorum of the Board met, considered, deliberated, or voted

regarding Azaiez's employment outside of a properly noticed public meeting.

        However, the Court finds that Plaintiffs plausibly state a claim that

Defendants violated TOMA with respect to the limited public seating rule.  In

addition to adequate notice of meetings, TOMA requires "[e]very regular, special,

or called meeting" of a school district board of trustees to "be open to the public,

except as provided by this chapter."  TEX. GOV'T CODE §§ 551.002, 551.001(3)(E).

Plaintiffs allege specifically that the Board called for a vote on an item that was not

---

[12] For example, in Sokolow v. City of League City, notice that the city council
would "[d]iscuss and possibly take action on the duties, responsibilities of the City
Attorney," was found to be "sufficient notice of the various consequence[s],
including termination, which might naturally flow from such a discussion."  37
F.Supp.2d 940, 947 (S.D.Tex.1999).  But a notice merely describing the topic as
"personnel" does not provide adequate notice that the subject to be discussed is the
selection of a new school superintendent.  Cox, 706 S.W.2d at 959.

properly noticed and prevented attendees from entering the meeting.  (Dkt. # 28 at 19.)

CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motions to Dismiss (Dkts. ## 25, 26, 27), and **DENIES WITHOUT PREJUDICE** Plaintiff's Application for Preliminary Injunctive Relief (Dkt. # 20).

Plaintiffs have leave to file a second amended complaint, should they choose to do so, within **thirty (30) days** of the date of this Order.  Plaintiffs are cautioned that, in filing an amended complaint, Plaintiffs must present facts to support any allegations made.

**IT IS SO ORDERED**.

**DATED**: Austin, Texas, July 26, 2023.


_____
David Alan Ezra
Senior United States District Judge