UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS – AUSTIN DIVISION

| | | |
|---|---|---|
| JEREMY STORY, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| SUPERINTENDENT HAFEDH AZAIEZ, | § | CIVIL ACTION NO. |
| TRUSTEES AMBER FELLER, TIFFANIE | § | 1:22-cv-00448-DAE |
| HARRISON, AMY WEIR, JUN XIAO, CORY | § | |
| VESSA; OFFICERS JEFFREY YARBROUGH, | § | |
| JAMES WILLIBY, DEBORAH GRIFFITH, | § | |
| MILTON POPE, FRANK PONTILLO, RON | § | |
| COLE, CHIEF DENNIS WEINER, and CARLA | § | |
| AMACHER, individually, and ROUND ROCK | § | |
| INDEP. SCHOOL DISTRICT, | § | |
| | § | |
| *Defendants.* | § | |

---

**JAMES WILLIBY'S MOTION TO DISMISS AND JEFFREY YARBROUGH'S
PARTIAL MOTION TO DISMISS PLAINTIFF JEREMY STORY'S
THIRD AMENDED COMPLAINT AND BRIEF IN SUPPORT**

---

**THOMPSON & HORTON LLP**

**KATHRYN E. LONG**
State Bar No. 24041679
klong@thompsonhorton.com

**K. ADAM ROTHEY**
State Bar No. 24051274
arothey@thompsonhorton.com

500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

**ATTORNEYS FOR THE ROUND ROCK ISD DEFENDANTS,
INCLUDING JAMES WILLIBY AND JEFFREY YARBROUGH**

## SUMMARY OF THE ARGUMENT

Plaintiff Jeremy Story's Third Amended Complaint (the "Complaint") attempts to assert First, Fourth, and Fourteenth Amendment claims against former Round Rock Independent School District ("RRISD" or the District") Assistant Chief of Police James Williby and former Police Chief Jeffrey Yarbrough. Story's claims relate to: (1) his physical removal from a Board meeting on August 16, 2021 (the "August 16 meeting") by RRISD Officers Milton Pope and Frank Pontillo; (2) his exclusion from a Board meeting on September 14, 2021 (the "September 14 meeting") by Pope and Pontillo and their alleged use of excessive force; and (3) his alleged false arrest based on a warrant application prepared by RRISD Sergeant Lauren Griffith related to the August 16 meeting, which relied on information provided by Pope.

In general, Story's claims against Williby and Yarbrough are premised on their alleged failure to supervise the alleged actions of Pope, Pontillo, and Griffith. Because Story does not plead an underlying constitutional violation, he cannot state a section 1983 claim against Yarbrough or Williby under a failure to supervise theory. However, even if he could show an underlying constitutional violation, this Court previously dismissed Story's excessive force claims against Yarbrough and Williby under a supervisory liability standard because Story pled no facts that Williby used excessive force against Story or ordered his officers to use force (Dkt. 43 p. 28), and identified no previous similar incidents or pled no facts that any alleged abusive conduct related occurred with such frequency that Williby or Yarbrough were on notice that supervision of Pope and Pontillo was needed (*id.* at 29–30). Story's Complaint fails to address these deficiencies and further fails to plead anything other than regurgitated or reformulated conclusory allegations as to why Yarbrough and Williby should otherwise be held liable as supervisors for alleged violations of Story's First, Fourth, and Fourteenth Amendment rights. As such, Story's supervisory liability claims must fail.

To the extent that Story's failure to supervise claims against Yarbrough and Williby are actually claims for bystander liability, these claims likewise fail because he does not plausibly plead that Yarbrough or Williby knew that Story's constitutional rights were being violated, had a reasonable opportunity to prevent the harm, and chose not to act. And to the extent Story attempts to directly assert Fourteenth Amendment equal protection claims against Williby and Yarbrough, those claims fail because there are no non-conclusory or non-speculative allegations that Williby or Yarbrough violated a constitutional right or otherwise treated Story differently than similarly situated individuals.

## RELEVANT BACKGROUND

The Court previously summarized many of the factual allegations. Dkt. 43.

