UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS – AUSTIN DIVISION

| | | |
|---|---|---|
| JEREMY STORY, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| SUPERINTENDENT HAFEDH AZAIEZ, | § | CIVIL ACTION NO. |
| TRUSTEES AMBER FELLER, TIFFANIE | § | 1:22-cv-00448-DAE |
| HARRISON, AMY WEIR, JUN XIAO, CORY | § | |
| VESSA; OFFICERS JEFFREY YARBROUGH, | § | |
| JAMES WILLIBY, DEBORAH GRIFFITH, | § | |
| MILTON POPE, FRANK PONTILLO, RON | § | |
| COLE, CHIEF DENNIS WEINER, and CARLA | § | |
| AMACHER, individually, and ROUND ROCK | § | |
| INDEP. SCHOOL DISTRICT, | § | |
| | § | |
| *Defendants*. | § | |

**ROUND ROCK INDEPENDENT SCHOOL DISTRICT'S AND
SUPERINTENDENT DR. HAFEDH AZAIEZ'S PARTIAL MOTION TO DISMISS
JEREMY STORY'S THIRD AMENDED COMPLAINT AND BRIEF IN SUPPORT**

**THOMPSON & HORTON LLP**

**KATHRYN E. LONG**
State Bar No. 24041679
klong@thompsonhorton.com

**K. ADAM ROTHEY**
State Bar No. 24051274
arothey@thompsonhorton.com

500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

**ATTORNEYS FOR THE ROUND ROCK ISD DEFENDANTS**

## SUMMARY OF THE ARGUMENT

Plaintiff Jeremy Story asserts claims against RRISD, Superintendent Dr. Hafedh Azaiez, current and former RRISD Trustees, and current and former RRISD police officers. Story's claims in his Original and Amended Complaints related to incidents that occurred at or related to an August 16, 2021 Called Board Meeting (the "August 16 meeting") and a September 14, 2021 Regular Board Meeting (the "September 14 meeting") of RRISD's Board of Trustees (the "Board"). In his Third Amended Complaint (the "Complaint"), Story continues to assert claims against RRISD and Dr. Azaiez related to the August 16 and September 14 meetings. *See* Dkt. 49. Story re-asserts First Amendment claims regarding the August 16 meeting and First Amendment retaliation claims against RRISD that were previously dismissed by the Court. Dkt. 49 ¶¶ 195, 204. Story also now asserts his Texas Open Meetings Act ("TOMA") claim against Azaiez. *Id.* § VII, G. And although Story no longer asserts a TOMA claim against RRISD, he seeks to enjoin Azaiez and RRISD from "further application of the 18-seat rule." *Id.* ¶ 235. Story also asserts a new First Amendment claim against the District and Azaiez regarding an incident at the September 16, 2022 Round Rock High School ("RRHS") homecoming football game. *Id.* ¶¶ 208–12.

RRISD moves to dismiss the re-asserted First Amendment claim regarding the August 16 meeting and claim for retaliation because Story still pleads no facts to establish entity liability against the District. The Complaint does nothing to cure the deficiencies previously noted by the Court. Dkt. 43, pp. 37–39. With respect to the new First Amendment claims regarding the RRHS homecoming game, the Complaint does not state an underlying constitutional violation to support a First Amendment claim. RRISD's prior review policy set forth in RRISD Board policy GKDA (Local) is not unconstitutional on its face or otherwise. And GKDA (Local) was not applied to Story in an unconstitutional manner. Even if it were, RRISD cannot be held vicariously liable for the actions of

its employees for violating policies. And there are no pleaded facts to show a Board policy or custom was the moving force behind any violation of Story's rights.

Azaiez moves to dismiss the newly-asserted First Amendment claim regarding the RRHS homecoming game because Story cannot show that Azaiez violated his First Amendment rights, much less a clearly-established right to overcome his qualified immunity. Azaiez also moves to dismiss the TOMA claim asserted against him under Rules 12(b)(1) and 12(b)(6) because he is neither the governing body of RRISD, nor a member of the District's governing body for any affirmative claim to be asserted against him. And, even if this claim were properly asserted against him, the claim because he has statutory professional immunity, and for the reasons set forth in the Trustee Defendants' Partial Motion to Dismiss, Dkt. 52, including a failure to establish a waiver of immunity. While Story does not assert any TOMA claim against RRISD, he seeks injunctive relief against the District. That request fails for the same reasons set forth in the Trustee Defendants' Partial Motion to Dismiss.

## RELEVANT FACTUAL BACKGROUND

For purposes of this Motion, RRISD and Azaiez cite the facts Story pleads regarding the RRHS homecoming game.

