## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS - AUSTIN DIVISION

| | | |
|---|---|---|
| **JEREMY STORY and DUSTIN CLARK,** | § | |
| *Plaintiffs,* | § | |
| | § | **Civil Action No.** |
| *v.* | § | **1:22-cv-448** |
| | § | |
| **SUPERINTENDENT HAFEDH AZAIEZ, et al.** | § | |
| *Defendants.* | § | |

### PLAINTIFF'S RESPONSE AND OBJECTION TO
### ROUND ROCK INDEP. SCHOOL DISTRICT'S MOTION TO DISMISS

COMES NOW Plaintiff Story, filing this response in opposition to the Motion to Dismiss and Brief (ECF No. 53, "Motion") filed by Defendant Round Rock Indep. School District ("RRISD") and Hafedh Azaiez ("Azaiez") (collectively "Defendants") under Rule 12(b)(6).

### SUMMARY

RRISD asserts in its Brief that Plaintiff much of the same arguments that it made in its first motion to dismiss, failing to recognize the additional facts pleaded, and have been answered by Story's Second Amended Complaint. Additionally, RRISD takes issue with the new allegations regarding the parking lot incident, in which Story's First Amendment rights were violations with threats to arrest.

In response, Story here points out the pleaded facts to overcome dismissal are now in his complaint with regard to previous claims. Additionally, Story here shows how the parking lot incident should be analogized to the traditional rules of a sidewalk or airport passageway, and under such conditions, Plaintiff's actions were protected under the First Amendment.

## TABLE OF CONTENTS

SUMMARY ................................................................................................................ 1

TABLE OF AUTHORITIES ...................................................................................... 3

STANDARD OF REVIEW ......................................................................................... 4

   A.  Complaint pleads facts sufficient to show entity liability under § 1983 for Story's First Amendment claims related to the August 16 meeting and retaliation. .................................... 5

      i.  Standard for school district liability under 42 U.S.C. § 1983. .......................................... 5

      ii.  The Complaint clearly shows that the Board violated Story's First Amendment rights at the August 16 meeting. .................................................................................................. 5

   B.  Story plausibly pleads a First Amendment retaliation claim against RRISD. ..................... 9

   C.  Plaintiff's complaint clearly demonstrates that GKDA (Local) was unconstitutionally applied to Plaintiff. ............................................................................................................ 10

   D.  GKDA (Local) was unconstitutionally applied to Story .................................................... 13

   E.  Neither Trustee Defendants nor Azaiez have qualified immunity to Story's claims. ........ 13

      i.  Governing Case Law. ..................................................................................................... 13

      ii.  Qualified Immunity does not protect Defendants in this case. ...................................... 14

      iii.  Additional considerations support denial of the motion to dismiss at this stage. .......... 15

   F.  Plaintiff's Texas Open Meetings Act claim is valid against RRISD. ................................. 17

      i.  The Defendant Trustees violated TOMA in order to Hire Azaiez ................................. 17

      ii.  "Walking Quorum" in Violation of TOMA .................................................................. 18

      iii.  Preventing Attendees from Entering the Open Meeting ................................................ 20

      iv.  Improper Notice of Vote to Remove Attendees ............................................................ 20

PRAYER .................................................................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 300 (Tex. 1990) ............................................... 20

*Ashcroft v. al-Kidd*, 563 U.S. 731, 732 (2011) ......................................................................... 15

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .............................................................................. 5

*Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996)...................................................................... 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ............................................................... 5

*Chiu v. Plano Indep. Sch. Dist.,* 339 F.3d 273 (5th Cir. 2003) ................................................. 13

*Cornelius v. NAACP Legal Defense and Educational Fund, Inc.,* 473 U.S. 788, 802 (1985)................. 12

*Cox Enters., Inc. v. Bd. of Trs.*, 706 S.W.2d 956, 959 (Tex. 1986) ............................................ 19

*Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402, 406 (5th Cir. 1995) ................................... 12

*Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000)....................................... 14

*Grattan v. Bd. of Sch. Comm'rs*, 805 F.2d 1160, 1163 (4th Cir. 1986)............................... 11, 12

*Harlow Fitzgerald*, 457 U.S. 800, 818 (1982) ......................................................................... 16

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ..................................................................... 15

