UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS - AUSTIN DIVISION

| | |
|---|---|
| JEREMY STORY and DUSTIN CLARK, § | |
|    *Plaintiffs*, § | |
| § | **Civil Action No.** |
| v. § | **1:22-cv-448** |
| § | |
| SUPERINTENDENT HAFEDH AZAIEZ, et al., § | |
|    *Defendants*. § | |

## PLAINTIFF'S RESPONSE AND OBJECTION TO TRUSTEE DEFENDANTS' MOTION TO DISMISS

COMES NOW Plaintiff Jeremy Story, filing this response and objection in opposition to the Motion to Dismiss and Brief (ECF No. 52, "Motion") filed by the Defendant Trustees, which includes Amber Feller, Tiffanie Harrison, Amy Weir, Jun Xiao, and Cory Vessa (all six referenced as "Defendants" or "Trustees" herein).

Summarizing, the Defendants assert in their Brief that Plaintiff has no valid claims, arguing that they are protected from suit by immunity and that Plaintiff has failed to allege sufficient facts to support the claims made.

Plaintiff argues here that the Defendants' claims of immunity fail in the circumstances of this case when compared against appropriate case law. This response focuses on that issue and addresses this specific objection for the Trustees.

Based on the allegations and video evidence, the Court should deny even the partial dismissal sought by the Defendant Trustees at the pleading stage because a reasonable jury could believe Plaintiff's account of the events.

## TABLE OF CONTENTS

II.   ARGUMENTS AND AUTHORITIES ................................................................................... 4

   A.   Trustee Defendants are entitled to no immunity, neither qualified, absolute, nor legislative. .................................................................................................................................. 4

      i.   Governing Case Law ............................................................................................... 4

      ii.   Legislative Immunity does not protect the Trustee Defendants. ..................................... 4

      iii.   Absolute Immunity does not protect Defendants .............................................................. 5

      iv.   Qualified Immunity does not protect Defendants in this case. ........................................ 6

      v.   Plaintiff alleges that Defendants infringed clearly established constitutional rights. ....... 6

      vi.   Additional considerations support denial of the motion to dismiss at this stage. ............ 6

   B.   Trustee Defendants may be liable in their individual capacities for TOMA violations. ..... 9

      I.   Plaintiff's Texas Open Meetings Act claim is valid against Trustee Defendants. ............ 9

      ii.   The Defendant Trustees Hire Azaiez ................................................................................ 10

      iii.   "Walking Quorum" in Violation of TOMA ..................................................................... 10

      iv.   Preventing Attendees from Entering the Open Meeting ................................................. 11

      v.   Improper Notice of Vote to Remove Attendees ............................................................. 12

   C.   Plaintiff's claim regarding the hiring of Azaiez is not moot. ............................................ 12

   D.   The Complaint contains well-pleaded facts that the Trustee Defendants Weir and Feller violated Plaintiff's clearly established First Amendment rights. .............................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 300 (Tex. 1990). ................................................ 10
*Champagne v. Jefferson Par. Sheriff's Off.*, 188 F.3d 312, 314 (5th Cir. 1999) .......................... 16
*City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) ................................................................ 13
City of San Antonio v. Fourth Court of Appeals, 820 S.W.2d 762 (Tex. 1991) ........................... 11
*Cornyn v. City of Garland*, 994 S.W.2d 258 (Tex. App.—Austin 1999, no pet.) ........................ 15
*Enters., Inc. v. Bd. of Trs.*, 706 S.W.2d 956, 959 (Tex. 1986) ....................................................... 9
*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ........ 13
*Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000).......................................... 3
*Harris v. Victoria Indep. Sch. Dist. 168 F.3d 216, 224-25 (5th Cir. 1999)*.................................... 4
*Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021) ..................................................................... 3, 5
*Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) ...................................................... 12
*Liner v. Jafco*, 375 U.S. 301, 306 n. 3 (1964)............................................................................... 12
*Longoria v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 264 (5th Cir. 2019) .................. 3
*McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) .................................................... 5
*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 660, 98 S. Ct. 2018, 2020 (1978) ........................... 4
*Point Isabel Indep. Sch. Dist. v. Hinojosa*, 797 S.W.2d 176, 180 (Tex. App.--Corpus Christi 1990
 ................................................................................................................................................. 9, 11
*Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000) ................................................................. 5
*Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001) ................................................. 5
*United Indep. Sch. Dist. v. Gonzalez*, 911 S.W.2d 118 (Tex. App.--San Antonio 1995).............. 9
*United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) ....................................... 12
*United States v. Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199, 203 (1968) ............ 13
*United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)....................................................... 14
*Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S. Ct. 347, 349 (1975).......................................... 13

