UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS - AUSTIN DIVISION

| | |
|---|---|
| JEREMY STORY and DUSTIN CLARK,<br>　*Plaintiffs,*<br><br>v.<br><br>SUPERINTENDENT HAFEDH AZAIEZ, et al.,<br>　*Defendants.* | §<br>§<br>§　**Civil Action No.**<br>§　**1:22-cv-448**<br>§<br>§<br>§<br>§ |

**PLAINTIFF'S RESPONSE TO DEFENDANT OFFICERS' MOTION TO DISMISS**

COMES NOW, Plaintiff Jeremy Story to respond to the Motion to Dismiss ("Motion") filed by RRISD Officers Jeffrey Yarbrough, RRISD's former Chief of Police and James Williby, RRISD Asst. Chief of Police (corporately in this pleading, "Officer Defendants"), the leadership of RRISD who managed, supervised, and approved the illegal ejection of Story from RRISD board meetings using excessive force, false charges, and wrongful detention in jail. [Doc. No. 51.]

The Motion can be summarized as asserting that these leaders of law enforcement who personally watched the complained-of actions and gave at least tacit approval of them in real time, because they did not actually manhandle Story themselves.

Plaintiff filed his Third Amended Complaint to add sufficient facts to respond to the Court's earlier order and overcome Defendants' arguments. Because Defendant Officers' arguments depend on factual findings that a trier of fact could deny in the circumstances of the present case, the Court should deny the Officer Defendants Motion to Dismiss.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ 3

STANDARD OF REVIEW ................................................................................................. 4

PLAINTIFFS' CLAIMS SHOULD SURVIVE DISMISSAL .................................................. 5

    A.   Officers' qualified Immunity Defense fails in this case. ........................................... 5

    B.   Plaintiff's claim for Failure to Supervise is properly pleaded. ................................. 8

    C.   Plaintiff's claim for Retaliation is plausible and well pleaded. ................................ 9

    D.   Plaintiff's facts support multiple claims for violation of the Fourth Amendment. ............... 10

        i.   *Fourth Amendment Violation Related to Arrests* ............................................. 10

        ii.  *Plaintiff's Fourteenth Amendment equal protection and due process claims against Williby and Yarbrough should not be dismissed.* .............................................. 12

    E.   Specifically, Defendant Officers unconstitutionally restrained Story. ..................... 13

    F.   Defendant Officers repeat the same unlawful restraint at September 14th meeting. ............. 14

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. al-Kidd*, 563 U.S. 731, 732 (2011) ............................................................................... 6
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................................. 4, 7
*Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996) ......................................................................... 4
*Batyukova v. Doege*, 994 F.3d 717, 730 (5th Cir. 2021) ............................................................. 10
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) .................................................................. 4
*Blake v. Lambert*, 921 F.3d 215, 220 (5th Cir. 2019) .................................................................. 11
*Bond v. Nueces Cty.*, No. 20-40050, 2022 U.S. App. LEXIS 27460, at *21-22 (5th Cir. 2022).... 9
*Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005)...................... 8, 13
*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ........................................................................... 6
*Haver v. Coats*, 491 S.W.3d 877, 882 (14th Ct. App. 2016) ......................................................... 6
*Iverson v. Putnam*, 2017 Tex. App. LEXIS 3975, at *7 (14th Ct. App. May 2, 2017) ................. 6
*Kelson v. Clark*, 1 F.4th 411, 414 (5th Cir. 2021) ......................................................................... 5
*Malley v. Briggs*, 475 U.S. 335, 344 (1986) ............................................................................... 11
*Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017) ................................................................. 11
*Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) ........................................................... 4
*Parker v. Blackwell*, 23 F.4th 517, 525 (5th Cir. 2022) ................................................................. 8
*Pearson v. Callahan* (No. 07-751) 494 F. 3d 891 .......................................................................... 6
*Porter v. Epps*, 659 F.3d 440, 447 (5th Cir. 2011) ........................................................................ 8
*Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) ......................................... 14
*Spencer v. Staton*, 489 F.3d 658, 661 (5th Cir.) .......................................................................... 11
*Terry v. Ohio*, 392 U.S. 1, 11 (1968) ........................................................................................... 13
*Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074-75 (2000) ......................... 5, 13

**Statutes**

Tex. Educ. Code § 11.151(b) ........................................................................................................ 14

**Rules**

42 U.S.C. § 1985(3) ...................................................................................................................... 12
Fed. R. Civ. P. 12(b)(6) ................................................................................................................... 4

## STANDARD OF REVIEW

1. A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is viewed with disfavor and rarely granted. The claims must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570).

