UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS – AUSTIN DIVISION

| | |
|---|---|
| JEREMY STORY,<br><br>　　*Plaintiffs*,<br><br>v.<br><br>SUPERINTENDENT HAFEDH AZAIEZ, TRUSTEES AMBER FELLER, TIFFANIE HARRISON, AMY WEIR, JUN XIAO, CORY VESSA; OFFICERS JEFFREY YARBROUGH, JAMES WILLIBY, DEBORAH GRIFFITH, MILTON POPE, FRANK PONTILLO, RON COLE, CHIEF DENNIS WEINER, and CARLA AMACHER, individually, and ROUND ROCK INDEP. SCHOOL DISTRICT,<br><br>　　*Defendants*. | §§§§§§§§§§§§§§§§§§     CIVIL ACTION NO.<br>1:22-cv-00448-DAE |

**ROUND ROCK INDEPENDENT SCHOOL DISTRICT'S AND SUPERINTENDENT DR. HAFEDH AZAIEZ'S REPLY IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS JEREMY STORY'S THIRD AMENDED COMPLAINT AND BRIEF IN SUPPORT**

**THOMPSON & HORTON LLP**

**KATHRYN E. LONG**
State Bar No. 24041679
klong@thompsonhorton.com

**K. ADAM ROTHEY**
State Bar No. 24051274
arothey@thompsonhorton.com

500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

**ATTORNEYS FOR THE ROUND ROCK ISD DEFENDANTS**

I. **Story did not cure the deficiencies in his First Amendment claim against RRISD related to the application of BED (Local) at the August 16, 2021 Board Meeting.**

The Response operates in a world where the Court has not already ruled on the legal framework for, and viability of Story's First Amendment claims against RRISD. Contrary to Story's assertions (Dkt. 55, p. 5, ¶ 7), RRISD did not argue from whole cloth that Story pleads no facts to support a claim against it arising from the August 16 meeting. And RRISD did not invent that Story's as-applied challenge regarding BED (Local) was "limited to individual actors." *Id.*, p. 6, ¶¶ 10, 11. Rather, the Court previously held that because "personal involvement is an essential element of a civil rights case," Dkt. 43, p. 16. (citing *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983)), Story only pleaded a claim based on the application of BED (Local) against Trustee Weir and Officers Pope and Pontillo. *Id.*, p. 17. With respect to RRISD, the Court rejected the facial challenge to BED (Local), and "agree[d]" that Story "failed to allege sufficient facts regarding a widespread custom or practice" of RRISD to support *Monell* liability against the District. *Id.*, p. 39.

The Response states that "facts to overcome dismissal are now in [Story's] complaint." Dkt. 55, p. 1. But it points to no newly-pleaded facts. *Id.*, pp. 5–9. Instead, and inexplicably, the Response repeatedly references unrelated events that occurred at the *September 14 meeting* (I*d.*, p. 6, ¶¶ 8–9 (citing Dkt. 49, ¶¶ 48–51); pp. 7–8, ¶¶ 1–7). Story also cites his allegation that his removal was "based on content and viewpoint discrimination", *Id.*, pp. 5–6, ¶ 7, which was alleged in Story's prior Complaint, Dkt. 20, ¶ 188, and previously considered by the Court. Dkt. 43, pp. 16–17. The remaining facts referenced in the Response—incorrectly attributed to an August 11 meeting—are merely restatements of previously pleaded facts the Court rejected as insufficient to state a claim against RRISD and re-assertion of conspiracy theories that the Court soundly rejected, and that Story abandoned in his Complaint. *See* Dkt. 55, p. 7, ¶¶ 13–15.[1]

---

[1] The Response notes RRISD's argument that subsequent events cannot show *Monell* liability. Dkt. 55, p. 7, ¶ 12. But does not controvert or respond to this argument. Dkt. 53, p. 5.

Because the Response cites no well-pleaded facts that the Board applied BED (Local) unconstitutionally, that an unconstitutional Board policy resulted in a violation of his First Amendment rights, or there was a widespread custom and practice of applying BED (Local) to violate First Amendment rights, Story still fails to state a claim against RRISD related to the August 16 meeting and this claim—after three previous complaints—should be dismissed with prejudice.

