UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS – AUSTIN DIVISION

| | | |
|---|---|---|
| JEREMY STORY, <br><br> *Plaintiffs*, <br><br> v. <br><br> SUPERINTENDENT HAFEDH AZAIEZ, TRUSTEES AMBER FELLER, TIFFANIE HARRISON, AMY WEIR, JUN XIAO, CORY VESSA; OFFICERS JEFFREY YARBROUGH, JAMES WILLIBY, DEBORAH GRIFFITH, MILTON POPE, FRANK PONTILLO, RON COLE, CHIEF DENNIS WEINER, and CARLA AMACHER, individually, and ROUND ROCK INDEP. SCHOOL DISTRICT, <br><br> *Defendants.* | § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. <br> 1:22-cv-00448-DAE |

### JAMES WILLIBY'S AND JEFFREY YARBROUGH'S REPLY TO JEREMY STORY'S RESPONSE TO MOTION TO DISMISS THIRD AMENDED COMPLAINT AND BRIEF IN SUPPORT

**THOMPSON & HORTON LLP**

**KATHRYN E. LONG**
State Bar No. 24041679
klong@thompsonhorton.com

**K. ADAM ROTHEY**
State Bar No. 24051274
arothey@thompsonhorton.com

500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

**ATTORNEYS FOR THE ROUND ROCK ISD DEFENDANTS**

**SUMMARY OF THE ARGUMENT**

Story's untimely[1] Response to Williby's and Yarbrough's Motion is heavy on histrionics ("miasma of moral turpitude") and hyperbole (referring to the RRISD Police Department as a "goon squad") and light on relevant law or facts. The Response also confusingly spends significant space attempting to relitigate issues already ruled on by the Court in its Order Granting in Part and Denying in Part Defendants' Motions to Dismiss (Dkt. 43, "Order")—such as the Court's finding that the *Malley* exception to the independent intermediary doctrine does not apply here—that are not even relevant to the arguments raised in the Motion. It should be no surprise then that the Response fails to respond to many arguments raised by the Motion or demonstrate why Story's claims against Williby and Yarbrough under the First, Fourth, and Fourteenth Amendment should not be dismissed. Instead, the Response largely doubles-down on the Complaint's conclusory claims of a grand conspiracy to violate Story's constitutional rights that was previously rejected by the Court (*see* Dkt. 42 pp. 29–32, 45; Dkt. 43, p. 44), while repeatedly insisting that Court should allow his meritless claims to survive so Story can perhaps find evidence to support his baseless allegations through discovery. *See* Dkt. 57, ¶¶ 8, 25, 32. That is not the standard for ruling on a motion to dismiss. Rather, as outlined in the Motion and this Reply, Story has not pled, and cannot plead, facts to state First, Fourth, or Fourteenth

---

[1] Williby and Yarbrough note that Story did not file his response (Dkt. 57, the "Response") to Williby's Motion to Dismiss and Yarbrough's Partial Motion to Dismiss the Third Amended Complaint (Dkt. 51, the "Motion") within fourteen days of the date the Motion was filed, as is required by Western District Local Rule CV-7(D)(2). The Motion was filed October 27, 2023. Story did not file his Response until November 13, 2023 (Dkt. 57), or eighteen days later. Western District Local Rule CV-7(B) provides that when leave to file a pleading is required, the pleading "shall be filed as an exhibit to the motion for leave." Story, however, did not seek leave to late file his Response, did not attach the Response to a motion for leave, and provided no explanation for why the Response was untimely filed or why he did not seek leave to file it late. Defendants' counsel would have been unopposed for a request for an extension of time, as a routine professionally courtesy, if such a request had been made. But Story's counsel never did so. While the Court should not grant the Motion as unopposed merely because Story did not timely file a response or motion for leave to late file a response, *see Webb v Morella*, 457 F. App'x 448, 452 n.4 (5th Cir. 2012), the Court may strike or refuse to consider Story's untimely response in determining whether Story has adequately stated a claim due to his failure to comply with multiple requirements in the Local Rules. *See United States ex rel. Gonzalez v Fresenius Med. Care*, 761 F. Supp. 2d 442, 452 (W.D. Tex. 2010) ("careful attention to and thorough compliance with local rules is critical to successful practice" in federal court and "motions may be struck for failure to comply with local rules").

