UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS – AUSTIN DIVISION

| | | |
|---|---|---|
| JEREMY STORY,<br><br>*Plaintiffs*,<br><br>v.<br><br>SUPERINTENDENT HAFEDH AZAIEZ, TRUSTEES AMBER FELLER, TIFFANIE HARRISON, AMY WEIR, JUN XIAO, CORY VESSA; OFFICERS JEFFREY YARBROUGH, JAMES WILLIBY, DEBORAH GRIFFITH, MILTON POPE, FRANK PONTILLO, RON COLE, CHIEF DENNIS WEINER, and CARLA AMACHER, individually, and ROUND ROCK INDEP. SCHOOL DISTRICT,<br><br>*Defendants*. | §§§§§§§§§§§§§§§§§ | CIVIL ACTION NO.<br>1:22-cv-00448-DAE |

**TRUSTEE DEFENDANTS' REPLY TO JEREMY STORY'S
RESPONSE TO PARTIAL MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**THOMPSON & HORTON LLP**

**KATHRYN E. LONG**
State Bar No. 24041679
klong@thompsonhorton.com

**K. ADAM ROTHEY**
State Bar No. 24051274
arothey@thompsonhorton.com

500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

**ATTORNEYS FOR THE ROUND ROCK ISD
DEFENDANTS**

Story's Third Amended Complaint (the "Complaint", Dkt. 49), and his responses to the motions to dismiss (Dkts. 55–57), demonstrate that he did not take seriously the Court's prior admonition and caution (Dkt. 43, n.2 & p. 47), or the RRISD Defendants' efforts to streamline this lawsuit (Dkt. 52-1, App. 70–95). Instead, he continues his "shotgun pleading" style and expands it to a wholistic "shotgun litigation" strategy. The responses reveal that not even Story or his counsel can keep track of the claims he continues to assert or which RRISD Defendant he asserts them against.[1] As a result, the Court is required to waste judicial resources to address claims it previously dismissed for which there are no new pleaded facts, or to address claims no longer actually pleaded by Story. And the RRISD Defendants are stuck needlessly wasting time, resources, fees, and costs to address these claims in what is nothing more than litigation whack-a-mole.

## ARGUMENT AND AUTHORITIES

**I.    The Response does not show that the Court has jurisdiction over Story's Texas Open Meetings Act claims, or that Story has stated a plausible claim for relief.**

**A.    The Trustee Defendants are not proper parties and Story does not seek relief allowed by TOMA to establish jurisdiction or to state a TOMA claim.**

Much of the Response is devoted to showing that the Trustee Defendants violated TOMA with respect to Azaiez's hiring and the September 14 meeting. Dkt. 56, ¶¶ 6, 20–21, 28–39. As set

---

[1] *See, e.g.*, Dkt. 55, pp. 13–19 (discussing First Amendment claim against all *Trustee Defendants* related to August 16 meeting and homecoming game, though Story pleads no such claims, Dkt. 49, § VII, A, 2, ¶¶ 194–95; *id.*, § VII, D, ¶¶ 208–212); *Id.*, pp. 17–18 & Dkt. 56 p. 10, ¶¶ 30–31 (discussing TOMA claim related to May 21 meeting and agenda, though the Complaint disclaims such theory, Dkt. 49, ¶ 232); Dkt. 56, pp. 16-17 (discussing First Amendment claim against Amber Feller Landrum ("Landrum") regarding August 16 meeting, though Story pleads no such claim, Dkt. 49, § VII, A, 1, and continuing to assert Fourteenth Amendment claim against her for "stating [he] should leave" the meeting, Dkt. 56, p. 16, though Court previously dismissed this claim based on same allegations, Dkt. 43, p. 37); *Id.*, p. 17 (discussing "prior restraint" and "failure to train," though the Court dismissed those claims, Dkt. 43, pp. 17–18, 28–30, 40–41, and they were not included in the Complaint, Dkt. 49); Dkt. 55, pp. 7, 15, Dkt. 56, pp. 7, 16, Dkt. 57, p. 10 (continuing to reference a conspiracy, despite the Court's prior statements, Dkt. 42, prior rulings, Dkt. 43, the RRISD Defendants' requests, Dkt. 52-1, App. App. 072, 093, and Story's own deletion of any conspiracy claim or reference to conspiracy, Dkt. 49); Dkt. 57, pp. 10–11 (continuing to argue application of *Malley v. Briggs*, 475 U.S. 335, 344 (1986) to validity of warrant affidavit despite Court's prior ruling that *Malley* does not apply since warrant affidavit "facially suppl[ies] probable cause to arrest Story," Dkt. 43 pp. 33–34 n. 8).

