UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS – AUSTIN DIVISION

| | | |
|---|---|---|
| JEREMY STORY,<br><br>*Plaintiffs*,<br><br>v.<br><br>SUPERINTENDENT HAFEDH AZAIEZ, TRUSTEES AMBER FELLER, TIFFANIE HARRISON, AMY WEIR, JUN XIAO, CORY VESSA; OFFICERS JEFFREY YARBROUGH, JAMES WILLIBY, DEBORAH GRIFFITH, MILTON POPE, FRANK PONTILLO, RON COLE, CHIEF DENNIS WEINER, and CARLA AMACHER, individually, and ROUND ROCK INDEP. SCHOOL DISTRICT,<br><br>*Defendants.* | §§§§§§§§§§§§§§§§ | CIVIL ACTION NO.<br>1:22-cv-00448-DAE |

**CHIEF DENNIS WEINER, DETECTIVE RON COLE, AND DR. CARLA AMACHER'S MOTION TO DISMISS JEREMY STORY'S THIRD AMENDED COMPLAINT AND BRIEF IN SUPPORT**

**THOMPSON & HORTON LLP**

**KATHRYN E. LONG**
State Bar No. 24041679
klong@thompsonhorton.com

**K. ADAM ROTHEY**
State Bar No. 24051274
arothey@thompsonhorton.com

500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

**ATTORNEYS FOR THE ROUND ROCK ISD DEFENDANTS, INCLUDING CHIEF DENNIS WEINER, DETECTIVE RON COLE, AND DR. CARLA AMACHER**

**SUMMARY OF THE ARGUMENT**

In his Third Amended Complaint ("Complaint," Dkt. 49), Plaintiff Jeremy Story asserts a First Amendment claim regarding events at the September 16, 2022 Round Rock High School ("RRHS") homecoming football game against three newly-added defendants: Round Rock Independent School District ("RRISD" or the "District") Police Chief Dennis Weiner ("Chief Weiner"); RRISD Detective Ron Cole ("Detective Cole"); and Dr. Carla Amacher, a former Area Superintendent for the District (collectively, the "Homecoming Defendants"). Dkt. 49, ¶¶ 129–50; 208–12. The Homecoming Defendants move to dismiss this newly-asserted First Amendment claim because Story cannot show that the Homecoming Defendants violated his First Amendment rights, much less a clearly-established right to overcome their qualified immunity. In particular, Story has not and cannot show clearly-established law designating a high school parking lot as a public forum or rendering the prior-notice provisions of GKDA (Local) unconstitutional such that the Homecoming Defendants would have known their actions were unconstitutional (which they were not). As a result, Story's claim against the Homecoming Defendants should be dismissed.

**RELEVANT FACTUAL BACKGROUND**

On September 16, 2022, Story attended a homecoming football game at RRHS where he and other individuals passed out campaign materials for prospective RRISD Board members in the stadium parking lot. Dkt. 49 ¶ 129–30. Story was not one of the prospective RRISD Board members. *See id.* Story contends that, while passing out the campaign materials, the RRHS principal greeted the group and told them to "[h]ave a great game." *Id.* ¶ 132. After an hour, a single female RRISD police officer approached the group and said she had been instructed to tell them to stop distributing their materials. *Id.* ¶ 133. Story and his group refused to comply with this request. *Id.* ¶¶ 133–35.

