UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS - AUSTIN DIVISION

| | |
|---|---|
| JEREMY STORY and DUSTIN CLARK,　§<br>　　*Plaintiffs,*　　　　　　　　　　　§<br>　　　　　　　　　　　　　　　　　　§<br>*v.*　　　　　　　　　　　　　　　　§<br>　　　　　　　　　　　　　　　　　　§<br>SUPERINTENDENT HAFEDH AZAIEZ, et al.,　§<br>　　*Defendants.*　　　　　　　　　　§ | **Civil Action No.**<br>**1:22-cv-448** |

### PLAINTIFF'S OBJECTION AND MEMO IN RESPONSE TO DEFENDANTS' WIENER, COLE, AND AMACHER'S MOTION TO DISMISS

COMES NOW, Plaintiff Jeremy Story to respond to the Motion to Dismiss ("Motion") filed by RRISDPD Chief Ennis Weiner, Detective Ron Cole, and Dr. Carla Amacher (corporately in this pleading, "Homecoming Defendants" or "Defendants"), the leadership of RRISDPD and RRISD Administration who managed, supervised, and approved the illegal censorship of Story in RRISD's Round Rock High School parking lot (hereafter "Parking Lot"). [Doc. No. 74.]

This Response can be summarized as asserting that when all of Plaintiff's facts are taken as true and viewed in a light most favorable to Plaintiff, he has successfully plead plausible claims for deprivation of his First Amendment rights, such that qualified immunity does not avail Homecoming Defendants. The Court should deny the Motion to Dismiss.

### TABLE OF CONTENTS

PLAINTIFFS' CLAIMS SHOULD SURVIVE DISMISSAL ..................................................................4
　I.　Story successfully pleaded a First Amendment Claim regarding the homecoming game. ....................4
　　A.　Both parties agree that GKDA (Local) is facially constitutional. ....................................4
　　B.　Story has plausibly pleaded a violation of his First Amendment rights because GKDA (Local) was unconstitutionally applied to him. ........................................4
　　C.　The Complaint contains sufficient facts to show that the Homecoming Defendants applied GKDA (Local) in an unconstitutional manner to overcome qualified immunity.......................................16
　II.　Qualified Immunity Does Not Defeat Plaintiff's Claims ...................................................17
PRAYER................................................................................................................20

# TABLE OF AUTHORITIES (CASES ONLY)

Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................................. 4, 15
*Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996) ........................................................................ 4, 15
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ....................................................................... 4
*Bystrom ex rel. Bystrom v. Fridley High Sch.* 822 F.2d 747, 750 (8th Cir. 1987) ........................... 13
*Cornelius v. NAACP Legal Defense and Educational Fund, Inc.,* 473 U.S. 788, 802 (1985) ........... 6
*Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402, 406 (5th Cir. 1995) ............................................ 8
*Forsyth Cty. v. The Nationalist Movement*, 505 U.S. 123, 130 (1992) ............................................ 13
*Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000) ........................................... 18
*Grattan v. Bd. of Sch. Com'rs of Baltimore City*, 805 F.2d 1160, 1162 (4th Cir. 1986) .................... 7
*Harlow Fitzgerald*, 457 U.S. 800, 818 (1982) ................................................................................. 18
*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) .............................................................................. 19
*Haver v. Coats*, 491 S.W.3d 877, 882 (14th Ct. App. 2016) ............................................................ 19
*Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988) ..................................................... 6
*Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981) ................................... 5
*Henerey ex rel. Henerey v. City of St. Charles*, Sch. Dist., 200 F.3d 1128, 1134–36 (8th Cir. 1999) ........ 13
*Iverson v. Putnam*, 2017 Tex. App. LEXIS 3975, at *7 (14th Ct. App. May 2, 2017) .................... 19
*Kelson v. Clark*, 1 F.4th 411, 414 (5th Cir. 2021) ............................................................................ 5
*Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021) .......................................................................... 18
*Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022) ............................................................... 12
*Little Pencil, LLC v. Lubbock Indep. Sch. Dist.*, 2014 WL 11531267, Tex. May 29, 2014) ........... 10
*M.A.L. ex rel. M.L. v. Kinsland*, 543 F.3d 841, 848 n.3 (6th Cir. 2008) ......................................... 12
*Malley v. Briggs*, 475 U.S. 335, 341 (1986) .................................................................................... 19
*Marx v. Gen. Revenue Corp.,* 568 U.S. 371, 385 (2013) .................................................................. 16
*Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) ............................................................... 4
*Morgan v. Plano Indep. Sch. Dist.*, 2010 WL 6367527, at *5 (E.D. Tex. Sept. 23, 2010) .............. 13
*Morgan v. Swanson*, 755 F.3d 757, 761 (5th Cir. 2014) .................................................................. 11
*Pa. Dep't Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) ...................................................................... 16
*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ............................................................................. 19
*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983) ................................... 6
*Pounds v. Katy Indep. Sch. Dist.*, 517 F. Supp. 2d 901, 919 (S.D. Tex. 2007) ................................ 13
*Shanley to Westfield High Sch. L.I.F.E. Club v. City of Westfield*, 249 F. Supp. 2d 98 (D. Mass. 2003) ... 13
*Shanley v. Ne. Indep. Sch. Dist., Bexar Cty., Tex.*, 462 F.2d 960, 969 (5th Cir. 1972) ................... 13
*State of Tex. v. Knights of Ku Klux Klan,* 58 F.3d 1075, 1079 (5th Cir.1995) ................................. 10
*Sullivan v. Hous. Indep. Sch. Dist.*, 475 F.2d 1071, 1075–77 (5th Cir. 1973) ................................. 13
*Thompson v. Upshur*, 245 F.3d 447, 457 (5th Cir. 2001) ................................................................ 19

