## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS - AUSTIN DIVISION

| | | |
|---|---|---|
| **JEREMY STORY,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 1:22-cv-448-RP** |
| | § | |
| **HAFEDH AZAIEZ, et al.** | § | |
| *Defendants.* | § | |

## SECOND SUPPLEMENT TO THIRD AMENDED COMPLAINT

The exhibits attached herein add to the evidence already filed in support of Story's Third Amended Complaint, and is relevant also to the Defendants' various motions to dismiss.

The evidence attached includes nine exhibits. The first exhibit is a declaration of Jeremy Story, which provides additional narrative surrounding the release of a police report released publicly only recently, and various public statements made by Round Rock ISD board members.

Respectfully submitted,

/s/ Warren V. Norred
Warren V. Norred, wnorred@norredlaw.com
NORRED LAW, PLLC; 515 E. Border Street; Arlington, TX 76010
O: 817-704-3984 / F: 817-524-6686
*Attorney for Plaintiff Jeremy Story*

Attached:
Exhibit 1: Declaration of Jeremy Story (authenticating exhibits and narrative on events)
Exhibit 2: Letter from Chief Weiner (regarding Azaiez cover up and RRISD interference)
Exhibit 3: RRISD Trustee Weston Statement (RRISD Board president sat on letter for 16 days)
Exhibit 4: Defendant RRISD Board Member Statements (demonstrating cover up)
Exhibit 5: Culture and Climate Report (detailing RRISD Board pattern of behavior)
Exhibit 6: RRISD Statement (on Lauren Griffith's promotion)
Exhibit 7: Letters from Williamson County to Chief Weiner and Superintendent Azaiez
Exhibit 8: Email showing open records request
Exhibit 9: AG Opinion on Letter from Chief Weiner

**CERTIFICATE OF SERVICE -** I hereby certify that on May 24, 2024, this proposed *Second Supplement to Plaintiffs' Third Amended Complaint* was served via the court's electronic filing system on all parties seeking service.     */s/Warren V. Norred*
                                                                                    Warren V. Norred

EXHIBIT 1

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS - AUSTIN DIVISION

| | | |
|---|---|---|
| **JEREMY STORY,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 1:22-cv-448-RP** |
| | § | |
| **HAFEDH AZAIEZ, et al.** | § | |
| *Defendants.* | § | |

## <u>DECLARATION of JEREMY WADE STORY</u>

I, Jeremy Story, a citizen of the United States and a resident of the State of Texas, declare under penalty of perjury under 28 U.S.C. § 1746 that the following statements are true and correct.

1.     On May 14, 2024, after waiting for the Attorney General's ruling, I obtained the letter from Chief Weiner regarding Defendant Azaiez's cover up of a sexual assault of a five-year-old through an open's record request with RRISD. *See* Exhibit 2, 8, and 9. This letter also shows that the RRISD has a custom of interfering in RRISD Police Department activities. An example mentioned is Defendant Azaiez using Dr. Natalie Nichols to suggest that RRISD should be able to direct and require the RRISD police department to do as they please. Chief Weiner specifically states "Since joining the Round Rock ISD… I have experienced numerous practices of non-reporting and delayed reporting of crimes, and interference with police operations and investigations by district staff."

EXHIBIT 1

2.      I took a screenshot of RRISD Trustee Danielle Weston's Facebook statement that states Defendant Amber Feller Landrum, President of the RRISD Board, did not present Chief Weiner's letter for sixteen days before presenting it to the RRISD board for any action. *See* Exhibit 3.

3.      I have included a snip of a Facebook post by Defendant Tiffanie Harrison representing her response to Danielle Weston's post as the "Official Statement from the Round Rock ISD Board Officers, President Amber Feller Landrum, Vice President Tiffanie N. Harrison" where they double down, attack Daniell Weston, and excuse their actions to cover up the release of the report. *See* Exhibit 4.

4.      RRISD Trustee Danielle Weston also posted snips of the "Final Report Investigation of the Culture and Climate in the Round Rock Police Department", after which I acquired the entire report, and the "Responses to Investigation Report for Audit Department" by open records request from RRISD. *See* Exh. 5 and 8. The report details the chaotic and discriminatory environment in RRISD's Police Department ("RRISD PD").

5.      I took a screenshot of an article published by CBS Austin quoting a statement made by Round Rock ISD that Lauren Griffith will serve as Interim Chief.[1] *See*

---

[1] https://cbsaustin.com/news/local/round-rock-isd-announces-new-interim-police-chief-lauren-griffith ("As of Tuesday, May 14, the Round Rock ISD Police Department is now under the leadership of Interim Chief Lauren Griffith. She served in the role two years ago for our district and has served the students and staff of Round Rock ISD since 2020, becoming a sergeant in 2021. We welcome Interim Chief Griffith and look forward to a smooth continuation of service.") (Last accessed, May 23, 2024.)

EXHIBIT 1

Exhibit 6. This statement also reveals that Griffith was made interim chief right immediately after Yarborough resigned. (Yarborough was the chief of RRISD PD when I was assaulted by the RRISD PD officers.)

6.      The events described above correspond to the concerns brought up in the August 23, 2023 letter from Wilco County Judge's Office, the Wilco Emergency Services Department, the Wilco Technology Services Department, and the Williamson County Sheriff's Office ("Wilco Entities"). The letter from the Wilco Entities expresses deep concern about the RRISD PD's practices, specifically the self-dispatch by RRISD PD on September 30, 2023. This letter was made public through a public information request.

