UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS - AUSTIN DIVISION

| | |
|---|---|
| JEREMY STORY, § | |
|    *Plaintiff,* § | |
| § | |
| v. § | Civil Action No. 1:22-cv-448-RP |
| § | |
| HAFEDH AZAIEZ, et al. § | |
|    *Defendants.* § | |

**PLAINTIFF'S REPLY IN SUPPORT OF
PLAINTIFF'S SECOND MOTION FOR LEAVE TO FILE SECOND SUPPLEMENT**

Plaintiff Jeremy Story herein replies ("Reply") to Defendants' *Response to Plaintiff Jeremy Story's Second Motion for Leave to File Second Supplement* ("Response"). Plaintiff incorporates his Second Motion for Leave to file Second Supplement ("Second Supplement") by reference.[1]

### I.   ARGUMENT

1. The Second Supplement is probative and material to Plaintiff's claims showing that RRISD and RRISDPD have a systemic pattern or practice of picking winners and losers, directly contributing to the constitutional violations of Plaintiff by the various Defendants. The Second Supplement is not futile as to defenses of qualified immunity or the pending motions to dismiss.[2,3]

2. The Second Supplement will not prejudice Defendants as no hearing for the motions to dismiss has been set and the briefing is complete; nor does the Second Supplement contain new causes of action or parties: the supplement will not delay disposition of the claims. Lastly, the contents of the Second Supplement were published after Plaintiff's Third Amended Complaint.

---

[1] Unless otherwise stated, references to exhibits are references to the exhibits of the Second Supplement, attached to Plaintiff's Second Motion for Leave to File Second Supplement (Doc. 83).
[2] Defendants Pope, Griffith, and Pontillo have not moved to dismiss Plaintiff's Amended Complaint.
[3] FRCP 15(d) explicitly states "The court may permit supplementation even though the original pleading is defective in stating a claim or defense."

**A. The Second Supplement is relevant to claims in the Third Amended Complaint.**

3. The Second Supplement shows that RRISD Board members have a pattern of covering up information that benefits a favored "in-group" by protecting it from criticism. Exh. 2, 3, 4, 6, and 7. The Second Supplement shows that RRISD and RRISDPD have a pattern and custom of operating preferentially to a favored group and hostility to that group's critics. Exh. 2, 5. In so doing, the Second Supplement supports Plaintiff's claims in his Third Amended Complaint by showing evidence of Defendants' pattern, practice, and custom of using their positions to protect RRISD and RRISPD from Plaintiff, a critic of that group.

4. Specifically, the Letter from Defendant Weiner to Defendant Azaiez ("Letter") shows Defendant Azaiez and the collaborating RRISD staff have an intent and a pattern of covering up and silencing critics of the RRISD Board. Exh. 2. Defendant Weiner states "The principal, area superintendent, senior chief of schools, general counsel, Title IX investigator and you, the superintendent of the district, became aware of the criminal activity on Monday, but none of you reported it to the police." Exh. 2, pg. 1. He also states, "I have experienced numerous practices of non-reporting and delayed reporting of crimes, and interference with police operations and investigations by district staff." Exh. 2, pg. 2. The letter goes on to describe Defendant Azaiez and Dr. Nichols attempting to "direct" Defendant Weiner's management of the RRISDPD, and Defendant Weiner "asked if [Azaiez] if you were in support of her comments. Instead of direct yes or no response, you started by saying that it was important that the campuses be supported and that, something to the effect of, maintaining harmony within the district is a priority." Exh. 2, pg. 3. The Letter is relevant as to the RRISD Defendants' (Landrum, Harrison, Weir, Xiao, and Vessa) practice of covering up criticism of RRISD Defendants and intent and attempts to control the RRISDPD.

5.      Further, the public statements regarding the report by Danielle Weston and Defendant Harrison and the Round Rock ISD Board Officers, President Amber Feller Landrum, Vice President Tiffanie N. Harrison confirm Defendant Weiner's statements regarding non-reporting, investigations, and the Board's practice of conspiring against critics of the RRISD Defendants. Exh. 3 and 4. This directly demonstrates RRISD Defendants, practice of silencing criticism that is not favorable to them, which supports Plaintiff's claims.