Story's claims against Williby and Yarbrough primarily arise out of: (1) the removal of Story from the August 16 meeting; (2) the alleged forceful prevention of Story from entering the September 14 meeting; and (3) Story's September 17, 2021, arrest arising out his conduct at the August 16 meeting referenced in a warrant application prepared by Griffith based on information provided by Pope.[1]

### I.    The August 16 Meeting

Story claims that in July 2021—after the Board's June 14, 2021, vote to hire Dr. Azaiez as its Superintendent—he became aware of allegations of personal misconduct by Azaiez. Dkt. 49 ¶¶ 13–18. Story made the Board aware of the allegations and a related protective order via emails and social media. *Id.* ¶¶ 19–23.[2]

The August 16 meeting was a "special" meeting under District policy BED(Local), which limited public comment to "items on the agenda" for the meeting. *Id.* ¶¶ 28–29. The August 16

---

[1]    The following summary is based on the factual allegations in the Complaint, Dkt. 49, as well as the documents and recordings attached to, referenced in, or in the appendix (Dkt. 49-1) incorporated into the Complaint, which, under Federal Rule of Civil Procedure 12(b)(6), are assumed to be true.

[2]    As of the time Story entered the August 16 meeting, the Board knew he was a leader of the opposition to the District's hiring of Azaiez. Dkt. 49 ¶ 37.

meeting had two agenda items: (1) COVID-19 Employee Leave; and (2) Fall 2021 COVID-19 Health and Safety Protocols. *Id.* Griffith was in the parking lot outside the location of the August 16 meeting and had been informed that Story was approaching. *Id.* ¶ 30. Story alleges that before he began to speak during the public comment portion of the August 16 meeting, Yarbrough approached Story, demanded that he leave the room to speak outside—to which demand Story did not comply—and "unconstitutionally threatened Story." *Id.* ¶ 31.

Story remained in the August 16 meeting after his alleged encounter with Yarbrough and addressed the Board during public comment. *Id.* ¶ 32.[3] Story alleges his comments were "germane to the agenda," but that as soon as he mentioned the allegations and related protective order regarding Azaiez, Board President Amy Weir interrupted him, and Pope and Pontillo physically removed him from the meeting. *Id.* ¶ 34. Story does not allege he suffered any physical injuries in connection with his removal from the August 16 meeting. He alleges he filed a complaint with Williby on August 18 related to his removal from the August 16 meeting and that Williby responded to that complaint on September 4 by informing Story that the Police Department's internal investigation had concluded it could not investigate the complaint because it was against the police chief (Yarbrough), Trustees, and Azaiez. *Id.* ¶¶ 38, 42. Story also alleges he spoke with Yarbrough on August 19, 2021 about his removal from the August 16 meeting. Dkt. 49 ¶ 39. Yarbrough explained to Story that he was removed because he could only speak about items on the Board agenda. *Id.*

---

[3]     Story alleges that a video of the entire August 16 meeting is available at https://roundrockisdtx.new.swagit.com/videos/130528. Dkt. 49 ¶ 32 n.7. When considering video evidence in a motion to dismiss, "the court is not required to favor the plaintiff's allegations over the video evidence," *Scott v. White*, No. 1:16-CV-1287-RP, 2018 WL 2014093, at *1 (W.D. Tex. Apr. 30, 2018) (quoting *Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017)), if it "provides so much clarity that a reasonable jury could not believe [the plaintiff's] account," *id.* (quoting *Darden v. City of Fort Worth*, 880 F.3d 722, 730 (5th Cir. 2018)).

## II.    The September 14 Meeting

At the September 14 meeting, Story alleges that the District limited seating capacity in the meeting room to eighteen seats, spaced at least six feet apart (the "18-seat limitation"). Dkt. 49 ¶ 45. The meeting room allegedly had a seating capacity of 375. *Id.*[4] Story alleges that the Trustees "used RRISD police officers to … prevent parents from entering the [ ] meeting room … ." *Id.* Specifically, Story alleges that Pope and Pontillo prevented him and other parents from entering the meeting room citing COVID restrictions as the basis. *Id.* ¶ 60. Story asked them to specify who directed them to restrict access to the meeting but got no response. *Id.* ¶ 62. At one point, a police officer allegedly "nodded to indicate that … Yarbrough" told them to block the doors. *Id.* ¶ 64. Once the Board meeting started, police officers allegedly allowed some people into the meeting, apparently based on who was scheduled to participate in public comment, while refusing entry to others. *See id.* ¶ 65.

Story attempted to enter the meeting room multiple times but was blocked by Pope and Pontillo. Dkt. 49 ¶ 66. Story and others argued with police officers for more than forty-five minutes about the law governing access to Board meetings. *See id.* ¶¶ 61–62, 67. During these arguments, Williby allegedly instructed RRISD Police Officer Chavez to reference a penal code statute to Story and the other parents who were attempting to force their way into the meeting, while he allegedly watched Chavez through a door window. *Id.* ¶ 68. Pope and Pontillo also at one point allegedly referred to Williby "as an authority," who was watching through the door window. *Id.* ¶ 73. Williby allegedly watched through the window as Pope and Pontillo used force against Story "by bear-hugging him around a pole, cutting his back, and slamming him to the ground … ." *Id.* ¶ 77. Yarbrough was also allegedly at the September 14 meeting. *See id.* ¶ 217. Williby and Yarbrough allegedly did not intervene in Pope and Pontillo's alleged use of force. *Id.* ¶ 80.