On September 16, 2022, Story attended a homecoming football game at Round Rock High School where he and other individuals passed out campaign materials for prospective RRISD Board members. Dkt. 49 ¶ 129–30. Story contends that, while passing out the campaign materials, the RRHS principal greeted him. *Id.* ¶ 132. Then, according to the Complaint, Round Rock ISD Police Officer Ron Cole, accompanied by Chief of Police Dennis Weiner, "asked the group to stop passing out flyers and leave." *Id.* ¶ 136. Story contends that Officer Cole stated that the request was made "on behalf of Superintendent Azaiez." *Id.* When Story refused, RRISD Area Superintendent Dr. Carla Amacher approached the group and made a second request for them to cease distributing campaign materials. *Id.* ¶ 139. When Amacher left and Story, again, refused to cease distribution of the campaign materials,

he contends that unspecified RRISD PD officers "threatened to arrest [him] and the group if they refused to leave" before clarifying that Story only needed to stop distributing the campaign materials. *Id.* ¶ 142. Story and the remainder of the group complied with the request and entered the stadium to watch the game. *Id.* ¶ 143.

On September 19, 2022, RRISD General Counsel Cynthia Hill sent an email to all prospective Board candidates regarding the District policy governing distribution of campaign materials on RRISD property. *Id.* ¶ 144. Hill referred the candidates to Board policy GKDA (Local) which governs the distribution of non-school literature on District premises. *Id.* ¶ 145; Dkt. 49-1 Ex. 16. GKDA (Local) requires all non-school literature intended for distribution on District premises to be submitted to the Superintendent for prior review and permits campus principals to designate the "times, locations, and means by which" such literature may be distributed on a campus. Dkt. 49 ¶ 47; Dkt. 49-1 Ex. 16. According to the Complaint, Hill's email and the actions of Amacher and RRISD PD at the direction of Azaiez worked to "chill [his] speech during [the homecoming] event." Dkt. 49 ¶ 150.

## ARGUMENT AND AUTHORITIES

I.    **The Complaint lacks facts to show entity liability under section 1983 for Story's First Amendment claims related to the August 16 meeting and for retaliation.**

The Court dismissed all section 1983 claims against RRISD related to the Fall 2021 Board meetings, except the First Amendment right to petition claim regarding the seating limitation (the "18-seat limitation") at the September 14 meeting. Dkt. 43, pp. 37–41. Story no longer asserts failure to train or supervise claims against RRISD but re-asserts a First Amendment claim against RRISD regarding the application of BED (Local) at the August 16 meeting. Dkt. 49 ¶ 195. He also seems to re-assert a First Amendment retaliation claim against RRISD. *Id.* ¶ 204. But Story does not cure the deficiencies the Court previously identified when it dismissed these claims. Dkt. 43, pp. 37–39.

### A.      Standard for school district liability under 42 U.S.C. § 1983.

A school district is liable under section 1983 only for acts for which it is actually responsible; *respondeat superior* and vicarious liability is prohibited. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir.2003). A plaintiff must show the alleged constitutional violation was the direct result of the execution of an "official" policy or custom, the custom or policy was approved or sanctioned by the entity's "final policymaker," and the final policymaker acted with "deliberate indifference" to federally protected rights, thus causing the plaintiff's injury. *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001). Under Texas law, the policymaking authority for a school district is the board of trustees. *Rivera*, 349 F.3d at 247.

Story must therefore show that RRISD's Board adopted an unconstitutional policy or that it otherwise knew about or acquiesced in a persistent and widespread or "deeply embedded," unconstitutional practice. *See Piotrowski*, 237 F.3d at 578–79. In sum, Story must demonstrate that RRISD's Board, through its deliberate conduct, "was the moving force behind the injury alleged" and must establish a direct causal link between the Board's actions and the deprivation of his constitutional rights. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

### B.      The Complaint does not show that the Board violated Story's First Amendment rights at the August 16 meeting.

Story alleges that Board President Weir and Officers Pope and Pontillo violated his "right to petition and free speech" by preventing him from speaking and removing him from the August 16 meeting. Dkt. 49 ¶ 194. Story contends this was "based on content and viewpoint discrimination" that is "enshrined" in the Limited Public Comment Rule in Board policy BED (Local). Story pleads no facts regarding the Board, as a body corporate, with respect to this claim. *Id.* ¶¶ 194–95. He simply asserts that he "seeks economic damages and injunctive relief . . . including against RRISD itself." *Id.* ¶ 195.The Court already found, however, that the facial challenge to BED (Local) could not survive a motion to dismiss. Dkt. 43, pp. 12–15, 39. Story does not plead any facts or cite any additional case

law in the Complaint to warrant revisiting that issue. Indeed, he no longer pleads a facial attack on BED (Local). As for the claim that BED (Local) was unconstitutionally applied to him, that claim is limited to individual actors personally involved in the purportedly unconstitutional application of the policy, not RRISD *Id.* pp. 16–17.

The Complaint still does not show action by the Board to restrict Story's speech at the August 16 meeting or to remove him from the meeting. And Story cannot show that an unconstitutional policy was the moving force behind any violation of his rights. The only new allegations in the Complaint relate to a Board President's use of the Limited Public Comment rule at meetings that occurred *after* the August 16 meeting. But the inquiry of whether an "official custom" exists focuses on *prior* constitutional violations. *See, e.g., Peterson v. City of Fort Worth*, 588 F.3d 838, 850–52 (5th Cir. 2009) (focusing on *prior* complaints of excessive force of which the city knew).[1] That is because to establish a claim, the final policymaker had to know about or acquiesce in the practice, and act with deliberate indifference to that knowledge, thereby violating a plaintiff's constitutional rights. *Piotrowski*, 237 F.3d at 578–79. Accordingly, the new allegations do nothing to state a claim against RRISD.