*Haver v. Coats*, 491 S.W.3d 877, 882 (14th Ct. App. 2016) .................................................... 15

*Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988); *Grattan v. Bd. of Sch. Com'rs of Baltimore City*, 805 F.2d 1160, 1162 (4th Cir. 1986) .............................................................. 11

*Iverson v. Putnam*, 2017 Tex. App. LEXIS 3975, at \*7 (14th Ct. App. May 2, 2017)............... 15

*Kelson v. Clark*, 1 F.4th 411, 414 (5th Cir. 2021) ..................................................................... 6

*Kelson v. Clark,* 1 F.4th 411, 416 (5th Cir. 2021) .............................................................. 14, 15

*Little Pencil, LLC v. Lubbock Indep. Sch. Dist.*, No. 5:14-CV-014-C, 2014 WL 11531267, at \*7 (N.D. Tex. May 29, 2014) .................................................................. 13

*Longoria v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 264 (5th Cir. 2019)............... 14

*Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) .................................. 6

*Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) ........................................................ 6

*Pearson v. Callahan* (No. 07-751) 494 F. 3d 891 ..................................................................... 15

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983) ............................ 12

*Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) ................................................ 6

*Point Isabel ISD v. Hinojosa*, 797 S.W.2d 176 (Tex. App.--Corpus Christi 1990, writ denied)............... 19

*Police Department of Chicago v. Mosley*, 408 U. S. 92 (1972)................................................. 13

*Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir.2003) ......................................... 6

*State of Tex. v. Knights of Ku Klux Klan*, 58 F.3d 1075, 1079 (5th Cir. 1995)............................ 13

*United Indep. Sch. Dist. v. Gonzalez*, 911 S.W.2d 118 (Tex. App.--San Antonio 1995) ........... 18

## Statutes

42 U.S.C. § 1983................................................................................................................... 6, 18

Tex. Gov't Code § 551.082...................................................................................................... 18

Tex. Gov't Code § 552.126................................................................................................. 19, 20

Tex. Gov't Code. § 551.127(e)................................................................................................. 21

Tex. Gov't Code. § 551.143...................................................................................................... 20

## Other Authorities & Rules

Tex. Op. Atty. Gen. GA-0236 (May 18, 2005)............................................................................ 2

Fed. R. Civ. P. 12(b)(6)............................................................................................................. 5

## STANDARD OF REVIEW

1.      A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is viewed with disfavor and rarely granted. The claims must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570).

2.      In considering a motion to dismiss pursuant to Rule 12(b)(6) the Court must accept as true all well-pleaded facts in the complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

3.      In *Iqbal*, the Supreme Court established a two-step approach for assessing complaints in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations as they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id*. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

4.      The United States Court of Appeals for the Fifth Circuit has taught that a trial court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the nonmoving

party. A complaint need not contain detailed factual allegations, but must contain sufficient factual material that, accepted as true, allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable. *Kelson v. Clark*, 1 F.4th 411, 414 (5th Cir. 2021).

### A. Complaint pleads facts sufficient to show entity liability under § 1983 for Story's First Amendment claims related to the August 16 meeting and retaliation.

#### i. *Standard for school district liability under 42 U.S.C. § 1983.*

5.     Both parties agree that a school district is liable under section 1983 for acts for which it is responsible and that *respondeat superior* and vicarious liability is prohibited. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir.2003). Response at 4. The parties also agree that a plaintiff must show the alleged constitutional violation was the direct result of the execution of an "official" policy or custom, the custom or policy was approved or sanctioned by the entity's "final policymaker," and the final policymaker acted with "deliberate indifference" to federally protected rights, thus causing the plaintiff's injury. *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001).

6.     Under Texas law, the policymaking authority for a school district is the board of trustees. *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir.2003). Response at 4.

#### ii. *The Complaint clearly shows that the Board violated Story's First Amendment rights at the August 16 meeting.*

7.     Defendants correctly note that "Story alleges that Board President Weir and Officers Pope and Pontillo violated his "right to petition and free speech" by preventing him from speaking and removing him from the August 16 meeting. Dkt. 49 ¶ 194. The Board mentions Story's contention that this was "based on content and viewpoint discrimination" that is "enshrined" in the Limited

Public Comment Rule in Board policy BED (Local). Response at 4. The Board then inexplicably

claims that Story plead no facts regarding the Board, as a body corporate, with respect to this claim.