**Statutes**

42 U.S.C § 1983................................................................................................................................ 4
Tex. Educ. Code § 44.004(f)......................................................................................................... 11
Tex. Gov't Code § 551.082............................................................................................................. 9
Tex. Gov't Code. § 551.127(e) .................................................................................................... 10
Tex. Gov't Code. § 551.143......................................................................................................... 10
U.S. Const. art. III, § 2, cl. 1 ........................................................................................................ 12

**Other Authorities**

Tex. Op. Atty. Gen. GA-0236 (May 18, 2005)............................................................................. 10

## ARGUMENTS AND AUTHORITIES

**A. Trustee Defendants are entitled to no immunity, neither qualified, absolute, nor legislative.**

   i.   Governing Case Law.

1. Trustee Defendants contend that RRISD and Trustee Defendants are immune from suit and liability, ECF 52 p. 7.

2. This case is governed by *Longoria v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 264 (5th Cir. 2019) and *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000), and thus Plaintiff must allege that: a) Defendants violated a clearly established constitutional right, and b) their conduct was objectively unreasonable "in light of clearly established law at the time of the alleged violation." *Id., see also Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021).

   ii.  Legislative Immunity does not protect the Trustee Defendants.

3. Defendants have not amended the BED (Local) policy since these events began in any material respect, and Plaintiff is not suing the Defendants for passing the BED (Local) policy, so the allegation that legislative immunity should protect Defendants should fail.

4. Plaintiff is suing the Round Rock Independent School District for its application of its vague policy but has not asserted that claim against the Trustee Defendants named here.

5. Plaintiff's allegations against Defendants concern the enforcement of the Limited Comment Rule used during called meetings to chill political opponents, and the unconstitutional and irrational Seat Capacity Rule, created to limit criticism by reducing the number of individuals interacting with the Board to a minimum during a regular meeting, when the Limited Public Comment Rule is not available to the Board. ECF 49 ¶ 13-15, 155-158.

6. Additionally, the Seat Capacity Rule was created by Superintendent Azaiez and then illegally imposed by an improper vote on the part of the Trustee Defendants during the September

meeting. ECF 49 ¶ 84-89. Defendants have not provided a citation to indicate that they can hold illegal votes on topics not listed on the agenda *or* adopt a policy restricting attendance at an open meeting in a way that keeps the name "open" but in fact restricts the meeting attendance to a tiny fraction of those who should be able to attend.

7. It is the arbitrary and capricious enforcement of these rules as they are enforced by the Defendants which are the basis of Plaintiff's claims against them, and not legislative action. Thus, the individual Trustees are not protected by legislative immunity for their non-legislative activities enforcing a vague rule in a way that punishes their enemies and rewards their friends on some meeting nights, has little impact at all on other nights, and has put their single loudest critic in jail.

iii. <u>Absolute Immunity does not protect Defendants</u>

8. School boards do not have absolute immunity, and the Supreme Court has opined that extending such immunity to school boards would be inconsistent with several instances in which Congress has refused to immunize school boards from federal jurisdiction under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 660, 98 S. Ct. 2018, 2020 (1978).

9. Of course, Plaintiff is here to argue against dismissal sought by five individual trustees and not the Board itself ECF 52 p.7. The Fifth Circuit has answered that question when it analyzed a suit concerning a school grievance process, and determined that absolute immunity was inappropriate, but qualified immunity would sufficiently protect school trustees. *Harris v. Victoria Indep. Sch. Dist.* 168 F.3d 216, 224-25 (5th Cir. 1999).