2. In considering a motion to dismiss pursuant to Rule 12(b)(6) the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

3. In *Iqbal*, the Supreme Court established a two-step approach for assessing complaints in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id*. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

4. The United States Court of Appeals for the Fifth Circuit has taught that a trial court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the nonmoving

party. A complaint need not contain detailed factual allegations, but must contain sufficient factual material that, accepted as true, allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable. *Kelson v. Clark*, 1 F.4th 411, 414 (5th Cir. 2021).

5. To overcome qualified immunity, a plaintiff must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity. *Id.*

6. Plaintiff has pled facts regarding Officer Defendants' behavior and interaction with the School Board Trustees and Plaintiffs, including forced ejection from RRISD proceedings where Plaintiffs attempted to exercise their right to petition and speech protected by the First amendment, and subsequent arrest on unsupportable charges thereby garnering sufficient indicia of malfeasance to plausibly suggest an entitlement to relief by Plaintiffs.

7. Plaintiffs have alleged in their Amended Complaint that their claims are also valid under the "class of one" doctrine, as described in *Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074-75 (2000). Plaintiffs are not required to prove their case as though responding to a motion for summary judgment.

8. This honorable court should allow the case and claims to move forward and at least allow discovery so Plaintiffs may seek restitution for their damages.

## PLAINTIFFS' CLAIMS SHOULD SURVIVE DISMISSAL

### A. Officers' qualified Immunity Defense fails in this case.

9. On page 5 of their Motion, Officer Defendants correctly identify qualified immunity as the question on which Plaintiffs' claims against Officer Defendants hinges. "Qualified immunity

balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan* (No. 07-751) 494 F. 3d 891, reversed. To invoke the defense of qualified immunity, the burden is on the state actor alleging qualified immunity to establish (among other things) that he was acting within the scope of his discretionary authority. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Iverson v. Putnam*, 2017 Tex. App. LEXIS 3975, at *7 (14th Ct. App. May 2, 2017), citing *Haver v. Coats*, 491 S.W.3d 877, 882 (14th Ct. App. 2016). A discretionary function requires "personal deliberation, decision, and judgment." *Iverson*, at *7.

10. If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. *Id.* at 818-19. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. *Id.* at 819.

11. A government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear," that every "reasonable official would [have understood] that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 732 (2011). A case need not be directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *Ashcroft*, 563 U.S. at 732.

12. Officer Defendants argue that Plaintiffs have not alleged an actual violation of a clearly established constitutional right, citing *Ashcroft,* 5̸63 U.S. at 741 in support on page six of their Motion. The case at bar is easily distinguished from *Ashcroft*. In *Ashcroft*, the plaintiff argued that a district judge's footnoted dictum, devoid of supporting citation, constituted "clearly established

law." The U.S. Supreme Court held that the dictum was not "clearly established law," noting that a "district judge's *ipse dixit* of a holding is not 'controlling authority' in any jurisdiction, much less in the entire United States." *Ashcroft*, 563 U.S. 731 at 741. Here, Plaintiff maintains that there is a clearly established constitutional right to petition a school board for redress for grievances when that body is attempting to install a new Superintendent clouded by a miasma of moral turpitude including inappropriate relations with his subordinates that would likely disqualify him from bartending at any responsible night club.

13.  Additionally, when Defendant Officer Chavez is told by Williby to quoting laws in support of their unconstitutional actions, and only quoting only a part of that law, as detailed below, Williby cannot deny liability under a supervisory theory. He knew he aware of the state law that that he told Chavez to quote. See ECF 49, ¶¶ 68-74. Officer Defendants have not identified a one-off misbehavior that was so egregious, no great frequency to demonstrate liability is needed.

14.  Officer Defendant Williby cannot claim to have discretion to encourage a police officer to knowingly arrest or threaten someone with arrest when he knows that no law is being broken. Here, Officer Chavez cited a part of section 37.105 to support his actions, knowing that he was taking a section out of context and that he was deliberately doing so. ECF 49, ¶¶ 68-74. And Defendant Williby instructed Chavez, watched his actions, and approved of them.

15.  As Defendant Yarbrough cited this exact same section of the law when speaking to Plaintiff Story outside the August 19th meeting (see ECF 49, ¶39), and was present and observed with apparent approval of the officers on August 16th, he is similarly liable for his supervisory role.

16.  Additionally, Plaintiff Story was prevented from entering an open meeting that he had every right to attend. Officer Defendants, both of whom were significantly larger than Story, prevented his entrance, and even used excessive force on Story, causing him to be cut and to bleed.