**II.     The Response does not show that Story has pleaded facts to support *Monell* liability against RRISD for his First Amendment retaliation claim.**

The Response points to no pleaded facts that RRISD's Board, as a body corporate, removed him from the August 16 meeting or engaged in any action related to his purportedly false arrest. The Response does not show that Story pleaded facts that RRISD's Board maintains an official policy directing or allowing officials or employees to retaliate against individuals for engaging in constitutionally protected speech; unlawfully remove members of the public from Board meetings; or cause false arrests. Similarly, the Response cites no pleaded facts that Weir's, Pope's, or Pontillo's actions regarding Story's removal from the August 16 meeting, or Griffith's and Pope's actions related to the purportedly false arrest, were the result of, or informed by, a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the Board. Furthermore, the Response references no pleaded facts regarding a widespread practice or custom of RRISD to engage in First Amendment retaliation, remove individuals from Board meetings in response to protected speech, or falsely arrest individuals. The Complaint still does not identify any prior instance where District trustees or personnel retaliated against members of the public, improperly removed individuals from Board meetings, or caused a false arrest.

In fact, the Complaint references only Story's and Dustin Clark's removal from the August 16 and September 14 meetings, respectively. As the Court previously stated, in dismissing Story's claims against RRISD: "Story's as-applied challenge to BED (Local) and Fourteenth Amendment 'class-of-one' claim turn on his allegation that he was the only person ejected from the August

2

meeting." Dkt. 43, p. 39. Furthermore, Story pleads that "[n]o one has been arrested since [he] was jailed." Dkt. 49, p. 26, ¶ 105. These alleged "[i]solated violations are not the persistent, often repeated constant violations that constitute custom and policy as required for municipal section 1983 liability." *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995); *see also Piotrowski v. City of Hous.*, 237 F.3d 567m 581 (5th Cir. 2001); Dkt. 43, p. 39.

Instead of responding to RRISD's Motion, the Response advances three general arguments. First, Story argues that RRISD should be liable because Board President Weir instructed that he be removed from the meeting and District police officers executed her instructions. Dkt. 55, p. 9, ¶ 16. The Court already considered these facts and dismissed the retaliation claim against RRISD. Dkt. 43, pp. 37–39. The actions of an individual board member do not constitute the action of the Board, and do not show that a Board policy, custom, or practice was the moving force behind a violation of Story's constitutional rights. Second, the Response attempts to show entity liability by referencing an unspecified "vote of the Board" which was "over the objection of two members." Dkt. 55, p. 9, ¶ 16. It appears that the Response errantly conflates the vote at the September 14 meeting to enforce the administration's seating limitation. Dkt. 49, ¶¶ 50–51, 84; Dkt. 55, p. 6, ¶ 9 (discussing 5-2 vote at September 14 meeting). Story's removal and the basis for his arrest, however, relate to the August 16 meeting. A Board vote one month later does not support his retaliation claim.

Third, the Response states that "[i]n the absence of discovery, it [ ] is not possible to reach [the] conclusion" that the Board played no part in submission of false evidence on the police affidavit. Dkt. 55, p. 9, ¶ 17. But Story *pleads no facts* that the Board played a role in preparing or submitting a purportedly false arrest warrant or affidavit. Dkt. 53, p. 6. Rather Story pleads that Griffith signed the arrest warrant with "cooperation of . . . Pope." Dkt. 49, ¶¶ 95, 171, 202.[2] To state a claim against RRISD, however, Story must plead facts to show Board action, or that a Board

---

[2] The only reference to Board members was a reference to an October 12 "Supplemental Report"—after the arrest—about "collecting witness statements from . . . Weir, Feller, and Harrison." *Id.*, ¶ 202.

3

policy, custom, or practice violated or caused the violation of his rights. Any request for discovery before he pleads a plausible claim places the cart before the horse and should be rejected.