Amendment claims against Williby and Yarbrough, either directly or through supervisory liability, and these claims should now be dismissed with prejudice.

## ARGUMENT AND AUTHORITIES

### I. Story has not stated a plausible First Amendment supervisory liability claim against Williby or Yarbrough.

As pleaded in the Complaint, Story's alleged First Amendment supervisory liability claims against Williby and Yarbrough arise only from the alleged events of the September 14 meeting, where Story claims he was prevented from entering the Board meeting by Pope and Pontillo due to the 18-seat limitation rule implemented by Azaiez.[2] As this Court previously held, Williby and Yarbrough cannot be liable as supervisors of Pope and Pontillo unless they (1) affirmatively participated in the acts that caused the constitutional deprivation, or (2) implemented unconstitutional policies that causally resulted in the constitutional injury. Dkt. 43, p. 28 (citing *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). Story does not, however, plausibly allege that Williby or Yarbrough affirmatively participated in preventing Story from entering the September 14 meeting or had any role in implementing any unconstitutional policy as to Story.

In his Response, Story contends that he "pleaded [in the Complaint] that Williby was the enforcer of the 18-seat rule, as instructed by Weir," and cites paragraph 51 of his Complaint. Dkt. 57, ¶ 17. But paragraph 51 of the Complaint alleges only that Trustee Weir instructed Williby to "remove those not in the chairs provided by the administrators." Dkt. 49, ¶ 51. Story, however, does not

---

[2] As stated in the Motion, although the Complaint names Yarbrough as a defendant who allegedly violated his First Amendment right to petition and free speech with respect to the use of the BED (Local) policy at the August 16 meeting, the Complaint does not actually plead any specific facts as to Yarbrough related to that claim. Dkt. 51 p. 9 n.5 (citing Dkt. 49 ¶¶ 194–95). Story does not respond to this argument. Additionally, the Complaint does not specifically assert any supervisor liability with respect to that claim, and the Response does not respond to Yarbrough's argument in the Motion that the Complaint fails to plead any facts or allegations supporting a supervisory liability claim against him related to the implementation of the BED (Local) policy as applied to Story during the August 16 meeting. As a result, any such claim is waived and should be dismissed. *See Kellam v. Metrocare Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue.").

complain that he was in a chair provided by administration and removed by Williby. On the contrary, Story's allegations are that he was *prevented* from entering the September 14 meeting altogether by Pope and Pontillo. As a result, Story's allegations regarding Williby's alleged removal of individuals not seated in one of the 18 available seats does not demonstrate any personal involvement by Williby regarding the 18-seat limitation *as to Story*.

The Response also attempts to demonstrate Williby's affirmative participation in enforcement of the 18-seat limitation as to Story through the allegations that Williby told Officer Chavez to quote the law authorizing Pope and Pontillo's actions. *See* Dkt. 57, ¶ 13 (citing Dkt. 49, ¶¶ 68–74). But Story's actual allegations are that Williby instructed Officer Chavez "to reference a penal code statute," and that Chavez instead "deceptive[ly]" referenced only part of a *Texas Education Code* provision while Williby stood in a different room. *See* Dkt. 49, ¶¶ 68–74. Assuming the truth of Story's allegations, Chavez did not follow Williby's instructions to reference a "penal code" statute and instead only partially referenced a different code provision while Williby was in another room. Such allegations do not demonstrate affirmative participation by Williby in any actions by Chavez, and instead show unilateral action by Chavez in contravention of the supervision or instruction provided by Williby. Moreover, Story asserts no claims against Chavez related to his alleged deceptive reading of the Texas Education Code. Dkt. 51, n.6. Consequently, Story cannot plausibly allege that Williby should be held liable as Chavez's supervisor where Story has not stated an underlying constitutional violation by Chavez.[3] The Response also fails to identify any specific facts suggesting Yarbrough affirmatively participated at all in preventing Story from entering the September 14 meeting, instead referencing

---

[3] Williby disagrees with even the premise of Story's argument that Chavez's alleged recitation of law, even if incomplete, constitutes a First Amendment violation such that Williby could be liable under a supervisory theory. *See* Dkt. 57 ¶ 13. Further, Williby does not even understand what point Story is attempting to make when he argues that the "Officer Defendants have not identified a one-off misbehavior that was so egregious, no great frequency to demonstrate liability is needed." *Id.* Neither Williby nor Yarbrough bear any burden to identify egregious misbehavior in these proceedings.