forth in the Motion, Dkt. 52, pp. 13–15, and *infra*, pp. 4–5, the Complaint does not state a TOMA violation regarding Azaiez's hiring. The Court already found that Story pled sufficient facts to show a TOMA violation regarding the September 14 meeting. Dkt. 43, p. 46–47. The Motion does not challenge that finding. Dkt. 52, p. 16. But showing a violation of TOMA is only one step and does not, standing alone, state a TOMA claim upon which relief may be granted.

For example, the Response ignores that the Trustee Defendants, in their individual capacities, have professional immunity under the Education Code, Dkt. 52, pp. 6–7, and are not even proper parties to Story's TOMA claims because, in part, Story seeks only prospective equitable relief. *Id.* pp. 5–6. The Response characterizes the relief Story seeks as "an injunction requiring that the RRISD Trustees cease initiating 'walking' quorums and cease creating policies in violation of TOMA and the U.S. Constitution." Dkt. 56, ¶ 52. The Response also asserts that Story seeks a broad "injunction compelling RRISD, Trustees, Azaiez, and their Officers, to follow the law and remit damages[2] for the injuries to his person and rights." *Id.*, ¶ 55. This relief is not sought in the Complaint. Dkt. 49, ¶ 232–33, 235. But even assuming this were the relief sought *and* allowed under TOMA, which it is not, former Trustees Vessa and Xiao would not be proper parties because the Court could not enjoin them as private citizens from engaging in future actions only taken by sitting trustees. *Forney Messenger, Inc. v. Tennon*, 959 F. Supp. 389, 393 (N.D. Tex. 1997). Moreover, the request to enjoin future action is fundamentally a request to enjoin the office of a trustee, not an individual Board member.

In addition, the Response does not address the dispositive argument that Story does not seek an available remedy. Dkt. 52, pp. 8, 16. TOMA's "waiver of immunity," necessary to establish jurisdiction, is "limited to that relief expressly provided for in the Act." *Id.*, p. 7 (citing cases). For his TOMA claim regarding Azaiez's hiring, Story does not seek the limited relief provided for in the Act. *Id.*, p. 8; Dkt. 56, ¶ 52 ("Plaintiff does not seek removal of Azaiez through judicial action"). With

---

[2]   TOMA does not provide a claim for monetary damages. Dkt. 52, p. 5 & n.6.

respect to his TOMA claim related to the September 14 meeting, Story fundamentally altered the relief he now seeks. Dkt. 52, p. 16 & n.9. Specifically, Story no longer seeks to void the tax rate vote taken at that meeting or to prevent RRISD from spending tax dollars collected under that tax rate vote.

The Response doubles down on the changed nature of the TOMA claim regarding the September 14 meeting and states: **"As all parties to this litigation well know, none of Plaintiff's claims hinge on tax rates. [Story] protests TOMA violations and constitutional rights violations concerning his treatment by the Board, rendering subsequent tax votes wholly irrelevant to this litigation."** Dkt. 56, ¶ 41 (emphasis added). With this statement, Story unveils the façade that the tax rate vote had any import to his claims. That is contrary to the significance he previously placed on the tax vote, memorialized in the Court's Order.[3] And this admission shows he has no viable TOMA claim regarding the September 14 meeting. To state a valid TOMA claim, Story must seek to void "[a]n action taken by a governmental body in violation" of TOMA, TEX. GOV'T CODE § 551.141, or bring a mandamus or injunction "to stop, prevent, or reverse a violation or threatened violation of this chapter by members of a governmental body." *Id.,* § 551.142. Because he no longer seeks to void the tax rate vote, and does not seek to stop, prevent, or reverse a past violation of TOMA with respect to that vote, Story can only maintain a claim *if* he seeks to stop, prevent, or reverse a threatened violation. The Motion shows the Complaint lacks well-pleaded facts to show a threatened violation. Dkt. 52, p. 16. The Response does not even attempt to address that argument.

Story's TOMA claims should be dismissed under Rule 12(b)(1) for failure to plead a claim that supports a waiver of immunity to establish this Court's jurisdiction and under Rule 12(b)(6) because, without seeking permissible relief, Story fails to state a claim upon which relief may be granted.