According to the Complaint, within about ten minutes of the interaction with the female RRISD police officer, Detective Cole accompanied by Chief Weiner, "asked the group to stop passing

out flyers and leave." Dkt. 49 ¶ 136. Story contends that Detective Cole stated that he made the request "on behalf of Superintendent Azaiez." *Id.* Story and his group refused to stop passing out the campaign materials "unless there was an allegation of a violation of a specific policy or law." *Id.* ¶ 138. Minutes later, Dr. Amacher approached the group and made another request for them to cease distributing campaign materials. *Id.* ¶ 139. A member of Story's group asked Dr. Amacher to "show the group the policy that was being violated," but Story alleges Dr. Amacher was unable to do so. *Id.* Dr. Amacher left after a few minutes and then Detective Cole again allegedly demanded that Story and his group stop distributing the campaign materials. *Id.* ¶ 140. Story again refused to cease distribution of the campaign materials because Detective Cole allegedly "would not affirm that he was speaking on behalf of the District." *Id.* Story contends that unspecified RRISD Police Department officers "threatened to arrest [him] and the group if they refused to leave" before clarifying that Story only needed to stop distributing the campaign materials. *Id.* ¶ 142. Story and the remainder of the group finally complied with the request and entered the stadium to watch the game. *Id.* ¶ 143.

On September 19, 2022, RRISD General Counsel Cynthia Hill sent an email to all prospective Board candidates regarding the District policy governing distribution of campaign materials on RRISD property. *Id.* ¶ 144. Hill referred the candidates to Board policy GKDA (Local) which governs the distribution of non-school literature on District premises. *Id.* ¶¶ 144–45; Dkt. 49-1, Exs. 15, 16. GKDA (Local) requires all non-school literature intended for distribution on District premises to be submitted to the Superintendent for prior review and permits campus principals to designate the "times, locations, and means by which" such literature may be distributed on a campus. Dkt. 49 ¶¶ 147–48; Dkt. 49-1, Ex. 16. Story contends he received implicit permission from the RRHS principal to distribute the campaign materials when the principal walked by them without expressing opposition to their actions. Dkt. 49 ¶ 149(a). Story concludes that the Homecoming Defendants "acted together

to chill [his] speech during [the homecoming] event" and violated his right to exercise free speech. Dkt. 49 ¶¶ 149(b), 150.

## ARGUMENT AND AUTHORITIES

I.  **Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations that, when assumed to be true, state a claim that "is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When a complaint pleads facts that are "merely consistent with" a defendant's liability, "it 'stops short of the line between possibility and plausibility.'" *Id.* Although a court must accept well-pleaded facts as true, neither conclusory allegations nor "legal conclusions masquerading as factual conclusions" are entitled to a presumption of truth. *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009); *see also Iqbal*, 556 U.S. at 678–79, 681. If a plaintiff's allegations are contradicted by facts disclosed by a document attached to the complaint (or attached to the motion that is central to the plaintiff's claims and referenced by the complaint), then those contradicted allegations cannot be accepted as true. *Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013).

II. **Story does not state a First Amendment claim regarding the homecoming game.**

   A. **Story does not allege that GKDA (Local) is unconstitutional on its face.**

Story contends that the Homecoming Defendants violated his First Amendment rights when they asked him to "cease distribution of RRISD candidate campaign fans" in the stadium parking lot at RRHS's homecoming football game. Dkt. 49 ¶¶ 209–10. Board policy GKDA (Local) governs the distribution of non-school materials on District campuses or premises. *Id.* ¶¶ 145–48, 209–10; Dkt. 49-1, Ex. 16. Absent certain exceptions, it requires that these materials be submitted to the Superintendent or designee for prior review. Dkt. 49-1, p. 188; Dkt. 49 ¶ 147. Story does not raise a facial challenge to GKDA (Local), or its review requirement. A facial challenge to a policy like GKDA

3

(Local) "considers only the text of the statute itself, not its application to the particular circumstances of an individual." *Freedom Path, Inc. v. IRS*, 913 F.3d 503, 508 (5th Cir. 2019). To succeed in a facial attack, Story must establish that "no set of circumstances exists" in which the policy would be valid or that the policy "lacks any plainly legitimate sweep." *U.S. v. Stevens*, 559 U.S. 460, 472–73 (2010).