## STANDARD OF REVIEW

1. A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is viewed with disfavor and rarely granted. The claims must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570).

2. In considering Rule 12(b)(6) motions to dismiss, courts must accept as true all well-pleaded facts in the complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

3. In *Iqbal*, the Supreme Court established a two-step approach for assessing complaints in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id*. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

4. The Fifth Circuit has further taught that a complaint need not contain detailed factual allegations, but must contain sufficient factual material that, accepted as true, allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged. Further, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable. *Kelson v. Clark*, 1 F.4th 411, 414 (5th Cir. 2021).

5. This honorable court should allow the case and claims to move forward and at least allow discovery so Plaintiffs may seek restitution for their damages.

## ARGUMENT - PLAINTIFFS' CLAIMS SHOULD SURVIVE DISMISSAL

### I. Story successfully pleaded a First Amendment Claim regarding the homecoming game.

#### A. Both parties agree that GKDA (Local) is facially constitutional.

6. On p. 3-4 of their Motion, Homecoming Defendants argue that Story does not raise a facial challenge to GKDA (Local). However, Homecoming Defendants also correctly noted on Motion page 3 that "Story does not raise a facial challenge to GKDA (Local), or its review requirement" in his Third Amended Complaint ("Complaint").

7. There is no dispute between the parties relating to a facial challenge to GKDA (Local). The Court need not rule on this issue and it is not grounds for dismissal of Plaintiff's Complaint.

#### B. Story has plausibly pleaded a violation of his First Amendment rights because GKDA (Local) was unconstitutionally applied to him.

##### i. RRHS's Parking lot is a limited public forum, not a private forum.

8. Both parties agree with Homecoming Defendant's statement, "[t]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981). Motion at 4.

9. Both sides agree that free speech claims on public property require courts to establish the forum's nature because "the existence of a right of access to public property and the standard by which limitations upon such right must be evaluated differ depending on the character of the

property at issue." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983). Motion at 4. And both sides agree that courts classify into "three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.,* 473 U.S. 788, 802 (1985). "Because a principal purpose of traditional public fora is the free exchange of ideas, speakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest." *Id.* at 800.

10. In contrast, "[i]mplicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity." *Perry*, 460 U.S. at 49. Accordingly, access to a nonpublic forum may be restricted if the restriction is "reasonable" and "not an effort to suppress expression merely because public officials oppose the speaker's views." *Cornelius*, 473 U.S. at 800. Motion at 5.

11. The dispute among the parties concerns whether the Parking Lot at issue is properly classified as a traditional public forum. Homecoming Defendants rely on four cases in a futile effort to show that school parking lots are not public fora.