7.      I have attached true copies of the exhibits, each of which either I created or RRISD created, including:

Attached:
Exhibit 1: Declaration of Jeremy Story (authenticating exhibits and narrative on events)
Exhibit 2: Letter from Chief Weiner (regarding Azaiez cover up and RRISD interference)
Exhibit 3: RRISD Trustee Weston Statement (RRISD Board president sat on letter for 16 days)
Exhibit 4: Defendant RRISD Board Member Statements (demonstrating cover up)
Exhibit 5: Culture and Climate Report (detailing RRISD Board pattern of behavior)
Exhibit 6: RRISD Statement (on Lauren Griffith's promotion)
Exhibit 7: Letters from Williamson County to Chief Weiner and Superintendent Azaiez
Exhibit 8: Email showing open records request
Exhibit 9: AG Opinion on Letter from Chief Weiner

Executed this 23rd of May 2024.

Jeremy Story



# ROUND ROCK
## INDEPENDENT SCHOOL DISTRICT

April 30, 2024

Dr. Azaiez,

At your request, I am providing a letter related to my contract with the Round Rock Independent School District (RRISD). I have enjoyed working with many dedicated people within the district, including the many officers in the department and truly enjoy making improvements within the department to better serve the students and staff of RRISD. I want to be in a district and agency that truly believes in helping students succeed, improving their pathway to success and finding opportunities to serve and protect our students and staff. RRISD has many amazing staff and students for which I have been charged with overseeing their safety and security with my sworn oath of office. I want to continue service with a district that will support the officers and ensure that we can do our duty to those we serve through leadership at the district that is unwavering in protecting its students and staff.

I am writing this letter to highlight a systemic issue that undermines the collective efforts to fulfill the police department's duty to protect and serve. Here is one of the most egregious examples of not being empowered to uphold my duties as Police Chief. This is in part why I have lost trust in you and confidence in your leadership to ensure I am able to fulfill the duties I have sworn to uphold in my oath of office; I cannot compromise on those duties.

On Friday, April 12, 2024, a five-year-old girl was sexually assaulted on a district owned and operated school bus and the police were not notified by any district employee until nearly 4 pm on Monday, April 15th. The assault was witnessed by a district bus driver, but the bus driver did not report it to police. A Transportation supervisor was made aware of the assault, reviewed camera video on April 12th, sent a copy of the video to school administrative leadership, but did not notify the police.

On Monday morning, campus leadership reviewed the video, acknowledged its receipt from Transportation and indicated to Transportation that they would follow up on the matter. Campus leadership did not notify the police at that time.

The principal, area superintendent, senior chief of schools, general counsel, Title IX investigator and you, the superintendent of the district, became aware of the criminal activity on Monday, but none of you reported it to the police.

A campus assistant principal, at nearly 4 pm on Monday afternoon, called police dispatch requesting an officer to call her back to "document" the incident. This call came

after the administration had spoken with the involved parties and their guardians and had released them from the campus for the day. This further delayed police investigation.

I met with you at 1 pm on Monday, April 15th for our scheduled one on one meeting. During that meeting you asked me if I had heard about something that happened at the elementary school. I said that I had not and asked you if you knew what it was regarding. You told me that you did not have any details and only that there were language issues involved. I said I would look into whether the police department was aware of anything at that campus. Immediately following our meeting, I contacted police dispatch and inquired as to whether the police department was handling any calls for service involving that school. I was told that we were not.

I suspect that at 1 pm Monday, when we were meeting, that you did have specific information regarding a crime that had occurred involving students from that school. I base this on the fact that I found out later that the district took action against the subject student to suspend their transportation privileges before noon that day. I do not believe that this is an action that would occur without your knowledge. If you did have specific knowledge that this incident did occur, it is unconscionable that you, as superintendent, would withhold reporting this sexual assault on a student entrusted to the district's care.

Because the police were not notified and informed immediately, the victim was subjected to additional trauma having to ride the bus to school on that Monday morning with the subject who assaulted her the prior Friday. After investigation, it was discovered that this victim and one other student had been previously assaulted on this bus route by this subject in the recent past.

The victim was further traumatized by the district by not being interviewed just once by a Child Advocacy Center forensic interviewer, but rather by district staff, and then again, by the forensic interviewer. Having sexual assault victims recount their experiences to different parties has been shown to be very traumatic for the victim and it is not a practice used by Round Rock ISD Police. All our officers go through Trauma Informed Response training specifically to better deal with victims of these types of crimes. Conducting investigations otherwise is not in the best interest of victims and is unacceptable.

The police department does not involve itself in the disciplinary matters of students, but we continuously advocate for students whether they are victims or subjects. In this current case, I have already reached out to Williamson County Juvenile Justice Center leadership so that in the event of a referral, they are best prepared to provide support and treatment to the eleven-year-old subject/offender in this case.

Since joining the Round Rock ISD from the Palm Beach School District, I have experienced numerous practices of non-reporting and delayed reporting of crimes, and interference with police operations and investigations by district staff. In the interest of partnership and team cohesion, I have focused on improving process and education in

these areas. I have informed principals and assistant principals at professional development meetings about the Texas Attorney General's School Crime and Discipline Handbook, and recommended that they familiarize themselves with the requirements in the handbook. With this latest incident, I am concerned that these reporting practices may be intentional and even encouraged at the highest levels of the district, namely by Dr. Natalie Nichols and possibly you. Besides numerous specific incidences, I can refer to two efforts that support my concern:

In a meeting you scheduled with me held in your conference room at the beginning of the current school year, I arrived to find Dr. Natalie Nichols had been invited by you into the meeting. Since no meeting agenda had been provided, I asked you what it was we were expecting to discuss.  Before you could respond, Dr. Nichols began to speak, indicating to me that she was directing the meeting. She began by saying she wanted to meet with me to discuss the police department and how the department is managed. She went on to say that there would be times when she would have to give direction to me on specific police matters as they relate to campuses and police assignments. She continued for several minutes using the words "direct" and "require." I did not interrupt her during her harangue.