6.      The Culture and Climate Report shows a report on the RRISDPD. Exh. 5. The report describes the culture and climate as "extremely negative" and

> "toxic, very divided . . .full of favoritism. . .top down . . . intimidating. . .lack of trust, unstable, hostile, full of drama. . .There is a prevalent sense of favoritism in the department by leadership. . .there is a fear of retaliation if someone disagrees with leadership or speaks against them. . .Social workers believe that favoritism was evident in the selection of the Interim Director. . . They were told that she was given the position because the Chief "knew her best" not allowing for others to apply or even be considered. . . numerous interviewees stated that there is an "in crowd" that is given special attention. . ."

Exh. 5.

7.      The Culture and Climate Report is directly relevant to Plaintiff's claims against Defendants Williby, Yarbrough, Weiner, Cole, Pope, Griffith, and Pontillo ("RRISDPD Defendants"). Exh. 5. The Culture and Climate Report supports Plaintiff's claims that the RRISDPD Defendants favor the "in crowd" at the expense of others. Exh. 2 and 5.

8.      The statement by RRISD to CBS Austin that Defendant Griffith will serve as Interim Chief shows that Defendant Griffith was serving as Interim Chief two years ago when Plaintiff was unlawfully arrested. Exh. 6. This is directly relevant to Plaintiff's false arrest claims against Defendant Griffith as she and Defendant Pope created the affidavits in support of the false arrest, and thus relevant to Plaintiff's other allegations of collaboration between the RRISD and RRISPD to support the "in group" and to use RRISDPD to silence critics, such as Plaintiff. Exh. 2-5.

9. The letter addressed to Defendant Weiner and Azaiez expresses concerns that RRISD and RRISDPD are purposefully not coordinating with Williamson County authorities. Exh. 7. This is directly relevant to Plaintiff's allegations that the RRISDPD and RRISD Defendants prefer to minimize exposure and control of RRISDPD and RRISD to those not in their favored "in group". Exh. 2-5. Similarly, the Culture and Climate report indicates that RRISDPD and RRISD Defendants have a pattern and practice of enforcing rules unevenly, and this case is an exemplar of that practice, as the RRISDPD and RRISD Defendants silenced and discriminated Plaintiff for his critical statements about their practices. Exh. 2-5.

10. Plaintiff authenticates Exh. 5 and 9 by his communications. Exh. 8.

11. The Attorney General opinion regarding RRISD's attempted request to prevent the disclosure of the Culture and Climate report delayed the report's release to Plaintiff. Exh 9.

**B. The Second Supplement is not futile.**

12. Incorporating the statements above and below, the Second Supplement materials directly relate to Plaintiff's claims and contain strong evidence that Plaintiff's claims are just, and give evidence of RRISD's practices, which shows that RRISD ought not be protected by immunity.

**i. Defendant Williby and Yarbrough ("Officer Defendants")**

13. Plaintiff pleads claims for failure to supervise against Officer Defendants who directly supervised RRISDPD at the August 16th meeting where officers prohibited the public from entering the September 14th meeting, where Plaintiff was restrained and injured. Plaintiff has also pled retaliation under the First and Fourth Amendments, and Fourteenth Amendments, including false arrest claims against Officer Defendants for their collusion with the RRISD Defendants to silence Plaintiff, as the Officer Defendants did not treat others who were acting the same way.[4]

---

[4] *See Nieves v. Bartlett*, 587 U.S. 391, 407, 139 S. Ct. 1715, 1727 (2019), for the proposition that, even with probable cause, a plaintiff may argue for liability based on discriminatory unequal treatment.

14.     As discussed above, the Second Supplement provides evidence that these violations of Plaintiff's right are part of a larger pattern of similar violations and consistent with the environment of RRISD and RRISDPD, where there is clearly a favored "in group" which uses its power to silence dissenters and criticism, as seen in this case. The Second Supplement shows a systemic pattern of the RRISD's intent to direct and control the RRISDPD to the RRISD's will, including silencing criticism from those like Plaintiff without probable cause.[5]

### ii. Defendants Landrum, Harrison, Weir, Xiao, and Vessa ("Trustee Defendants")

15.     Plaintiff has asserted Texas Open Meeting Act ("TOMA") claims against the Trustee Defendants for the secret hiring of Defendant Azaiez, their walking quorum, preventing attendees from entering the September 14th meeting, and the improper notice of vote to remove attendees at that meeting. Plaintiff also asserted that Defendants Weir and Feller violated Plaintiff's clearly established First Amendment rights by ejecting him at the August 16th meeting.