---

[4]    Story asked that the Court take judicial notice of the video recording of the September 14 meeting, available at https://roundrockisdtx.new.swagit.com/videos/139574. Dkt. 49 ¶ 47 n.20.

III.    **Story's Arrest**

On September 17, 2021, a warrant was issued for Story's arrest. Dkt. 49 ¶ 95. Griffith signed the warrant affidavit with the alleged cooperation of Pope. *Id.* The warrant affidavit for Story allegedly contained false information regarding Story's behavior at the August 16 meeting. *Id.* ¶ 95. Story alleges that "[o]nly with Williby and Yarbrough's proactive and persistent personal involvement and supervisory actions over a 30 day period were Story's false affidavit and resulting arrest facilitated." *Id.* ¶ 218.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations that, when assumed to be true, state a claim that "is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When a complaint pleads facts that are "merely consistent with" a defendant's liability, "it 'stops short of the line between possibility and plausibility.'" *Id.* Although a court must accept well-pleaded facts as true, neither conclusory allegations nor "legal conclusions masquerading as factual conclusions" are entitled to a presumption of truth. *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009); *see also Iqbal*, 556 U.S. at 678–79, 681. If a plaintiff's allegations are contradicted by facts disclosed by a document attached to the complaint (or attached to the motion that is central to the plaintiff's claims and referenced by the complaint), then those contradicted allegations cannot be accepted as true. *Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013).

## ARGUMENT AND AUTHORITIES

I.    **Overview of qualified immunity.**

Individual defendants may invoke the defense of qualified immunity to section 1983 claims. Public servants are immune from suit unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S.

800, 818 (1982); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). The availability of qualified immunity is a question of law. *Siegert v. Gilley*, 500 U.S. 226, 231-32 (1991). Courts must determine (i) whether the plaintiffs have described a violation of a constitutional right; and (ii) whether the right was "clearly established" at the time of the official's conduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Under the first prong a court must decide "whether the plaintiff[s] ha[ve] alleged a violation of a constitutional right." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008) (citations omitted). The second prong requires a court to determine whether the right was clearly established at the time of the incident. *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 326 (5th Cir. 1998). If so, the court must evaluate whether the conduct of the official was objectively unreasonable under clearly established law. *Id.*; *Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008).

Plaintiffs bear the burden to show the official violated clearly established law. *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 347 (5th Cir. 2017); *Kovacic v. Villareal*, 628 F.3d 209, 212 (5th Cir. 2010), *cert. denied*, 564 U.S. 1004 (2011). Plaintiffs must identify the violation of a "particularized" right so that it is apparent to the official that his actions are unlawful in light of pre-existing law. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Plaintiffs may not defeat immunity by describing a "general proposition" of constitutional law, such as a right to equal protection. *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011). To defeat immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law *in the circumstances*." *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) (emphasis in original) (citations omitted). This means that "existing precedent" must have placed the question "beyond debate." *Al-Kidd*, 536 U.S. at 741.

In addition, plaintiffs must allege with specificity how the defendant violated the particularized right. *Kovacic*, 628 F.3d at 212; *Babb v. Dorman*, 33 F.3d 472, 479 (5th Cir. 1994). "The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances

would have then known that the defendant's conduct violated the United States Constitution … as alleged by the plaintiff." *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (emphasis in original). If "officers of reasonable competence could disagree on the issue, immunity should be recognized." *Hope v. Pelzer*, 536 U.S. 730, 752 (2002). The reasonableness of an official's actions is based on the information available to the official at the time of the event. *Morgan v. Swanson*, 755 F.3d 757, 760 (5th Cir. 2014). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Al-Kidd*, 563 U.S. at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see also Jordan v. Brumfield*, 687 F. App'x 408, 412 (5th Cir. 2017).

Once a defendant asserts qualified immunity, plaintiffs must respond with specificity and "fairly engage" the immunity defense. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). The standard requires more than conclusory assertions. *See Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996). Plaintiffs must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.    Standard for supervisor liability under 42 U.S.C. § 1983.