### C.    Story does not state a First Amendment retaliation claim against RRISD.

The Complaint identifies the following purportedly retaliatory acts by RRISD employees and officials: Pope and Pontillo's removal of Story from the August 16 meeting and Griffith's preparation of an alleged false arrest warrant with input from Pope. Dkt. 49 ¶¶ 200–03. Story then claims that the Board "attempt[ed] to ratify an action"—the 18-seat limitation—and "voted illegally that their seating 'rules' constitute a policy, the enforcement of which directly caused [Story's] injuries." *Id.* ¶ 204. Story contends that the 18-seat limitation is "necessarily attributable to the policymaker." *Id.* These

---

[1]    *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (focusing on *prior* instances of warrantless entry to ascertain if the city had an official custom); *Doe v. Snap, Inc.*, No. H-22-590, 2022 WL 16635370, at *4–5 (S.D. Tex. Nov. 2, 2022) (noting lack of sufficient *prior* incidents to establish a custom); *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 1001–02 (S.D. Tex. 2014) (section 1983 claims "deficient due to plaintiffs' failure to allege facts capable of proving a pattern of prior incident").

allegations against the Board, even if true, do not state a viable *retaliation* claim. The Court already found that Story's "challenge to the seating limitation rule" survived a motion to dismiss. Dkt. 43, pp. 39. But that finding related to the unconstitutional application of the rule, not a claim for retaliation against RRISD. The Court limited the retaliation claim to those who had "personal involvement" in Story's purportedly false arrest. Dkt. 43, p. 23.

The Board did not remove Story from the August 16 meeting and did not direct his removal. Those actions were taken by individuals Likewise, Story pleads no facts that the Board participated in preparing or submitting the purportedly false arrest warrant or affidavit. He likewise pleads no facts that the Board had an official policy that directly caused the purportedly false allegations that led to his arrest. While the 18-seat limitation was the reason Story was not allowed into the meeting room, it was not a cause, much less the moving force, behind his alleged false arrest. Rather, it was the purportedly false information on the affidavit that resulted in the arrest. And there are no pleaded facts of prior incidents of false arrests to place the Board on notice of any widespread practice of falsifying information on arrest warrants, or otherwise engaging in any retaliatory conduct, to which the Board responded with deliberate indifference.

## II. Story does not state a First Amendment claim regarding the homecoming game.

### A. Story does not allege that GKDA (Local) is unconstitutional on its face.

Story contends that RRISD violated his First Amendment rights when District personnel asked him to "cease distribution of RRISD candidate campaign fans" in the parking lot at RRHS's homecoming football game. Dkt. 49 ¶¶ 209–10. Board policy GKDA (Local) governs the distribution of non-school materials on District campuses or premises. *Id.* ¶¶ 145–48, 209–10; Dkt. 49-1, Ex. 16. Absent certain exceptions, it requires that these materials be submitted to the Superintendent or designee for prior review. *Id.* p. 188; Dkt. 49 ¶ 147. Story does not raise a facial challenge to GKDA (Local), or its review requirement. A facial challenge to a policy like GKDA (Local) "considers only

the text of the statute itself, not its application to the particular circumstances of an individual." *Freedom Path, Inc. v. IRS*, 913 F.3d 503, 508 (5th Cir. 2019). To succeed in a facial attack, Story must establish that "no set of circumstances exists" in which the policy would be valid or that the policy "lacks any plainly legitimate sweep." *U.S. v. Stevens*, 559 U.S. 460, 472–73 (2010).

Here, Story complains about how GKDA (Local) was applied to him, and that it was applied to him at all. Dkt. 49 ¶¶ 149, 209. Story claims it was a violation of the Board's policy and "unlawful" to ask him to stop distributing materials. *Id.* ¶ 209. He does *not* allege that "no set of circumstances exists" in which the District's policy would be valid or that the policy "lacks any plainly legitimate sweep." *Stevens*, 559 U.S. at 472–73. Nor does he allege that "a substantial number" of its applications are unconstitutional. *Catholic Leadership Coalition of Tex. v. Reisman*, 764 F.3d 409, 426 (5th Cir. 2014). In fact, Story does not reference any other application of the policy, actual or theoretical. Accordingly, Story does not allege or state a claim that GKDA (Local) is unconstitutional on its face. Furthermore, only RRISD's Board could adopt GKDA (Local). Thus, any claim that GKDA (Local) is unconstitutional on its face is a claim against RRISD, not Azaiez.[2]

**B.    Story cannot show an underlying violation of his First Amendment rights, or that GKDA (Local) was unconstitutionally applied to him.**

**1.    Round Rock High School's parking lot is a non-public forum.**

"[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981). In assessing a claim for speech on government property, the Court must first identify the nature of the forum as "the existence of a right of access to public property and the standard by which limitations upon such right must be evaluated differ depending on the character of the property at issue." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983). The Supreme Court

---

[2]    Story pleads no facts that Azaiez had any role in promulgating GKDA (Local). Rather, GKDA (Local) was issued on May 3, 2017, well before the District hired Azaiez. Dkt. 49-1, p. 221.

has "identified three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.,* 473 U.S. 788, 802 (1985). "Because a principal purpose of traditional public fora is the free exchange of ideas, speakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest." *Id.* at 800. In contrast, "[i]mplicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity." *Perry*, 460 U.S. at 49. Accordingly, access to a nonpublic forum may be restricted if the restriction is "reasonable" and "not an effort to suppress expression merely because public officials oppose the speaker's views." *Cornelius*, 473 U.S. at 800.