8.      As the Complaint specifies in excruciating detail in Dkt. 49 ¶ 48-51, Board President Weir

called the September 14 to order with a speech-chilling monolog worthy of a Soviet Commissar:

> Before we start, the rule of the meeting tonight, based on the administration's rules,
> is the number of seats in here are the number of seats, you are not allowed to bring
> your own seat, you are not allowed to sit on the floor. I'm going to give you one
> warning, and then we will have to escort you out.

Dkt. 49 ¶ 48.

9.      As pleaded, Weir proceeded to threaten attendees by indicating that disagreement with the

"rules" would constitute a criminal offense of "meeting disruption" warranting removal and the

Board improperly voted by a 5-2 vote to adopt Wier's *sua sponte* "administrative rules" in clear

violation of the first amendment. Obviously, Plaintiff's clear recitation of the facts and the Board

vote show that the board corporately is culpable for the constitutional violations at issue.

10.     Defendants would have the Court subscribe to the notion that the unconstitutional

application of the BED (Local) policy to Plaintiff was limited to individual actors and not a policy

of RRISD as a whole.

11.     Plaintiff also clearly pleads facts concerning unconstitutional application of RRISD's

"BED Local" Policy as applied to him at the school board's August meeting including: a) ejecting

Story from the August meeting, b) treating him unequally in comparison with other individuals

present at the meeting due to the content and viewpoint he was expressing, and c) relied on the

Limited Public Comment Rule as justification for his expulsion. The so called "individual actors"

were the school board members, Superintendent, and RRISD Officers, all of whom acted

corporately and in a coordinated manner to silence Plaintiff. It is simply impossible to credibly

maintain that Plaintiff has not plead sufficient facts to justify his as applied challenge to the BED Local policy.

12.     Defendants also assert that because Plaintiff's physical restraint and removal occurred on August 16, the additional allegations that show an "official custom" of unconstitutional behavior prove nothing because they occurred later.

   a.   _Unlawful Restraint at August 11th Meeting of Story by RRISD Police._

13.      On August 11, 2021, RRISD Police Det. Sgt. Lauren Griffith was in the parking lot outside the location of the scheduled RRISD board meeting and had been informed, in conspiracy with other Board Defendants and by officers stationed outside the building, specifically that Story was approaching, complete with a description of his clothing.[1]

14.     Before Story began to speak during the public comment part of the meeting, RRISD Chief of Police Yarbrough, in plain clothes and part of the conspiracy to target and deny Story his civil rights, privately approached Story.

15.     Yarborough approached Story and demanded that he leave the room so they could speak alone outside. Story refused multiple times, and then Yarborough unconstitutionally threatened Story in furtherance of the conspiracy. Story denied causing any problems and attempted to inform Yarborough of others who had yelled and threatened people without attracting Yarborough's personal attention.

   a.   _First Amendment violation at September 14th Meeting._

1.     All parties agree that on September 14, the RRISD Board met at a regular meeting. Among those matters considered was a vote on a new mask matrix tied to Austin Public Health's and Williamson County and Cities Health Department's "COVID stages."

---

[1] Exhibit 9, Story Incident Report at 6.

2.     Board President Weir called the September 14 meeting to order at 5:31 p.m., opening with these speech-chilling verbal instructions:

> Before we start, the rule of the meeting tonight, based on the administration's rules, is the number of seats in here are the number of seats, you are not allowed to bring your own seat, you are not allowed to sit on the floor. I'm going to give you one warning, and then we will have to escort you out.

3.     Weir then unconstitutionally threatened attendees that mere disagreement with these "rules" would constitute a "meeting disruption" – a criminal offense under the Texas Penal Code cited repeatedly by Trustee Weir who referenced said statute as authority to have public participants removed at whim by RRISD Police Officers.

4.     When Trustee Bone rightly asserted that arbitrary rules may not be made up, and insisted on knowing who, if not the Board of which she is a part, made the rule, Azaiez wrongly responded that, "There were no rules, it was a decision we made… I made ... and we had this setup for like several meetings now . . . ."