10. Additionally, this Court has already concluded that "there is no entitlement to absolute legislative immunity" under the facts at bar. ECF 43, p.42.

    iv.    <u>Qualified Immunity does not protect Defendants in this case.</u>

11.    Plaintiff recognizes that he must allege that Defendants violated clearly established constitutional rights and that the violated right was clearly established at the time of the violation. *See Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021).

12.    A defendant cannot succeed on a qualified immunity defense at this stage if the pleadings on their face show an unreasonable violation of a clearly established constitutional right. *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000), overruled on other grounds, *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002)).

13.    First, as this Court has already articulated concerning application of qualified immunity to the facts at bar, "[w]here claims against individual Defendants are proceeding, this Court will revisit the application of qualified immunity at the summary judgment stage on a complete record." ECF 43, p.43. In sum, the Court has already rejected Defendant's specious assertion of qualified immunity at this stage of the litigation.

    v.    <u>Plaintiff alleges that Defendants infringed clearly established constitutional rights.</u>

14.    Plaintiff provides well-pleaded allegations in his Complaint that Defendants infringed his clearly established constitutional rights to petition the government and exercise free speech. ECF 49 ¶ 13-15, 155-158. These rights are formally recognized in the First Amendment to the United States Constitution.

    vi.    <u>Additional considerations support denial of the motion to dismiss at this stage.</u>

15.    Though these rights are well-established, Defendants argue that Plaintiff must show that all reasonable officials in the same circumstances would know their behavior was violating the Constitution, citing *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001). ECF 52, p. 8.

16.    Plaintiff has alleged and given examples of other people over time and different meetings who have commented at special meetings, including the meeting that Story was carted away from

by the Officer Defendants. In the Third Amended Complaint ECF 49, ¶ 36 a-f, specifically lists six different speakers guilty of infractions substantially similar to Plaintiff's who were not carted out of the schoolboard meeting by RRISD officers on the instruction or with the acquiescence of Trustee Defendants.

17.     Again, Trustee Feller gave oral support to then RRISD Board President Weir when she joined with Azaiez to command removal of Story, but on January 6th of this year stated she would allow non-germane comment "as long as they circle back around to the topic eventually." ECF 49, ¶ 104. Plaintiff alleges that no reasonable trustee would agree, in a moment of clarity, that Story was treated in a constitutional manner. Every reasonable trustee would recognize a duty to treat everyone equally, irrespective of viewpoint.

18.     Based on these allegations, Plaintiff's claims against the Trustee Defendants for their actions to remove Story should not be dismissed. Plaintiff has alleged that, even on the night of the removal, Weir acted with the open encouragement of Feller and Harrison to exceed her discretion and to misuse RRISD Defendant Officers to force Story to leave the August 16th meeting. ECF 49, ¶ 34-35.

19.     Additionally, Plaintiff has described how the Officer Defendants worked with the Trustee Defendants in a conspiracy to deny Story the right to free speech because he was bringing light to the actions of the Trustee Defendants, which put RRISD in a bad light.

20.     Plaintiff has alleged that the creation of the Seating Capacity Rule was irrational, borne of an illegal and unnoticed vote, in a meeting arguably held in closed session. ECF 49, ¶ 53. No reasonable trustee would see this action as acceptable. Azaiez admitted that he just created the policy at his whim, though the policy that was supposed to be protecting people from COVID was

not employed in any other space in RRISD that evening, including a large room down the hall from the meeting room with dozens of people in it. ECF 49, ¶ 50.

21. Azaiez stated publicly: "There were no rules, it was a decision we made… I made ... and we had this setup for like several meetings now . . . ." ECF 49, ¶ 50. During the meeting, Trustee Xiao observed this new policy was not on the agenda, and yet he voted to adopt it. ECF 49, ¶ 85.

22. Plaintiff has alleged that the Defendant Trustees employed a Limited Public Comment Rule as a tool to restrict the free speech of those coming before the Board. Under the policy, speakers have always been allowed to address the Board during specially called meetings if their comments are limited to content that is "related to" the agenda items.

23. In the last two years, the Limited Public Comment Rule has been employed harshly on Story in a way that it has been enforced on *no other person* who has come before the Board. The Complaint includes specific examples of speech that were allowed the same night that Story was dragged out of the meeting. ECF 49, ¶ 36 a-f. Since that meeting, many other speakers have come before the Board and have been able to make many remarks that are less "related to" the stated agenda than Story's comments were. As the Complaint now amended states, President Feller stated on January 6th of this year that she will allow non-germane comments "as long as they circle back around to the topic eventually." ECF 49, ¶ 104.