The trier of fact should be allowed to determine if the injury was *de minimis*, and if Plaintiff's claims should therefore be dismissed. Additionally, the Officer Defendants, both of whom were present and capable of correcting the behavior of their subordinates, appear to have approved the behavior, as no apparent corrective disciplinary measure was taken, nor apology from RRISD police been issued. ECF 49, ¶ 79-80.

17. Finally, the Third Amended Complaint includes specific allegations concerning the Officer Defendants' role in enforcing the 18-seat rule. ¶ 93. In particular, Story pleaded that Williby was the enforcer of the 18-seat rule, as instructed by Weir. ¶ 51.

### B. Plaintiff's claim for Failure to Supervise is properly pleaded.

18. On pages 7 and 8 of their Motion, Officer Defendants maintain that Plaintiffs have not sufficiently pleaded a "failure to supervise" claim. To state such a claim, a plaintiff must show: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounts to deliberate indifference. *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

19. Officer Defendants correctly note that the infringement of the plaintiff's constitutional rights must be an "obvious" and "highly predictable" consequence of the failure to train. *Parker v. Blackwell*, 23 F.4th 517, 525 (5th Cir. 2022). "Additionally, relief will not *typically* be available absent a showing of a pattern of constitutional violations, as opposed to a single incident." *Id.* (italics added for emphasis). Moreover, "deliberate indifference is a stringent standard or fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Porter v. Epps*, 659 F.3d 440, 447 (5th Cir. 2011) (cleaned up).

20.     In the facts at bar, Defendant Officers Williby and Yarbrough's decisions to do nothing on September 14th while their subordinates wrapped Story around a pole, cutting into his back so he was bleeding, clearly exhibited a failure to supervise. ECF 49, ¶ 79. These events came on the heels of their prior indifference to Story's improper detention and removal from the August 11th Trustee meeting. The ongoing pattern of Officer Defendants acting as a goon squad for RRISD's superintendent establishes a pattern sufficient that a reasonable jury could find the Officer Defendants liable for these claims. As *Parker* involved a speculative claim of mismanagement, the court there was right to ask for a pattern or something more than a single event. *Parker v. Blackwell*, 23 F.4th 517, 525 (5th Cir. 2022). In this case, Story has pleaded multiple events, and during the events, the culpability of the Officer Defendants is beyond speculative – they approved and watched the unconstitutional forceable removal and the violations of the right petition during an open meeting. *Parker v. Blackwell* is not relevant here, as a pattern has been alleged.

21.     Finally, when a pattern is alleged, the Court ought not dismiss a claim at the pleading stage. The Fifth Circuit has taught that a plaintiff is not required to "explicitly provide a denominator against which the allegations are weighed to determine the existence of a pattern." *Bond v. Nueces Cty.*, No. 20-40050, 2022 U.S. App. LEXIS 27460, at *21-22 (5th Cir. 2022).

**C. Plaintiff's claim for Retaliation is plausible and well pleaded.**

22.     On pages 11 and 12 of their Motion Officers argue that there can be no claim for retaliation against Plaintiff because Williby did not directly instruct and approve of Pope and Pontillo's behavior and he had not notice that the actions were motivated by retaliatory animus likely to result in constitutional violations.

23.     The Amended Complaint describes how the facts of this case meet the requirements to state a First Amendment retaliation claim, to wit: (1) Plaintiff was engaged in a constitutionally

protected activity; (2) the officer's action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the officer's adverse actions were substantially motivated against their exercise of constitutionally protected activity. *Batyukova v. Doege*, 994 F.3d 717, 730 (5th Cir. 2021).

24. At no point did Plaintiff substantially obstruct or interfere with the ordinary conduct of a meeting. Additionally, there is not even a colorable argument that Plaintiff substantially obstructed RRISD meetings.

25. Plaintiff's speech to the school board was constitutionally protected. An arrest would have the effect of chilling speech on any reasonable person. Obviously, the arrest of Plaintiff was motivated by an effort to prevent him from returning to continue to exercise his free speech right to hold RRISD Trustees accountable. If nothing else, Plaintiff's retaliation claim should survive so further discovery may be conducted to ascertain the extent of the conspiracy among the officers and the school board.

26. As evidence of the damage done to Story while he was pinned to the door frame for no reason by RRISD's police, Story has added a picture of the cut in his back, still bleeding from this treatment, in Plaintiff's Third Amended Complaint. ECF 49, ¶ 79.