Because the Complaint still does not identify any action by the Board, an official unconstitutional policy adopted by the Board, or any widespread custom or practice of which the Board was aware and acquiesced, that resulted in Story's removal or a false arrest, Story's retaliation claim against RRISD should be dismissed with prejudice.

### III. The Complaint does not state a plausible First Amendment claim against RRISD or Azaiez regarding the homecoming game.

Even if Story could show the RRHS parking lot was a traditional or limited public forum or that the application of GKDA (Local) to the parking lot violated his constitutional rights —which he cannot—Story does not state a plausible claim against RRISD or Azaiez. Story does nothing to show that the Board violated his rights at the homecoming game, or that a Board policy, custom, or practice was the moving force behind the alleged violation to state a section 1983 claim against RRISD. Moreover, the Response itself shows that there was no violation of Story's *clearly established* constitutional rights to overcome Azaiez's qualified immunity.

#### A. Story does not plead facts to show *Monell* liability against RRISD.

The Response ignores RRISD's arguments that Story fails to show entity liability to state a claim against RRISD. Dkt. 53, pp. 17–19. The Response points to no pleaded facts that the Board, as RRISD's final policymaker, engaged in any action to violate Story's rights regarding the homecoming game. Rather, Story focuses on individual defendants' actions and their qualified immunity, Dkt. 55, pp. 13–15, ¶¶ 32–39, and seems to ask the Court to hold RRISD vicariously liable for its employees' actions, which is expressly prohibited. Dkt. 43, p. 37.

Furthermore, Story does not show an unconstitutional policy or custom of the Board caused a violation of his First Amendment rights at the homecoming game. Story concedes that GKDA (Local) is constitutional on its face. *Id.*, p. 13, ¶ 30. His argument is that District personnel

4

unconstitutionally applied this constitutional policy to him or violated GKDA (Local). *Id.* But the Response references no pleaded facts, and makes no argument, that there is a widespread pattern or practice of RRISD employees unconstitutionally applying GKDA (Local) to violate individual's First Amendment rights. In fact, neither the Complaint nor the Response identify a prior instance where GKDA (Local) was unconstitutionally applied or violated free speech rights. This isolated incident is insufficient to state a claim against RRISD. *See Campbell*, 43 F.3.d at 977; *Piotrowski*, 237 F.3d at 581.

The Response references the removal of Story from the August 16 meeting, differing applications of the Limited Public Comment Rule, and the Limited Seating Capacity Rule at the September 14 meeting. Dkt. 55, pp. 15–16, ¶¶ 40–47. To the extent Story references these prior incidents to show a custom or practice of RRISD's Board, the attempt fails. These prior incidents are not similar to what happened at the homecoming game. Dkt. 43, p. 39 (noting case law requiring *similar* prior incidents to show a pattern, practice, or custom) The prior incidents all occurred at Board meetings and had nothing to do with GKDA (Local) or the distribution of non-school materials on school property that is subject to a prior approval requirement. Accordingly, these prior incidents do not show the existence of an official custom or practice of applying GKDA (Local) in a manner that violates individual's First Amendment rights.

Because Story shows no Board action or unconstitutional policy or custom that caused a violation of his rights, this claim against RRISD must be dismissed.

> **B.   Story does not state a First Amendment claim against Azaiez regarding the homecoming game and cannot overcome his qualified immunity.[3]**

The Motion shows the absence of well-pleaded facts that Azaiez violated Story's First Amendment rights or applied GKDA (Local) in an unconstitutional manner at the homecoming game. Dkt. 53, pp. 16–17. As set forth in the Motion and below, the parking lot was not a public

---

[3]   The reference to the "Trustee Defendants'" entitlement to qualified immunity in the Response is puzzling. Dkt. 55, § E, p. 13. Story pleads no claim against the Trustee Defendants related to the homecoming game. Dkt. 49, § VII, D, ¶¶ 208–12.

forum. And, even if a limited public forum, time, manner, and place restrictions—like those in GKDA (Local) are permissible so long as they are reasonable and content and viewpoint neutral. There are no pleaded facts that Azaiez instructed RRISD personnel to direct Story to stop distributing campaign literature based on his viewpoint, or that Azaiez was motivated by anything other than Story's failure to seek prior approval as required by GKDA (Local). There are no pleaded facts that Azaiez—or anyone at RRISD—had treated speakers with different viewpoints who had not received prior approval more favorably, despite engaging in the same conduct.