3

only Yarbrough's alleged involvement in the August 16 meeting. Dkt. 57, ¶ 15. As a result, any supervisor liability claim against Yarbrough related to the September 14 meeting should be dismissed.

Story also does not respond to or contest the fact that the Court previously recognized that Story did not contend that a genuine seat spacing rule was unconstitutional. Dkt. 51 p. 9 (citing Dkt. 43, p. 20 & n.3. Neither does the Response identify any facts that plausibly suggest Williby or Yarbrough were at all involved in the decision to implement the 18-seat limitation or harbored any improper or pretextual motive in enforcing it *as to Story*. On the contrary, the Complaint demonstrates that the 18-seat limitation was implemented by Azaiez and the Board, and that Pope and Pontillo enforced the 18-seat limitation as to everyone in the "crowd" outside the meeting. *See* Dkt. 49, ¶ 63. And while Story alleges Pope and Pontillo "allowed some people in solely based on the officers' personal judgment," the only well-pleaded facts of such potential disparate treatment is that one person was allowed to enter because "she was speaking first," suggesting that those who had properly signed up to participate in public comment at the September 14 meeting were allowed to enter when it was their turn to comment, while those who did not follow proper procedures to sign up for public comment, or it was not their turn to comment (like Story), were not. Importantly, Story never alleges that he signed up to participate in the public comment portion of the September 14 meeting, or that it was his turn to make public comment and was still refused entry. And as this Court has previously held, allegations of unrecognized speakers attempting to speak out of turn do not plausibly suggest viewpoint discrimination or engagement in constitutionally protected speech. *See* Dkt. 43, p. 22 (finding Clark was not engaged in constitutionally protected activity when he attempted to speak during the public comment portion of the September 14 meeting but "was not a recognized speaker when he was making [his] comments"). As a result, Story cannot state a First Amendment claim against Williby or Yarbrough based on supervisor liability where he does not and cannot allege they

4

affirmatively participated in preventing Story from entering the September 14 meeting or implemented an unconstitutional policy against him that caused a constitutional injury.

Story's Response also fails to demonstrate that either Williby or Yarbrough acted with deliberate indifference to his First Amendment rights as is required to establish section 1983 liability against a supervisor. Dkt. 51, pp. 7–8 (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005)). On the subject of deliberate indifference, the Response states only that "the facts alleged in the Third Amended Complaint show that the Defendants deliberately enforced an unconstitutional restraint on Plaintiff's exercise of free speech, violating both the Fourth and First Amendments." Dkt. 57, ¶ 42. But the Response does not actually cite any specific allegations in the Complaint that support this conclusory assertion.

And Story's attempt to demonstrate deliberate indifference by Williby or Yarbrough through an alleged pattern of constitutional violations is also unavailing. *See Roberts*, 397 F.3d at 292 (requiring a plaintiff to prove the supervisor failed to supervise, a causal connection, and that the failure to supervise amounts to deliberate indifference to plaintiff's constitutional rights to state a section 1983 claim against a supervisor). The Response cites only the events of the August 16 meeting as support for the idea that a pattern of constitutional violations predated the events of the September 14 meeting to show deliberate indifference. *See* Dkt. 57, ¶ 20. But, "[p]rior indications cannot simply be for any and all 'bad' or unwise acts"; instead, the supervisor must have notice of a pattern of "*similar* violations" to demonstrate deliberate indifference. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 382–383 (5th Cir. 2005) (emphasis in original). Additionally, a "pattern is shown through 'sufficiently numerous prior incidents' rather than '[i]solated incidents.'" *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989). Story's complaint that Pope and Pontillo removed him from the August 16 meeting under the direction of Weir—not Williby or Yarbough—is not at all similar to Story's allegations that he was prevented from entering the September 14 meeting due to