---

[3]   Dkt. 43, p. 8 (citing Dkt. 20, ¶ 97, stating that "the Board was prohibited by law from raising taxes without allowing public participation in the meeting"); *Id.*, p. 8 (citing Dkt. 20, ¶¶ 98, 99, stating that the Trustee Defendants "seized [the] opportunity to unlawfully vote to set a tax rate"); *Id.*., p. 19 (citing Dkt. 30, ¶ 15, stating "that the District 'employed an irrational regulation as a pretext in order to strip meaningful participation from the public during the one meeting a year where a tax hike is discussed'").

### B. The Trustee Defendants did not violate TOMA regarding Azaiez's hiring.

The Response almost mirrors Story's prior responsive pleading regarding the TOMA claim related to Azaiez's hiring. *Cf.* Dkt. 56 ¶¶ 30–35, Dkt. 23, ¶¶ 57–64. The Response raises issues with the meeting notices and agendas. Dkt. 56, ¶¶ 30–31. But the Court already found that that "language of the notice" for the meeting "adequately alerts the reader to the subject of discussion" and determined that Story did not state a TOMA violation. Dkt. 43, pp. 45–46. Moreover, the Complaint disclaims a TOMA violation regarding the meeting or agenda: "[t]he issue is not that Azaiez was hired at a meeting, but that he was hired before the meeting with a secret walking quorum of discussion, and the meeting was a mere ruse." Dkt. 49, ¶ 232. And the Response relies on Story's prior, conclusory allegations regarding a "walking quorum," *Cf.* Dkt. 56, ¶¶ 32–35, Dkt. 23, ¶¶ 61–64, that the Court already found "do not contain any well-pleaded facts that a quorum of the Board met, considered, deliberated, or voted regarding Azaiez's employment outside of a properly noticed public meeting" to show a TOMA violation regarding Azaiez's hiring. Dkt. 43, p.46.[4]

Story attaches two new emails and a few text messages to the Complaint in an attempt to plead the existence of a "walking quorum." But the attachments do not show a walking quorum that violated TOMA. Dkt. 52, pp 8–9, 13–15. The Response does not respond to the arguments in the Motion or do anything to show that the newly-attached documents show a TOMA violation. The Response does not address the case law that holds that discussions about matters before the body are not voidable, and do not present a viable claim, when the final vote is made in public. *Id.*, pp. 8–9, 15. Similarly, it

---

[4] The Response's efforts to distinguish *United Independent School District v. Gonzalez*, 911 S.W.2d 118 (Tex. App.—San Antonio 1995, writ denied) are unavailing. The Response states that *Gonzalez* is "inapposite because it addresses" Texas Government Code § 551.082 pertaining to school disciplinary matters. *Cf.* Dkt. 56, ¶ 29, Dkt. 23, ¶ 58. But the Motion cites *Gonzalez* for its more general proposition, under Section 551.141, that "only actions taken in violation" of TOMA "are voidable." *Gonzalez*, 911 S.W.2d at 128. There, the court stated that "even if the executive session violated the Act . . . no action was taken during the executive session[,] . . . the vote affirming [the] expulsion took place in open session, after any alleged violation occurred; that being the case the vote . . . was not taken in violation of the Act." *Id.*

4

does not address that the new documents do not evince a "verbal or written exchange" to constitute a "deliberation" as defined by TOMA. *Id.*, pp. 13–15. Consequently, the newly pleaded facts do not show an impermissible meeting of a quorum of the Board to deliberate or act regarding hiring Azaiez, or approving his contract, to state a TOMA violation. In addition to the reasons *supra* and *infra*, Story's TOMA claim related to Azaiez's hiring should also be dismissed for failure to show a TOMA violation.

### C. Story's TOMA claims are moot under the facts and applicable law.

The mootness of Story's TOMA claims are simply another reason dismissal is appropriate. The Response's characterization of Story's TOMA claims indicate he seeks a Court decision stating a TOMA violation occurred in the past. Even if such a declaration were allowable under TOMA, which it is not, the decision would have no practical effect on the parties and, thus, Story's claims are moot. *Cook v. Hedtke*, No. 03-17-00663-CV, 2018 WL 1660078, at *2–3 (Tex. App.—Austin Apr. 6, 2018) (no pet). To avoid this legal bar, the Response invokes the "capable-of-repetition-yet-evading-review exception." But the lawsuit's procedural history demonstrates why that exception does not apply.