Here, Story complains about how GKDA (Local) was applied to him and that it was applied to him at all. Dkt. 49 ¶¶ 149, 209. Story claims it was a violation of the Board's policy and "unlawful" to ask him to stop distributing materials. *Id.* ¶ 209. He does *not* allege that "no set of circumstances exists" in which the District's policy would be valid or that the policy "lacks any plainly legitimate sweep." *Stevens*, 559 U.S. at 472–73. Nor does he allege that "a substantial number" of its applications are unconstitutional. *Catholic Leadership Coalition of Tex. v. Reisman*, 764 F.3d 409, 426 (5th Cir. 2014). In fact, Story does not reference any other application of the policy, actual or theoretical. Accordingly, Story does not allege or state a claim that GKDA (Local) is unconstitutional on its face. Furthermore, only RRISD's Board could adopt GKDA (Local). Thus, any claim that GKDA (Local) is unconstitutional on its face is a claim against RRISD, not the Homecoming Defendants.[1]

> **B.  Story cannot show an underlying violation of his First Amendment rights, or that GKDA (Local) was unconstitutionally applied to him.**
>
> **1.  RRHS's parking lot is a non-public forum.**

"[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981). In assessing a claim for speech on government property, the Court must first identify the nature of the forum as "the existence of a right of access to public property and the standard by which limitations upon such right must be evaluated differ depending on the character of the property

---

[1]  Story pleads no facts that the Homecoming Defendants had any role in promulgating GKDA (Local). GKDA (Local) was issued on May 3, 2017, and Story does not even allege the Homecoming Defendants were employed by RRISD at that time. Dkt. 49-1, p. 187.

4

at issue." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983). The Supreme Court has "identified three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.,* 473 U.S. 788, 802 (1985). "Because a principal purpose of traditional public fora is the free exchange of ideas, speakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest." *Id.* at 800. In contrast, "[i]mplicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity." *Perry*, 460 U.S. at 49. Accordingly, access to a nonpublic forum may be restricted if the restriction is "reasonable" and "not an effort to suppress expression merely because public officials oppose the speaker's views." *Cornelius*, 473 U.S. at 800.

Traditional public fora are those that "time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions," characteristics that public school facilities, including parking lots, "do not possess." *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988); *Grattan v. Bd. of Sch. Com'rs of Baltimore City*, 805 F.2d 1160, 1162 (4th Cir. 1986) (finding school parking lot "falls within the third category of public property . . . public property which is not by tradition or design a forum for public communication."). Thus, school facilities may be deemed public fora "only if school authorities have 'by policy or by practice' opened those facilities 'for indiscriminate use by the general public or by some segment of the public.'" *Kuhlmeier*, 484 U.S. at 267. "If the facilities have instead been reserved for other intended purposes, 'communicative or otherwise,' then no public forum has been created, and school officials may impose reasonable restrictions on the speech of students, teachers, and other members of the school community." .

In the Complaint, Story asserts in conclusory fashion that that the high school parking lot is "colorably a public forum." Dkt. 49 ¶ 211. But, as discussed *supra*, school parking lots are not traditionally public fora. *See Grattan*, 805 F.2d at 1162–63 (disagreeing with plaintiff's characterization

5

of a school parking lot as being "akin to a public sidewalk" and holding that "a public school parking lot is a nonpublic forum"); *see also Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402, 406 (5th Cir. 1995) ("The [basketball] games are school-sponsored and controlled events that do not provide any sort of open forum for student expression."). And Story does not allege any facts plausibly suggesting that RRISD has evinced an intent to change this by opening its facilities for "indiscriminate use." *See Perry*, 460 U.S. at 47 (holding that a school's decision to provide "selective access" to the school mail system through principal approval did not "transform government property into a public forum" where there was no indication that permission was granted as a matter of course.); *see also Cornelius,* 473 U.S. at 804 (holding government's policy providing "selective access" through a prior approval requirement "unsupported by evidence of a purposeful designation for public use, does not create a public forum"). To the contrary, District policy GKDA (Local)'s prior review requirement, Dkt. 49-1, p. 188, "is a further indication" that the District did not intend to create an open forum with respect to the RRHS parking lot. *Little Pencil, LLC v. Lubbock Indep. Sch. Dist.*, No. 5:14-CV-014-C, 2014 WL 11531267, at *7 (N.D. Tex. May 29, 2014); *see also State of Tex. v. Knights of Ku Klux Klan*, 58 F.3d 1075, 1079 (5th Cir. 1995 (application requirement "supported determination[ ] that [the] program is not a public forum").