12. First, Homecoming Defendants cite the Fourth Circuit's holding in *Hazelwood School Dist. v. Kuhlmeier* for the proposition that parking lots do not possess traditional association with the purposes of assembly, communicating thoughts between citizens, and discussing public questions, 484 U.S. 260, 267 (1988). And further that, "[s]chool facilities may be deemed public "only if school authorities have 'by policy or by practice' opened those facilities for indiscriminate use by the general public or by some segment of the public.'" *Kuhlmeier*, 484 U.S. at 267. Motion at 5.

13. Homecoming Defendants seem to be at great pains to ignore the actual facts at issue. As recorded in the Complaint ¶ 130, Story's activities were limited to passing out fans in the Parking

Lot of the Round Rock High School football stadium. The fans listed the names of five candidates for the RRISD school Board with checked boxes next to the names.

14. Further, the Complaint ¶ 131 describes how Story restricted distribution to those who said "yes" when offered a fan and how he was able to pass out fans for at least an hour without incident.

15. RRISDPD officers observed the distribution without acting, as did the principal of Round Rock High School, Matt Groff, as he passed and warmly greeted Story and observed the distribution, and even told him to "[h]ave a great game." Complaint ¶ 133.

16. Plaintiff contends that Principal Groff and RRISDPD officers' tacit endorsement of distribution, for over an hour, constitutes a clear practice which opened the facility at issue for indiscriminate use by the general public or by some segment of the public, specifically Story and his cohorts, under *Kuhlmeir. See Kuhlmeier*, 484 U.S. at 267.

17. Second, Homecoming Defendants rely on another fourth circuit case *Grattan v. Bd. of Sch. Com'rs of Baltimore City*, for the proposition that school parking lots are in a category of public property "which is not by tradition or design a forum for public communication." 805 F.2d 1160, 1162 (4th Cir. 1986).

18. *Grattan* notwithstanding, neither side can produce controlling Fifth Circuit precedent on the classification of school parking lots. Additionally, the facts in *Gratton* are radically different from the ones before the Court: In *Gratton*, the Plaintiff distributed campaign literature criticizing the Baltimore City Mayor at 8:00 a.m. on a school day over the objection of the school principal and the deputy superintendent, who were operating in accordance with a directive from the administrative offices of the school system. *Gratton* 805 F.2d 1160, at 1161. In short, *Gratton* dealt with distribution of literature relating to a local politician, not the school board, and occurred over the unified and immediate objection of school officials, including the principal during school

hours. As outlined in his Complaint, Story's literature was germane to the school election, had the tacit approval of the principal, and was distributed after school hours. *See* Complaint ¶ 131 -139. *Gratton* is simply too off point to squarely apply and warrant dismissal of Story's claims before discovery and exploration to ascertain additional facts, even if it were a controlling case rather than a persuasive one.

19. Presumably to shore up the tenuous connection of their case law to the jurisdiction in which this case arose, Homecoming Defendants also cite the Fifth Circuit's holding in *Doe v. Duncanville Indep. Sch. Dist.*, holding that school sporting events are "school-sponsored and controlled events that do not provide any sort of open forum for student expression." 70 F.3d 402, 406 (5th Cir. 1995). Motion at 6. Obviously, this case law is so off point as to be self-distinguishing. First, the issue at bar concerns expression in a school parking lot, not inside the sporting event itself. Second, Plaintiff is not a student. *Doe* contemplates a wholly different category of plaintiffs in a different forum, and thus should not serve as the basis for deciding the issue at bar.

20. Defendants' fourth proffered case, the Supreme Court's ruling in *Perry,* stretches the tenuous factual analog to the case at bar even further: the *Perry* court held that provision of selective access to a school mail system did not transform government property into a public forum where permission was granted as a matter of course. *See Perry*, 460 U.S. at 47. Motion at 6.

21. The case at bar concerns the Parking Lot, which naturally lends itself to classification as a public forum far more readily than a school mail system. Additionally, *Perry* is distinguished given that in the facts at issue, Story operated with the knowledge and tacit consent of RRISD officials including Principal Groff and multiple RRISDPD officers. Complaint ¶ 132.

22. In the present case, Story has shown that school officials, including the school principal, gave him their tacit approval. Story did not face demands to terminate his expressive activity until

later, first by RRISDPD Officer Connie Garza, who admitted that "someone" had told her to ask Story to stop distributing fans (Complaint ¶ 133) and next by Officer Cole and Chief Weiner who told Plaintiff to cease distribution on the orders of Superintendent Azaiez. Complaint ¶ 136.