When she finished, I turned to you and asked if you were in support of her comments. Instead of a direct yes or no response, you started by saying that it was important that the campuses be supported and that, something to the effect of, maintaining harmony within the district is a priority.

At that point, I summarized what I had heard, and that the words used by Dr. Nichols were "direct" and "require," and that those words were materially different from "work together" and "collaborate." I reminded you and informed her that by Texas statute a district police chief reports only to the district superintendent and that I would only take direction from you.

That was when Dr, Nichols began to laugh in an incredulous manner while asking me, "do you mean I have to ask the superintendent to have you do something?," to which I responded, " that is what the statute says and that is how it works."

After that, there were no other material issues to discuss, and the meeting ended shortly thereafter. You never made it clear to Dr. Nichols during that meeting that you supported my statements. This meeting did put me on notice as to Dr. Nichol's desire to manage and control the police department.

In a separate, but now related effort, due to my continued concerns regarding reporting and interference, I thought it beneficial to develop a service level agreement for use between the police department and campus leadership. The template that I used for this agreement is based upon the guidance provided in the Attorney General's handbook. The agreement was intended to be a document that both campus leadership and campus-based officers could refer to when setting expectations.

I worked with Assistant Chief Rose White, Area Superintendent Dr. Nancy Guerrero and Area Superintendent Zack Oldham on the draft of this agreement. At our last meeting during January of this year, Dr. Nichols, through Dr. Guerrero, had proposed additional language to the draft that would have given discretion to campus administration for crime reporting that was contrary to the handbook guidance. I pointed out my concern over the proposed additional language and Dr. Guerrero said she would bring those concerns back to Dr. Nichols. As of the date of this letter, I have not heard back from either Dr. Guerrero or Dr. Nichols on this matter.

Now, again with hindsight, a question might legitimately be raised as to whether Dr. Nichols and you want to have a service level agreement that would strengthen compliance with crime reporting requirements. I maintain the lack of an executed service level agreement contributes to the delayed reporting, the continued traumatization of the victim in this case and increases the potential liability of the district.

In light of these serious concerns, and as a result of the inappropriate pressure I've experienced from district leadership, specifically Dr. Nichols and you, and the apparent intentional failure of district leadership to notify, inform and involve the police department in police matters that directly impact the department's ability to protect victims who are students of RRISD, I have contacted the Texas Attorney General's Office to formally request involvement in investigating this specific case, and the practices and actions of district leadership as they relate to police matters.

There may not be any criminal liability or malfeasance in the current case or in the historic practices and actions of district leadership, but I am by statute a direct report to you, and as such, I am unable to investigate these matters secure from undue influence, pressure, or involvement.

I must address the pressure I have felt to resign from my position and the suggestion that I am not valued as part of the leadership team beyond June 30th. It is disheartening to feel that my dedication to the safety and well-being of RRISD students and staff is not appreciated or supported by district leadership.

Furthermore, I must also address the concerning behavior of the District's new Director of Safety and Security, Rich Andreucci, who now reports to Dr. Nichols. He has actively undermined me and my office as Police Chief. In a recent meeting with other RRISD staff, the Director of Safety and Security called me a liar, casting doubt on my integrity and credibility. Additionally, the Director has attempted to undermine the work of RRISD PD by reaching outside the district to partners and questioning the viability of the police radio system as it relates to interoperability. In an email to the city of Austin, the Director stated, "I have been tasked by my leadership to provide them with the viability of the current First Net PTT radios actually working properly on the GATRRS system."

Despite our discussion on this matter, you stated that this directive did not come from you and that you were not aware of it. You assured me the practice would stop, but it continued the following week. It appears this directive came from either you or Dr.

Nichols. Either way, this is interference with my duty to provide a public safety radio capability to our department, and a potential Texas Penal Code violation as it is a crime for any person including school administrators to interfere with school district peace officers while they are performing their duties or lawfully exercising their authority. This behavior further highlights the need for accountability and transparency within district leadership.

In conclusion, I reiterate my commitment to continuing the important work we do at RRISD, but I cannot do so without the full support, cooperation and a potential change of district leadership.

Due to the purpose of this letter, and the nature of my concerns, I am compelled to copy the district board on this communication.

Respectfully,

Dennis Weiner
Chief of Police
Round Rock Independent School District

8:08

**Danielle Weston for Round Rock IS...**

**Posts**   About   Videos   More ▾

closed session from the chief of police, it's likely I would've made a different decision and not been out of state on the night of the meeting. I can only make decisions with information that I have.

As I said in my original post yesterday, even though I did not attend the meeting, the chief of police ended up emailing the letter to the full board 24 hours prior to Thursday night's meeting.  So it turned out that I did not even have to be present in order to read the letter from my hotel room out of state. And yesterday I learned that the board president sat on this letter since April 30., 2024. She could've easily sent it to the board as soon as she was in receipt of it. The fact that she sat on it for 16 days and did nothing means that for me, the situation is only getting worse the more I learn.