16.     As discussed above, Plaintiff offers the Second Supplement to provide relevant context into the environment of RRISD and the Trustee Defendants. Specifically, the pattern of covering up unfavorable information and intent to control RRISDPD. Exh. 2-7. Plaintiff asserts that Trustee Defendants secretly hired Azaiez. The Second Supplement shows Defendant Azaiez covering up and attempting to control the RRISDPD. Exh. 2. Again, the Second Supplement shows the Trustee Defendants have a pattern of covering up information in favor of Defendant Azaiez and silencing criticism, such as Plaintiff and those kept out of the meetings.

### iii. Defendants RRISD and Azaiez

17.     Plaintiff has re-asserted First Amendment claims against Defendants RRISD and Azaiez for removing Plaintiff from the August 16th meeting, limiting Plaintiff's speech at the September

---

[5] *Nieves*, 587 U.S. at 407.

14th meeting, and silencing Plaintiff and others at the homecoming football game, all based on the viewpoint being expressed. Plaintiff also asserts a TOMA claim against Azaiez.

18.    As discussed above, Plaintiff offers the Second Supplement to provide relevant context into the patterns and customs of RRISD to silence dissenters using the RRISDPD and the identical pattern of Defendant Azaiez's actions regarding the same.[6] Exh. 2-5. Specifically, the custom sanctioned by Defendant Azaiez and Board president Wier is to cover up and discourage unfavorable information and criticism by deploying RRISDPD. Plaintiff asserts that Defendant RRISD is responsible for the customs of the RRISD Board to limit opposition in the August 16th and September 14th meetings, and the homecoming game, using whatever means they can to keep out opposition and remove Plaintiff or silence him.

19.    As with the other defendants, the Second Supplement shows a relevant pattern, practice, and policy by RRISD Trustees and Superintendent to cover up and silence criticism and control the RRISDPD to their favor. Exh. 2-5. Because Plaintiff's complaints are not based on one-off events which might be protected by immunities, Plaintiff's claims for the deliberate violation of his constitutional rights and violations of TOMA. The Second Supplement directly supports Plaintiff's as-applied challenge against BED Local Policy for the same reasons.

   iv.  **Defendants Weiner, Cole, and Amacher**

20.    Plaintiff has asserted First Amendment claims against Defendants Weiner, Cole, and Amacher for unconstitutionally using GKDA (Local) as applied to Plaintiff. Defendants Weiner and Cole took orders from Superintended Azaiez to silence Plaintiff at the homecoming game. Defendant Amacher also attempted to silence Plaintiff by orders from an unnamed "legal counsel". None of the Defendants could cite a policy that justified their actions.

---

[6] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

21. The Second Supplement is directly related to showing the environment and pattern of Defendant Azaiez's intent to control RRISD and RRISDPD personnel in silencing critics, like Plaintiff during the homecoming game. The Second Supplement clearly shows Defendant Azaiez's and other RRISD personnel attempts to cover up unfavorable information and control the RRISD, RRISDPD, and Defendant Weiner to support the in-group against critics. Exh. 2-6.

22. The Second Supplement supports the allegations that the Homecoming Defendants are acting as Defendant Azaiez's goons when they cannot cite a law or policy justifying their threats to silence Plaintiff at the homecoming game. Exh. 2-6.

   v. **Defendants Pope, Griffith, Pontillo ("Non-MTD Defendants")**

23. Plaintiff has asserted a First Amendment right to petition and free speech claims and Fourteenth Amendment equal protection and due process claims against Defendant Pope and Pontillo. Plaintiff has asserted First Amendment retaliation claims and Fourth Amendment unreasonable arrest and excessive force claims against all of the non-MTD Defendants.[7]

24. The Second Supplement is directly relevant as to the climate of the RRISDPD and the pattern of RRISD's attempts to control the RRISD. Exh. 2-6. The Supplement shows undue influence of Defendant Weiner and through him against the RRISDPD and the "toxic" in group in the RRISDPD. Further, the Second Supplement shows Defendant Griffith was made interim police chief during the time of Plaintiff's injuries because Defendant Weiner "knew her best". Exh. 5. The Second Supplement supports Plaintiff's allegations by showing the Non-MTD Defendants were acting as goons for Defendant Azaiez and Trustee Defendants when removing Plaintiff from the August 16th meeting, preventing his participating in the September 14th meeting, creating a false affidavit, arresting him, and silencing him at the homecoming game.

---

[7] *Nieves*, 587 U.S. at 407.