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." Dkt. 43 p. 28 (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir 1987)). To establish supervisor liability for constitutional violations committed by subordinate employees, a plaintiff must show that the supervisor acted, or failed to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates. *Id.* (citing *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011)). A supervisor is liable only if he (1) affirmatively participates in the acts that cause the constitutional deprivation, or (2) implements unconstitutional policies that causally result in the constitutional injury. *Id.* (citing *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). Accordingly, to establish section 1983 liability against a supervisor, a plaintiff must show that

(1) the supervisor failed to supervise the subordinate; (2) a causal connection existed between the failure to supervise and the violation of the plaintiff's rights; and (3) the failure to supervise amounts to deliberate indifference to the plaintiff's constitutional rights. *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) (citing *City of Canton v. Harris*, 489 U.S. 378 (1989); *Burge v. St. Tammany Parish*, 336 F.3d 363 (5th Cir. 2003)).

"For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). "Deliberate indifference requires a showing of more than negligence or even gross negligence." *Id.* And proof of more than a single incident of lack of supervision causing a violation of constitutional rights is generally required before such can constitute deliberate indifference. *Id.* at 382. Indeed, to rely on a single incident, the plaintiff must show that the "highly predictable" consequence of the failure to supervise would result in the specific injury alleged and that the failure to supervise was the "moving force" behind the constitutional violation. *Roberts*, 397 F.3d at 295. In the absence of such "extreme circumstances," however, to survive a motion to dismiss, a plaintiff must allege facts capable of showing that the supervisor had notice of a pattern of prior acts similar to what transpired, that the failure to supervise was "obvious and likely to result in a constitutional violation," and despite that notice failed to supervise. *Estate of Davis*, 405 F.3d at 381–86.

Qualified immunity also applies to section 1983 supervisory liability claims, like those asserted against Williby and Yarbrough. *Livezey v. The City of Malakoff*, 657 F. App'x 274, 278–79 (5th Cir. 2016) (holding that in the context of a failure to supervise claim, to negate an assertion of qualified immunity the plaintiff "must prove that no official standing in the place of [the supervisor] could have reasonably believed that his … supervision of [the subordinate] was lawful").

**III.    The Complaint does not state a plausible First Amendment supervisory liability claim.**

Story alleges that Williby violated his First Amendment free speech and petition rights "[a]s a supervising authority," of Chavez, Pontillo, and Pope who prohibited him from entering the September 14 meeting due to the 18-seat limitation implemented by Azaiez. Dkt. 49 ¶¶ 195–199. Story's claim against Williby appears to arise from allegations that he "instructed" Chavez "to reference a penal code statute," in responding to Story's demand that the officers provide a legal basis for their refusal to let him enter the meeting and watched through a door window as Pontillo and Pope allegedly used excessive force to keep Story from entering the meeting. *Id.* ¶¶ 68, 77. Story's supervisor claim against Yarbrough appears to stem from allegations that Azaiez can be "seen in police cam footage coordinating with Yarbrough and other police" during the September 14 meeting. *Id.* ¶ 197. These allegations, which are carried over from Story's Amended Complaint, Dkt. 20, do not state a failure to supervise claim as to either Williby or Yarbrough.[5]

As an initial matter, Williby and Yarbrough deny that the 18-seat limitation is unconstitutional. Indeed, this Court previously recognized that Story did not contend that a genuine seat spacing rule is unconstitutional, but only that the 18-seat limitation was unconstitutional as applied to him based on the motives of Azaiez and the Board in enacting it. Dkt. 43, p. 20 & n.3. Yet, nowhere in the Complaint does Story plead any facts that Williby, Yarbrough, or any of the police officer defendants had any role in enacting the 18-seat limitation or harbored any pretextual motive in enforcing it. Consequently, Story has not pled, and cannot plead an as-applied First Amendment violation against them. Even if he could, Story's conclusory allegation that Yarbrough can be seen in police cam footage coordinating with Azaiez during the September 14 meeting is wholly insufficient to demonstrate

---

[5]    Although Story identifies Yarbrough in subheading § VII.A.1 regarding the implementation of the District's BED Local policy, he does not appear to assert any specific allegations for supervisory liability against Yarbrough with respect to that claim. *See* Dkt. 49 ¶ 194.