Traditional public fora are those that "time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions," characteristics that public school facilities, including parking lots, "do not possess." *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988); *Grattan v. Bd. of Sch. Com'rs of Baltimore City*, 805 F.2d 1160, 1162 (4th Cir. 1986) (finding school parking lot "falls within the third category of public property . . . public property which is not by tradition or design a forum for public communication."). Thus, school facilities may be deemed public fora "only if school authorities have 'by policy or by practice' opened those facilities 'for indiscriminate use by the general public or by some segment of the public.'" *Kuhlmeier*, 484 U.S. at 267. "If the facilities have instead been reserved for other intended purposes, 'communicative or otherwise,' then no public forum has been created, and school officials may impose reasonable restrictions on the speech of students, teachers, and other members of the school community." .

In the Complaint, Story asserts in conclusory fashion that that the high school parking lot is "colorably a public forum." Dkt. 49 ¶ 211. But, as discussed *supra*, school parking lots are not traditionally public fora. *See Grattan*, 805 F.2d at 1162–63 (disagreeing with plaintiff's characterization of a school parking lot as being "akin to a public sidewalk" and holding that "a public school parking

lot is a nonpublic forum"); *see also Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402, 406 (5th Cir. 1995) ("The [basketball] games are school-sponsored and controlled events that do not provide any sort of open forum for student expression."). And RRISD has not evinced an intent to change this by opening its facilities for "indiscriminate use." *See Perry*, 460 U.S. at 47 (holding that a school's decision to provide "selective access" to the school mail system through principal approval did not "transform government property into a public forum" where there was no indication that permission was granted as a matter of course.); *see also Cornelius,* 473 U.S. at 804 (holding government's policy providing "selective access" through a prior approval requirement "unsupported by evidence of a purposeful designation for public use, does not create a public forum"). To the contrary, District policy GKDA (Local)'s prior review requirement, Dkt. 49-1, p. 188, "is a further indication" that the District did not intend to create an open forum. *Little Pencil, LLC v. Lubbock Indep. Sch. Dist.*, No. 5:14-CV-014-C, 2014 WL 11531267, at *7 (N.D. Tex. May 29, 2014); *see also State of Tex. v. Knights of Ku Klux Klan*, 58 F.3d 1075, 1079 (5th Cir. 1995 (application requirement "supported determination[ ] that [the] program is not a public forum").

To the extent Story relies upon *Chiu v. Plano Independent School District*, to argue otherwise, such reliance is misplaced. Dkt. 49 ¶ 211. In *Chiu*, the Fifth Circuit considered whether a school district's restriction on the distribution of literature critical of the school's new math program during an after-school parents' meeting to discuss the new curriculum violated the parents' First Amendment rights. 260 F.3d 330, 347 (5th Cir. 2001). In conducting its forum analysis, the Court reasoned that the meeting may "properly be considered a designated public forum" as it was akin to a school board meeting, with time allotted for questions and answers as well as "small group discussion with teachers and district administrators." *Id.* at 348–49. "Such conduct," stated the Court, "support[ed] a reasonable inference that [the district] initially intended to allow open, yet structured, expression on math curriculum reform." *Id.* at 349. Nonetheless, the Court ultimately deemed the facts insufficiently

developed as to the district's intent to determine whether the meeting was a public or nonpublic forum. *Id.* Accordingly, there is nothing in *Chiu* indicating that a football game—or any event even remotely similar to a football game—is "colorably an open forum," as Story alleges, much less the standard that would apply to such rights. Moreover, the Fifth Circuit has cautioned against the application of *Chiu* to circumstances outside those present in that case, that is, "an individual trying to contribute relevant materials to a public forum dedicated to adult dialogue." *Morgan v. Swanson*, 755 F.3d 757, 761 (5th Cir. 2014). As no such circumstances exist in this case, *Chiu* is inapplicable.

At base, the Complaint contains no allegations that could support a conclusion that the high school's parking lot constitutes a public forum. In fact, the Complaint categorically forecloses such a possibility by reference to GKDA (Local) which evinces the District's clear intent to retain control over its facilities and premises. And because the parking lot is a nonpublic forum, RRISD had "had no 'constitutional obligation per se to let any organization use [it]'" and any restrictions need only be reasonable. *Perry,* 460 U.S. at 48. GKDA (Local) makes no attempt to categorically prohibit any protected speech but rather provides for a five-day review period to allow RRISD to assess the non-school literature, a regulation that is a reasonable means for advancing the District's interests.