5.     This impromptu rule was enforced nowhere else in RRISD and created only for this specific meeting. For example, approximately fifty students simultaneously meeting simultaneously directly across the hall from the board meeting were not required to have spacing or reduce their meeting capacity below room capacity. In addition, a board meeting was held a few days later in an auditorium with no spacing or seating restrictions being enforced, demonstrating the prior announced rule was a pretext to limit speech.

6.     Two district police, Officers Pope and Pontillo, kept Jeremy Story and many other parents from entering the room during the board meeting. COVID was mentioned as an excuse, but no COVID-restrictions were in place – the limitations were enforced by police who remained silent, surfed the internet on their mobile devices while ignoring community members, refused to answer questions, and refused to explain (1) why the restrictions were in place, (2) what rule had been

implemented, (3) what authority made the rule, or (4) who had instructed them to stand in the entryway to the board room and unconstitutionally block access to the room.

7.      During this period, Jeremy Story attempted to enter multiple times, each time stating that (1) he was no threat, and (2) he was simply attempting to enter the room, with no success.

8.      Defendants attempt to argue that their conduct was justified on the grounds that Story's statements at both meetings constituted disorderly conduct, yet they retroactively seek to apply that analysis in a conclusory fashion. Story's statements were germane to the meeting and constitutionally protected. The simple fact that Trustee Wier found Story's statements politically inconvenient due to the scrutiny they provoked of her effort to hire an obviously unqualified superintendent do not *ipso facto* make Story's statements disorderly, nor do they transform his speech into conduct.

**B.      Story plausibly pleads a First Amendment retaliation claim against RRISD.**

16.      Defendants reiterate their claim that the Board did not remove Story from the August 16 meeting and did not direct his removal. Response at 6. Those actions, they assert, were taken by individuals. However, as noted *supra.* the actions were taken by the Board's president Wier, after a vote of the board and with the cooperation of the RRISD police who executed Wier's instructions. Defendants cannot seriously maintain that the Board is immune from liability for unconstitutional actions taken by its president, in open session, in full view of the board, over the objection of two members, after a vote.

17.      Furthermore, Defendants assert without evidence, that the Board and Azaiez played no part in submission of false evidence on the police affidavit. In the absence of discovery, it simply is not possible to reach that conclusion.

18.    The simple fact of the matter is that if Plaintiff's allegations, if taken to be true, render the

Board and Azeaz liable for retaliation against Plaintiff.

**C.    Plaintiff's complaint clearly demonstrates that GKDA (Local) was unconstitutionally applied to Plaintiff.**

19.    Defendants claim in Dkt 8 that:

> Traditional public fora are those that "time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions," characteristics that public school facilities, including parking lots, "do not possess." *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988); *Grattan v. Bd. of Sch. Com'rs of Baltimore City*, 805 F.2d 1160, 1162 (4th Cir. 1986) (finding school parking lot "falls within the third category of public property . . . public property which is not by tradition or design a forum for public communication."). Thus, school facilities may be deemed public fora "only if school authorities have 'by policy or by practice' opened those facilities 'for indiscriminate use by the general public or by some segment of the public.'" *Kuhlmeier*, 484 U.S. at 267. "If the facilities have instead been reserved for other intended purposes, 'communicative or otherwise,' then no public forum has been created, and school officials may impose reasonable restrictions on the speech of students, teachers, and other members of the school community."

20.    Defendant reads "parking lot" into *Hazelwood School Dist. v. Kuhlmeier* when that

location went completely unaddressed. Furthermore, the Fifth Circuit has never definitively ruled

on the question of whether a school parking lot is a public forum or not, hence Defendant's reliance

on *Grattan v. Bd. of Sch. Com'rs of Baltimore City* a Fourth Circuit precedent that is controlling

in this case. Indeed, *Grattan* concerned a member of the local teachers union who was distributing

flyers on behalf of his employer at 8:00 a.m. in the morning on a school day. He refused to leaf

after being ordered to do so by the principal. Additionally, the court noted that

> "such exclusion is based on the broader grounds that the Appellant's activities were not related to the education of students. In so holding, we recognize the need to regulate public access to our nation's schools. Places where young people gather can invite fences seeking to recruit suppliers of stolen goods, pornographers, drug merchants and other persons plying illicit trades. Denial of access to Mr. Grattan during non-school hours was therefore reasonable and was not a pretext for viewpoint discrimination."
>
> *Grattan v. Bd. of Sch. Comm'rs*, 805 F.2d 1160, 1163 (4th Cir. 1986).