24. But Trustee Feller did not feel that way when Story was exposing Azaiez as a philanderer who attempted to force his extra-marital consort to have an abortion, even assaulting her in anger when she refused, and then tried to obtain a protective order against her as an offensive move to diffuse the pressure against him when she obtained one. ECF 49, ¶ 18.

25.     As the Complaint details, Trustee Feller openly encouraged then President Weir to kick Story out of the RRISD board meeting without waiting to see if Story's comments "circled back" to sanctioned topics. ECF 49, ¶ 35.

26.     While a school trustee is not liable if he simply sits on a school board and takes no affirmative action in the matters Plaintiff complains of, the Complaint gives specific details about each of the Trustee Defendants' active participation in the events that led to Plaintiff being forcibly removed from the meeting in August of 2021, including Azaiez at ECF 49 ¶ 50; Xiao at ¶ 85, Feller[1] at ¶ 35, Harrison at ¶ 35, Weir at ¶ 35, and Vessa at ¶ 115.

27.     All of these details are in the Complaint, and no objective, responsible trustee would accept the actions described as reasonable.

**B.  Trustee Defendants may be liable in their individual capacities for TOMA violations.**

   i.   <u>Plaintiff's Texas Open Meetings Act claim is valid against Trustee Defendants.</u>

28.     Trustee Defendants claim that Plaintiff's Texas Open Meetings Act ("TOMA") claims are invalid with respect to both Azaiez's hiring and the September 14 tax-rate meeting. Plaintiff's claims are valid because Plaintiff has averred facts showing: (1) Defendant Trustees illegally decided to secretly hire Azaiez (ECF 49, ¶ 232); (2) prevented taxpayers from entering the public, open meeting space during the September 14, 2021 tax-rate hearing (¶ 85); (3) voted to unreasonably limit attendees during the September 14 meeting (¶ 85); and (4) established a remote location viewing for the September 14th meeting, relegating a crowd of critical taxpayers to a non-noticed meeting room (ECF 49, Footnote 19).

---

[1] In this pleading, Plaintiff has maintained use of "Feller", as employed in his Complaint.

    ii.    <u>The Defendant Trustees Hire Azaiez</u>

29.    Trustee Defendants allege that Plaintiff's Complaint lacks any well-pleaded facts that a quorum of the Board met, considered, deliberated, or voted regarding Azaiez's employment outside of a properly-noticed public meeting to state a TOMA violation. ECF 52, p. 15. RRISD cites *United Indep. Sch. Dist. v. Gonzalez*, 911 S.W.2d 118 (Tex. App.--San Antonio 1995) in support. *Gonzalez* is inapposite because it addresses Tex. Gov't Code § 551.082, which pertains only to disciplinary matters involving school district employees and students.

30.    Trustee Defendants have never produced a document evidencing any properly noticed board meeting as required by TOMA, concerning the hiring of Azaiez. As detailed in the Complaint, Azaiez appears to have been secretly hired by a walking quorum, before the official public vote. ECF 49, ¶ 232.

31.    The notice of a meeting must inform the public of action taken at the meeting, and an action is subject to judicial invalidation if the notice is inadequate.[2] Notice must be sufficiently specific to inform the general public of the subjects to be considered; more specificity is required when the subject slated for discussion is of special interest to the public.[3] Selection of a new superintendent is of special interest to the public, as found by the Texas Supreme Court in *Cox Enters., Inc. v. Bd. of Trs.*, 706 S.W.2d 956, 959 (Tex. 1986). The natural conclusion is that the Board decided to hire Azaiez behind closed doors and without proper notice to the public. ECF 49, ¶ 13-15, 155-158.

    iii.    <u>"Walking Quorum" in Violation of TOMA</u>

32.    As clearly articulated in the Complaint, *but for* Defendants' discussions outside of a properly noticed public meeting, Azaiez would not have been present at the June 14 meeting *prior to* the public vote to fill the superintendent role. ECF 49, ¶ 13-15, 155-158.