  D. **Plaintiff's facts support multiple claims for violation of the Fourth Amendment.**

  i. *Fourth Amendment Violation Related to Arrests*

27. On page 12 of their Motion, Officer Defendants assert that Plaintiff's Third Amended Complaint does not assert a violation of Plaintiff's Fourth Amendment rights.

28. Plaintiff asserts that Officer Defendants violated his Fourth Amendment rights, as recognized in *Malley v. Briggs*, to be free from arrest based on a "warrant application . . . so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley v.*

*Briggs*, 475 U.S. 335, 344 (1986). "The *Malley* wrong is not the presentment of false evidence, but the obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant." *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017) (*en banc*).

29. On this claim, Officer Defendants' "determination that the warrant was valid entitles them to qualified immunity from suit unless, 'on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue' under the circumstances." *Spencer v. Staton*, 489 F.3d 658, 661 (5th Cir.) (*quoting Malley*, 475 U.S. at 341), *modified on other grounds on reh'g*, 489 F.3d 666 (5th Cir. 2007).

30. Indeed, the facts at bar are similar to the situation confronted by the Fifth Circuit in *Blake v. Lambert* where the court applied *Malley* and recognized the invalidity of a warrant on the grounds that the officer's supporting affidavit simply identified the defendant and "recites the charged offense, and cites the corresponding … statutes. [But] does not provide any supporting facts from which a magistrate could independently determine probable cause. [Including] the officer's experience, the sources of the officer's information and their reliability, the officer's conversations with defendant." *Blake v. Lambert*, 921 F.3d 215, 220 (5th Cir. 2019). The court concluded that the officer's affidavit was "indistinguishable from what we called the 'textbook example' of a facially invalid affidavit in *Spencer v. Stanton* 489 F.3d at 661; *see id*. at 661 n.2 (quoting affidavit in full). The affidavit in *Spencer*, like *Lambert*'s, stated that the named person committed the offense but did not provide factual support" *See Spencer*, 489 F.3d at 661 n.2.

31. As described in the Complaint, the RRISD-originated warrants were invalid on the same grounds and based on deliberate misrepresentations about the events, as the Court can see on the referenced video recording of the meetings. ECF 49, ¶ 227.

32. Officer Defendants assert on page 14 of their Motion that because the warrant affidavits were prepared and sworn to only by Officer Griffith based on information received from Officer Pope and Officer Chavez, Plaintiff cannot state a claim against any other officer as review of the warrants by Williby or Yarbrough would be speculative and conclusory. Based on the allegations articulated in Plaintiff's Third Amended Complaint, the Court can evaluate these allegations based on their background and make reasonable inferences to determine if the allegations rise above speculation. As both of the Officer Defendants have been personally involved in discussions with Plaintiff citing state law to abuse Story and enforcing unconstitutional rules, this Court ought not dismiss the claims at the pleading stage, but allow discovery to reveal the truth of the matter – these officers enjoyed working with the RRISD Board Defendants to target, intimidate, and embarrass Plaintiff into silence regarding the behavior of RRISD and RRPD, deliberately acting to chill his exercise of free speech and actually forcing his silence by removal and prohibiting him from entering open meetings available to other members of the public. ECF 49, ¶ 227

> ii. Plaintiff's Fourteenth Amendment equal protection and due process claims against Williby and Yarbrough should not be dismissed.

33. Plaintiff can maintain a claim against the Defendant Officers when they are breaking state law, violating District policy, and acting ultra vires, as such actions are by definition not proper for any of them. No Defendant Officer has discretion to violate Plaintiff's constitutional rights, or the Texas Open Meetings Act.

34. Officers also argue on p. 15 of their Motion that Plaintiff fails to allege a class of people whose rights have been violated. The Court has already recognized the class-of-one argument outlined in the Third Amended Complaint, and supported by 42 U.S.C. § 1985(3) prohibitions on depriving equal protection of the laws, and equal privileges and immunities. ECF 49, ¶ 192.

35.     Plaintiff has alleged that he was deprived of his First and Fourth amendment rights by concerted action of the Officer Defendants because their political viewpoint was disfavored. Plaintiff's claims are valid under the "class of one" doctrine, as Defendants acted out of spite to punish the Plaintiff for his temerity, as demonstrated by the Board's varying tolerance for commentary that was "related to" vaguely worded agenda items. *See Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). ECF 49, ¶ 192.

36.     Defendants argue on page 17 of their Motion that Plaintiff has failed to establish a pattern of prior acts such that the failure to supervise was "obvious and likely to result in a constitutional violation." *Estate of Davis*, 405 F.3d at 381–86. However, a pattern of unreasonable actions on the part of the Officers' actions hinges on a detailed factual analysis of the removal of Story on each date and issue, as articulated in the Third Amended Complaint.