The Response avers that the high school principal "tacitly approved the literature" by walking by and greeting Story and concludes that the parking lot was a public sidewalk and not subject to GKDA (Local). Dkt. 55, p. 13, ¶¶ 30–31. The Motion already addressed the argument regarding the campus principal. Dkt. 53, p. 16.[4] And Story's assertion that the high school's parking lot was serving as a sidewalk lacks any factual support. Even if Story's "say-so" could transform the parking lot into a sidewalk, the "sidewalk" would only be providing passage of individuals to the school for school-related purposes. It would still be the District's premises and sidewalk, not a general public sidewalk,[5] subject to GKDA (Local), which applies to all "District premises."

Furthermore, even if Story could show Azaiez violated his rights, which he cannot, the Response's admission "that there is no case law clearly on point concerning the proper designation of a school parking lot under the first amendment," Dkt. 55, p. 12, ¶ 27, demonstrates Azaiez's entitlement to qualified immunity. The Response identifies the "clearly established right" that Azaiez violated as the broad and general "right to petition the government and exercise free speech." *Id.*, p.

---

[4]   GKDA (Local) requires non-school materials be submitted to RRISD's Superintendent or designee for prior review, not a campus principal. *Id.*; *see also* Dkt. 49-1, p. 188; Dkt. 49, ¶ 147. A campus principal only has authority to direct how non-school materials, which receive prior approval by the Superintendent or designee, may be distributed on the campus. Dkt. 53, p. 16; Dkt. 49, ¶ 148.

[5]   *See, e.g., U.S. v. Kokinda*, 497 U.S. 720, 727 (1990) (holding a postal sidewalk was not a traditional public forum because it did not have 'the characteristics of public sidewalks traditionally open to expressive activity," but instead led only from the "parking area to the front door of the post office," and was "constructed solely to provide for the passage of individuals engaged in postal business.").

14, ¶ 38. But "[a] plaintiff does not overcome the qualified immunity defense by alleging the violation of a right that is only defined 'at a high level of generality.'" *Morgan v. Swanson*, 755 F.3d 757, 761 (5th Cir. 2014) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011). "Instead, there must exist a clearly established 'particular right' such that the official had 'fair notice' of that right and its concomitant legal obligations." *Id.* (quoting *Camreta v. Greene*, 563 U.S. 692, 705 (2011)).

Moreover, the Response acknowledges that the "contours" of a constitutional right must by "sufficiently clear" such that every reasonable official would know that his conduct violates that right. Dkt. 55, p. 14, ¶ 36 (citing *al-Kidd*, 563 U.S. at 732). The Motion and Response regarding whether the parking lot was a traditional public forum, limited public forum, or a nonpublic forum—a designation that impacts the contour of the First Amendment right at issue—show that the particularized right at issue is not "sufficiently clear," not every reasonable official would know his conduct might violate that right, and does not put the constitutional question beyond debate.

In *Morgan v. Swanson*, the Fifth Circuit noted that "educators are rarely denied immunity from liability arising out of First-Amendment disputes." 755 F.3d at 761 (citing *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011)). Story admits there is no Supreme Court or Fifth Circuit precedent on point. And "[w]here there is no authority recognizing an asserted right, and where the area of law is as 'abstruse' and 'complicated' as First Amendment jurisprudence, that right cannot be clearly established for the purposes of qualified immunity analysis." *Id.* (citing *Morgan*, 659 F.3d at 382).[6]