5

the 18-seat limitation implemented by Azaiez—not Williby or Yarbrough—and does not, therefore, plausibly demonstrate Williby's or Yarbrough's deliberate indifference through a pattern of *similar* violations (even if only one prior incident could constitute a pattern, which it cannot). *See id.*[4] The Response likewise fails to demonstrate that no official standing in the place of Williby or Yarbrough could have believed their supervision of Pope and Pontillo was lawful. *See* Dkt. 51, p. 8 (citing *Livezey v. The City of Malakoff*, 657 F. App's 274, 278–79 (5th Cir. 2016)). As a result, Story fails to state a claim for First Amendment supervisory liability as to Williby and Yarbrough and further fails to rebut their qualified immunity defense as to these claims.[5]

## II. The Response does not address the arguments in the Motion regarding Story's First Amendment retaliation claim against Williby.

The Response does not address the argument in the Motion that there are no well-pleaded facts in the Complaint that demonstrate any sort of personal involvement by Williby in Story's removal from the August 16 meeting, notice to Williby that actions by others were motivated by retaliatory

---

[4] Story's citation to *Bond v. Nueces County*, No. 20-40050, 2022 WL 4595000 (5th Cir. June 23, 2022) for the proposition that the Court should allow his claims to proceed to discovery so he can fish for evidence supporting his conspiracy theories is inapposite. *Bond* involved a complaint that plausibly alleged twenty-three specific prior instances of jail officials failing to properly address the medical needs of inmates. In the face of these allegations, the Fifth Circuit agreed the plaintiff had alleged a sufficient pattern to raise a right to relief above the speculative level. *Bond*, 2022 WL 4595000 at *9. Story's allegations do not come anywhere close to those deemed sufficient to state a claim in *Bond*.

[5] The Response's framing of the clearly established constitutional right—without any supporting case law—further demonstrates Williby's and Yarbrough's entitlement to qualified immunity. Story claims there is a "clearly established constitutional right to petition a school board for redress for grievances when that body is attempting to install a new Superintendent clouded by a miasma of moral turpitude … ." Dkt. 57, ¶ 12. But this alleged right is merely a broad and generalized right that is insufficient to overcome the qualified immunity defense. *See Morgan v. Swanson*, 755 F.3d 757, 761 (5th Cir. 2014) (But "[a] plaintiff does not overcome the qualified immunity defense by alleging the violation of a right that is only defined 'at a high level of generality,'" citing *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)). Further, even if the constitutional right alleged is more particular (*i.e.*, the right to be present in the room for the entire meeting despite seating limitations, or to speak to a school board, regardless of pre-established and neutral forum rules limiting comment, regarding grievances related to the hiring of a superintendent), Story does not even assert a claim against Williby or Yarbrough related to the August 16 meeting where that alleged right was arguably at issue and does not allege any personal involvement by Williby or Yarbrough in preventing Story from petitioning the Board regarding its hiring of Azaiez. Also, Williby and Yarbrough note that the Response incorrectly frames the burden regarding qualified immunity at the pleading stage (*see* Dkt. 57 ¶ 9) and would refer the Court to the Motion's "Overview of qualified immunity" for a correct discussion of the burdens and application of qualified immunity (*see* Dkt. 51 pp. 5–7).

animus, or a prior pattern of similar violations such that Williby might be held liable under a supervisor liability standard. The Response also does not respond to the argument that any bystander liability for Williby fails. Dkt. 51, n.7. Instead, the Response merely recites Story's conclusory beliefs that he did not obstruct or interfere with the meeting, that his speech was constitutionally protected, that his arrest would have a chilling effect on a reasonable person, and that his arrest was "motivated by an effort to prevent him from returning to continue to exercise his free speech rights." Dkt. 57, ¶¶ 24–25. In short, the Response does not demonstrate that the Complaint addressed the Court's concern that Story had not alleged Williby's personal involvement in his removal from the August 16 meeting or his arrest through any personal involvement in the warrant application process. Dkt. 43, pp. 23, 36.