RRISD's Board voted to hire Azaiez in June 2021 and the tax rate vote occurred at a September 14, 2021 meeting. If Story believed the Board violated TOMA, he could have immediately filed suit and sought a temporary restraining order and temporary injunction. He did not do so. Story waited until May 11, 2022—11 months after the Board hired Azaiez and 8 months after the tax vote—to file suit. Dkt. 1. Then, he did not pursue temporary injunctive relief. Moreover, initially, and in his Amended Complaint, Story sought to void Azaiez's contract and prevent RRISD from spending tax dollars collected under the tax vote. Now, after the Board amended Azaiez's contract twice and voted two times on new tax rates, Story has re-framed his TOMA claim. He no longer seeks to void Azaiez's contract or remove him, and no longer seeks to void the tax rate or prevent tax collection. Dkt. 56, ¶¶ 41, 52. As these facts show, this is not the type of case where the "challenged action was in its duration too short to be fully litigated prior to its cessation or expiration" or that there is "reasonable

expectation that" Story "would be subjected to the same action again."—the purportedly illegal vote to hire Azaiez and a COVID-19 seating capacity limitation for a tax rate vote.

The Response cites *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167 (2000) for the voluntary cessation exception standard. Dkt 56, ¶¶ 49–50. But the Fifth Circuit has held that the standard and burden set forth in *Laidlaw* does not apply where, as here, the defendant is a public entity. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009), *cert. denied*, 560 U.S. 923 (2010) (recognizing the "lighter burden" for a public entity, stating "[w]e will not require some physical or logical impossibility that the challenged policy will be reenacted absent evidence that the voluntary cessation is a sham for continuing possibly unlawful conduct," and dismissing claim as moot). And notably, the Response does not distinguish the holding and solid rationale of *Cornyn v. City of Garland*, 994 S.W.2d 258 (Tex. App.—Austin 1999, no pet), that TOMA claims, by their nature, are not subject to the "capable-of-repetition-yet evading-review" exception. Dkt. 52, p. 12.

Furthermore, the Response does not explain why Story's TOMA claims are not moot or how and why he meets the elements of the "capable-of-repetition-yet-evading-review" exception. Instead, and without legal support, he appears to invite the Court to use a "totality of the circumstances" analysis, and to consider the "long train of abuses" and "pattern of TOMA violations inextricably bound up in a culture of secrecy and flagrant constitutional violations." Dkt. 56, ¶¶ 53–55. But the fact that Story asserts a litany of grievances and claims, does not show he states a TOMA claim upon which relief may be granted, that his TOMA claims are not moot, or that he satisfies the elements to warrant an exception to the mootness doctrine. Consequently, the Court should also find that Story's TOMA claims are moot and dismiss them for lack of jurisdiction.

**II.   The Response points to no personal involvement of Weir with respect to any alleged Fourth Amendment violation to state a Fourth Amendment claim against her.**

The Motion seeks dismissal of Story's Fourth Amendment claim. Dkt. 52, pp. 16–18; Dkt. 49, § VII, F & ¶¶ 224, 228. The Response attempts to show that Story sufficiently pleaded that Weir

violated his *First Amendment* rights and cites the Court's Order regarding his *First Amendment* claims. *Id.*, § D & ¶ 56 (citing Dkt. 43, p. 16). But Weir does not seek dismissal of his First Amendment claims.

The Complaint states that Weir "violated [Story's] Fourth Amendment [r]ight to be [f]ree of [u]nreasonable [a]rrest, and [e]xcessive [f]orce." Dkt. 49, § VII, F. Story asserts that Pope and Pontillo "intentionally used unreasonable force and seizure " and that "Weir authorized and instructed RRISD police to remove Story." Dkt. 49, ¶ 224. Weir moved to dismiss this claim because the Complaint did not plead facts that she had personal involvement in the purported seizure at the August 16 meeting, the alleged excessive force at the September 14 meeting, or Story's alleged false arrest. Dkt. 52, pp. 16–18. The Response conclusorily asserts that "[i]ndividual actions are described for all of them[.]" Dkt. 56, ¶ 57. But the Response does not reference "excessive force" or any incident of force, and points to no personal involvement of Weir in Pope's and Pontillo's alleged excessive force at the September 14 meeting. Dkt. 56. Nor can it, because Pope, Pontillo, and Story were not even in the same room as Weir at the time of the alleged use of force. *See* Dkt. 52 (citing Dkt. 49, ¶¶ 66, 89). Similarly, the Response points to no facts showing Weir's personal involvement in the alleged false arrest. Dkt. 56. The Response references the arrest only once, and it was not to show Weir's personal involvement in the arrest. *Id.*, ¶ 53.