To the extent Story relies upon *Chiu v. Plano Independent School District*, to argue otherwise, such reliance is misplaced. Dkt. 49 ¶ 211. In *Chiu*, the Fifth Circuit considered whether a school district's restriction on the distribution of literature critical of the school's new math program during an after-school parents' meeting to discuss the new curriculum violated the parents' First Amendment rights. 260 F.3d 330, 347 (5th Cir. 2001). In conducting its forum analysis, the Court reasoned that the meeting may "properly be considered a designated public forum" as it was akin to a school board meeting, with time allotted for questions and answers as well as "small group discussion with teachers and district administrators." *Id.* at 348–49. "Such conduct," stated the Court, "support[ed] a reasonable inference that [the district] initially intended to allow open, yet structured, expression on math

6

curriculum reform." *Id.* at 349. Nonetheless, the Court ultimately deemed the facts insufficiently developed as to the district's intent to determine whether the meeting was a public or nonpublic forum. *Id.* Accordingly, there is nothing in *Chiu* indicating that a high school parking lot outside a football game—or any event even remotely similar to a football game—is "colorably an open forum," as Story alleges, much less the standard that would apply to such rights. Moreover, the Fifth Circuit has cautioned against the application of *Chiu* to circumstances outside those present in that case, that is, "an individual trying to contribute relevant materials to a public forum dedicated to adult dialogue." *Morgan v. Swanson*, 755 F.3d 757, 761 (5th Cir. 2014). Because a high school football game and the high school parking lot do not present such circumstances, the Complaint's reference to *Chiu* is inapposite.[2]

At base, the Complaint contains no allegations that could support a conclusion that the high school's parking lot constitutes a public forum. In fact, the Complaint categorically forecloses such a possibility by reference to GKDA (Local), which evinces the District's clear intent to retain control over its facilities and premises. And because the parking lot is a nonpublic forum, RRISD "had no 'constitutional obligation per se to let any organization use [it]'" and any restrictions need only be reasonable. *Perry,* 460 U.S. at 48. GKDA (Local) makes no attempt to categorically prohibit any protected speech but rather provides for a five-day review period to allow RRISD to assess non-school literature, a regulation that is a reasonable means for advancing the District's interests.

### 2. **GKDA (Local) is content neutral and merely imposes a reasonable time, place, and manner restriction.**

Even if RRHS's parking lot were a public forum—which it is not—the restrictions imposed by GKDA (Local) are constitutionally permissible. The Supreme Court has acknowledged that

---

[2] The Complaint also cites *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407 (2022) as an example of what it calls "aggressive moves by the Supreme Court to protect First Amendment rights in school contexts." Dkt. 49 ¶ 211. *Kennedy* involved the termination of a high school football coach who would kneel in prayer at midfield after games to offer a personal prayer. Story does not explain how *Kennedy*, which dealt with a public-school employee's First Amendment rights, is at all applicable to his First Amendment claim against the Homecoming Defendants.

reasonable time, place, and manner restrictions are permitted in both public and nonpublic forums provided they are content neutral, narrowly tailored, and leave open alternative channels for communication. *Perry*, 460 U.S. at 45; *Chiu*, 260 F.3d at 345 n.9. GKDA (Local) unquestionably meets these requirements.