23. Lastly, Round Rock Learning Community Area Superintendent, Defendant Amacher, approached Plaintiff and claimed that legal counsel had advised her to stop Plaintiff's distribution, but refused to identify the counsel in question. Complaint ¶ 139. To add insult to injury, as outlined at ¶ 139, a member of Story's distribution group specifically asked Amacher to identify any policy that Story's distribution violated, and Amacher was unable to do so.

24. Now, after providing indubitably mixed signals to Story concerning the existence of his expressive rights in the Parking Lot, Homecoming Defendants seek to obviate the genuine confusion their own conduct created concerning the nature of the Parking Lot's forum classification.

25. Note well that the content of GKDA (Local) itself, expressly excepts from preapproval "distribution of materials by an attendee to other attendees at a school-sponsored meeting intended for adults and held after school hours." Complaint at ¶ 209.

26. As properly plead in Plaintiff's Complaint ¶ 144, Cynthia L Hill, General Counsel for RRISD did not communicate RRISD's position on Parking Lot distribution until September 19, 2022, three days after the September 16, 2022, homecoming game. *See* Complaint Exhibit 15.

27. As noted in the Complaint ¶¶ 147 and 148, GKDA (Local) contains two relevant provisions: "[a]ll nonschool literature intended for distribution on school campuses or other District premises under this policy shall be submitted to the Superintendent or designee for prior review," and "[e]ach campus principal shall designate times, locations, and means by which non-

school literature that is appropriate for distribution, as provided in this policy, may be made available or distributed to students or others at the principal's campus." Exhibit 16.

28.     However, upon information and belief, Round Rock High School had no designated times, locations, or means by which non-school literature appropriate for distribution could be made available or distributed to students or others at the principal's campus. In lieu of meeting the formal requirement, Story had Principal Groff's tacit endorsement which, under the complex and unique fact pattern at issue, should be sufficient to create a prima facia case in favor of finding the existence of a designated public forum.

29.     On page 6 of their Motion, Plaintiffs argue that GKDA (Local)'s prior review requirement indicates that the District did not intend to create an open forum in the Parking Lot and relies on *Little Pencil, LLC v. Lubbock Indep. Sch. Dist.*, No. 5:14-CV-014-C, 2014 WL 11531267, at *10 (N.D. Tex. May 29, 2014). However, *Little Pencil* is not relevant. It dealt with the display of a religious advertisement on a school jumbotron at a school sporting event, and has no bearing on the propriety of designating a parking lot as a public forum. Defendants' attempted reliance on *State of Tex. v. Knights of Ku Klux Klan* (Motion, p. 6) is even more misplaced as the application requirement at issue concerned the State's "Adopt a Highway Program" and concluded that the program was not a public forum, partially on the grounds that it contained an application requirement. 58 F.3d 1075, 1079 (5th Cir.1995). The question of whether a government program involving expressive speech constitutes a public forum simply has no bearing on the facts at bar.

30.     The fact of the matter is that neither the Supreme Court of the United States nor the Fifth Circuit have direct precedent on the proper classification for school parking lot. However, Homecoming Defendants' efforts to distinguish the Fifth Circuit's holding in *Chiu v. Plano Independent School District,* fail. 260 F.3d 330, 347 (5th Cir. 2001). Motion at 6. Both parties

agree that *Chiu* deals with distribution of literature critical of a school's new math program after a school parents' meeting to discuss said curriculum. Homecoming Defendants argue that the meeting, and more critically the time after the meeting, were properly designated a public forum because the meeting was 1) akin to a school board meeting with time allotted for questions and answers and 2) included a small group discussion with teachers and district administrators, thereby supporting a reasonable inference that the meeting was initially intended to allow open, yet structured, expression on math curriculum reform. Motion at 7. Defendants further contend that *Chiu* should not apply outside of circumstances where an individual tries to contribute relevant materials to a public forum dedicated to adult dialogue by reliance on *Morgan v. Swanson*, 755 F.3d 757, 761 (5th Cir. 2014). Motion at 7.

31.     *Morgan* is completely inapposite because, as the court itself notes, citing *Chiu,* "[t]he present case does not involve an individual trying to contribute relevant materials to a public forum dedicated to adult dialogue. Instead, a parent asked whether he could distribute religious material during a school-day activity for children." *Morgan* 755 F.3d 757, at 761.