The school board did not even do anything about these explosive revelations in their board meeting on Thursday, which is why I have demanded that board president Amber Landrum Feller immediately called a special meeting to discuss the contents of the letter which include the chief of police accusing the superintendent of criminal activity and his concern about the safety of children in our schools. The board needs to get legal advice on what it's legal obligations are at this time, and to discuss options for action. Another agenda item request I have made is to possibly place the superintendent on administrative leave, appoint an interim superintendent, and hire an investigator to find out what is going on regarding the safety of our children in our schools, and to make a recommendation to the

     

Home   Video   Friends   Marketplace   Notifications   Menu

Exh. 4, 1

12:46

← **Tiffanie Harrison for RRISD School...** 🔍

**Posts**   About   Videos   More ▾

**Tiffanie Harrison for RRISD School Board Place 6**   •••

7h · 🌐

Official Statement from the Round Rock ISD Board Officers, President Amber Feller Landrum, Vice President Tiffanie N. Harrison and Secretary Alicia Markum:

At the May 16, 2024 Board meeting, the Board of Trustees was briefed in closed session about a personnel matter involving a letter that Mr. Weiner sent to the superintendent. Mr. Weiner's letter referred to a serious incident involving children that is under current investigation and to other personnel matters related to Mr. Weiner's employment with the district.

The May 16th meeting was attended by six Trustees but Trustee Bone voluntarily left the meeting before the Board discussed the matter and related materials in executive session. All seven Trustees were aware prior to the start of the meeting that Mr. Weiner's letter was the subject of agenda item K4.

We want to assure the community that the Board has reviewed Mr. Weiner's letter and is aware of the incidents raised in that letter. The safety and security of the students and staff of Round Rock ISD are of the utmost concern and the Board will fully cooperate and support any resulting investigations.

Finally, we are deeply disappointed in the actions of two of our colleagues that they chose to release an

 Home
 Video
 Friends
 Marketplace
 Notifications
 Menu

12:46

Exh. 4, 2

← **Tiffanie Harrison for RRISD School...** 🔍

**Posts**  About  Videos  More ▼

We want to assure the community that the Board has reviewed Mr. Weiner's letter and is aware of the incidents raised in that letter. The safety and security of the students and staff of Round Rock ISD are of the utmost concern and the Board will fully cooperate and support any resulting investigations.

Finally, we are deeply disappointed in the actions of two of our colleagues that they chose to release an un-redacted letter that could potentially compromise the privacy of minor children and related investigations.

Personal statement from Tiffanie:

Once again my colleagues Danielle Weston and Mary Bone act without honor, honesty or integrity. They chose not to attend the board meeting where this issue was thoroughly addressed in executive session. Students and families have privacy rights, as do personnel. Please note that they post and don't allow for comments because that would mean they could be questioned and truth could be provided as a rebuttal. I am personally exhausted by their antics and am counting down the days until November 2024 when their terms are over.

👍🤔❤️ 130                    59 comments  2 shares

👍 Like    💬 Comment    📞 Send    ↪ Share

**Tiffanie Harrison for RRISD School Board Place**  •••
**6** was live.



🏠 Home   ▶️ Video   👥 Friends ③   🏪 Marketplace ⑤   🔔 Notifications ①   👤 Menu

# Final Report

## Investigation of the Culture and Climate in the Round Rock Police Department

On September 11th, the Round Rock Independent School District contracted with Patricia Linares, Ph. D to conduct 2 formal investigations. The first investigation consisted of a review of documents and one on one interviews with Mr. Joseph Burleson and Chief Dennis Weiner to address a complaint filed against Chief Weiner. This investigation was completed and resolved on September 22nd, 2023.

The second investigation was to determine the culture and climate of the Police Department. This investigation began on October 2nd and concluded on October 24th of 2023. The consultant conducted 37 one on one (45 minutes in length) interviews with current social workers, police officers, sergeants, the assistant chief, and support staff in the department.

In an effort to conduct a valid and unbiased investigation, I conducted interviews with both quantitative and qualitative data for analysis. For staff currently working in the Police Department, they were given a Likert scale of questions to determine the culture and climate of the department and then questioned by the interviewer with poignant questions regarding culture and climate along with questions brought up in Lighthouse reports. All interviews were anonymous, and no documents revealed any names or distinguishing attributes of the people interviewed. Interviewees were told that anything stated in the interview would remain anonymous. Staff were required to sign a confidentiality agreement to ensure the anonymity of the answers provided.

The following is a report on the findings gathered from the Likert Scale summary and interview questions (see attached documentation).

### Observations:

➢ The culture and climate are extremely negative and there is little to no cohesiveness in the department. Descriptions of the department include: toxic, very divided, a lot of tension, chaotic, lack of leadership, full of favoritism, no organization, top down, intimidating, disorganized, no two-way communication, lack of trust, unstable, hostile, full of drama and mentally draining. A few said that it is good, okay or in a season of change, however the majority felt like it was very negative and at an all-time low.

➢ New/appropriate leadership is requested by many when asked what would make the department more efficient and effective.

➤ There is a lack of professional communication by the Chief (inappropriate comments made to and about police officers and sergeants). Staff is unhappy and felt the police officers were disrespected when the Chief said in a meeting that the officers may need

mental health assistance after he moved them to new schools at the beginning of the year. There was the feeling that moving the officers from schools where they had established relationships went against the basis for the model of the department. The department was established to foster collaboration and relationships with the students and staff in a school and moving them because the officers were "too close to the school" went against the pillars of the model. Some felt like this was a form of retaliation since not all officers were moved.

➢ Staff feel like they have "no voice". There is no two-way communication in the department. Everything is top-down.

➢ There is a need for better collaboration between the police officers, the social workers, the area superintendents, and other leadership departments in the district.

➢ There is a prevalent sense of favoritism in the department by leadership.

➢ There is a fear of retaliation if someone disagrees with leadership or speaks against them.

➢ Social workers believe that favoritism was evident in the selection of the Interim Director. They are most upset with how the interim director was given the position. They were told that she was given the position because the Chief "knew her best" not allowing for others to apply or even be considered.

➢ Favoritism by the Chief, Assistant Chief and Sergeant Cleere was specifically mentioned. Numerous interviewees stated that there is an "in crowd" that is given special attention and opportunities not allowed to all. This includes professional development opportunities, days off, overtime and special tasks.