### vi. The Second Supplement is not futile.

25. For the reasons stated above and throughout the Reply, the Second Supplement is directly relevant to the claims against Defendants and is not futile, bringing additional facts for claims made earlier to defeat immunity defenses.

### C. The Second Supplement will not prejudice Defendants.

26. Briefing on Defendants' Motion to Dismiss is over and no hearing has been set on the Motions. The Second Supplement will not delay resolution of the Motions to Dismiss. Further, the Second Supplement is directly relevant to the claims against the Non-MTD Defendants, who have no motion to dismiss currently on file.

27. Further, Plaintiff will be prejudiced by not introducing the Second Supplement for the full resolution of his claims in the Motions to Dismiss, where the materials in the Second Supplement have not been available until recently.

28. The Second Supplement could not be filed in the instant case earlier because Defendants sought protection from the Attorney General to stop or stall the release of the Culture and Climate report in the Second Supplement, which delayed the inclusion of these materials in the Court's docket. Plaintiff should not be punished for the Defendants' choices that delayed the release of this relevant evidence. Exh. 9. Further, Trustee Defendants had a secret meeting regarding the letter, further delaying its release. Exh. 4.

### D. The Second Supplement complies with Federal Rule of Civil Procedure 15(d).

29. Federal Rule of Civil Procedure ("FRCP") 15(d) requires supplements to contain "transaction, occurrence, or event[s]" after the relevant complaint.[8] FRCP 15(d). The materials in the Second Supplement were published after the Third Amended Complaint. Plaintiff need not

---

[8] Again, FRCP 15(d) explicitly states "The court may permit supplementation even though the original pleading is defective in stating a claim or defense."

amend his complaint based on the Second Supplement as it does not propose new causes of action or parties. The Second Supplement contains relevant materials published after the filing of the Third Amended Complaint on October 5, 2023, that were previously unavailable to Plaintiff.

30.     Exh. 2 was published on May 14, 2024. Exh. 3-4 were published after May 14, 2024. Exh. 5 was published on May 14, 2024. Exh. 6 was published on May 22, 2024.[9] Each of these documents were published after the Third Amended Complaint.[10] Plaintiff's Second Supplement complies with Federal Rule of Civil Procedure 15(d). The standard "transaction, occurrence, or event" relates to the event of the reports and articles being published. Further, Defendants sought the Attorney General's opinion on whether they were required to disclose the materials or not, delaying the publishing of the records. Lastly, Defendants admit that Chief Weiner's letter, the Board's response, and the District's recent appointment of an interim police chief all took place after the Third Amended Complaint.[11]

31.     "Leave to supplement should not be granted where a plaintiff attempts to present 'new and different causes of action.'" *Grimes v. Lumpkin*, No. 5:22-0012, 2022 U.S. Dist. LEXIS 250114, at *2 (S.D. Tex. 2022) (internal citations omitted). "If he does not, and if no other 'substantial reason' mandates denying leave, the motion should be granted." *Id*. Plaintiff does not present new and different causes of action. The Second Supplement is not futile, nor will it prejudice Defendants. The materials in the Second Supplement were published after the Third Amended Complaint. Plaintiff has satisfied FRCP 15(d).

---

[9] https://cbsaustin.com/news/local/round-rock-isd-announces-new-interim-police-chief-lauren-griffith (Stephanie Becerra, Tara Brolley | Thu, May 16th 2024 at 6:58 PM") (June 12, 2024)
[10] Plaintiff admits that Exh. 7 occurred prior to the Third Amended Complaint and cannot confirm Plaintiff acquired the document after the Third Amended Complaint.
[11] "Story's only potential allegations of a transaction, occurrence, or event occurring since the Third Amended Complaint relate to Chief Weiner's letter and the Board's response, and the District's recent appointment of an interim police chief." Doc. 86, pg. 11.

## II.     PRAYER

Plaintiff respectfully requests that this Court grant leave to file Second Supplement and consider the new evidence contained therein in support of their claims against Defendants.

Respectfully submitted,

>/s/ Warren V. Norred
>Warren V. Norred, wnorred@norredlaw.com
>NORRED LAW, PLLC; 515 E. Border Street
>Arlington, TX 76010
>O: 817-704-3984 / F: 817-524-6686
>*Attorney for Plaintiff Jeremy Story*

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2024, a true and correct copy of the foregoing *Plaintiff's Reply in Support of Plaintiff's Second Motion for Leave to File Second Supplement* was served via the court's electronic filing system on all parties seeking service.

>*/s/Warren V. Norred*
>Warren V. Norred