Yarbrough's (1) affirmative participation in the acts that caused the alleged constitutional deprivation, or (2) implementation of unconstitutional policies that causally result in the constitutional injury so as to plausibly hold him liable under a supervisory liability standard. *Gates*, 537 F.3d at 435. The same is true as to Williby, who, at most, is alleged to have instructed Chavez to read an applicable penal code statute and observed Pontillo and Pope's actions through a door window.[6]

But even if Yarbrough's or Williby's actions could be characterized as affirmative participation in the acts that caused the alleged constitutional injury—which they are not—Story has alleged no facts plausibly demonstrating that those actions were deliberately indifferent to his constitutional rights as is required to state a failure to supervise claim. Story alleges no facts suggesting that either Yarbrough or Williby were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed with respect to Story's exclusion from the September 14 meeting. *Estate of Davis*, 406 F.3d at 381. Moreover, as this Court previously held, supervisory liability is not typically available "absent a showing of a pattern of constitutional violations, as opposed to a single incident." Dkt. 43 p. 29 (citing *Parker v. Blackwell*, 23 4th 517, 525 (5th Cir. 2022)). Here, Story has alleged no facts capable of showing that Yarbrough or Williby had notice of a pattern of prior acts by Pope or Pontillo fairly similar to what ultimately transpired, that the failure to supervise was "obvious and likely to result in a constitutional violation," and despite that notice they failed to supervise Pope or Pontillo. *See Estate of Davis*, 405 F.3d at 381–86.

Without such pleaded facts, Story does not show that Yarbrough's and Williby's alleged failure to supervise violated his clearly established rights or that the purported lack of supervision was clearly unreasonable under the circumstances. As a result, Yarbrough and Williby are entitled to qualified

---

[6]    Additionally, it seems incongruous for Story to assert a claim against Williby for failure to supervise actions by Chavez when Story does not assert any claims against Chavez for alleged constitutional violations.

immunity, and the Court should dismiss any First Amendment-based failure to supervise claims against them.

## IV. The Complaint lacks well-pleaded facts to state a First Amendment retaliation claim against Williby.

The Court previously held that Story had alleged sufficient facts to state a claim that he was engaged in constitutionally protected speech at the August 16 meeting and that his arrest would chill a person of ordinary firmness from continuing to engage in that activity. Dkt. 43 p. 23. The Court dismissed Story's retaliation claim as to Williby finding that Story had not alleged his "personal involvement" in Story's removal from the August 16 meeting or arrest. *See id.* Story, however, reasserts a retaliation claim against Williby solely because Williby was Pope and Pontillo's "supervisor" or "manager" and allegedly "directly instructed and approved of their behavior." Dkt. 49 ¶¶ 200–01.[7] But the allegation that Williby "directly instructed and approved of their behavior" is conclusory. The Complaint contains no well-pleaded facts that plausibly suggest Williby directly instructed Pope and Pontillo to remove him from the August 16 meeting or to use purportedly excessive force in doing so. Rather, Story alleges only that Weir interrupted him and Pope and Pontillo thereafter removed him from the meeting. Dkt. 49 ¶ 34.

But even if Story had plausibly alleged Williby "instructed" or "approved of their behavior," he cannot be held liable under a failure to supervise theory because Story again has alleged no facts

---

[7]    To the extent Story asserts a bystander claim through his allegations that Williby "was present and did not intervene" in Pope and Pontillo's removal of Story from the August 16 meeting, such a claim fails. To state a claim for bystander liability against Williby, Story must plausibly allege that Williby: (1) knew that Pope or Griffith were violating Story's constitutional rights by removing him from the August 16 meeting; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). But Story offers nothing more than conclusory allegations that Williby was "present" and "knew" excessive force "was being employed." Dkt. 49 ¶ 201. Indeed, Story does not even allege an injury so it is difficult to imagine how Williby might have known excessive force was being employed. These conclusory allegations are insufficient to state a plausible claim for bystander liability or overcome Williby's qualified immunity to such a claim.

capable of showing that Williby had notice that any actions were motivated by any retaliatory animus. Nor does he allege any facts that show a pattern of prior acts by Pope or Pontillo fairly similar to what ultimately transpired, that the failure to supervise was "obvious and likely to result in a constitutional violation," and despite that notice he failed to supervise Pope or Pontillo. *See Estate of Davis*, 405 F.3d at 381–86.

Furthermore, the pleaded facts do not show that Williby's failure to supervise Pope and Pontillo violated Story's clearly established constitutional rights, or that the lack of supervision was clearly unreasonable. This is particularly true given the complete absence of facts regarding any prior actions of Pope or Pontillo, or other RRISD officers, to engage in retaliatory conduct toward a member of the public. Williby is therefore entitled to qualified immunity as to this claim.

## V.    Story pleads no plausible Fourth Amendment claims against Williby or Yarbrough either directly or under supervisory liability.