### 2. GKDA (Local) is content neutral and merely imposes a reasonable time, place, and manner restriction.

Even if RRHS's parking lot were a public forum—which it is not—the restrictions imposed by GKDA (Local) are constitutionally permissible. The Supreme Court has acknowledged that reasonable time, place, and manner restrictions are permitted in both public and nonpublic forums provided they are content neutral, narrowly tailored, and leave open alternative channels for communication. *Perry*, 460 U.S. at 45; *Chiu*, 260 F.3d at 345 n.9. GKDA (Local) unquestionably meets these requirements.

GKDA (Local) does not prohibit political speech, does not discriminate based on content or viewpoint, and does not impose an impermissible prior restraint on speech. In fact, the only materials

GKDA (Local) prohibits distribution of are those falling into categories that have been expressly recognized as not protected in a school setting. Dkt. 49-1, p. 187–89. These include materials that are obscene or vulgar, endorse dangerous or illegal actions, promote the use of illegal substances, and/or violate the rights of others.[3] Outside these narrow categories of nonprotected speech, GKDA (Local) plainly permits distribution of expressive materials without regard to their content or viewpoint. In particular, given the focus of Story's claims, the policy does not prohibit any speech on the basis that it is political in nature or expresses a political viewpoint. In short, GKDA (Local) "is 'content neutral' in the constitutional sense." *M.A.L. ex rel. M.L. v. Kinsland*, 543 F.3d 841, 848 n.3 (6th Cir. 2008).

GKDA(Local) also "leave[s] open ample alternative channels of communication." *Perry*, 460 U.S. at 45. Indeed, it leaves open *all* channels of communication. Nowhere in GKDA (Local) is the distribution of non-school literature prohibited in any specific forum. Rather, the policy simply requires prior approval and consideration of the appropriate time, place, and manner for distribution. Moreover, individuals are free to distribute non-school literature off-campus or to convey their messages through alternative communication channels that do not involve the distribution of literature. GKDA (Local) simply implements a permissible "manner" regulation by stating that, with limited exceptions, any individual who wishes to distribute non-school literature must first present the materials to the Superintendent or designee. Indeed, the Fifth Circuit expressly authorized such requirements more than five decades ago in the context of student speech, stating "[t]here is nothing

---

[3]    *See Morse v. Frederick*, 551 U.S. 393, 403 (2007) (illegal drug use); *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682–83 (1986) (vulgarity); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984) (defamation); *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (illegal activities); *Tinker v. Des Moines Indep. Comm. Dist.*, 393 U.S. 503, 89 S. Ct. 733 (1969) (disruptive speech, rights of others); *Ponce ex rel. E.P. v. Socorro Indep. Sch. Dist.*, 508 F.3d 765, 770 (5th Cir. 2007) (health and safety); *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard*, 600 F.2d 1184, 1188 (5th Cir. 1979) (intellectual property).

unconstitutional per se in a requirement that students submit materials to the school administration prior to distribution." *Shanley v. Ne. Indep. Sch. Dist., Bexar Cnty, Tex.*, 462 F.2d 960, 969 (5th Cir. 1972).[4]

In *Shanley*, the Fifth Circuit held that preapproval regulations like those in GKDA (Local) should meet four criteria. These regulations must: "(1) state clearly the means by which [persons] are to submit proposed materials to the principal or school administration; (2) state a brief and reasonable period of time during which the principal or administration must make their decisions; (3) state clearly a reasonable appellate mechanism and its methodology; and (4) state a brief and reasonable time during which the appeal must be decided." *Id.* at 978. Such regulations also must not delegate overly broad discretion to the reviewing official. *Forsyth Cnty. v. The Nationalist Movement*, 505 U.S. 123, 130 (1992). The District's policy plainly satisfies each of those requirements.

GKDA (Local) states that, prior to distribution, individuals must submit any non-school literature to the Superintendent or designee who is given five school days to ensure that it contains the name of the person or organization requesting distribution, complies with the limitations on content discussed *supra,* and is submitted by a nonprofit or governmental entity. Dkt. 49-1, pp. 221–23. If the materials comply, they may be distributed at such times and in such locations designated by each school principal. These guidelines ensure that the Superintendent or designee does not have vague or unfettered authority to reject a distribution request. To the contrary, the policy provides clear standards against which the Superintendent must exercise his discretion to approve or disapprove of a proposed distribution. And those decisions may be appealed under District policy, which guarantees an eventual appeal to the school board. *Id.*

---

[4]     Preapproval regulations are frequently upheld by courts with regard to student speech. *See Sullivan v. Hous. Indep. Sch. Dist.*, 475 F.2d 1071, 1075–77 (5th Cir. 1973); *Bystrom ex rel. Bystrom v. Fridley High Sch., Indep. Sch. Dist. No. 14*, 822 F.2d 747, 750 (8th Cir. 1987); *Henerey ex rel. Henerey v. City of St. Charles, Sch. Dist.*, 200 F.3d 1128, 1134–36 (8th Cir. 1999).

Moreover, the prior review in GKDA (Local) serves the important purpose of ensuring RRISD complies with laws regarding the use of District property and funds. Specifically, GKDA (Local)'s prior review requirements and time, place, and manner restrictions enable RRISD to ensure it complies with state law regarding the use of District resources for electioneering.[5] GKDA (Local) provides the District the opportunity to review all non-school literature prior to its distribution which prevents its facilities, including parking lots, from being used improperly.