21.     Obviously, school board elections and the membership of the school board bears directly on the education of students, given that school boards set school policy, approve curriculum, oversee teachers, and resolve disputes. Schoolboard elections and teacher unionization are qualitatively different, one obviously pertains to student interests, whereas the other pertains to teacher renumeration.

22.     The Court further noted "[t]he activity of textbook salesmen, like the activities of civic organizations cited in *Perry*, is properly characterized as educationally related. The State and the School Board may provide access for such activities while prohibiting non-educational activities such as union solicitation." *Id.* at 1163.

23.     In short, Defendants place enormous weight on a couple of paltry authorities.

24.     Defendants further try to confuse the issue, citing *Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402, 406 (5th Cir. 1995) ("The [basketball] games are school-sponsored and controlled events that do not provide any sort of open forum for student expression."). Obviously, in the facts at bar, the Court is concerns with parent expression in the parking lot outside of a game, not student expression of a religious nature that school officials considered disruptive. Additionally, as Defendants should be well aware, the Supreme Court's recent holding in *Doe v. Duncanville Indep. Sch. Dist.*, expressly protects religious expression at school sporting events, casting doubt on the continued relevance of *Doe.* 70 F.3d 402, 406 (5th Cir. 1995).

25.     Defendants also cite *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983) and *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 802 (1985), however neither of those cases dealt with the question at bar, specifically, whether a school parking lot is a public forum or a designated public forum prior to a school sporting event for purposes of distribution of education elated material concerning school board elections.

26.     Furthermore, *Little Pencil, LLC v. Lubbock Indep. Sch. Dist.*, No. 5:14-CV-014-C, 2014 WL 11531267, at *7 (N.D. Tex. May 29, 2014); *see also State of Tex. v. Knights of Ku Klux Klan*, 58 F.3d 1075, 1079 (5th Cir. 1995) may indicate that a prior approval process forecloses the possibility of  characterizing the parking lot as a public forum, they do not foreclose the narrower and even more plausible claim that the parking lot is a limited public forum.

27.     Plaintiff admits that there is no case law clearly on point concerning the proper designation of a school parking lot under the first amendment. However, as noted in Plaintiff's complaint, the Fifth Circuit has conclusively held that parental distribution of education-related literature on school grounds is protected by the first amendment. *Chiu v. Plano Indep. Sch. Dist.,* 339 F.3d 273 (5th Cir. 2003). Defendant hopes to distinguish *Chi* on the grounds that it dealt with a specially called parental meeting regarding math curriculum, but this analysis ignores two critical facts. First, school board elections operate from the framework of a campaign "season" like all elections, therefore schools do not tend to call special meeting specifically to discuss school board elections. Second, parking lots of school sporting events that are open to the public during election season are precisely the time when discussion of schoolboard elections is most likely to occur given a) the gathering of diverse members of a school community including students, teachers, and parents, b) the efficiency with which information can be conveyed via parking lots, and c) the lack of a plausible convenient or efficacious alternative to such forums.

28.     Additionally, courts have long recognized that sidewalks are quintessentially public forums under the first amendment. *See Police Department of Chicago v. Mosley*, 408 U. S. 92 (1972). Although Plaintiff was distributing material in a parking lot, he was passing fans to pedestrians as the walked toward the school stadium. The parking lot was functionally a sidewalk during the time in which Plaintiff and his associates were distributing their literature.

29.     In sum, school parking lots during school sporting events should be considered public or limited public forums.

**D.      GKDA (Local) was unconstitutionally applied to Story.**

30.     Dkt. 10 Defendants argue that GKDA (Local) is content neutral. Plaintiff agrees, which is why he challenges the policy as applied to Plaintiff and does not raise a facial challenge thereto.

31.     As stated at para. 153 of the Complaint, Principal Groff tacitly approved the literature when he saw Story handing out the fans and greeting him as he passed; the parking lot was serving as a public sidewalk and thus not subject to GKDA (Local); and Story has a right to distribute materials on a public space.