---

[2] *Point Isabel Indep. Sch. Dist. v. Hinojosa*, 797 S.W.2d 176, 180 (Tex. App.--Corpus Christi 1990, writ denied).
[3] *Id.,* at 180-181.

33. Generally, Texas civil courts construe TOMA to guarantee access to the actual decision-making process of a government body when considering a pending issue; in such times, there can be no 'informal' discussion; there is a formal consideration of a matter in compliance with TOMA, or an illegal meeting."[4] As the Texas Supreme Court has taught, "Citizens are entitled not only to know what government decides but to observe how and why every decision is reached. *The explicit command of the statute is for openness at every stage of the deliberations*."[5]

34. A "walking quorum" violates TOMA when a quorum (or more) of a governmental body attempts to avoid TOMA by deliberately meeting in numbers, physically less than a quorum, in closed sessions to discuss public business and then ratifying its actions in a physical gathering of the quorum in a later public meeting.[6]

35. Plaintiff has averred facts establishing that the RRISD Board maintained a "walking quorum" in violation of TOMA. ECF 49, ¶ 13-15, 155-158. RRISD cannot overcome these allegations and obtain dismissal at this stage.

   iv. <u>Preventing Attendees from Entering the Open Meeting</u>

36. Trustee Defendants further contend that Plaintiff's TOMA claim fails with respect to the September 14, 2021 tax-rate hearing because TOMA does not set such standards and because attendees not in the meeting room could watch the meeting in an overflow area. ECF 52, p. 16.

37. Defendants miss the point. TOMA requires that: "The location where the member of the governmental body presiding over the meeting is *physically present* shall be *open to the public* during the open portions of the meeting."[7] Defendants are willfully blind to the explicit purpose of TOMA: the principle that "democracy thrives when citizens monitor their government's

---

[4] *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 300 (Tex. 1990).
[5] *Acker*, 790 S.W.2d 299, at 300 (emphasis added).
[6] Tex. Gov't Code. § 551.143. *See* Tex. Op. Atty. Gen. GA-0236 (May 18, 2005).
[7] Tex. Gov't Code. § 551.127(e) (emphasis added).

workings *and participate* in their governance."[8] (Italics added.) A citizen cannot participate in a meeting when relegated to a room where he can be ignored by the legislative body in question. In this case, a tax-rate hearing was in progress, which state law requires to be open to any taxpayer who wishes to be present and participate in the meeting.[9]

38.   Plaintiff has cited additional facts to support a TOMA claim regarding the tax hearing. See ECF 49, ¶ 44-77, among many. Trustee Defendants did not allow even most of those who wished to be physically present at the meeting where the tax hearing and vote was held to attend. Because Plaintiff has clearly alleged valid TOMA claims, the Motion to Dismiss should be denied.

    v.   <u>Improper Notice of Vote to Remove Attendees</u>

39.   Trustee Defendants also violated TOMA during the tax hearing by voting on the Limited Seating Policy, which was not properly noticed. "The notice of a meeting must inform the public of action taken at the meeting, and an action is subject to judicial invalidation if the notice is inadequate."[10] ECF 49, ¶ 84-86. Because RRISD did not give proper notice of a new policy to remove "chair-disadvantaged" attendees, Trustee Defendants violated TOMA.

**C.   Plaintiff's claim regarding the hiring of Azaiez is not moot.**

40.   Defendants contend that Plaintiff's claim concerning the hiring of Azaiez is moot because a) the board voted a second time to adopt Azaiez's contract in on June 19, 2021 (ECF 52, p.9); b) since June 2021, the Board has twice voted to issue contract amendments to Azaiez, further affirming his contract, and c) there are no live cases and controversies concerning the three subsequent affirmations of Azaiez's hiring.

---

[8] *City of San Antonio*, 820 S.W.2d 762 at 782.
[9] With regard to tax rate hearings, Tex. Educ. Code § 44.004(f) states, "The board of trustees, at the meeting called for that purpose, shall adopt a budget to cover all expenditures for the school district for the next succeeding fiscal year. *Any taxpayer of the district may be present and participate in the meeting*." (emphasis added).
[10] *Point Isabel*, 797 S.W.2d 176 at 180.