   **E. Specifically, Defendant Officers unconstitutionally restrained Story.**

37.      Plaintiff's Complaint recounts in exhaustive detail how Williby and Yarbrough acting individually and through their subordinate officers, singled Plaintiff by a) identifying Plaintiff for removal prior to the meeting while he was still in the parking lot, b) ignored multiple speakers who roamed off topic but failed to extend the same leniency to Plaintiff, and c) physically removed Plaintiff from the meeting including wrapping him around a pole. ECF 49, ¶ 28-39.

38.     Considering Officers Pope and Pontillo's ambush and restraint of Story as recounted above, Defendants cannot credibly maintain that their conduct did not constitute a restraint. Although Officers cite *Terry v. Ohio*, 392 U.S. 1, 11 (1968), on Page 11 of their Motion for the proposition that not all restraints are unreasonable, their conduct on August 16th was clearly a restraint because Story could not plausibly have felt free to leave while being manhandled from behind by two

officers and it was clearly unreasonable because it was predicated on an illegal restraint on speech and unequally applied specifically against Story and no one else. ECF 49, ¶ 37.

39. Officers assert in their Motion that they were not participants in an illegal restraint on speech, because they did not formulate the RRISD meeting social distancing policies. See Tex. Educ. Code § 11.151(b); *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003).

40. For a detailed review of the illegality of the School Board's restraint on speech, see Plaintiffs' Response to RRISD's Motion to Dismiss filed concurrently with this response.

41. The Third Amended Complaint details how the Defendant Officers violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, as Defendants Assistant Chief Williby and Chief Yarbrough exhibited deliberate indifference to Plaintiff's constitutional rights by personally participating in, directing, encouraging, ratifying, and approving the unconstitutional conduct of their subordinates, and then by failing to prevent, discipline, or otherwise address their subordinates' unconstitutional conduct. ECF 49, ¶ 37. This is particularly true of the time-period during which they were actively witnessing that conduct.

42. In sum, the facts alleged in the Third Amended Complaint show that the Defendants deliberately enforced an unconstitutional restraint on Plaintiff's exercise of free speech, violating both the Fourth and First Amendments.

**F. Defendant Officers repeat the same unlawful restraint at September 14th meeting.**

43. As described in the Third Complaint, the RRISD Board meeting on September 14th was a regular meeting, and considered a vote on a new mask matrix. ECF 49, ¶ 44.

44. As the board meeting started, the police allowed some people in solely based on the officers' personal judgment, e.g., one person stated that she was speaking first. Others were prohibited without any discernible reason. ECF 49, ¶ 65.

45. As noted in Plaintiff's Response to Trustees' Motion to dismiss, filed concurrently with this response, there was no legal basis for the Trustees' illegal seating policy on September 14, 2021, and the Officers' decision to enforce the illegal policy constituted illegal action taken in furtherance of an illegal aim, namely, restricting parent and citizen participation, petition, and speech at a school board meeting. ECF 49, ¶ 58.

46. Contrary to Officers' assertion on page 11 of the Motion, Story was restrained in a bear-hold around a pole. This clearly indicated a restraint and Officer Williby clearly witnessed it and did nothing. ECF 49, ¶ 77.

47. In short, there is no plausible interpretation of the facts at bar where the Officer Defendants' conduct did not constitute a restraint. Since their conduct was predicated on an illegal policy and the knowingly omitted portions of the law from their on-scene justification for their conduct, the restraint of Plaintiff was clearly unlawful and moreover, they knew it to be so.

## PRAYER

Plaintiff prays that this court deny Officer Defendants' Motion to Dismiss (ECF No. 51) and afford Plaintiffs any other relief to which they may be entitled.

>Norred Law, PLLC.
>By: /s/ *Warren V. Norred*
>Warren V. Norred, Texas Bar No. 24045094; warren@norredlaw.com
>515 East Border Street; Arlington, Texas 76010
>P: 817-704-3984

**CERTIFICATE OF SERVICE:** The undersigned hereby certifies that a true and correct copy of this document has been served upon all counsel of record via the Court's electronic filing system on November 13, 2023.

KATHRYN E. LONG, klong@thompsonhorton.com;
K. ADAM ROTHEY, arothey@thompsonhorton.com
PATRICK GRUBEL, pgrubel@thompsonhorton.com

>/s/ *Warren V. Norred*
>Warren V. Norred