---

[6] *See also Marcavage v. National Park Service*, 666 F.3d 856, 859 (3rd Cir. 2012) ("[t]he question whether a particular sidewalk is a public or nonpublic forum is highly fact specific and not one factor is dispositive" and the rangers "should not be stripped of qualified immunity simply because" their belief that the sidewalk was not a public forum "turned out to be mistaken"); *Hershey v. City of Bossier City*, No. 21-cv-460, 2021 WL 4395056, at *6 (W.D. La. Aug. 23, 2021) (holding officers entitled to qualified immunity in light of absence of a court decision that an officer violated rights of a leafleteer who was prohibited from distributing leaflets on sidewalks outside arena during concert, noting the "many nuances to First Amendment claims of this nature, beginning with questions about the category of the forum and continuing through the reasonableness of various regulations or restrictions," and stating that "[v]ery little about this field of law is clearly established.").

Because Story identifies no particularized right Azaiez violated, where the contours of the right are clearly established, Azaiez is entitled to qualified immunity.

### C. The high school parking lot is a non-public forum and, even if it is not, GKDA (Local)'s restrictions are constitutionally permissible.

The Response cites no authority that a public school parking lot is a traditional public forum, or even a limited public forum. The Response also cites no authority that controverts that school facilities, including parking lots, are public fora "only if school authorities have 'by policy or practice' opened those facilities 'for *indiscriminate use* by the general public or by some segment of the public." Dkt. 53, p. 8 (quoting *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988). And neither the Complaint nor the Response reference any facts that RRISD has done anything to open the high school parking lot for indiscriminate use by the public. Furthermore, the Response acknowledges that case law holds that a prior approval process, like that in GKDA (Local), shows the high school parking lot is not a traditional public forum. Dkt. 55, p. 12, ¶ 26; Dkt. 53, p. 9 (citing *Little Pencil, LLC v. Lubbock Indep. Sch. Dist.*, No. 5:14-CV-014-C, 2014 WL 11531267, at *7 (N.D. Tex. May 29, 2014); *State of Tex. v. Knights of Ku Klux Klan*, 58 F.3d 1075, 1079 (5th Cir. 1995)). Therefore, Story cannot show that a high school parking lot is a traditional public forum. Dkt. 53, pp. 8–10.

The Response continues to rely on *Chiu v. Plano Independent School* District, 339 F.3d 273 (5th Cir. 2003) (*Chiu II*). But it ignores that the Fifth Circuit has cautioned against applying *Chiu* outside the facts in that case. Dkt. 53, pp. 9–10 (citing *Morgan*, 755 F.3d at 761). In *Morgan*, the Fifth Circuit noted that *Chiu* "dealt with after-school meetings whose express purpose was to allow adults to discuss mathematics instruction." *Morgan*, 755 F.3d at 761 (citing *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 336–37 (5th Cir. 2001) (*Chiu I*)). The Fifth Circuit distinguished *Chiu* because that case did not involve an "individual trying to contribute relevant materials to a public forum dedicated to adult dialogue." *Id.* The same is true here.

8

Neither a high school football game nor the parking lot is a public forum dedicated to adult dialogue. While parents and members of the public attend the event, the purpose is to allow students to compete and perform in their extracurricular activity, albeit in front of an audience. The game or the parking lot which provides access to the stadium is in no way dedicated to adult dialogue. Moreover, campaign flyers, even for school board candidates, are not akin to the math curriculum materials at issue in *Chiu*, which have a direct education-related purpose. Thus, as in *Morgan*, the "different factual context renders *Chiu* incapable of providing any meaningful guidance" to a school official trying to address the distribution of non-school literature on the campus parking lot before and during a high school football game. *Morgan*, 755 F.3d at 761.

Even if the high school parking lot were a public forum, GKDA (Local)'s restrictions were constitutionally permissible. Dkt. 53, pp. 10–13. Because the parking lot was not a public forum, or at most a limited public forum, and there are no well-pleaded facts that any District personnel engaged in viewpoint discrimination with respect to the request to cease distribution of campaign flyers, Story does not show an underlying constitutional violation.