The Response baldly asserts, however, that Story's retaliation claim should survive "so further discovery may be conducted to ascertain the extent of the conspiracy among the officers and the school board." *Id.* But where Story has failed to plead any facts demonstrating any personal involvement of Williby in any sort of retaliatory behavior related to the August 16 meeting, much less Williby's supposed violation of a clearly established constitutional right, such a claim should be summarily dismissed and not allowed to proceed to discovery for Story to conduct a fishing expedition into conspiracy theories: (1) that this Court already rejected as baseless (*see* Dkt. 42 pp. 29–32, 45; Dkt. 43 pp. 43–44); (2) that Story seemingly voluntarily dismissed in his Second Amended Complaint (*see* Dkt. 44); (3) that the RRISD Defendants requested he remove from his Complaint as frivolous (Dkt. 52-1, App. 072, 093); and (4) that Story in fact did remove from the Complaint (*see* Dkt. 49). *See Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989) (Rule 12(b)(6) authorizes dismissal for failure to state a claim and "streamlines litigation by dispensing with needless discovery and factfinding"); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of a violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."); *Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 300 F. Supp. 3d 857, 880

7

(N.D. Tex. 2018) (holding that proceeding to discovery before a plaintiff has pleaded enough facts to state a plausible claim for relief "places the cart before the horse," because "[a]s the [Supreme] Court stated in *Iqbal*, Federal Rule of Civil Procedure 8 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'").

### III.  The Response does not respond to Williby's and Yarbrough's arguments in support of dismissal of Story's Fourth Amendment claims.

Williby's and Yarbrough's Motion seeks dismissal of Story's claims of excessive force related to Pope's and Pontillo's removal of Story from the August 16 meeting and their prevention of Story from entering the September 14 meeting. Dkt. 51, pp. 12–14. The Response fails to address Williby's and Yarbrough's arguments and fails to demonstrate any personal involvement by Williby or Yarbrough in, or their deliberate indifference to Story's constitutional rights with respect to his removal from the August 16 meeting or the alleged use of force to keep him out of the September 14 meeting. On the contrary, the Response refers only to the "Officer Defendants [Pope and Pontillo], both of whom were significantly larger than Story, prevented his entrance [to the September 14 meeting], and even used excessive force on Story … ." Dkt. 57, ¶ 16. As a result, it appears Story has waived or abandoned his Fourth Amendment excessive force claims against Williby and Yarbrough, either directly or under a supervisor liability basis, and these claims should be dismissed for the reasons outlined in the Motion.[6]

Williby and Yarbrough also seek dismissal of Story's Fourth Amendment false arrest claims related to his arrest arising out of the events of the August 16 meeting. Confusingly, the Response focuses on whether the Complaint has demonstrated a violation of his Fourth Amendment right to

---

[6] The Response also appears to improperly conflate the allegations regarding Pope's and Pontillo's alleged restraint and removal of Story from the August 16 meeting and their alleged use of force to prevent him from entering the September 14 meeting. *See* Dkt. 57, ¶ 37. Nowhere in the Complaint does Story allege that anyone employed excessive force or that he was injured during his removal from the August 16 meeting. And nowhere in the Complaint does Story allege any personal involvement by Williby or Yarbrough in his removal from the August 16 meeting by Pope and Pontillo.