With respect to Story's removal from the August 16 meeting, the Response cites the Court's Order on Story's *First Amendment* claim that he was "ejected from the meeting at the direction of President Weir." Dkt. 56, ¶ 56 (citing Dkt. 43, p. 16). This does not support Story's *Fourth Amendment* claim against Weir but expressly demonstrates that the Court previously considered the allegation that Weir directed Pope and Pontillo to remove him from the August 6 meeting when it dismissed Story's Fourth Amendment claim against her. Dkt. 43, pp. 30–31 ("Story has also only alleged the personal involvement of . . . Pope and Pontillo. Story's claim will be dismissed as to the remaining individual Defendants."). Moreover, the Response ignores both the absence of pleaded facts that Weir was

7

personally involved in Story's physical removal from the August 16 meeting—the alleged unreasonable seizure—as well as Story's affirmative pleading that "Pope began acting [to remove Story] before any instruction was given." Dkt. 52, p. 17 (citing Dkt. 49, ¶ 231(e)).[5] Even if Weir did request that Pope and Pontillo remove Story, she did not direct or personally participate in the interaction between the officers and Story that constituted the seizure. *See* Dkt. 43, p. 30 (citing *Heaney v. Roberts*, 846 F.3d 795, 805 (5th Cir. 2017) and stating the Fifth Circuit was "'convinced' that an interaction between an officer and a speaker at a meeting 'was a seizure under the Fourth Amendment.'").[6] Consequently, Story does not—and *cannot*—state a Fourth Amendment claim for unreasonable seizure against Weir.

Even if Weir did violate Story's right to be free from unreasonable seizure by merely requesting that officers remove Story from the August 16 meeting, which she did not, she is entitled to qualified immunity. The Response cites no case law—and the RRISD Defendants are aware of none—that a public official presiding over a meeting violates a person's Fourth Amendment rights by requesting that the person be removed from the meeting. Accordingly, it is not clearly established that such action constitutes a Fourth Amendment violation to overcome Weir's qualified immunity. Rather, the law is clear: personal involvement is required to state a violation. Dkt. 52, p. 18. Contrary to the Response's argument, Dkt. 56, ¶ 13, the Court has not already rejected Weir's assertion of qualified immunity as to Story's *Fourth Amendment* claims. The Court did not need to address Weir's qualified immunity as

---

[5]   Story's efforts to show some grand "conspiracy" were already criticized and dismissed by the Court (Dkt. 42, pp. 29–32, 45; Dkt. 43, pp. 43–44), and deleted, after request (Dkt. 52-1, App. 072, 093), from the Complaint. His re-assertion of a conspiracy in the Response as the basis to state a Fourth Amendment claim against Weir should be rejected. Dkt. 56, ¶ 57.

[6]   In *Heaney*, the presiding officer of a city council meeting instructed that the plaintiff citizen be removed from a meeting and a police officer approached the plaintiff, indicated he needed to move, "continued to force [the] plaintiff from the Council chambers," "shoved him forward, causing him to fall to the floor" and after he got up "seized [him] by the arms and forcibly ejected him from the chambers" into an elevator. *Heaney*, 846 F.3d at 799. While the Fifth Circuit considered a First Amendment claim against the council member, the unreasonable seizure claim was, naturally, only against the officer involved in the seizure itself. *Id.* at 804–05.

8

to this claim because the Court dismissed any Fourth Amendment claim against Weir for failure to state a claim. Dkt. 43, p. 31. The Court should do so again, and this time with prejudice.

### III. The Response demonstrates that Story does not have a plausible Fourteenth Amendment claim against Landrum.

The Response shows that Story neither knows what claim he asserts against Landrum, nor the factual bases he pleads to support that claim. The Motion seeks dismissal of Story's *Fourteenth Amendment* claim against Landrum related to Story's grievance hearings. Dkt. 52, pp. 18–20; Dkt. 49, § VII, E & ¶ 215. The Response does not discuss Story's grievance hearings, or otherwise address this claim.[7] Instead, the Response focuses on a *First Amendment* claim regarding Story's removal from the August 16 meeting, Dkt. 56, § D & ¶¶ 17–18, 25–26, 59, and the inability to show qualified immunity with respect to his "rights to petition … and exercise free speech." *Id.*, ¶ 14. But Story does not assert a First Amendment claim against Landrum related to the August 16 meeting. Dk. 49, § VII, A, 1.