GKDA (Local) does not prohibit political speech, does not discriminate based on content or viewpoint, and does not impose an impermissible prior restraint on speech. In fact, the only materials GKDA (Local) prohibits distribution of are those falling into categories that have been expressly recognized as not protected in a school setting and that are not at issue here. Dkt. 49-1, p. 187–89. These include materials that are obscene or vulgar, endorse dangerous or illegal actions, promote the use of illegal substances, and/or violate the rights of others.[3] Outside these narrow categories of nonprotected speech, GKDA (Local) plainly permits distribution of expressive materials without regard to their content or viewpoint. In particular, given the focus of Story's claims, the policy does not prohibit any speech on the basis that it is political in nature or expresses a political viewpoint. In short, GKDA (Local) "is 'content neutral' in the constitutional sense." *M.A.L. ex rel. M.L. v. Kinsland*, 543 F.3d 841, 848 n.3 (6th Cir. 2008).

GKDA (Local) also "leave[s] open ample alternative channels of communication." *Perry*, 460 U.S. at 45. Indeed, it leaves open *all* channels of communication. Nowhere in GKDA (Local) is the distribution of non-school literature prohibited in any specific forum. Rather, the policy simply requires prior approval and consideration of the appropriate time, place, and manner for distribution. Moreover, individuals are free to distribute non-school literature off-campus or to convey their

---

[3] *See Morse v. Frederick*, 551 U.S. 393, 403 (2007) (illegal drug use); *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682–83 (1986) (vulgarity); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984) (defamation); *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (illegal activities); *Tinker v. Des Moines Indep. Comm. Dist.*, 393 U.S. 503, 89 S. Ct. 733 (1969) (disruptive speech, rights of others); *Ponce ex rel. E.P. v. Socorro Indep. Sch. Dist.*, 508 F.3d 765, 770 (5th Cir. 2007) (health and safety); *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard*, 600 F.2d 1184, 1188 (5th Cir. 1979) (intellectual property).

messages through alternative communication channels that do not involve the distribution of literature. GKDA (Local) simply implements a permissible "manner" regulation by stating that, with limited exceptions, any individual who wishes to distribute non-school literature must first present the materials to the Superintendent or designee. Indeed, the Fifth Circuit expressly authorized such requirements more than five decades ago in the context of student speech, stating "[t]here is nothing unconstitutional per se in a requirement that students submit materials to the school administration prior to distribution." *Shanley v. Ne. Indep. Sch. Dist., Bexar Cty., Tex.*, 462 F.2d 960, 969 (5th Cir. 1972).[4]

In *Shanley*, the Fifth Circuit held that preapproval regulations like those in GKDA (Local) should meet four criteria. These regulations must: "(1) state clearly the means by which [persons] are to submit proposed materials to the principal or school administration; (2) state a brief and reasonable period of time during which the principal or administration must make their decisions; (3) state clearly a reasonable appellate mechanism and its methodology; and (4) state a brief and reasonable time during which the appeal must be decided." *Id.* at 978. Such regulations also must not delegate overly broad discretion to the reviewing official. *Forsyth Cty. v. The Nationalist Movement*, 505 U.S. 123, 130 (1992). The District's policy plainly satisfies each of those requirements.

GKDA (Local) states that, prior to distribution, individuals must submit any non-school literature to the Superintendent or designee who is given five school days to ensure that it contains the name of the person or organization requesting distribution, complies with the limitations on content discussed *supra,* and is submitted by a nonprofit or governmental entity. Dkt. 49-1, pp. 221–23. If the materials comply, they may be distributed at such times and in such locations designated by each school principal. These guidelines ensure that the Superintendent or designee does not have

---

[4] Preapproval regulations are frequently upheld by courts with regard to student speech. *See Sullivan v. Hous. Indep. Sch. Dist.*, 475 F.2d 1071, 1075–77 (5th Cir. 1973); *Bystrom ex rel. Bystrom v. Fridley High Sch., Indep. Sch. Dist. No. 14*, 822 F.2d 747, 750 (8th Cir. 1987); *Henerey ex rel. Henerey v. City of St. Charles, Sch. Dist.*, 200 F.3d 1128, 1134–36 (8th Cir. 1999).

vague or unfettered authority to reject a distribution request. On the contrary, the policy provides clear standards against which the Superintendent must exercise his discretion to approve or disapprove of a proposed distribution. And those decisions may be appealed under District policy, which guarantees an eventual appeal to the school board. Dkt. 49-1, pp. 221–23.