32.     In the facts at bar, no public meeting is involved. However, as in *Chiu*, the speech at issue occurred among adult participants in a forum that was open to the public because there was no restriction on attendance at the game nor a restriction on parking in the Parking Lot. Like the *Chiu* Plaintiffs, Story attempted to provide relevant materials, campaign information, in a relevant forum, the Parking Lot, in anticipation of the upcoming school board elections.

33.     In Motion footnote 2, Defendants attempt to distinguish Plaintiff's analysis in the Complaint ¶ 211, outlining the Supreme Courts aggressive moves to protect First Amendment rights in school contexts as demonstrated by *Kennedy v. Bremerton Sch. Dist*., on the grounds that the Plaintiff at issue was a public-school employee. However, the case clearly shows the Supreme

Court's trajectory towards robust free speech protections at schools. 142 S. Ct. 2407 (2022). It is difficult to imagine a more relevant forum for distribution of school trustee campaign literature than outside school athletic events where members of the public, critically including voting age adults and parents, would be present on school grounds and attentive to school-related issues. In sum, the preponderance of precedent and the unique facts at bar, coupled with Plaintiff's rigorous and detailed pleading in the Complaint, warrants the survival of Plaintiff's claims and a designation of the parking lot as a public forum.

> ii. *GKDA (Local) as applied to Story is not content neutral and restricted to reasonable time, place, and manner restrictions.*

34. Both sides agree that GKDA (Local) is content neutral, narrowly tailored, and leaves open alternative channels for communication in accordance with both *Perry*, 460 U.S. at 45; *Chiu*, 260 F.3d at 345 n.9. Motion at 8. However, Homecoming Defendants' analysis assumes a) that GKDA (Local) was the operative policy governing Defendants' actions[1] in the Parking Lot rather than a desperate post hoc rationalization of their oppressive, politically-motivated conduct, and b) that the Principal's assent to Story's conduct was insufficient to substantially comply with GKDA (Local)'s requirements. Neither assumption is warranted by the factual record.

35. Homecoming Defendants correctly assert, relying on *M.A.L. ex rel. M.L. v. Kinsland*, that GKDA (Local) is content neutral in the constitutional sense. 543 F.3d 841, 848 n.3 (6th Cir. 2008). This truth is irrelevant to the instant case. GKDA (Local) was initially not applied to Story when his conduct was tacitly approved by the designated authority under the policy. It was subsequently applied haphazardly and without any reference to the policy by the Homecoming Defendants.

---

[1] Defendants' string of citations in Motion footnote 3 include a series of cases justifying categories of unprotected speech, but none of the speech described in those cases is at issue here.

    36. Homecoming Defendants also miss the mark in reliance on *Shanley v. Ne. Indep. Sch. Dist., Bexar Cty., Tex.*, 462 F.2d 960, 969 (5th Cir. 1972) and *Forsyth Cty. v. The Nationalist Movement*, 505 U.S. 123, 130 (1992). Motion at 9. Both of those cases deal with standards for prior approval. Plaintiff does not now, nor has he ever, challenged the facial constitutionality of the GKDA (Local) policy. *Shanley* is doubly distinguishable given that it concerns student speech. *Shanley*, 462 F.2d 960, at 978.[2] Homecoming Defendants' discussion of this point is a red herring that muddies the waters and eludes the central issue, which is whether retroactive and inconsistent application of the policy by various school officials bears on the designation of the Parking Lot as a public forum.

37. Both sides agree that preapproval regulations of student speech are often upheld.[3] Motion at 9. Defendants maintain that GKDA (Local) requires prior submission of materials to the Superintendent or designee who is given time to ensure compliance with applicable laws and policies.[4] Motion, p. 9. However, this analysis ignores the content of GKDA (Local) itself, which expressly excepts from preapproval "distribution of materials by an attendee to other attendees at a school-sponsored meeting intended for adults and held after school hours," as pleaded in the Complaint at ¶ 209. Plaintiff's analysis at ¶ 148 clearly present the school principal and his designated submission process as an alternative to the superintendent, is also germane on this point. *See* Exhibit 16.