➢ The therapy dop program would be very good if implemented with fidelity. It seems to be a good program, however there are questions about favoritism and connections with the training program used. There is the perception that Sgt. Cleere has a personal friendship with the owner of the training program used.

➢ There is a need to ensure that all officers and sergeants designated for a school be present at their respective school and not downtown. If indeed this is the case, schools are left unattended or staffed only by 1 police officer. This could cause an issue if a security threat occurs at said schools.

➢ There is a need to review who can access body cameras and for what purpose. Body cameras are accessed by civilian staff. When asked if there is a process for approval to access cameras, staff said that they try to ask the Chief or Assistant Chief, but if they are not around, they can access them at any time. Protocols need to be established to identify when and by whom cameras may be accessed.

➢ The perception is that decisions are based on personal issues rather than professional qualifications. Also, it is about who you know and like rather than who is most qualified. An example is made by many regarding the favoritism shown to Nick Short.

➢ The most challenging aspect of the job was noted as: leadership (majority of interviewees), intimidating environment, lack of integration and coordination,

divisiveness, favoritism, lack of trust, disorganization, staffing vacancies, disrespect from Chief, AC and Cleere and the new radios.

➢ The radios and dispatch office are causing much distress and disruption. The radios are not connected to the city police officers, the county, or the sheriff's department. There is a fear that the new dispatch center may not be able to handle severe security issues quickly. While this is a work in progress, it is frustrating to some officers. Also, before implementing the new telephone system, protocols and training must be given regarding who can push the emergency and when.

➢ Contract days for the police officers should be reviewed. They are currently on a 260-day contract and are at work when there are no students nor staff.

➢ There is a failure to follow district procedures for applications and hiring of personnel. The department acts as its own district and not part of RRISD. They need to work more closely with the HR department.

➢ A review of stipends should be conducted to ensure that equity is present for all departments. Some stipends are given when a person takes on additional work and others are not. There was also a question regarding stipends for staff who are requested to perform bilingual translations.

➢ A review of the organizational chart is needed to clarify the line of authority for the social workers. The staff was told that the organizational chart was for optics only and that they needed to do as the Chief requests.

➢ The office of Risk Management should be reviewed as to whom they should report. It is confusing as to why they are in the police department and not with the CFO, operations or HR.

➢ A requirement that all vendor bids and orders be reviewed by the CFO/finance office as there is a perception that there may be a connection between the Chief and a vendor used.

While these are a synopsis of statements in the interviews, I recommend that the actual statements given be reviewed as I believe they paint a very clear picture of the state of the culture and climate in the Police Department of Round Rock ISD.

## Responses to Investigation Report for Audit Department

The district received multiple anonymous Lighthouse reports which allege misconduct. The following is a report prepared by an independent 3rd party investigator on the allegations made.

**Allegation I:** Willful Misconduct
It is alleged that the district currently has an interim director for the Behavioral Health Department that is not qualified to be leading the department. The report indicates that with limited clinical skills and experience she is making decisions for a team that is responsible for student mental health. It is further alleged that you selected an interim director who was conveniently located in the office instead of looking at important qualifications needed to lead the department as important and critical as this one, which according to the individual making the report is unethical and not good practice.

**Substantiated:** While the qualifications of the Interim Director are questionable, the fact that the Chief offered the job to her while she was in his office on another issue after receiving the resignation of the prior Interim is true. The Chief also went to the Social Worker meeting and announced that he had given the position to her because he "knew her best" not allowing any other Social Worker interested in the position to apply or be considered.

**Allegation II:** Discrimination
It was reported that following a meeting with police officers, you told Officer Carter that you would talk to him outside. It was reported Officer Carter and Officer Lehmann were with you at the time of the reported incident. It was reported that you yelled at Officer Carter, "Who runs this department, me or you?" It was reported that you then told Officer Carter he was "sitting like a kid from the block" during the meeting. The individual making the report added that you are a white male, and that Officer Carter is an African American male. It was reported that after this altercation, you asked Officer Carter to "start a clean slate," and that you wanted to shake hands.

**Not able to substantiate:** We were not able to substantiate this claim during interviews as an interview was not conducted with Officer Carter and was only brought up by one interviewee.

**However,** it was noted that the Chief stated numerous times that he did not want to hire anyone who considered this job as a "retirement job". This type of language opens the door for allegations of age discrimination against the Chief and district.

**Allegation III:** Safety Concerns
It is alleged that the Round Rock Police Department is allowing a "therapy dog" into campuses without therapy dog training (different from basic obedience), or scheduled therapy team certification. The department is allowing this dog to be handled by an employee, Amanda Moon, who has not certified as a therapy team with the dog. It is further alleged that the dog, Puff, is allowed on campuses despite showing distress when in groups or crowds. The report states that a therapy dog needs to have the temperament to tolerate any age, gender, noise level, "unusual objects" (such as wheelchairs, a rolling cart, etc.), and being tugged on. Additionally, according to the report, allowing Puff and Amanda to be on campuses without being certified as a therapy team is a liability, because if there was a situation Puff reacted negatively to a student or staff due to Amanda not being experienced and trained how to read her dog's

behavior, it would come to light that the district allowed Puff/Amanda on campuses when they do not have a current certificate from a therapy dog organization.

Further investigation is needed to determine if this allegation is substantiated. A review of certification status for the dog and the employee from a therapy dog organization would benefit the district immensely. Until that can be verified, I would keep them off any campus as it could open liability issues for the district.