This Court dismissed Story's excessive force claim against Williby finding that Story had not alleged that Williby himself used excessive force against Story or that he ordered his officers to use force. Dkt. 43 p. 28.[8] Story still does not allege that Williby used force against him or ordered Pope or Pontillo to use force in either removing him from the August 16 meeting or preventing his entry into the September 14 meeting. However, Story again seeks to hold Williby liable for the alleged excessive force by Pope and Pontillo under a supervisory liability standard merely because Williby "watch[ed]" Pope and Pontillo's alleged actions. *See* Dkt. 49 ¶¶ 225–26.

As this Court previously held, Story cannot hold Williby liable under a supervisory liability standard where he does not allege facts that Williby affirmatively participated in the acts that caused the alleged constitutional deprivation. Dkt. 43 p. 28 (citing *Gates*, 537 F.3d at 435). And, as previously

---

[8]    The Complaint does not assert any supervisory claim against Yarbrough related to Story's excessive force allegations. Dkt. 49 ¶ 224–26.

stated and as the Court previously held, Story does not allege that the 18-seat limitation itself is unconstitutional—only that it is unconstitutional as applied to him because of the alleged pretextual motives of those who enacted it (which did not include Williby or Yarbrough). *Id.* As a result, Story has not pleaded that Williby implemented an unconstitutional policy and cannot state an excessive force claim against Williby under a supervisory liability theory. *Id.* Story's failure to supervise claim regarding any excessive force by Pope or Pontillo also fails because he does not allege any facts that Williby knew of any propensity by Pope or Pontillo for the improper use of force. *Roberts*, 387 F.3d at 292. Again, there are no pleaded facts to show prior incidents where Pope or Pontillo used excessive force, much less allegations that they previously did so in similar circumstances to place Williby on notice of the need for more or different supervision. As a result, the Complaint lacks any facts to show Williby's lack of supervision evinces deliberate indifference to Story's constitutional rights. And the Complaint lacks well-pleaded facts to overcome Williby's assertion of qualified immunity.[9]

Story also re-urges his claim that Yarbrough and Williby should be held liable for his alleged false arrest based on their alleged supervision of the "affidavit creation and submission process which directly resulted in Story's arrest." Dkt. 49 ¶ 227. The Court previously dismissed this claim because, *inter alia*, Yarbrough and Williby were not alleged to have been involved in the warrant application process for Story's arrest and Story had not identified previous similar incidents or alleged any facts that the alleged abusive conduct occurred with such frequency that Yarbrough and Williby were on notice that supervision of Griffith and Pope during the warrant application process was needed. Dkt.

---

[9]    Story also fails to plausibly allege bystander liability as to Williby with respect to the alleged excessive force employed by Pope and Pontillo during the September 16 Board meeting. Story alleges that Williby was in a different room behind a door when the alleged excessive force occurred and, at most, observed the alleged excessive force. Dkt. 49 ¶ 77. Even if such allegations were sufficient to demonstrate Williby knew Pope and Pontillo had allegedly used excessive force, they do not plausibly suggest that Williby had sufficient opportunity to intervene yet affirmatively chose not to, as is required to state a claim of bystander liability. *Whitley*, 726 F.3d at 646.

43 pp. 29–30 (citing *Parker*, 23 F.4th at 525), 35–36. Story's Complaint still fails to plausibly allege any personal involvement of Yarbrough or Williby in the warrant application process. Rather, Story now speculates only that "Yarbrough and Williby *would have reviewed* the [allegedly] false affidavit for Story's arrest before submitting it," because he considers his arrest to have been "historically unprecedented" and preceded by large amounts of national and local press coverage. Dkt. 49 ¶ 207. Such allegations that Yarbrough or Williby might have reviewed the warrant affidavit are conclusory or speculative and are therefore insufficient to state a valid constitutional claim. *See Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (to state a constitutional violation against a government official, a plaintiff must allege "specific conduct," which requires more than conclusory assertions).[10]

Moreover, even if the Court were to accept those allegation as true, mere "review" of the warrant affidavit is insufficient to state a *Franks* claim. *See* Dkt. 43 pp. 35–36 (citing *Terwilliger v. Renya*, 4 F.4th 270, 283 (5th Cir. 2021) for the proposition that a law enforcement officer must have assisted in the *preparation* of, or otherwise *presented* or *signed* a warrant application to subject to *Franks* liability). Yarbrough and Williby cannot be held liable under *Franks* where there are no allegations that they either presented or signed the warrant application or prepared information for use in the warrant application. *Id.* Story also still does not identify any previous similar incidents or allege any facts that the alleged abusive conduct occurred with such frequency that Yarbrough and Williby were on notice of the need for more or different supervision of Griffith or Pope. Without such notice, the Complaint does not show that Yarbrough and Williby were deliberately indifferent to Story's constitutional rights. As a result, the Court should once again dismiss these claims.