Ultimately, GKDA (Local), on its face, is appropriately designed to further the District's interests. It does not single out political speech for extra restrictions, nor does it restrict political speech in any way beyond what is necessary. Under the terms of the policy, individuals may distribute political literature so long as it comports with the time, place, and manner restrictions that apply evenhandedly to all individuals and all non-school literature. Because GKDA (Local)'s requirements are merely time, place, and manner regulations, and because those regulations are content-neutral, are narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels of communication, the policy is constitutional on its face.

In sum, the prior review requirement in GKDA (Local) is valid on its face because it specifically limits the reasons why materials may be rejected (precisely to avoid viewpoint discrimination), imposes short time frames for the review, and provides an opportunity to appeal if materials are rejected—all hallmarks of a valid policy.[6]

---

[5]    Public school districts are prohibited from using public funding or other resources for electioneering or political advertising. TEX. EDUC. CODE § 11.169; TEX. ELEC. CODE § 61.003(b), 255.003. And the Texas Ethics Commission has interpreted the use of public funds to include the use of nonpublic district facilities, including parking lots. Op. Tex. Ethics Comm'n No. 552 (2020); Op. Tex. Ethics Comm'n No. 443 (2002).

[6]    *Compare Shanley*, 462 F.2d at 969 (prior review policy was unconstitutional because it contained no provision for timely administrative appeal and no standards for the principal's decision) *and Westfield High Sch. L.I.F.E. Club v. City of Westfield,* 249 F.Supp.2d 98 (D. Mass. 2003) (policy requiring approval by administrator to distribute literature unrelated to curriculum struck down where policy had no time limitations for approval or denial and left choice to restrain the speech to an administrator

**3.    The Complaint contains no well-pleaded facts to show any unconstitutional application of GKDA (Local) to Story.**

The alleged facts reveal that Story was instructed to cease distributing materials, not because of his viewpoint, but because he did not follow GKDA (Local)'s prior review requirement. In fact, the only people that Story's factual allegations show violated the policy are himself and his companions. Story did not submit the materials he was distributing for review, ergo RRISD did not reject his materials and did not subject him to any time, place, and manner restrictions on his distribution of them. He argues that the policy should not have applied to him and implies that the reason he was told it did was because of his viewpoint. But the Complaint contains no allegations regarding other individuals distributing different content or communicating a different viewpoint who were allowed to continue to do so despite not complying with GKDA (Local). It contains no well-pleaded allegations that any RRISD employee—much less Azaiez or the Board as a body corporate—had any opinion on the viewpoint he was expressing.

Furthermore, Story's arguments regarding the "unlawful" application of the policy to him rests on misinterpretations of the policy and an incorrect understanding of the law governing speech on school campuses. Story first claims that the policy did not apply to his actions because Policy GKDA (Local) "expressly excepts 'distribution of materials by an attendee to other attendees at a school-sponsored meeting intended for adults and held after school hours.'" Dkt. 49 ¶ 209. A high school football game with students on the field as players and on the sidelines and in the stands as

---

without clear guidelines) *with Pounds v. Katy Indep. Sch. Dist.*, 517 F. Supp. 2d 901, 919 (S.D. Tex. 2007) (upholding constitutionality of policy requiring prior approval of material distributed by students where policy significantly limits administrator's discretion, limit time for review, and provided opportunity to appeal) *and Morgan v. Plano Indep. Sch. Dist.*, No. 4:04CV447, 2010 WL 6367527, at *5 (E.D. Tex. Sept. 23, 2010), *adopted by* No. 4:04CV447, 2011 WL 1213080 (E.D. Tex. Mar. 28, 2011) (holding school district policy similar to that at issue here was facially valid where it restricted reasons administrator could reject materials, was not "impermissibly long nor burdensome," and had an appeal procedure built into place).

cheerleaders, band, color guard, and dance team members, and spectators is hardly a meeting "intended for adults." This exception simply does not apply to Story's activities.

He next suggests that the policy does not apply because the parking lot is "colorably a public forum." *Id.* ¶ 211. The parking lot in question, however, is owned by RRISD and on the campus of RRHS.[7] It is not a public forum, as discussed *supra*, pp. 7–10. *See, e.g.*, *Kuhlmeier*, 484 U.S. at 267. And, even if it is a limited public forum, RRISD can restrict speech so long the District's restriction is reasonable in light of the purpose served by the forum and content-neutral—like those restrictions found in GKDA (Local). *See supra*, pp. 10–13.

Finally, Story suggests he should have been allowed to continue to distribute materials because the high school principal, by walking past and "warmly greet[ing]" Story and his companions served as an implicit permission for them to continue their activities. Dkt. 49 ¶¶ 132, 149. Yet the plain language of GKDA (Local) only vests the principal with authority to "designate times, locations, and means" by which non-school materials that comply with the policy may be distributed on the principal's campus. Dkt. 49 ¶ 148. It does not give the principal authority to determine whether non-school literature is in fact appropriate for distribution under the policy, much less to grant exceptions to the requirement that materials be pre-approved by the Superintendent or their designee.