**E.      Neither Trustee Defendants nor Azaiez have qualified immunity to Story's claims.**

      ***i.      Governing Case Law.***

32.     Plaintiff agrees that this case is governed by *Longoria v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 264 (5th Cir. 2019) and *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000), and thus must allege that: a) Defendants violated a clearly established constitutional right, and b) their conduct was objectively unreasonable "in light of clearly established law at the time of the alleged violation." *Id., see also Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021).

33.     Defendants claim on Dkt. 53, at 16, that Azaiez, and presumably by extension RRISD should escape liability on qualified immunity grounds.

34.     "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan* (No. 07-751) 494 F. 3d 891, reversed. To invoke the defense of qualified immunity, the

burden is on the state actor alleging qualified immunity to establish (among other things) that he was acting within the scope of his discretionary authority. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Iverson v. Putnam*, 2017 Tex. App. LEXIS 3975, at *7 (14th Ct. App. May 2, 2017), citing *Haver v. Coats*, 491 S.W.3d 877, 882 (14th Ct. App. 2016). A discretionary function requires "personal deliberation, decision, and judgment." *Iverson*, at *7.

35.     If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. *Id*. at 818-19. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. *Id.* at 819.

36.     A government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear," that every "reasonable official would [have understood] that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 732 (2011). A case need not be directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *Ashcroft*, 563 U.S. at 732.

>    ***ii.     Qualified Immunity does not protect Defendants in this case.***

37.     Plaintiff recognizes that he must allege that Defendants violated clearly established constitutional rights which were clearly established at the time. *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021).

38.     Plaintiff provided well-pleaded allegations in his Complaint that Defendants infringed his clearly established constitutional rights to petition the government and exercise free speech. These rights are formally recognized in the First Amendment to the United States Constitution.

39.     The right to petition and free speech reaches back at least to the Magna Carta in 1215. The English Declaration of Rights in 1689 which followed the Magna Carta confirmed that the king's subjects were entitled to petition him without fear of prosecution.

### iii.     Additional considerations support denial of the motion to dismiss at this stage.

40.     Though these rights are well-established, Defendants argue that Plaintiff must show that all reasonable officials in the same circumstances would know that their behavior was violating the Constitution, citing *Harlow Fitzgerald*, 457 U.S. 800, 818 (1982)), Dkt. 53, at 16.

41.     Plaintiff has alleged and given multiple examples of other people who committed the same alleged infractions as Story, none of whom had their rights infringed upon as Story did. Again, Trustee Feller gave oral support to then RRISD Board President Weir when she joined with Azaiez to command removal of Story, but on January 6th 2022, she stated that she would allow non-germane comment "as long as they circle back around to the topic eventually." Plaintiff alleges that no reasonable trustee would agree, in a moment of clarity, that Story was treated in a constitutional manner.

42.     Every reasonable trustee would recognize a duty to treat everyone equally, irrespective of viewpoint. Plaintiff's claims against the Trustee Defendants should not be dismissed. Plaintiff has alleged that, even on the night of the removal, Weir acted with the open encouragement of Feller and Harrison to exceed her discretion and misuse RRISD Defendant Officers to force Story to leave the August 16th meeting. Additionally, Plaintiff has described how the Officer Defendants worked with the Trustee Defendants in a conspiracy to deny Story the right to free speech because he was bringing light to the actions of the Trustee Defendants, and thereby damaging their reputations.

43.     Additionally, Plaintiff has alleged that the creation of the Seating Capacity Rule was irrational, borne of an illegal and unnoticed vote, used to limit attendance of a meeting required to be open to the public, and enforced only at that meeting and at no other gathering in the same building.

44.     Plaintiff has alleged that the Defendant Trustees have employed the Limited Public Comment Rule as a tool to restrict not only the speech of those coming before the Board to make public comment but who may come before the Board at all.

45.     In the last two years, the Limited Public Comment Rule has been employed harshly on Story in a way that it has not been used on any other person who has come before the Board. The Complaint includes specific examples of how the rule has been used by the Trustee Defendants to limit or entirely exclude comments by their detractors while allowing comments from their supporters.

46.     While a school trustee is not liable if he simply sits on a school board and takes no affirmative action himself in the matters Plaintiff complains of, the Complaint gives specific details about each of the Trustee Defendants and Azaiez. All of these details are in the Complaint, and no objective, responsible trustee would accept these actions as reasonable.