41. Defendants disingenuously raise the same argument about Plaintiff's participation in the August and September 2022 Board meetings, claiming that Plaintiff cannot assert claims based on his treatment at those meetings because the Board subsequently has approved additional tax rate changes. ECF 52, p.10. As all parties to this litigation well know, none of Plaintiff's claims hinge on tax rates. He protests TOMA violations and constitutional rights violations concerning his treatment by the Board, rendering subsequent tax votes wholly irrelevant to this litigation.

42. While Defendants are correct to allege that the Board has ratified its initial bad judgments over and over, warranting a finding of mootness to dismiss related claims, exceptions to mootness prevent that dismissal, as described *infra*.

43. Under Article III of the U.S. Constitution, the jurisdiction of federal courts is limited to actual, ongoing cases and controversies. U.S. Const. art. III, § 2, cl. 1.

44. Article III mootness is derived from the constitutional requirement that judicial power be exercised only in "cases" or "controversies." *Liner v. Jafco*, 375 U.S. 301, 306 n. 3 (1964).

45. Usually, a case or controversy must exist throughout judicial proceedings, and not just when the lawsuit is filed or when review is granted by an appellate court. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990).

46. The Supreme Court has described mootness as follows:

> The "personal stake" aspect of mootness doctrine ... serves primarily the purpose of assuring that federal courts are presented with disputes they are capable of resolving. One commentator has defined mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."

*United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980).

    a. <u>The "Capable of Repetition, Yet Evading Review" Exception.</u>

47. Some disputes or injuries may arise in the short-term and have the potential for recurrence, but always fail to last long enough to permit federal judicial review. In such a situation, federal

courts have justified an exception to the mootness doctrine where there are "exceptional situations," in which the plaintiff "can make a reasonable showing that he will again be subjected to the alleged illegality." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (citation omitted).

48. The Supreme Court has instructed lower courts on the application of this doctrine, holding:

> [I]n the absence of a class action, the "capable of repetition, yet evading review" doctrine was limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.

*Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).

  b. *The "Voluntary Cessation" Exception*

49. If a defendant voluntarily terminates the allegedly unlawful conduct after the lawsuit has been filed but may resume the practice at any time, a federal court may deem the case nonmoot. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

50. The "heavy burden" of persuading the court that a case has been mooted by the defendant's voluntary actions lies with the party asserting mootness, and the standard for such a determination is a "stringent" one: "if subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior [can] not reasonably be expected to recur." *Id.*, citing *United States v. Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199, 203 (1968).

51. This exception is supported by the Supreme Court because, in addition to ensuring that the defendant is not "free to return to his old ways," there is "a public interest in having the legality of the practices settled." *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953) (citation omitted).

52. Plaintiff does not seek removal of Azaiez through judicial action nor is the wrongful hiring of Azaiez, taken in isolation, the crux of the controversy at issue. Plaintiff seeks redress for TOMA violations and an injunction requiring that the RRISD Trustees cease initiating "walking" quorums and cease creating policies in violation of TOMA and the U.S. Constitution. As outlined in detailed

in the Third Amended Complaint ECF 49 ¶ 232 and 234, the wrongful hiring of Azaiez is merely one data point in a constellation of abuses for which Plaintiff seeks judicial intervention to prevent *further* usurpation of his and similarly-situated plaintiffs' rights.

53. The Trustees and RRISD's behavior should not escape judicial scrutiny because they subsequently performed the required theater of voting to hire Azaiez in conformity with TOMA. If the voluntary cessation exception to mootness is to have any meaning at all, it must apply when a school district a) wrongfully hires a superintendent in violation of TOMA via a walking quorum, b) wrongfully restricts public discussion of the illegal action at public meetings while allowing off topic speech, c) forcibly removes a citizen who complains about the illegality from the school board meeting, and d) the cumulative impact of the Defendants illicit activity is the wrongful arrest, physical injury, and public humiliation of an innocent citizen.

54. Likewise, the long train of abuses detailed supra and at length in the complaint is capable of repetition yet evading review when RRISD and its trustees vote to cure their repeated illicit acts and procedural violations. The rules that RRISD so cavalierly violate exist to prevent corruption, promote good government, and protect rights. Judicial lenience under these facts would compromise all those worthy objectives.