### III. The Complaint does not state an Open Meetings Act claim against RRISD or Azaiez.

The Response does not address RRISD's and Azaiez's arguments that: (1) the Complaint asserts a TOMA claim against the Trustee Defendants and Azaiez, not RRISD; and (2) Azaiez is not a proper party to a TOMA claim. Dkt. 53, pp. 19–20. The Response, likewise, does not address Azaiez's professional immunity under the Education Code, or the reasons Story's TOMA claims otherwise fail, as set forth in the Trustee Defendants' Motion. *Id.*, p. 20 (citing Dkt. 52, pp. 4–20).

Instead, Story's Response regarding the TOMA claim related to the hiring of Azaiez plants the Court and RRISD in the movie *Groundhog Day*. The Response almost mirrors Story's prior responsive pleading. *Cf.* Dkt. 55, pp. 17–19, ¶¶ 49–55 & Dkt. 23, pp. 16–19, ¶¶57–65. Story avers that the May 21, 2021 board meeting was not properly noticed and complains about the meeting

9

agenda. Dkt. 55, pp. 17–18, ¶¶ 50–51. But the Court already found that that "language of the notice . . . adequately alerts the reader to the subject of discussion" and determined that Story did not state a claim that the Board violated TOMA. Dkt. 43, pp. 45–46. And the Complaint no longer claims any TOMA violation regarding the May 21 meeting or agenda. Rather, Story pleads that "[t]he issue is not that Azaiez was hired at a meeting, but that he was hired before the meeting with a secret walking quorum of discussion, and the meeting was a mere ruse." Dkt. 49, ¶ 232. The Court should reject Story's attempt to re-plead or reinvoke this claim in his Response.

With respect to Story's argument that the *Trustee Defendants* engaged in an impermissible walking quorum with respect to Azaiez's hiring, the Response re-asserts the facts the Court previously rejected as insufficient (Dkt. 43, p. 46), and ignores the specific arguments showing there was no walking quorum that violated TOMA. *See* Dkt. 52, pp. 13–15. The Response also ignores that Story does not state a claim because he does not seek relief allowed under TOMA—to void an action, or to stop, prevent, or reverse a violation regarding the hiring of Azaiez—and that his TOMA claim regarding Azaiez's hiring is moot. *Id.*, pp. 7–10. The same is true for Story's claim regarding the September 14 meeting. Story regurgitates his prior arguments and ignores that his pleading and key facts have changed. The Response does not address that this TOMA claim is moot. Dkt. 52, pp. 10–13. And the Response does not address that the Complaint no longer seeks to void any action, or to stop, prevent, or reverse a violation. *Id.*, p. 16. Instead, he only seeks prospective injunctive relief that is too speculative or remote to state a plausible claim for such relief. *Id.*

Because the Complaint does assert a TOMA claim against RRISD and because Azaiez is neither RRISD's governing body or a member of its governing body to be a proper party to this claim, Story's claims against RRISD and Azaiez should be dismissed with prejudice. Moreover, these claims are barred because they are moot or do not seek relief allowed under TOMA which are set forth more fully in the Trustee Defendants' motion, Dkt. 52, and will be addressed in their reply.

10

Respectfully submitted,

*/s/ Kathryn E Long*
KATHRYN E. LONG
State Bar No. 24041679
klong@thompsonhorton.com

K. ADAM ROTHEY
State Bar No. 24051274
arothey@thompsonhorton.com

**THOMPSON & HORTON LLP**
500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

**ATTORNEYS FOR THE ROUND ROCK ISD DEFENDANTS**

### CERTIFICATE OF SERVICE

The undersigned certifies that on November 17, 2023, a true and correct copy of this document has been served upon all parties via the Court's electronic filing system:

| | |
|---|---|
| Warren V. Norred | Stephen D. Casey |
| NORRED LAW, PLLC | CASEY LAW OFFICE, P.C. |
| 515 E. Border St. | P.O. Box 2451 |
| Arlington, TX 76010 | Round Rock, TX 78680 |
| warren@norredlaw.com | stephen@caseylawoffice.us |

/s/    Kathryn E. Long
KATHRYN E. LONG