8

be free from arrest based on a warrant application so lacking in indicia of probable cause as to render official belief in its existence unreasonable under *Malley v. Briggs*, 475 U.S. 335 (1986). Dkt. 57, ¶¶ 27–31. But this Court already determined that *Malley* "does not apply here" because "[t]he warrant affidavit[ ] in this case facially suppl[ies] probable cause to arrest Story … ." Dkt. 43, p. 33 n.8. As a result, the Response fails to address the arguments in the Motion that the Complaint does not allege personal involvement by Williby or Yarbrough in the warrant application process or any prior pattern of similar conduct involving submission of false or misleading warrant applications so as to hold Williby or Yarbrough liable either directly or under a supervisor liability basis. Instead, Story once again baselessly requests that the Court allow the claims to survive by drawing "reasonable inferences [from unidentified allegations in the Complaint] to determine if the allegations rise above speculation," in the hopes that Story can conduct discovery and hopefully "reveal the truth of the matter" regarding his conspiratorial beliefs. Dkt. 57, ¶ 32. The Court should reject Story's request. The pleading standard requires that Story's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 570, 555 (2007). And while reasonable inferences will be resolved in favor of the plaintiff, "the plaintiff must plead specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). But Story's allegations regarding Williby's and Yarbrough's alleged involvement in the warrant affidavit process are nothing but speculation that they "would have" reviewed the affidavit before it was submitted to the magistrate, not that they actually *did* review his warrant affidavit. These conclusory allegations are insufficient to raise a right to relief above the speculative level and further do not demonstrate why Williby and Yarbrough should not be entitled to qualified immunity even if they did state a claim.

**IV.    The Response does not address Williby's and Yarbrough's arguments in favor of dismissal of Story's Fourteenth Amendment failure to supervise claims.**

Story's Fourteenth Amendment "class of one" claims regarding the September 14 meeting, the warrant application process, and his arrest are merely an improper repackaging of his First and

9

Fourth Amendment claims based on those same events. As outlined in the Motion and this Reply, none of Story's allegations with respect to Williby and Yarbrough relating to the September 14 meeting, the warrant application process, or his arrest state a Fourteenth Amendment violation either directly or under a failure to supervise theory. Dkt. 51, pp. 15–16. The Response makes no effort to address the arguments raised in the Motion. Instead, Story merely asserts in conclusory fashion that his "class of one" claims are valid because some unidentified "Defendants" allegedly "acted out of spite to punish the Plaintiff for his temerity, as demonstrated by the Board's varying tolerance for commentary that was 'related to' vaguely worded agenda items." Dkt. 57, ¶ 35. Story's continued reference to actions by the Board or some generic group of "Defendants"—and not Williby or Yarbrough specifically—reaffirm this Court's prior decision to dismiss Story's equal protection claims against Williby and Yarbrough due to his failure to plead any personal involvement of Williby or Yarbrough with respect to his ejection from the August 16 meeting. Dkt. 43, p. 37.

Additionally, the Response and the Complaint again fail to demonstrate that either Williby or Yarbrough had notice of a pattern of prior acts fairly similar to what ultimately transpired at the August 16 meeting or with respect to his warrant application so as to be held liable under a failure to supervise theory. Instead, the Response merely asserts (incorrectly) that a "pattern of unreasonable actions" "hinges on a detailed factual analysis of the removal of Story on each date and issue, as articulated in the Third Amended Complaint," without any specific reference to any specific facts alleged in the Complaint. And the Response also entirely fails to address Williby's argument that the Complaint does not state a plausible equal protection claim against Williby for any alleged failure to investigate Story's complaint made to the RRISD Police Department following his removal from the August 16 meeting. And it is not Williby's, Yarbrough's, or the Court's responsibility or obligation to hunt and peck through 239 paragraphs of Story's Complaint to find support for such claims.

10

Respectfully submitted,

*/s/ Kathryn E Long*
KATHRYN E. LONG
State Bar No. 24041679
klong@thompsonhorton.com

K. ADAM ROTHEY
State Bar No. 24051274
arothey@thompsonhorton.com

**THOMPSON & HORTON LLP**
500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

**ATTORNEYS FOR THE ROUND ROCK ISD DEFENDANTS**

**CERTIFICATE OF SERVICE**

The undersigned certifies that on November 20, 2023, a true and correct copy of this document has been served upon all parties via the Court's electronic filing system:

| | |
|---|---|
| Warren V. Norred | Stephen D. Casey |
| NORRED LAW, PLLC | CASEY LAW OFFICE, P.C. |
| 515 E. Border St. | P.O. Box 2451 |
| Arlington, TX 76010 | Round Rock, TX 78680 |
| warren@norredlaw.com | stephen@caseylawoffice.us |

*/s/ Kathryn E. Long*
KATHRYN E. LONG

11