The Response repeatedly references Landrum's alleged statement that "Story should leave" the August 16 meeting. Dkt. 56, ¶¶ 17–18, 25–26, 59. But Story pleaded those facts in his prior complaint, Dkt. 20, ¶ 38, and the Court held they were insufficient to state a First or Fourteenth Amendment claim. Dkt. 43, pp. 17, 37.[8] Story's continued invocation of this theory of First or Fourteenth Amendment liability, despite the Court's prior ruling, is frivolous.

In the Response, Story now complains that at a January 6, 2022 meeting, after Landrum became Board President, Landrum "state[d] that she would allow non-germane comments 'as long as they circle back around to the topic eventually' and then denied Story the right to speak." Dkt. 56,

---

[7] Any such claim is waived and should be dismissed. *See Kellam v. Metrocare Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue.").

[8] Dkt. 43, pp. 17 ("With respect to Trustee Feller and Trustee Harrison, Story asserts that they 'stated that [he] should leave.' (Dkt. #20 ¶ 38.) This is not sufficient. Story's as-applied challenge is dismissed as to these specific Defendants."); *see also id.*, p. 37 (finding with respect to Story's Fourteenth Amendment claim that "Story has only pled the personal involvement of [ ] Weir, [ ] Pope, and [ ] Pontillo in Story's ejection from the meeting" and dismissing this claim "as to the remaining individual Defendants.").

9

¶ 59 (citing Dkt. 49, ¶¶ 104–05). That is not the basis of Story's pleaded Fourteenth Amendment claim against Landrum. Dkt. 49, ¶ 215. And the Complaint never asserts that Landrum ever personally denied Story the right to speak. Even if Landrum's January 6 statement were the basis of a pleaded claim, the Response does nothing to show how Landrum's personal interpretation and application of BED (Local)'s limited public comment rule as Board President—months after the August 16 meeting—demonstrates that she intentionally discriminated against Story on August 16. Indeed, the Court previously held that Story stated a claim regarding the application of BED (Local) at the August 16 hearing only with respect to his allegation that "he alone was 'dragged from the podium by police' and ejected from the meeting." Dkt. 43, p. 16. The Response points to no pleaded facts that Landrum was personally involved in that action, and the Court previously found none. *See* n.8. Thus, Story could not state a claim against Landrum on this basis, even if it were pleaded.

In sum, Story's claim should be dismissed because the Complaint states no well-pleaded facts that Landrum treated Story differently than similarly situated individuals at the August 16 meeting, or when she was the Board President and presiding officer, to show she intentionally discriminated against him. Even if Landrum's mere statement of opinion that Story should leave a meeting were somehow sufficient to show intentional discrimination, Story does nothing to show that clearly established law would apprise any reasonable official that such a statement—without personal involvement in the decision to remove Story from the meeting or participation in his removal at the meeting—could violate a clearly established constitutional right. And these facts do not show that Landrum acted in an objectively unreasonable manner in her statement at the August 6 meeting or her later announcement regarding how she would interpret and apply BED (Local)'s limited public comment rule as Board President. Consequently, even if Story did state a plausible Fourteenth Amendment claim against Landrum, which he has not, he pleads no facts to overcome Landrum's qualified immunity as to this ever-changing claim. The Court should dismiss this claim with prejudice.

Respectfully submitted,

*/s/ Kathryn E Long*
KATHRYN E. LONG
State Bar No. 24041679
klong@thompsonhorton.com

K. ADAM ROTHEY
State Bar No. 24051274
arothey@thompsonhorton.com

**THOMPSON & HORTON LLP**
500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

**ATTORNEYS FOR THE ROUND ROCK ISD DEFENDANTS**

**CERTIFICATE OF SERVICE**

The undersigned certifies that on November 20, 2023, a true and correct copy of this document has been served upon all parties via the Court's electronic filing system:

| | |
|---|---|
| Warren V. Norred | Stephen D. Casey |
| NORRED LAW, PLLC | CASEY LAW OFFICE, P.C. |
| 515 E. Border St. | P.O. Box 2451 |
| Arlington, TX 76010 | Round Rock, TX 78680 |
| warren@norredlaw.com | stephen@caseylawoffice.us |

/s/   Kathryn E. Long
KATHRYN E. LONG

11