Moreover, the prior review in GKDA (Local) serves the important purpose of ensuring RRISD complies with laws regarding the use of District property and funds. Specifically, GKDA (Local)'s prior review requirements and time, place, and manner restrictions enable RRISD to ensure it complies with state law regarding the use of District resources for electioneering.[5] GKDA (Local) provides the District the opportunity to review all non-school literature prior to its distribution which prevents its facilities, including parking lots, from being used improperly.

Ultimately, GKDA (Local), on its face, is appropriately designed to further the District's interests. It does not single out political speech for extra restrictions, nor does it restrict political speech in any way beyond what is necessary. Under the terms of the policy, individuals may distribute political literature so long as it comports with the time, place, and manner restrictions that apply evenhandedly to all individuals and all non-school literature. Because GKDA (Local)'s requirements are merely time, place, and manner regulations, and because those regulations are content-neutral, are narrowly tailored

---

[5] Public school districts are prohibited from using public funding or other resources for electioneering or political advertising. TEX. EDUC. CODE § 11.169; TEX. ELEC. CODE § 61.003(b), 255.003. And the Texas Ethics Commission has interpreted the use of public funds to include the use of nonpublic district facilities, including parking lots. Op. Tex. Ethics Comm'n No. 552 (2020); Op. Tex. Ethics Comm'n No. 443 (2002). Indeed, the Texas Attorney General has recently instituted a number of legal proceedings against public school districts who it alleges have violated these statutes and rules by allowing campaigning for or against certain candidates or policies using district resources. *See* Keri Heath, *'Support public schools': AG Ken Paxton sues 6 Texas districts over electioneering claims*, AUSTIN AM. STATESMAN, Mar. 4, 2024, https://www.statesman.com/story/news/politics/elections/state/2024/03/04/paxton-sues-six-school-districts-over-electioneering-claims/72808845007/ (last visited Mar. 19, 2024).

to serve a significant governmental interest, and leave open ample alternative channels of communication, the policy is constitutional on its face.

In sum, the prior review requirement in GKDA (Local) is valid on its face because it specifically limits the reasons why materials may be rejected (precisely to avoid viewpoint discrimination), imposes short time frames for the review, and provides an opportunity to appeal if materials are rejected—all hallmarks of a valid policy.[6]

### 3. The Complaint contains no well-pleaded facts to show any unconstitutional application of GKDA (Local) to Story.

The alleged facts reveal that Story was instructed to cease distributing materials, not because of his viewpoint, but because he did not follow GKDA (Local)'s prior review requirement. In fact, the only people that Story's factual allegations show violated the policy are himself and his companions. Story did not submit the materials he was distributing for review, ergo RRISD did not reject his materials and did not subject him to any time, place, and manner restrictions on his distribution of them. He argues that the policy should not have applied to him and concludes that the reason he was told it did was because of his viewpoint. But the Complaint contains no allegations regarding other individuals distributing different content or communicating a different viewpoint who were allowed to continue to do so despite not complying with GKDA (Local). It also contains no