---

[2] Motion fn 6 compares *Shanley to Westfield High Sch. L.I.F.E. Club v. City of Westfield*, 249 F. Supp. 2d 98 (D. Mass. 2003), *Pounds v. Katy Indep. Sch. Dist.*, 517 F. Supp. 2d 901, 919 (S.D. Tex. 2007), *Morgan v. Plano Indep. Sch. Dist.*, No. 4:04CV447, 2010 WL 6367527, at *5 (E.D. Tex. Sept. 23, 2010), adopted by No. 4:04CV447, 2011 WL 1213080 (E.D. Tex. Mar. 28, 2011), which are distinguishable as facial challenges, which is not at issue here.

[3] *See Sullivan v. Hous. Indep. Sch. Dist.*, 475 F.2d 1071, 1075–77 (5th Cir. 1973); *Bystrom ex rel. Bystrom v. Fridley High Sch., Indep. Sch. Dist.* No. 14, 822 F.2d 747, 750 (8th Cir. 1987); *Henerey ex rel. Henerey v. City of St. Charles*, Sch. Dist., 200 F.3d 1128, 1134–36 (8th Cir. 1999).

[4] Motion at footnote 5 correctly notes that Tex. Educ. Code § 11.169; Tex. Elec. Code §§ 61.003(b), 255.003. prohibit public school districts from employing public funding for electioneering or political advertising and that the Texas Ethics Commission has ruled that use of public funds includes use of nonpublic district facilities, but contrary to Defendants assertion the opinion does not discuss parking lots. The parking lot at issue was obviously, open to the public. Defendant's note that the Attorney General is suing to enforce these laws is irrelevant.

iii. *The Complaint contains well-plead facts demonstrating unconstitutional application of GKDA (Local) to Story.*

38. On page 11 of the Motion, Homecoming Defendants contend that Story failed to show unconstitutional application of GKDA (Local) because he failed to comply with the prior review requirement. As noted already, GKDA (Local) does not apply to the facts at bar because the materials were distributed to adults after school hours, an exception contained in the policy which, even if it does apply, Story can meet with the tacit approval of the relevant school Principal. Story complied with the policy. Exhibit 6.

39. In response to the clear exception inherent in the text of GKDA (Local), Homecoming Defendants maintain on page 12 of the Motion that "[t]his exception simply does not apply to Story's activities, and Story's allegations to the contrary are conclusory and not entitled to a presumption of truth." This single line of dismissive rhetoric compromises Homecoming Defendants entire analysis on whether the GKDA (Local) exception applies to Story.

40. Black's Law Dictionary, for example, defines "conclusory" as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based,"[5] and Garner's Modern English Usage defines conclusory as "expressing a factual inference without stating the facts or reason on which the inference is based."[6]

41. This cursory dismissal belies the weakness of Homecoming Defendant's position. Not only does the Motion ignore the exhaustively-pleaded applicability of the GKDA (Local) exception in the Complaint at ¶ 209-212, but it also ignores the overwhelming controlling precedent requiring that well pled facts be taken as true and viewed in a light most favorable to the Plaintiff. *Ashcroft*

---

[5] Black's Law Dictionary 329 (9th ed. 2009). See also Black's Law Dictionary 308 (8th ed. 2004) and Black's Law Dictionary 329 (7th ed. 1999) (same definition).
[6] Bryan A. Garner, A Dictionary of Modern Legal Usage 191 (2d ed. 1995).

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). *See also Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). It is a gross misstatement that Plaintiff's quotations from the text of the policy and identification of facts showing its applicability are merely "conclusory".

42.  More substantively, Homecoming defendants contend on page 13 of their Motion that,

> [T]he plain language of GKDA (Local) only vests the principal with authority to "designate times, locations, and means" by which non-school materials that comply with the policy may be distributed on the principal's campus. *Id.* ¶ 148; Dkt. 49-1, p 188. It does not give the principal authority to determine whether non-school literature is in fact appropriate for distribution under the policy, much less to grant exceptions to the requirement that materials be pre-approved by the Superintendent or their designee.