**Allegation IV**: Discrimination

It is reported that during a scheduled meeting with the social workers that was due to start at 10:00am, you did not arrive until around 10:30am and apologized for running late due to having a "two-hour long meeting with the officers." The report continued that you made a joke that "some of them could actually probably use your mental health services." It is alleged that you proceeded to comment that the officers were upset due to being moved to different campuses. You then allegedly joked how the campus moves have created "trauma" for the officers and are reported to have stated that the officers are "too attached to their campuses." The individual making the report added that you continued to make jokes about the officers and how "some of them need therapy."

Substantiated: It was verified through numerous interviews that this in fact occurred. Staff interviewed found this to be very unprofessional and unbecoming of a person in a Leadership position. Also of note was much dissatisfaction with the moves made at the beginning of the school year. The model for which the department was established emphasized the collaboration between the officers, the Social Workers, and the administration of each campus. Moving officers, the first week of school without notice to the officers or school administrators did not allow for closure for the officers to meet with principals, staff, and students before leaving their schools. The interviewees felt that this was a form of retaliation for anyone not a part of the "in crowd" or for those who were not liked. It was also stated that they felt like this was blatant disrespect of the officers in their department. In all of the interviews, the interviewees felt like they had no voice and two-way communication is non-existent.

**Allegation V**: Conflict of Interest

It is reported that during a scheduled meeting, you stated that you chose Amanda Moon, Licensed Master Social Worker, to be Interim Director of the Behavioral Health department because "I know her the best." The report indicates that Amanda Moon is the least experienced social worker on the team, and has the lowest License in Social Work, and no formal leadership experience. Further, the report states that the decision to select her as the Interim Director happened while the rest of the social work team was in a training to be instructors in Youth Mental Health that was mandatory. The report indicated that the only reason Amanda Moon was not in the training was because she failed to qualify to be an instructor for Youth Mental Health First Aid. The individual making the report indicated they had serious concerns regarding the decisions you were handling for the Social Workers during this time, as well as alleging that Amanda Moon is receiving "blatant favoritism".

Substantiated: While the qualifications of the Interim Director may be questionable, the fact that the Chief, after receiving the resignation of the prior Interim, offered the job to Ms. Moon while she was in his office on another issue is true. The Chief also went to the Social Worker meeting and announced that he had given the position to her because he "knew her best", not allowing any other Social Worker interested in the position to apply or be considered.

Also, the allegation of favoritism was prevalent in all interviews.  Not only did the social workers allege favoritism, but all staff addressed the issue as one that needs to be addressed. There is widespread feeling that there is an "in crowd" that is favored in all decisions being made.  This includes overtime, days off, professional development and hiring decisions. This was indicated by most staff members.

**Allegation VI:** Code of Ethics Violation

It was reported by an individual that s/he was asked to interview for Director of Behavioral Health Services on August 28. The individual indicated that s/he had done their research and knew the position (according to org chart) reported to superintendent (with a dotted line to the chief of police which, s/he stated was confusing). The interviewee stated s/he was prepared for one of (the Superintendent or Chief of Police) to be in the interview and was surprised that the interview was led by Amanda Moon, who said she was the interim director and a current social worker. The interviewee indicated that neither you nor the Superintendent were present. The interviewee followed that had following the interview, s/he had received an email from Amanda Moon (reported to be sent from someone else) saying the district is going in a different direction. The interview questioned if the hiring of this important position really limited to a person who is currently being paid to do the job, if Amanda Moon was the hiring manager, and why neither the Superintendent nor you were present in the interviews. The individual questioned whether district/HR interview protocols had been followed in this process and indicated that s/he was in disbelief at the lack of professionalism demonstrated in this process for such an impactful position. The interviewee also questioned whether or not the interview protocols aligned with district policy and if the Board of Trustees were aware of these practices.

**Partially substantiated:**  While the question of who was present during the interview is unknown, it is confusing when looking at the line of authority on the organizational chart.  If in fact the interview for the Director of Behavioral Health Services was being done by the Interim Director, it would be inappropriate for her to be conducting the interview if in fact she intended to apply for the position.

Also of note is the allegation that a group of Social Workers were asked to develop a job description and qualifications for the application for Director.  Once it was published, the qualifications were changed to allow for less experience and less licensure.  This should be reviewed prior to hiring a new Director.  All applications should be handled through the HR department to alleviate these issues being brought forth.

Exh. 6, p. 1



cbsaustin.com



💬 ... **BE THE FIRST TO COMMENT**

In a statement to CBS Austin, Round Rock ISD said Lauren Griffith will serve as Interim Chief.

> *As of Tuesday, May 14, the Round Rock ISD Police Department is now under the leadership of Interim Chief Lauren Griffith. She served in the role two years ago for our district and has served the students and staff of Round Rock ISD since 2020, becoming a sergeant in 2021. We welcome Interim Chief Griffith and look forward to a smooth continuation of service.*

Taboola Feed

**MORE TO EXPLORE**





August 23, 2023

Superintendent Dr. Hafedh Azaiez
Round Rock Independent School District
Lillie Delgado Administration Building
1311 Round Rock Ave.
Round Rock, Texas 78681

Chief Dennis Weiner
Round Rock ISD Police Department
1311 Round Rock Avenue
Round Rock, Texas 78681

Dear Chief Weiner and Superintendent Azaiez:

On behalf of the Williamson County Judge's Office, Emergency Services Department, the Technology Services Department, and the Williamson County Sheriff's Office, we are writing to express our deep concern over the transition to self-dispatch by the Round Rock Independent School District Police Department (RRISDPD) on September 30, 2023. The lack of coordination and mutual planning that has occurred creates a serious risk to the students and faculty of the Round Rock Independent School District (RRISD), as well as to the general public and first responders. There are many unanswered questions and a very short timeline.