---

[10]     Story also fails to plausibly allege bystander liability as to Yarbrough or Williby with respect to the warrant application process. Story alleges no facts that plausibly demonstrate that Yarbrough or Williby knew the warrant application contained allegedly false information, had sufficient opportunity to intervene in the warrant application process, or affirmatively chose not to do so as is required to state a claim of bystander liability. *Whitley*, 726 F.3d at 646.

**VI.    Story's Fourteenth Amendment equal protection and due process claims against Williby and Yarbrough should be dismissed.**

To state an Equal Protection claim, "a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir.1999). Story does not assert an equal protection claim based on any suspect classification. Rather, Story invokes the "'class of one' doctrine," Dkt. 49 ¶ 221, which focuses on discrimination against a specific individual. *Engquist v. Oregon Dept. of Agr.*, 533 U.S. 591, 601 (2008). As a class-of-one plaintiff, Story must show he was "intentionally treated differently from others similarly situated." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). He must also show that there is no "rational basis" for the state action. *Id.* Story carries "the heavy burden of negating any reasonably conceivable set of facts that could provide a rational basis for [his] differential treatment." *Lindquist v. City of Pasadena*, 525 F.3d 383, 387 (5th Cir. 2008). Any rational ground for the conduct in question will suffice to defeat a class of one claim. *See Stotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007); *Reid v. Rolling Fork Pub. Utility Dist.*, 854 F.2d 751, 754 (5th Cir. 1988). This high burden is necessary because "unless [it is] carefully circumscribed, the concept of a class of one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210 (10th Cir. 2004).

Story alleges Yarbrough and Williby should be held liable for failure to supervise the actions of Pope and Pontillo in removing Story from the August 16 meeting and preventing him from entering the September 14 meeting, which he alleges violated his Fourteenth Amendment rights to equal protection under the law and due process. Dkt. 49 ¶¶ 217, 222. Story also alleges Yarbrough should be held liable under a supervisory liability standard for Story's arrest because he "participated in actively supervising the creation and official submission of a false affidavit to arrest Story … ." *Id.* ¶ 217. Story also alleges that Williby treated him "unequally" by refusing to investigate Story's

complaint to the District's Police Department and act on it. *Id.* ¶¶ 38–42, 218. Finally, Story alleges Yarbrough treated him "unequally by harassing him in an attempt to chill his voice at the August [16 Board] meeting, while not asking others to behave or refrain from speaking … ." *Id.* ¶ 216. None of these allegations state a claim for failure to supervise. And Story's attempt to seek direct liability against Williby and Yarbrough fails to state a viable equal protection claim because the Complaint contains no facts that Williby treated Story's complaint differently than other similar complaints or that Yarbrough violated Story's constitutional rights or treated him differently than other similarly situated individuals merely by attempting to speak with Story privately prior to Story's public comments in the August 16 meeting.

As to Pope and Pontillo's removal of Story from the August 16 meeting, the Court previously held in dismissing Story's equal protection claim against all defendants other than Weir, Pope, and Pontillo, that Story has not pled any personal involvement of Williby or Yarbrough in his ejection from the August 16 meeting. Dkt. 43 p. 37. The Complaint does not cure these deficiencies. Story does not assert any well-pleaded facts to show that Williby or Yarbrough affirmatively participated in Story's removal from the August 16 meeting. Rather, he broadly concludes that Yarbrough was present at the meeting "personally supervising his officers and affirmatively participating and approving of the actions by Pope and Pontillo." Dkt. 49 ¶ 217. The only allegation regarding Williby is the conclusory allegation that he "directly instructed and approved of [Pope and Pontillo's] behavior." *Id.* ¶ 201. These conclusory allegations, however, do not constitute well-pleaded facts to show Yarbrough and Williby affirmatively participated in these acts to state a failure to supervise claim. Furthermore, the Complaint is bereft of any allegations that Yarbrough or Williby implemented unconstitutional policies that resulted in any equal protection violation regarding Story's removal from the August 16 meeting. Because the Complaint contains nothing more than conclusions, Story fails to provide factual content that can overcome Yarbrough's or Williby's qualified immunity with respect to this claim.

And as previously stated, to hold Williby or Yarbrough liable for Pope or Pontillo's action under a failure to supervise theory, Story must allege facts that demonstrate Williby and Yarbrough had notice of a pattern of prior acts fairly similar to what ultimately transpired, that the failure to supervise was "obvious and likely to result in a constitutional violation," and despite that notice they failed to supervise. *Estate of Davis*, 405 F.3d at 381–86. Story has alleged no such facts. Therefore, Story does nothing to show that Yarbrough and Williby were deliberately indifferent to his constitutional rights.