Because Story cannot show that GKDA (Local)'s prior review requirement is unconstitutional or unconstitutionally applied to him, he cannot show any violation of his constitutional rights to maintain a First Amendment claim.

---

[7]    Story indirectly acknowledges the ownership and location of the parking lot through various pleaded facts. He notes that the parking lot was next to the RRHS football stadium and argues that it was up to the RRHS Principal to set "times, locations, and means" restrictions—something a principal only does for materials being distributed on their campus. Dkt. 49 ¶¶ 130, 148. He acknowledges that the parking lot is under the control of RRISD by acknowledging the RRISD policies potentially governed their behavior and that the group would have complied sooner if the area superintendent had "affirm[ed] he was speaking on behalf of the District." Dkt. 49 ¶¶ 139-40.

### C.    The Complaint contains no facts to show that Dr. Azaiez applied GKDA (Local) in an unconstitutional manner to overcome qualified immunity.

Story admits that GKDA (Local) "governs distribution of materials 'on any District premises' and permits distribution of non-school material with prior review and approval. Dkt. 49 ¶¶ 149, 151. And while the Complaint attempts to contend that Story was instructed to cease distributing campaign literature based on his viewpoint, the Complaint contains no well-pleaded facts to show that in directing any police officer to require Story to cease distribution, Azaiez was motivated by anything other than Story's failure to abide by the requirements of GKDA (Local). And the Complaint lacks any facts that other speakers with different viewpoints who also had not received prior approval were treated more favorably despite engaging in the same conduct. Accordingly, Story does not show that Azaiez violated Story's First Amendment rights or applied the prior review requirement in GKDA (Local) to him in any unconstitutional manner.

Moreover, school officials, like Azaiez, are "entitled to qualified immunity if their 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Longoria v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 264 (5th Cir. 2019) (quoting *Harlow Fitzgerald*, 457 U.S. 800, 818 (1982)). "If, at the time of the events underlying the litigation, 'insufficient precedent existed to provide school officials with "fair warning" that the defendants' conduct violated the [law],' the defendants are entitled to qualified immunity." *Id.* A plaintiff can defeat qualified immunity only if they plead facts that (i) the official violated a clearly established constitutional right, and (ii) the official's conduct was objectively unreasonable "in light of clearly established law at the time[.]" *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000); *see also Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021).

Here, the Complaint lacks factual content to show Azaiez violated Story's First Amendment rights at all. And Story has not shown, and cannot show, that the law was clearly established that requiring prior review of non-school materials, when content neutral, before distributing at a high

school parking lot, violates a member of the public's constitutional rights. Or that Azaiez's reliance on GKDA (Local) when providing instructions to RRISD police officers or administrative personnel was clearly unreasonable under the circumstances. Story, therefore, cannot overcome Azaiez's qualified immunity to the First Amendment claim related to RRHS's homecoming football game.

**D.    RRISD cannot be held liable for its employee's intentional or unintentional violation of District Board policy GKDA (Local).**

As discussed, *supra* pp. 3–4, to show entity liability under section 1983, Story must show that the Board as the final policymaker, or a policy, custom, or practice of RRISD's Board was the moving force behind a violation of his constitutional rights. The Complaint does not plead facts that GKDA (Local) was unconstitutional, or unconstitutionally applied to him by RRISD personnel. Story's real argument is that the actions of the RRISD employees *violated* District policy "on its face." Dkt. 49 ¶ 209. His theory is that he received implicit approval under the policy from the high school principal, Dkt. 49, ¶ 149, so he should not have been restricted from handing out materials, and that, in any case, the policy excepted his distribution of materials from the pre-approval requirement. Dkt. 49 ¶ 209. RRISD disagrees with Story's interpretation of the policy and its application to his activities, as discussed *supra*. But assuming *arguendo* that his reading of the policy were correct, any argument that RRISD employees violated a constitutional policy does not state a valid section 1983 claim against the District itself. "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

Story does not allege that the Board, as the final policymaker for the District, directed that he be stopped from distributing materials. He does not even allege that the Board was aware he was distributing anything or that he was asked to stop doing so. The Complaint also contains no well-pleaded facts that the employees' alleged conduct—a purported deviation from GKDA (Local)—was a result of, or informed by, a policy statement, ordinance, regulation, or decision officially adopted

and promulgated by the Board, as a body corporate. Rather, Story alleges that "no rule or law authorized" the employees' "demands" that he stop distributing materials on campus. Dkt. 49 ¶ 150. Story pleads no facts to suggest that the employees he interacted with—a principal, RRISD police officers, an area superintendent, and the District's general counsel—were final policymakers for the District. He does allege that Azaiez directed the employees' actions (Dkt. 49 ¶ 136), and a superintendent could be a final policymaker *if* the Board delegated final policymaking authority to him or *if* he acted "pursuant to a well settled custom that represented official policy." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 709 (1989). But Story pleads no facts to show that Azaiez is a final policymaker under either criteria.