47.     In summary, a superintended or school board trustee are typically immune from suit when acting as a) an agent of the school district or b) performing duties as part of a body corporate. Neither of these circumstances confer immunity here because the Trustee Defendants and Azaiez acted under color of law and directed RRISD officers to violate Plaintiff's first amendment right to free speech and also directed officers to violate Plaintiff's fourth amendment rights to be free from unreasonable seizure. The constitutional violations made by these local officials under color of law open them to liability under Sec. 1983. These actions were made under color of law and not

as a body corporate but rather as an informal policy and therefore immunity for both the trustees and Azaiez is circumvented.

**F.      Plaintiff's Texas Open Meetings Act claim is valid against RRISD.**

48.      Defendant RRISD claims that Plaintiff's Texas Open Meetings Act ("TOMA") claims are invalid with respect to both Azaiez's hiring and the September 14 tax-rate meeting. Plaintiff's claims are valid because Plaintiff has averred facts showing: (1) Defendant Trustees illegally decided in secret to hire Azaiez; (2) prevented taxpayers from entering the public, open meeting space during the September 14, 2021 tax-rate hearing, and (3) illegally voted to unreasonably limit attendees during the September 14 meeting, and (4) established a remote location viewing for the September 14th meeting, relegating a crowd of critical taxpayers to a meeting room where the Board would not have to hear their criticism.

*i.      The Defendant Trustees violated TOMA in order to Hire Azaiez*

49.      Defendant RRISD says that Plaintiff's Complaint "lacks any well-pleaded facts that a quorum of the Board met, considered, deliberated, or voted regarding Azaiez's employment outside of a properly-noticed public meeting to state a TOMA violation." Dkt. 17 § 5. RRISD cites *United Indep. Sch. Dist. v. Gonzalez*, 911 S.W.2d 118 (Tex. App.--San Antonio 1995) in support. *Gonzalez* is inapposite because it addresses Tex. Gov't Code § 551.082, which pertains only to disciplinary matters involving school district employees and students.

50.      RRISD's own appendix shows that the May 21, 2021, board meeting was not properly noticed as required by TOMA. The notice of a meeting must inform the public of action taken at the meeting, and an action is subject to judicial invalidation if the notice is inadequate.[2] Notice must be sufficiently specific to inform the general public of the subjects to be considered; more

---

[2] *Point Isabel Indep. Sch. Dist. v. Hinojosa*, 797 S.W.2d 176, 180 (Tex. App.--Corpus Christi 1990, writ denied).

specificity is required when the subject slated for discussion is of special interest to the public.[3] Selection of a new superintendent is of special interest to the public, as found by the Texas Supreme Court in *Cox Enters., Inc. v. Bd. of Trs.*, 706 S.W.2d 956, 959 (Tex. 1986).

51.     The agenda for the closed session to take place on May 21, 2021, states that during the closed session, the Board would "deliberate applicants for Superintendent, including the possibility of naming finalists for the position." Dkt. 17-1, App. 4. The plain language of the closed-meeting subject shows that the board would name *multiple* finalists for the superintendent position–not make their final selection for the superintendent position. Yet the Board clearly decided to hire Azaiez in that meeting, in violation of the state's process governed by Tex. Gov't Code § 552.126, which requires a 21-day notice for the public to evaluate superintendent finalists. Defendant admits that immediately following the closed session, the Board authorized President Weir to negotiate a contract with Azaiez only. The notice of the closed session, quoted above, does not logically contemplate negotiating a contract with Azaiez and only Azaiez without ever naming him or any other person as a finalist. The natural conclusion is that the Board decided to hire Azaiez behind closed doors and without proper notice to the public.

###        ii.       *"Walking Quorum" in Violation of TOMA*

52.     Plaintiff's amended complaint includes additional facts to meet Defendants' argument that insufficient facts are alleged to assert a TOMA violation. Plaintiff has amended to show additional facts. *But for* Defendants' discussions outside of a properly noticed public meeting, Azaiez would not have been present at the June 14 meeting *prior to* the public vote to fill the superintendent role.