55. Defendants cannot escape liability via their reliance on *Cornyn v. City of Garland*, 994 S.W.2d 258 (Tex. App.—Austin 1999, no pet.) (standing for the position that TOMA claims are not subject to the capable-of-repetition-yet-evading-review exception). In the facts at bar, Plaintiff does not complain of TOMA violations in isolation, he complains of a pattern of TOMA violations inextricably bound up in a culture of secrecy and flagrant constitutional violations. Had Plaintiff wanted to remove the Superintendent or the board he would have sought a writ of mandamus. Instead, he seeks judicial relief within the power of this Court, specifically, an injunction

compelling RRISD, Trustees, Azaiez, and their Officers, to follow the law and remit damages for the injuries to his person and rights.

### D. The Complaint contains well-pleaded facts that the Trustee Defendants Weir and Feller violated Plaintiff's clearly established First Amendment rights.

56. Defendants assert that Plaintiff does not state a plausible First Amendment claim against Trustee Defendant Wier on the grounds that Story's unreasonable seizure claim against all individual defendants other than Pope and Pontillo have been dismissed. ECF 52 p.16 or Feller ECF 52 18. However, the Court specifically held in its order:

> Story also alleges that, unlike the other speakers who deviated from the posted agenda items to speak about Azaiez, he alone was "dragged from the podium by police" and ejected from the meeting at the direction of President Weir. (Dkt. # 20 ¶ 40.) Taking these facts as true and viewing them in the light most favorable to the plaintiff—as the Court must do at this stage—Story has stated a claim with respect to his as-applied challenge to the rule.

ECF 43, p.16.

57. As described above, Trustee Defendants, including Wier, do not have immunity in the case as alleged. Individual actions are described for all of them, and Plaintiff alleges a conspiracy by Defendants to chill their critics, which is supported by the Complaint and by Weir's actions in removing Story from the meeting by directing the officers to drag him out by force.

58. Defendants claim that "Story cannot show that it was clearly-established that an individual can violate Fourth Amendment rights without personal involvement in the action, Weir is entitled to qualified immunity. *Champagne v. Jefferson Par. Sheriff's Off.*, 188 F.3d 312, 314 (5th Cir. 1999) (defendant entitled to qualified immunity because plaintiff's complaint "alleges no personal involvement" by him)." ECF 52 p. 18. But this analysis ignores the fact that Weir was uncontrovertibly personally involved because she ordered Story's removal, thereby negating any qualified immunity she might have enjoyed.

59. Furthermore, Defendants contend that the Third Amended Complaint does not specify how Feller was personally involved in Story's expulsion from the August 16th meeting and thereby a participant in denial of equal protection. ECF 52, p. 19. On the contrary, the Third Amended Complaint specifies that Feller was one of three board members who "stated that Story should leave" because his intended comment "could not possibly be related to an agenda item" a view she publicly expressed at the August 16th, meeting. ECF 49, ¶ 35. Furthermore, the Third Amended Complaint details Feller's continued pattern of unequal protection when at the January 6, board meeting, Feller stated that she would allow non-germane comments "as long as they circle back around to the topic eventually" and then denied Story the right to speak ECF 49, ¶ 104, 105.

60. Additional support against the arguments of the Motion is already in the Complaint or the Response filed against RRISD's motion to dismiss or the response to the Officer Defendants, including support for the prior restraint and specific examples of content biased decision-making, as well as the answer to the objections regarding retaliation, failure to train, and Plaintiffs' § 1983 claims. Those responses are incorporated by reference here.

**PRAYER**

Plaintiff asks the Court to deny the Defendant Trustees' Motion, and grant all appropriate remedies to which they are entitled.

Respectfully submitted,

Norred Law, PLLC.
By: /s/ *Warren V. Norred*
Warren V. Norred, Texas Bar No. 24045094, warren@norredlaw.com
515 East Border Street; Arlington, Texas 76010
P: 817-704-3984
*Attorney for Plaintiff*

**Certificate of Service:** I hereby certify that on November 13, 2023, the foregoing document was served to counsel of record via CM/ECF.

/s/ *Warren V. Norred*