---

[6] *Compare Shanley*, 462 F.2d at 969 (prior review policy was unconstitutional because it contained no provision for timely administrative appeal and no standards for the principal's decision) *and Westfield High Sch. L.I.F.E. Club v. City of Westfield,* 249 F. Supp. 2d 98 (D. Mass. 2003) (policy requiring approval by administrator to distribute literature unrelated to curriculum struck down where policy had no time limitations for approval or denial and left choice to restrain the speech to an administrator without clear guidelines) *with Pounds v. Katy Indep. Sch. Dist.*, 517 F. Supp. 2d 901, 919 (S.D. Tex. 2007) (upholding constitutionality of policy requiring prior approval of material distributed by students where policy significantly limits administrator's discretion, limit time for review, and provided opportunity to appeal) *and Morgan v. Plano Indep. Sch. Dist.*, No. 4:04CV447, 2010 WL 6367527, at *5 (E.D. Tex. Sept. 23, 2010), *adopted by* No. 4:04CV447, 2011 WL 1213080 (E.D. Tex. Mar. 28, 2011) (holding school district policy similar to that at issue here was facially valid where it restricted reasons administrator could reject materials, was not "impermissibly long nor burdensome," and had an appeal procedure built into place).

11

well-pleaded allegations that any RRISD employee—much less the Homecoming Defendants or the Board as a body corporate—expressed any opinion on the viewpoint he was expressing.

Furthermore, Story's arguments regarding the "unlawful" application of the policy to him rests on misinterpretations of the policy and an incorrect understanding of the law governing speech on school campuses. Story first claims that the policy did not apply to his actions because Policy GKDA (Local) "expressly excepts 'distribution of materials by an attendee to other attendees at a school-sponsored meeting intended for adults and held after school hours.'" Dkt. 49 ¶ 209. A high school football game with student-athletes on the field and the sidelines and students in the stands as cheerleaders, band, color guard, dance team members, and spectators is hardly a meeting "intended for adults." This exception simply does not apply to Story's activities, and Story's allegations to the contrary are conclusory and not entitled to a presumption of truth.

He next alleges that the policy does not apply because the parking lot is "colorably a public forum." *Id.* ¶ 211. Again, Story's allegations to this effect are nothing more than legal conclusions. What is more, Story's other allegations demonstrate that the parking lot in question is owned by RRISD and on the campus of RRHS.[7] It is not a public forum, as discussed *supra*, pp. 4–7. *See, e.g.*, *Kuhlmeier*, 484 U.S. at 267. And, even if it were a limited public forum, RRISD can restrict speech so long the District's restriction is reasonable in light of the purpose served by the forum and content-neutral—like those restrictions found in GKDA (Local). *See supra*, pp. 7–11.

Finally, Story suggests he should have been allowed to continue to distribute materials because the high school principal, by walking past and "warmly greet[ing]" Story and his companions, served

---

[7]   Story indirectly acknowledges the ownership and location of the parking lot through various pleaded facts. He notes that the parking lot was next to the RRHS football stadium and argues that it was up to the RRHS Principal to set "times, locations, and means" restrictions—something a principal only does for materials being distributed on their campus. Dkt. 49 ¶¶ 130, 148. He acknowledges that the parking lot is under the control of RRISD by acknowledging the RRISD policies potentially governed their behavior and that the group would have complied sooner if the area superintendent had "affirm[ed] he was speaking on behalf of the District." *Id.* ¶¶ 139-40.

12

as an implicit permission for them to continue their activities. Dkt. 49 ¶¶ 132, 149. Yet the plain language of GKDA (Local) only vests the principal with authority to "designate times, locations, and means" by which non-school materials that comply with the policy may be distributed on the principal's campus. *Id.* ¶ 148; Dkt. 49-1, p 188. It does not give the principal authority to determine whether non-school literature is in fact appropriate for distribution under the policy, much less to grant exceptions to the requirement that materials be pre-approved by the Superintendent or their designee.

Because Story cannot show that GKDA (Local)'s prior review requirement is unconstitutional or unconstitutionally applied to him, he cannot show any violation of his constitutional rights to maintain a First Amendment claim against the Homecoming Defendants.

### C. The Complaint contains no facts to show that the Homecoming Defendants applied GKDA (Local) in an unconstitutional manner to overcome qualified immunity.