43.  However, careful perusal of the policy does not bear out this impression. GKDA (Local) contains seven headings: 1) Distribution of Nonschool Literature Permitted, 2) Limitations on Content, 3) Prior Review, 4) Exception to Prior Review, 5) Time, Place, and Manner Restrictions, 6) Violation of Policy, and 7) Appeals. Exhibit 16. Story's conduct is covered by heading number 4, Exception to Prior Review, as noted supra. Further, the policy is amenable to two distinct interpretations. The first interpretation, advocated by Defendants, reads heading 3) Prior Review as a necessary antecedent, a requirement that must be met before heading 5) Time, Place, and Manner Restrictions can apply. An equally plausible interpretation is that the policy can be read to denote that each heading is an independent nexus of meaning such that, for materials that require prior review, the 3) Prior Review process applies, but only to them, and 5) Time Place and Manner Restrictions entail an alternative avenue whereby materials may be distributed without prior review by the superintendent.

44. The second interpretation, endorsed by Plaintiff, is more plausible in light of canons of statutory interpretation[7] including[8]:

   a) The Surplusage Canon stipulates that, if possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence. *See Marx v. Gen. Revenue Corp.,* 568 U.S. 371, 385 (2013). Here, heading five's provision of Principle approval is redundant surplusage if heading three on Prior Review by the superintendent is considered a prerequisite. This indicates that an alternative interpretation, viewing the provisions as independent routs to the goal of permissible expression, should be preferred.

   b) The Title-and-Headings Canon stipulates that the title and headings are permissible indicators of meaning. *See Pa. Dep't Corr. v. Yeskey*, 524 U.S. 206, 212 (1998). As noted supra, the existence of independent titles or headings indicates that the provisions at issue should be viewed as independent routs to the ultimate goal of permissible expressive speech.

   c) The Rule of Lenity stipulates that ambiguity in a statute defining a crime or imposing a penalty should be resolved in the defendant's favor. *See United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 550 (1961). GKDA Local's "Violations of Policy" provision imposes a penalty for violations of the policy including "confiscation of nonconforming materials and/or suspension of use of District facilities. Appropriate law

---

[7] N.B. Although GKDA (Local) is a policy rather than a statute it operates like a statute in so far as it is implemented by a legislative body, the school board and by prescribes conduct and imposes penalties, therefore, the cannons of statutory interpretation apply.

[8] See ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 167 (2012).

enforcement officials may be called if a person refuses to comply with this policy or fails to leave the premises when asked." Exhibit 16. This language clearly imposes a penalty and strongly favors application of the rule of lenity in favor of resolving the ambiguity of the GKDA (Local) policy in favor of Story's method of tacit consent from the Principal. Any other interpretation imposes a penalty against the Plaintiff, who has been penalized by the school district in a manner analogous to a defendant, even though in the facts at bar, Plaintiff brings this suit.

### C. The Complaint contains sufficient facts to show that the Homecoming Defendants applied GKDA (Local) in an unconstitutional manner to overcome qualified immunity.

45. On page 13 of their Motion Homecoming Defendants contend that Homecoming Defendants did not instruct Story to cease his expression based on his viewpoint but rather because they were motivated by abiding by the requirements of GKDA (local). Motion at 14. This would be a moderately compelling argument if Plaintiff had not plead a series of exhaustive failures on the part of RRISD agents including Homecoming Defendants, none of whom could name or summarize the content of any policy on which their attempts to censor Story were based.

46. Specifically, in the Complaint ¶ 133 Officer Connie Garza cites "someone" as her authority to silence Plaintiff (¶ 136), Officer Cole and Chief Weiner cite Superintendent Azaiez, not GKDA (Local) (¶ 139), and Superintendent Amacher cites an unknown and unidentified "counsel" then fails to identify the policy at issue when specifically asked and refuses to name the counsel on whose advice she purportedly relied (¶ 139).

47. Only three days after the events at issue does RRISD discover a policy on which to base the actions of its agents. Complaint ¶ 144 and Exhibit 15. As has been shown at length, Story had been locked in a political battle with Superintendent Azaiez at the time of the homecoming game.

These facts, taken as true and viewed in the light most favorable to the Plaintiff, clearly evince political animus as a motive for the censorship of Story and application of GKDA (Local) as a pretextual, *post hoc*, rationale for the Homecoming Defendant's flagrantly unconstitutional behavior.

## II. Qualified Immunity Does Not Defeat Plaintiff's Claims

48.     All of this sets the stage for a thorough refutation of Homecoming Defendants' invocation of qualified immunity as a defense, predicated on *Longoria v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 264 (5th Cir. 2019) (quoting *Harlow Fitzgerald*, 457 U.S. 800, 818 (1982)) (School Officials "entitled to qualified immunity if their 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.") Motion at 14.