Processing 9-1-1 calls and non-emergency calls for service at a Public Safety Answering Point (PSAP) facility is a critical process, and without adequate time to prepare, configure systems, discuss with partner agencies, and train staff, the risk of errors grows and poses risks to lives and property.

The County was informed via email on July 25, 2023 that the transition date for self-dispatching by the RRISDPD will be on Sept 30, 2023. That date is now just over a month away, and no plans have been discussed with the County about how such a transition will work or what the RRISD views as possible workflows for receiving calls and processing them within

the standards set by the County and the Williamson County Dispatch Steering Committee (DSC).

If RRISDPD is not dispatched by the County, 9-1-1 calls will need to be distributed to each PSAP covering the geographic area for that RRISD building. That means many 9-1-1 calls will go to the City of Round Rock, Travis County, and the City of Austin and not just to the County. The timing of this will need to be coordinated among all agencies. To the County's knowledge, this has not been done. There is also work related to a transition that would need to be done by and between the County and the Capital Area Emergency Communications District (CAECD).

Sending a 9-1-1 call to an agency without a PSAP is not a straightforward process, especially when RRISDPD dispatch will not be staffed 24/7/365 and different workflows will be needed. The only initial discussion between RRISDPD and the County pertained to transferring 9-1-1 calls to a non-emergency line, which is outside of best practices and was advised against by the CAECD. That discussion also did not cover what happens during after-hours or when the sole RRISDPD dispatcher is busy or otherwise not available.

Per the current Interlocal Agreement between the County and the RRISD, requests for changes to processes must be reviewed by the DSC. The DSC is comprised of representatives from agencies dispatched by the County and it sets the standards and services available to agencies. The DSC and County staff review the feasibility, risks, legal issues, policy issues, and expenses of any change prior to adding it to the services offered and prior to implementing the change. Any requests for custom processes would need to be reviewed by the County and the DSC before implementation. Such call-processing requests may not be technically feasible or advisable, and some may be outside the County's scope of services. As stated in an email to Chief Weiner on August 11, 2023, the County is not staffed or technically configured to support custom call processing rules for one agency.

Furthermore, the RRISDPD has not made plans or coordinated with the Sheriff's Office regarding this transition. The Sheriff's Office has not been part of discussions and plans relating to after-hours calls, and the Sheriff's Office will not be responding to routine calls for service for the RRISD at any time of the day. Also, RRISD has not made arrangements with the Sheriff's Office regarding access to the Texas Law Enforcement Telecommunications System when not dispatched by the County or otherwise when not accessing County resources. The Sheriff's Office does not have the staffing nor configurations in place to support an agency not dispatched by the County, especially an agency with a separate process.

Furthermore, the staff that manages the Williamson County Radio Communications System (RCS) have not been involved in any discussions about the possibility or practicality of using a device to bridge the radio system with cellular phones outside of the Motorola P25 system. This is not currently used by any other agencies in the County and carries several risks as it has not been tested and verified on the RCS. Additionally, the County's technical staff advises that there are serious security risks using such devices, including removing encryption on sensitive channels and the ability to compromise the integrity of the devices or disable the system altogether.

To our knowledge, RRISD has also not had discussions with other law enforcement and first responder agencies as to how interoperability will work between the RRISDPD's device(s) and all other first responders in the area that utilize land mobile radios. All of the unknown information and lack of coordination poses a threat to not only the RRISDPD officers, but also to all other first responders that may need to respond to the RRISD's campuses, such as EMS personnel called to assist with medical care. There are other ways to mitigate any radio coverage issues, if any, RRISD may be experiencing in its buildings. The RCS staff is ready and willing to assist if this is of interest or of concern.

We have been informed that RRISD's concern over the cost-sharing model for dispatch and technology services is a driver of the self-dispatching effort. However, the plans by RRISD may still incur costs from the County, as mentioned in the email to Chief Weiner on August 11, 2023. The cost-sharing model and billing structure have been discussed with entities for some time and have been addressed several times in open meetings of the Commissioners Court. The cost-sharing plan only includes a very small portion of the County's total cost of providing the services, and there are many items the County includes at no cost.

As always, County staff stands ready to assist RRISD with its mission to serve the citizens. However, without the proper coordination, the County cannot adequately provide coordination and assistance for the functions that must be performed by the County. The County has a very successful system that serves 34 agencies responsibly and safely, and a large part of that success is due to good planning and coordination. The people, processes, and technologies all work to serve those agencies and the citizens 24/7/365.

While eager to assist the RRISD, in order to implement agreed-upon processes, configure technical systems, and train staff appropriately, the County requires a minimum of four months to properly address all of the components of this transition. This timeframe may be significantly longer depending on the exact agreed-upon workflows. The County staff are scheduled to meet with the RRISDPD staff on Thursday, August 24th, for further clarification and coordination. However, given the timeline, the work, and the processes involved, it is extremely likely that requested changes will not be possible by September 30th.



# Fwd: WAITING **TPIA 2024-345 AG Response and Responsive information

**Jeremy Story** <jeremy@jeremystory.org>                                          Thu, May 23, 2024 at 1:30 PM
To: Solomon Norred <sgn@norredlaw.com>, Ty Harding <ty@norredlaw.com>, Marie Anderson <marie@norredlaw.com>
Cc: Warren Norred <wnorred@norredlaw.com>

██████

████████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
████████████████████

███████
███████████

Begin forwarded message:

**From:** Open Records <open_records@roundrockisd.org>
**Subject: WAITING **TPIA 2024-345 AG Response and Responsive information**
**Date:** May 14, 2024 at 11:11:41 AM CDT
**To:** Jeremy Story <jeremy@jeremystory.org>

Here is a copy of the AG Opinion and the responsive information to your request. Please recall that we have sent a portion of this request to you on April 3, 2024