The same is true as to Story's attempt to hold Yarbrough liable with respect to the warrant affidavit process. There are no alleged facts showing that Yarbrough had notice of a pattern of prior acts by Pope or Griffith to allegedly create false warrant affidavits such that he had notice that the failure to supervise the warrant affidavit process would likely result in a constitutional violation and, despite that notice, still failed to supervise the process. *See id.* On the contrary, Story appears to allege, based entirely on conclusory allegations, that Yarbrough was "actively supervising" the warrant affidavit process "behind closed doors while working hard to keep his name off public documents." Dkt. 49 ¶ 217. As opposed to stating a failure to supervise claim, such conclusory allegations appear to either attempt to hold Yarbrough liable for his own alleged participation in the warrant affidavit process or under a bystander liability basis. But, Story has not alleged any well-pleaded facts that Yarbrough himself participated in the warrant affidavit process as described above in Section V. Neither has Story plausibly alleged that Yarbrough: (1) knew that Pope or Griffith were violating Story's constitutional rights with respect to the warrant affidavit; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act, as is required to demonstrate bystander liability. *Whitley*, 726 F.3d at 646.

Story's equal protection claim against Williby for an alleged failure to investigate Story's complaint made to the RRISD Police Department following his removal from the August 16 meeting

likewise lacks merit. To maintain an equal protection claim, a plaintiff must allege and prove that he "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent. Dkt. 43 p. 36 (citing *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)). But Story has not plausibly alleged that his complaint to the RRISD's Police Department was treated differently than any other complaint. Rather, he alleges only that Williby informed him that RRISD's Police Department could not address the complaint because it involved Yarbrough, the Board of Trustees, and the Superintendent. Dkt. 49 ¶ 42. In other words, Williby and the Police Department could not investigate their bosses. The Complaint contains no well-pleaded facts that Williby responded differently, or treated Story's complaint differently, from other similar complaints against high-ranking school officials. As a result, Story has not plausibly pleaded an equal protection claim against Williby regarding his response to Story's complaint. Nor has he plausibly pleaded Williby violated a clearly established constitutional right so as to defeat his assertion of qualified immunity.

Finally, Story has not plausibly stated an equal protection claim against Yarbrough related to his alleged "attempt[s]" to "chill [Story's] voice at the August [16 Board] meeting." Dkt. 49 ¶ 216. Story alleges that Yarbrough, in plain clothes, privately approached him before the August 16 meeting and asked him to step outside so they could speak alone. *Id.* ¶ 31. Story alleges he refused and Yarbrough "unconstitutionally threatened" him. *Id.* Story does not allege what threat Yarbrough actually made or why it was allegedly unconstitutional, and he further admits that he remained in the meeting despite whatever alleged threat Yarbrough made. *Id.* Story likewise fails to allege anything more than conclusory or speculative allegations that there were "others" who had yelled and threatened people. *Id.* These allegations fail to state an equal protection claim against Yarbrough because they do not even identify the violation of a constitutional right, much less how Yarbrough treated similarly situated individuals differently. It is undisputed that Story remained in the August 16

meeting and was only removed *after* he began speaking during the public comment period. Story does not, therefore, state an equal protection claim related to any alleged "attempt[s]" by Yarbrough to speak with him prior to his speech during the public comment period. Story's allegations further fail to plausibly allege Yarbrough's actions violated a clearly established constitutional right so as to defeat his assertion of qualified immunity.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendants James Williby and Jeffrey Yarbrough respectfully request that the Court dismiss Story's First, Fourth, and Fourteenth Amendment claims asserted against them in the Complaint, whether directly or under a failure to supervise or bystander liability standard. Defendants James Williby and Jeffrey Yarbrough also seek their reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

Respectfully submitted,

*Kathryn E. Long*
KATHRYN E. LONG
State Bar No. 24041679
klong@thompsonhorton.com

K. ADAM ROTHEY
State Bar No. 24051274
arothey@thompsonhorton.com

**THOMPSON & HORTON LLP**
500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

*Attorneys for the Round Rock ISD Defendants,*
*including James Williby and Jeffrey Yarbrough*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this document has been served upon all counsel of record via the Court's electronic filing system on October 27, 2023.

Warren V. Norred                     Stephen D. Casey
Norred Law, PLLC                     Casey Law Office, P.C.
515 East Border Street               P.O. Box 2451
Arlington, Texas 76010               Round Rock, TX 78680
warren@norredlaw.com                 stephen@caseylawoffice.us


/s/    *Kathryn E. Long*
Kathryn E. Long