GKDA (Local) does not delegate policymaking authority to the Superintendent. Rather, it grants the superintendent the authority to decide whether materials may be distributed—but he must do so "in accordance with" the standards laid out in that policy. Dkt. 49-1, p. 188. The Supreme Court draws a distinction between delegating final <u>policy</u>making authority and granting <u>decision</u>making authority—and the superintendent's authority here is squarely in the "decisionmaker" category as his decisions regarding materials are constrained by Board policy not of his own making. *Praprotnik*, 485 U.S. at 127; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–83 (1986) ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable."). And any decision the Superintendent makes is appealable to the Board under policy GF (Local). Dkt. 49-1, p. 189. "[W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies" *Praprotnik*, 485 U.S. at 127. Under these circumstances, Azaiez is not a final policymaker for the District as it relates to policies regarding

distribution of non-school materials on RRISD's campuses and premises—and the Complaint contains no facts to show otherwise.

Story also fails to allege that Azaiez or any other RRISD employee acted pursuant to a well settled custom or practice of employees violating policy GKDA (Local) in a manner that infringes on free speech rights. The Complaint identifies no prior instances where RRISD personnel engaged in similar actions or previous incidents where RRISD employees or officials prevented members of the public from distributing non-school materials in a manner that violated GKDA (Local), or the First Amendment. "Isolated violations," such as the one Story attempts to allege here, "are not the persistent, often repeated constant violations that constitute custom and policy as required for municipal section 1983 liability." *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995); *see also Piotrowski*, 237 F.3d at 581. The facts alleged in the Complaint simply do not tend to show, nor does the Complaint assert, that the Board had *any* policy or custom that resulted in infringement of Story's constitutional rights or that any such policy or custom of RRISD was adopted or continued by its final policymakers in "deliberate indifference to the constitutional rights" of community members. *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *see also Campbell*, 43 F.3d at 977.

Therefore, even *if* the RRISD employees who were involved in asking Story to stop distributing materials had violated Story's free speech rights, the District could not be held vicariously liable for that violation.

## III.    Story does not have a plausible TOMA claim against Azaiez, or a claim for the injunctive relief he seeks against Azaiez and RRISD.

The Complaint asserts a Texas Open Meetings Act claim against Azaiez and the Trustee Defendants. Dkt. 49 § VII, G, ¶¶ 232–35. Story's TOMA claims are not asserted against RRISD. However, Story seems a permanent injunction against RRISD and Azaiez "to prevent further application of the 18-seat rule." *Id.* ¶ 235.

19

TOMA provides that "[a]n action taken by a governmental body in violation [of TOMA] is voidable." TEX. GOV'T CODE § 551.141. Texas Government Code Section 551.142(a) states that "[a]n interested person . . . may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of [TOMA] by members of a government body." *Id.* A school district superintendent, like Azaiez, is not the "governmental body" of a school district—the governing body of RRISD is the Board of Trustees. And Azaiez, as a superintendent, is not a "member[ ] of a government body"—the RRISD trustees are the Board's members. Because Section 551.142(a), the section of TOMA that creates a private right of action, limits the action to members of a governmental body, Azaiez, as RRISD's superintendent is not a proper party against whom an affirmative claim can be asserted. While Azaiez, and other RRISD staff members, could be included in and subject to an injunctive order, the TOMA claim is not against them.

Even if Azaiez were a proper party to this claim, Azaiez has statutory professional immunity under Texas Education Code § 22.0511(a). Story sues Azaiez individually, and his TOMA claims relate to actions within the scope of the Superintendent's duties or position, overseeing the operations of a RRISD. The actions of which Story complains all involve the exercise of discretion. Accordingly, Azaiez is entitled to professional immunity under Section 22.0511(a). *See, e.g., Van Deelen v. Cain*, 628 F. App'x 891, 898–99 (5th Cir. 2015); *Rascon v. Austin Indep. Sch. Dist.*, No. A-05-CV-1072-LY, 2006 WL 2045733, at *4 (W.D. Tex. July 18, 2006). Moreover, Story's TOMA claims and the relief he seeks against Azaiez and RRISD fail for the same reasons these claims fail as to the Trustee Defendants. *See* Dkt. 52, pp. 4–20, including a failure to establish this Court's subject-matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Story's claims against RRISD and Dr. Azaiez, discussed herein, with prejudice. RRISD and Azaiez seek their reasonable attorneys' fees and costs associated with this motion under 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 11.

Respectfully submitted,

*/s/ Kathryn E Long*
KATHRYN E. LONG
State Bar No. 24041679
klong@thompsonhorton.com

K. ADAM ROTHEY
State Bar No. 24051274
arothey@thompsonhorton.com

**THOMPSON & HORTON LLP**
500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

**ATTORNEYS FOR THE ROUND
ROCK ISD DEFENDANTS**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on October 27, 2023, a true and correct copy of this document has been served upon all parties via the Court's electronic filing system:

Warren V. Norred                    Stephen D. Casey
NORRED LAW, PLLC                     CASEY LAW OFFICE, P.C.
515 E. Border St.                    P.O. Box 2451
Arlington, TX 76010                  Round Rock, TX 78680
warren@norredlaw.com                 stephen@caseylawoffice.us

*/s/    Kathryn E. Long*
KATHRYN E. LONG