53.     Generally, Texas civil courts construe TOMA to guarantee access to the actual decision-making process of a government body when considering a pending issue; in such times, there can

---

[3] *Id.* at 180-181.

be no 'informal' discussion; there is a formal consideration of a matter in compliance with TOMA, or an illegal meeting."[4] "Citizens are entitled not only to know what government decides but to observe how and why every decision is reached. ***The explicit command of the statute is for openness at every stage of the deliberations***."[5]

54.     A "walking quorum" violates TOMA when a quorum (or more) of a governmental body attempts to avoid TOMA by deliberately meeting in numbers, physically less than a quorum, in closed sessions to discuss public business and, then, ratifying its actions in a physical gathering of the quorum in a later public meeting.[6] Plaintiff has averred facts establishing that the RRISD Board did exactly that.

55.     The Board began with multiple candidates for the superintendent position, but the Trustee Defendants picked Azaiez to take the position secretly, bypassing the 21-day notice for public vetting required by § 551.126 the Texas Government Code. They gave him the final interview questions before said interview so he would perform well, arranged for his travel and lodging to attend the June 14th meeting, and he was waiting in a back room *prior to* the public vote on June 14, 2021. These facts, taken together, along with the fact that someone at RRISD knew to purchase his insurance before he was even the lone candidate for the position, clearly show that five RRISD Board Members, outside of an open meeting, selected Azaiez for the superintendent position, without discussing the matter formally with the full board. RRISD does not deny the facts described above. The totality of the circumstances shows that RRISD failed to maintain "openness at every stage of the deliberations" with respect to hiring Azaiez, violating the Texas Open Meetings Act.

---

[4] *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 300 (Tex. 1990).
[5] *Acker*, 790 S.W.2d 299, at 300 (emphasis added).
[6] Tex. Gov't Code. § 551.143. *See* Tex. Op. Atty. Gen. GA-0236 (May 18, 2005).

### iii.     Preventing Attendees from Entering the Open Meeting

56.     Defendant RRISD further contends that Plaintiff's TOMA claim fails with respect to the September 14, 2021, tax-rate hearing because TOMA because attendees who were not in the meeting room could watch the meeting in an overflow area.

57.     Defendants miss the point. TOMA requires that: "The location where the member of the governmental body presiding over the meeting is *physically present* shall be *open to the public* during the open portions of the meeting."[7] RRISD is willfully blind to the explicit purpose of TOMA: the principle that "democracy thrives when citizens monitor their government's workings and participate in their governance."[8] Tax-rate hearings in particular must be open to any taxpayer who wishes to be present and participate in the meeting.[9]

58.     Plaintiff has cited additional facts to support a TOMA claim regarding the tax hearing and incorporates his Complaint, para. 88-94, 97-191, among others. RRISD did not allow even most of the attendees who wished to be physically present at the meeting where the tax hearing and vote was held. Plaintiff has alleged valid TOMA claims, the Motion to Dismiss should be denied.

### iv.     Improper Notice of Vote to Remove Attendees

59.     RRISD also violated TOMA during the tax hearing by calling for a vote on an item that was not properly noticed. "The notice of a meeting must inform the public of action taken at the meeting, and an action is subject to judicial invalidation if the notice is inadequate."[10] As the Complaint properly describes, RRISD did not give proper notice of a new policy to remove attendees not in chairs, and thus violated TOMA.

---

[7] Tex. Gov't Code. § 551.127(e) (emphasis added).
[8] *City of San Antonio*, 820 S.W.2d 762 at 782.
[9] With regard to tax rate hearings, Tex. Educ. Code § 44.004(f) states, "The board of trustees, at the meeting called for that purpose, shall adopt a budget to cover all expenditures for the school district for the next succeeding fiscal year. ***Any taxpayer of the district may be present and participate in the meeting***." (emphasis added).
[10] *Point Isabel*, 797 S.W.2d 176 at 180.

## PRAYER

As shown herein, Plaintiff's claims are sufficient to overcome qualified immunity and have

sufficiently pleaded facts in support of the remedies sought. Plaintiff asks the Court to deny the

motions to dismiss and grant all other proper remedies as appropriate.

Respectfully submitted,

Norred Law, PLLC.
By: /s/ Warren V. Norred
Warren V. Norred, Texas Bar No. 24045094, warren@norredlaw.com
515 East Border Street; Arlington, Texas 76010
P: 817-704-3984
*Attorney for Plaintiffs*

**Certificate of Service:** I hereby certify that on November 10, 2023, the foregoing document was
served to counsel of record via CM/ECF. */s/ Warren V. Norred*