Story admits that GKDA (Local) "governs distribution of materials 'on any District premises'" and permits distribution of non-school material with prior review and approval. Dkt. 49 ¶¶ 149, 151; Dkt. 49-1, Ex. 16. And while the Complaint attempts to contend that Story was instructed to cease distributing campaign literature based on his viewpoint, the Complaint contains no well-pleaded facts to show that in any effort by one or all of the Homecoming Defendants to require Story to cease distribution of the campaign materials, they were motivated by anything other than Story's failure to abide by the requirements of GKDA (Local). And the Complaint lacks any facts that other speakers with different viewpoints who also had not received prior approval were treated more favorably despite engaging in the same conduct. Accordingly, Story does not show that the Homecoming Defendants violated Story's First Amendment rights or applied the prior review requirement in GKDA (Local) to him in any unconstitutional manner.

13

Moreover, school officials, like the Homecoming Defendants, are "entitled to qualified immunity if their 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Longoria v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 264 (5th Cir. 2019) (quoting *Harlow Fitzgerald*, 457 U.S. 800, 818 (1982)). "If, at the time of the events underlying the litigation, 'insufficient precedent existed to provide school officials with "fair warning" that the defendants' conduct violated the [law],' the defendants are entitled to qualified immunity." *Id.* A plaintiff can defeat qualified immunity only if they plead facts that (i) the official violated a clearly established constitutional right, and (ii) the official's conduct was objectively unreasonable "in light of clearly established law at the time[.]" *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000); *see also Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021).

Here, the Complaint lacks factual content to show the Homecoming Defendants violated Story's First Amendment rights at all. And Story has not shown, and cannot show, that the law was clearly established that requiring prior review of non-school materials, when content neutral, before distributing at a high school parking lot, violates a member of the public's constitutional rights. *See supra* n.6. And even if Story could show clearly established law—which he has not—he also cannot show that the Homecoming Defendants' reliance on GKDA (Local) in requesting that Story cease distributing the campaign materials in the parking lot was clearly unreasonable under the circumstances. A "defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's asserted constitutional rights or a federal statute." *Thompson v. Upshur*, 245 F.3d 447, 457 (5th Cir. 2001) (cleaned up; emphasis in original). And "[i]f defendants 'of reasonable competence could disagree on th[e] issue, immunity should be recognized.'" *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Story cannot show that *all* reasonable officials would have then known that enforcement of GKDA (Local)'s content-neutral, prior review requirement violated his First Amendment rights under the

14

circumstances. Story, therefore, cannot overcome the Homecoming Defendants' qualified immunity to the First Amendment claim related to RRHS's homecoming football game.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Story's claims against the Homecoming Defendants with prejudice. The Homecoming Defendants seek their reasonable attorneys' fees and costs associated with this motion under 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 11.

Respectfully submitted,

*/s/ Kathryn E Long*
KATHRYN E. LONG
State Bar No. 24041679
klong@thompsonhorton.com

K. ADAM ROTHEY
State Bar No. 24051274
arothey@thompsonhorton.com

**THOMPSON & HORTON LLP**
500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

**ATTORNEYS FOR THE ROUND ROCK ISD DEFENDANTS, INCLUDING CHIEF DENNIS WEINER, DETECTIVE RON COLE, AND DR. CARLA AMACHER**

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 2, 2024, a true and correct copy of this document has been served upon all parties via the Court's electronic filing system:

| | |
|---|---|
| Warren V. Norred | Stephen D. Casey |
| NORRED LAW, PLLC | CASEY LAW OFFICE, P.C. |
| 515 E. Border St. | P.O. Box 2451 |
| Arlington, TX 76010 | Round Rock, TX 78680 |
| warren@norredlaw.com | stephen@caseylawoffice.us |

/s/    *Kathryn E. Long*
KATHRYN E. LONG