49.     Both sides agree that the elements required for Plaintiff to overcome qualified immunity are (i) the official violated a clearly established constitutional right, and (ii) the official's conduct was objectively unreasonable "in light of clearly established law at the time[.]" *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000); *see also Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021).

50.     Again, Homecoming Defendants muddy the waters by arguing that "Story has not shown…that the law was clearly established that requiring prior review of non-school materials, when content neutral, before distributing at a high school parking lot, violates a member of the public's constitutional rights."

51.     Plaintiff's facts clearly show that qualified immunity does not apply as noted above, Defendant's Wiener and Cole relied on orders from Azaiez, not any policy, let alone GKDA (Local). Similarly, Amacher claims to have relied on the advice of an unknown counsel but could neither articulate the name of the counsel nor the policy she was allegedly enforcing. Plaintiff

reasonably doubts the veracity of Amacher's claims. If discovery shows that she was indeed fabricating her basis for censoring Plaintiff, qualified immunity should not apply given that she would be acting contrary to clearly established law i.e. censoring people without legal basis. Even if Homecoming Defendants had relied on GKDA (Local), as noted supra and in the Complaint, Plaintiff's conduct falls under an enumerated exception to the content prior approval requirement, rendering Defendants' conduct objectively unreasonable under the policy's terms.

52.    In Motion at 15, Defendants argue that "defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's asserted constitutional rights or a federal statute." *Thompson v. Upshur*, 245 F.3d 447, 457 (5th Cir. 2001) (cleaned up; emphasis in original). And "[i]f defendants 'of reasonable competence could disagree on th[e] issue, immunity should be recognized.'" *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

53.    In addition to these requirements, it is important to recognize that "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To invoke the defense of qualified immunity, the burden is on the state actor alleging qualified immunity to establish (among other things) that he was acting within the scope of his discretionary authority. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Iverson v. Putnam*, 2017 Tex. App. LEXIS 3975, at *7 (14th Ct. App. May 2, 2017), citing *Haver v. Coats*, 491 S.W.3d 877, 882 (14th Ct. App. 2016). A discretionary function requires "personal deliberation, decision, and judgment." *Iverson*, at *7.

54. If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. *Id*. at 818-19. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. *Id.* at 819.

55. Homecoming Defendants simply cannot meet these burdens. First, no reasonable Defendant would act to censor a citizen distributing campaign literature without knowing the statute, policy, case law, or other legal basis by which the act of censorship was justified. Complaint ¶¶ 133, 136, 139, 144. The facts, when viewed in the light most favorable to the Plaintiff, clearly show that Homecoming Defendants had no idea what the basis for their censorious actions was.

56. Likewise, defendants of reasonable competence could not disagree on the issue of a policy that they could neither a) articulate or b) plausibly did not know existed. Defendants of reasonable competence would not have relied on the word of a politically compromised Superintendent involved in a public feud with the Plaintiff or on the alleged advice of a chimerical counsel.

57. At the very least, discovery to each of the Homecoming Defendants is warranted to ascertain what they knew and when they knew it.

## ADDITIONAL ALLEGATIONS

58. Plaintiff is concurrently filing a Motion to Supplement regarding additional allegations to indicate that his distribution of materials was a special treatment, and showing that other individuals were able to distribute materials without jumping through administrative hoops or pleasing the administration, and supports a claim for equal protection under the First Amendment. The Motion and its contents and attachments are herein incorporated by reference.

## PRAYER

Plaintiff prays that this court deny Homecoming Defendants' Motion to Dismiss (ECF No. 74) and afford Plaintiff any other relief to which he may be entitled.

>Norred Law, PLLC.
>By: /s/ *Warren V. Norred*
>Warren V. Norred, Texas Bar No. 24045094; warren@norredlaw.com
>515 East Border Street; Arlington, Texas 76010
>P: 817-704-3984

**CERTIFICATE OF SERVICE:** The undersigned hereby certifies that a true and correct copy of this document has been served upon all counsel of record via the Court's electronic filing system on April 16, 2024.

>KATHRYN E. LONG, klong@thompsonhorton.com;
>K. ADAM ROTHEY, arothey@thompsonhorton.com;
>PATRICK GRUBEL, pgrubel@thompsonhorton.com

>/s/ *Warren V. Norred*
>Warren V. Norred