Sincerely,

Open Records & Legal Services Department

open_records@roundrockisd.org

Round Rock ISD

1311 Round Rock Ave

Round Rock, TX 78681

512-428-7982 (Office)

512-464-5956 (Fax)

**3 attachments**

**AG Opinion TPIA 2024-293,295,296(SAME).pdf**
423K

**RRISD PD J-Culture and Climate Report.pdf**
696K

**Culture and Climate Report ii.pdf**
1176K

Exhibit 9, p. 1



KEN PAXTON
ATTORNEY GENERAL OF TEXAS

Requestor Copy
No mailing address provided

May 10, 2024

Mr. Jacob Woolston
Senior Staff Attorney
Round Rock Independent School District
1311 Round Rock Avenue
Round Rock, Texas 78681

OR2024-016573

Dear Mr. Woolston:

You ask whether certain information is subject to required public disclosure under the
Public Information Act (the "Act"), chapter 552 of the Government Code.  Your request
was assigned ID# 24-009558 (TPIA Nos. 2024-293, 2024-295, and 2024-296).

The Round Rock Independent School District (the "district") received three requests from
three different requestors for certain information pertaining to the district police
department, including a specified report.  You claim the submitted information is excepted
from disclosure under sections 552.108 and 552.116 of the Government Code.  We have
considered the exceptions you claim and reviewed the submitted information.

Initially, we note, although the district indicates some of the submitted information, which
you marked, is not responsive to the instant requests, upon review, we find the final report
you marked is responsive to the requests for information because it is information specified
in the requests.  Accordingly, we will consider the applicability of any exceptions to
disclosure of the final report. We will also consider the district's arguments against
disclosure of the remaining information.

Next, we note the submitted information is subject to section 552.022 of the Government
Code.  Section 552.022(a) provides, in relevant part:

> (a) [T]he following categories of information are public information and not
> excepted from required disclosure unless made confidential under this chapter or
> other law:

Mr. Jacob Woolston - Page 2

> (1) a completed report, audit, evaluation, or investigation made of, for, or by a governmental body, except as provided by Section 552.108[.]

Gov't Code § 552.022(a)(1). We note the submitted information consists of a completed investigation. This information is subject to section 552.022(a)(1). The district must release this information, unless it is excepted from disclosure under section 552.108 of the Government Code or expressly made confidential under the Act or other law. *See id.* 552.022(a)(1). Although you raise section 552.116 of the Government Code for the information at issue, this section is a discretionary exception to disclosure and does not make information confidential under the Act. *See* Open Records Decision Nos. 665 at 2 n.5 (2000) (discretionary exceptions generally), 663 at 5 (1999) (waiver of discretionary exceptions). Therefore, none of the submitted information may be withheld under section 552.116. However, as information subject to section 552.022(a)(1) may be withheld under section 552.108 of the Government Code, we will consider your argument under this exception for the information at issue.

Section 552.108(b)(1) of the Government Code excepts from disclosure the internal records and notations of law enforcement agencies and prosecutors when their release would interfere with law enforcement and crime prevention. Gov't Code § 552.108(b)(1); *see also* Open Records Decision No. 531 at 2 (1989) (quoting *Ex parte Pruitt*, 551 S.W.2d 706 (Tex. 1977)). A governmental body claiming section 552.108(b)(1) must explain how and why the release of the requested information would interfere with law enforcement. *See* Gov't Code §§ 552.108(b)(1), .301(e)(1)(A); *see also Ex parte Pruitt*, 551 S.W.2d 706. Section 552.108(b)(1) is intended to protect "information which, if released, would permit private citizens to anticipate weaknesses in a police department, avoid detection, jeopardize officer safety, and generally undermine police efforts to effectuate the laws of this State." *See City of Fort Worth v. Cornyn*, 86 S.W.3d 320, 327 (Tex. App.—Austin 2002, no pet.). This office has concluded section 552.108(b)(1) excepts from public disclosure information relating to the security or operation of a law enforcement agency. *See, e.g.*, Open Records Decision Nos. 531 (release of detailed use of force guidelines would unduly interfere with law enforcement), 252 (1980) (section 552.108 of the Government Code is designed to protect investigative techniques and procedures used in law enforcement), 143 (1976) (disclosure of specific operations or specialized equipment directly related to investigation or detection of crime may be excepted). Section 552.108(b)(1) is not applicable, however, to generally known policies and procedures. *See, e.g.*, Open Records Decision Nos. 531 at 2–3 (Penal Code provisions, common law rules, and constitutional limitations on use of force not protected), 252 at 3 (governmental body failed to indicate why investigative procedures and techniques requested were any different from those commonly known). However, upon review, we find the district has not demonstrated release of any of the information at issue would interfere with law enforcement or crime prevention. Accordingly, the district may not withhold any of the information at issue under section 552.108(b)(1) of the Government Code. Accordingly, the district must release the submitted information.

Mr. Jacob Woolston - Page 3

This letter ruling is limited to the particular information at issue in this request and limited to the facts as presented to us; therefore, this ruling must not be relied upon as a previous determination regarding any other information or any other circumstances.

This ruling triggers important deadlines regarding the rights and responsibilities of the governmental body and of the requestor. For more information concerning those rights and responsibilities, please visit our website at https://www.texasattorneygeneral.gov/open-government/members-public/what-expect-after-ruling-issued or call the OAG's Open Government Hotline, toll free, at (877) 673-6839. Questions concerning the allowable charges for providing public information under the Public Information Act may be directed to the Cost Rules Administrator of the OAG, toll free, at (888) 672-6787.

Sincerely,

D. Michelle Case
Assistant Attorney General
Open Records Division

DMH/jxd

Ref:    ID# 24-009558

c:     3 Requestors