AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

_____ District of _____

| | |
|---|---|
| _____ *Plaintiff* <br> v. <br> _____ *Defendant* | ) <br> ) <br> ) Civil Action No. _____ <br> ) <br> ) (If the action is pending in another district, state where: <br> ) _____ District of _____ ) |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To:

❒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
| | |

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: _____

*CLERK OF COURT*

OR

_____           _____
*Signature of Clerk or Deputy Clerk*                          *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____
_____, who issues or requests this subpoena, are:

# Exhibit "1"

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

# PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

*Server's signature*

*Printed name and title*

*Server's address*

Additional information regarding attempted service, etc:

Case 1:22-cv-00448-DAE   Document 99-1   Filed 02/05/25   Page 3 of 12

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

 (**1**) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

 (**2**) *Command to Produce Materials or Permit Inspection.*
   (**A**) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (**B**) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     (**i**) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
     (**ii**) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 (**3**) *Quashing or Modifying a Subpoena.*
   (**A**) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:
     (**i**) fails to allow a reasonable time to comply;
     (**ii**) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
     (**iii**) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     (**iv**) subjects a person to undue burden.
   (**B**) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
     (**i**) disclosing a trade secret or other confidential research, development, or commercial information;
     (**ii**) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
     (**iii**) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
   (**C**) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     (**i**) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     (**ii**) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

 (**1**) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   (**A**) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (**B**) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (**C**) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (**D**) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 (**2**) *Claiming Privilege or Protection.*
  (**A**) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     (**i**) expressly make the claim; and
     (**ii**) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (**B**) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# EXHIBIT A

1

## EXHIBIT A TO SUBPOENA TO
## DR. MARY BONE

### Instructions Applicable to Exhibit A

Any electronic documents responsive to this Subpoena shall be produced in PDF or TIFF image file format, with extracted text (the ASCII text of an electronic document file), and with a load file that identifies, among other things, any parent-child relationship existing between a document and its attachments. If, upon review of a produced document in PDF/TIFF image format, Round Rock Independent School District ("Round Rock ISD" or the "District") determines that the production of the native file (e.g., Microsoft Excel files, Microsoft Access files, and/or other databases and associated files) is necessary because the PDF/TIFF image does not properly capture the contents of the document, the document shall be produced in its native electronic format.

### Definitions Applicable to Exhibit A

In responding to this Subpoena, the following definitions shall apply, regardless of whether upper or lowercase letters are used:

1. The terms "you," "your," and "Dr. Bone" shall mean Dr. Mary Bone and her present and former agents, attorneys, representatives, heirs and assigns.

2. The terms "Round Rock ISD" or "District" shall mean the Round Rock Independent School District and its present and former trustees, agents, employees, attorneys, representatives, heirs and assigns.

3. The terms "Jeremy Story" or "Story" shall mean Jeremy Wade Story, the Plaintiff in the Lawsuit, whose date of birth is ▮▮▮▮▮▮▮, whose Texas Driver's License number is ▮▮▮▮▮▮, and whose partial Social Security Number is ▮▮▮▮▮.

4. The terms "Dustin Clark" or "Clark" shall mean Dustin Kansas Clark, a former Plaintiff in the Lawsuit, whose date of birth is ▮▮▮▮▮▮▮, and whose Texas Driver's License number is ▮▮▮▮▮▮.

5. The term "Lawsuit" shall mean the lawsuit that Jeremy Story and Dustin Clark filed against Round Rock ISD and others in the United States District Court for the Western District of Texas, Austin Division, Civil Action No. 1:22-cv-00448-DAE.

6. The term "August 16 Board meeting" shall mean the specially called meeting of the Round Rock ISD Board of Trustees held on August 16, 2021.

7. The term "September 14 Board meeting" shall mean the regular meeting of the Round Rock ISD Board of Trustees held on September 14, 2021.

8. The term "Homecoming Incident" shall mean the incident alleged in the Lawsuit concerning Jeremy Story's and others' efforts to distribute political campaign materials in the parking lot adjacent to the Round Rock High School football stadium at the September 16, 2022, Homecoming football game.

9. The term "Williamson County" shall mean Williamson County, Texas and all its departments, offices, and divisions—including but not limited to the Williamson County Judge, Williamson County Commissioners Court, Williamson County Attorney, Williamson County Magistrate's Office, and Williamson County Sheriff—as well as all its present and former agents, employees, attorneys, representatives, heirs and assigns.

10. The terms "communication" or "communications" shall mean any contact or act by which information or knowledge is transmitted or conveyed between two or more persons and includes, without limitation: (1) written contact, whether by letter, memoranda, e-mail, telegram, telex, text or instant message, social media message, or other document; (2) oral contact, whether by face-to-face meetings, telephone conversations or otherwise; and (3) nonverbal acts intended to communicate or convey any meaning, understanding, or other message.

11. The term "document" refers to all writings of any kind, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise, including, without limitation, social media postings, correspondence, memoranda, notes, diaries statistics, letters, e-mail, telegrams, minutes, contracts, reports, studies, text, statements, receipts, returns, summaries, pamphlets, books, prospectuses, inter-office and intra-office Communications, offers, notations of any sort regarding conversations, telephone calls, meetings or other Communications, bulletins, printed matters, computer printouts, teletypes, telefax, invoices, worksheets, and each and every electronic or paper draft, alteration, modification, change or amendment of any kind of the foregoing; graphic or aural records and oral representations of any kind, including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, video or audio recordings, motion pictures; and electronic, magnetic, mechanical or electric records or representations of any kind, including, without limitation, tapes, cassettes, disks, computer generated or stored information and video or audio recordings. The term "Document" expressly includes electronically stored information as referenced in the Federal Rules of Civil Procedure. To the extent Documents are produced pursuant to this discovery request, all Documents should be produced without alteration and with any and all exhibits and attachments thereto.

12. The term "person" includes natural persons, corporations, partnerships, joint venturers, unincorporated associations, trusts, government entities and all other legal entities.

13. The terms "reflect," "reflects," or "reflecting" shall mean, in addition to its customary and usual meaning, evidencing, showing or recording.

14. The terms "relate," or "relates," or "relating" shall mean, in addition to its customary and usual meaning, discussing, referring to, pertaining, reflecting, showing, or recording.

15. The term "and" shall mean "and/or."

16. The term "or" shall mean "and/or."

17. Wherever the word "including" appears, the meaning intended is "including, but not limited to."

18. The plural includes the singular and vice versa.

19. The masculine includes the feminine and vice versa.

20. If any document or communication has been destroyed, you are requested to designate a person or persons to detail the circumstances of and reasons for such destruction and to produce all documents which relate to either the circumstances of, or reasons for, such destruction.

21. Confidential information, such as Jeremy Story's or Dustin Clark's Social Security Numbers, driver's license number, and dates of birth are not requested and may be redacted. Other information that you believe is confidential may be designated "Confidential."

22. Any documents or communications withheld on a claim of privilege must be preserved. If any documents or communications are withheld or other information is withheld pursuant to a claim of privilege or subject to protection as trial-preparation material, you shall:

    a. expressly state the privilege, privileges, or other protection asserted; and

    b. describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

23. Unless otherwise indicated, these document requests cover the time period beginning May 1, 2021, and continuing thereafter.

## DOCUMENTS REQUESTED

1. All documents, including audio and video recordings, regarding or relating to the Lawsuit.

2. All your communications, including e-mails, text, instant, and voice messages, with any person regarding or relating to the Lawsuit.

3. All documents, including audio and video recordings, regarding or relating to Jeremy Story.

4. All your communications, including e-mails, text, instant, and voice messages, with Jeremy Story regarding or relating to the Lawsuit or Round Rock ISD.

5. All your communications, including e-mails, text, instant, and voice messages, with any person regarding or relating to Jeremy Story.

6. All documents, including audio and video recordings, regarding or relating to Dustin Clark.

7. All your communications, including e-mails, text, instant, and voice messages, with Dustin Clark regarding or relating to the Lawsuit or Round Rock ISD.

8. All your communications, including e-mails, text, instant, and voice messages, with any person regarding or relating to Dustin Clark.

9. All documents, including audio and video recordings, regarding or relating to Vanessa Ruiz Aldrich.

10. All your communications, including e-mails, text, instant, and voice messages, with Vanessa Ruiz Aldrich regarding or relating to the Lawsuit, Jeremy Story, Dustin Clark, Dr. Hafedh Azaiez, or Round Rock ISD.

11. All your communications, including e-mails, text, instant, and voice messages, with any person regarding or relating to Vanessa Ruiz Aldrich.

12. All your communications, including e-mails, text, instant, and voice messages, with Round Rock ISD parent Michelle Evans or any other Round Rock ISD parent regarding or relating to the Lawsuit, Jeremy Story, Dustin Clark, Dr. Hafedh Azaiez, Amber Feller, Tiffanie Harrison, Amy Weir, Jun Xiao, Cory Vessa, or Round Rock ISD.

13. All your communications, including e-mails, text, instant, and voice messages, with Williamson County or anyone with the Texas Office of the Attorney General regarding or relating to the Lawsuit, Jeremy Story, Dustin Clark, Dr. Hafedh Azaiez, Amber Feller, Tiffanie Harrison, Amy Weir, Jun Xiao, Cory Vessa, or Round Rock ISD.

14. All your communications, including e-mails, text, instant, and voice messages, with Danielle Weston regarding or relating to the Lawsuit, Jeremy Story, Dustin Clark, Dr. Hafedh Azaiez, Amber Feller, Tiffanie Harrison, Amy Weir, Jun Xiao, Cory Vessa, or Round Rock ISD.

15. All your communications, including e-mails, text, instant, and voice messages, with Warren Norred regarding or relating to the Lawsuit, Jeremy Story, Dustin Clark, Dr. Hafedh Azaiez, Amber Feller, Tiffanie Harrison, Amy Weir, Jun Xiao, Cory Vessa, or Round Rock ISD.

16. All your communications, including e-mails, text, instant, and voice messages, with Stephen Casey regarding or relating to the Lawsuit, Jeremy Story, Dustin Clark, Dr. Hafedh Azaiez, Amber Feller, Tiffanie Harrison, Amy Weir, Jun Xiao, Cory Vessa, or Round Rock ISD.

17. All documents, including audio and video recordings, you received from Jeremy Story, Dustin Clark, Warren Norred, or Stephen Casey regarding or relating to the Lawsuit or Round Rock ISD.

18. All documents, including audio and video recordings, you provided to Jeremy Story, Dustin Clark, Warren Norred, or Stephen Casey regarding or relating to the Lawsuit or Round Rock ISD.

19. All documents, including audio and video recordings, and communications, including e-mails, text, instant, and voice messages, regarding or relating to Round Rock ISD's hiring of Dr. Hafedh Azaiez as Superintendent.

20. All documents, including audio and video recordings, and communications, including e-mails, text, instant, and voice messages, regarding or relating to the August 16 Board Meeting.

21. All documents, including audio and video recordings, and communications, including e-mails, text, instant, and voice messages, regarding or relating to the September 14 Board Meeting.

22. All documents, including audio and video recordings, and communications, including e-mails, text, instant, and voice messages, regarding or relating to the Homecoming Incident.

23. All documents, including audio and video recordings, and communications, including e-mails, text, instant, and voice messages, regarding or relating to any grievances filed by Jeremy Story with Round Rock ISD relating to the hiring of Dr. Hafedh Azaiez as Superintendent, the August 16 Board Meeting, the September 14 Board Meeting, or the Homecoming Incident.

24. All documents, including audio and video recordings, and communications, including e-mails, text, instant, and voice messages, regarding or relating to any grievances filed by Dustin Clark with Round Rock ISD relating to the hiring of Dr. Hafedh Azaiez as Superintendent, the August 16 Board Meeting, the September 14 Board Meeting, or the Homecoming Incident.

25. All documents, including audio and video recordings, and communications, including e-mails, text, instant, and voice messages, regarding or relating to the preparation of the "Declaration of Mary Bone" filed in the Lawsuit, or the subject matters discussed in the "Declaration of Mary Bone," a copy of which is attached hereto as **Exhibit A-1**.

26. All documents, including audio and video recordings, and communications, including e-mails, text, instant, and voice messages, regarding or relating to payment of legal fees related to the Lawsuit.

# Declaration of Mary Bone

My name is Mary Bone and I declare under penalty of perjury under the laws of the United States of America that the following is true and correct.

1. I am an elected trustee of the board ("Board") of the Round Rock Independent School District ("District" or "RRISD"), and have been since November 2020.

2. Since at least early 2021, there have been occasions in which I have been concerned that some combination of other trustees, Amber Feller, Tiffanie Harrison, Amy Weir, Jun Xiao, Cory Vessa, Alicia Markum, Estevan Zarate have engaged in walking quorums in potential violation of the Texas Open Meetings Act.

3. In the June 14, 2021 public board meeting, I was surprised that the superintendent candidate, Dr Hafedh Azaiez, was actually on site during the entire meeting. This was the meeting in which the board was supposed to vote on whether or not to hire him. I did not understand why he would be on site if the outcome of the board vote was unknown prior to the meeting. The integrity of the vote concerned me given that when he did reveal himself at the end of the meeting, it appeared that Trustee Danielle Weston and I were the only trustees surprised to see him.

4. I have been told by a source that I believe to be credible that Diane Cox, a former RRISD trustee, provided confidential employment interview questions to RRISD superintendent candidate, Dr Hafedh Azaiez, in advance of his interview (which occurred in May 2021) with the board so that she could prepare him for that interview. I do not know how Cox came into possession of the questions given that only the trustees and board counsel had them in advance. I have never met, spoken to, called, emailed or otherwise engaged Cox. Cox is known to be an associate of the current Board President, Amber Landrum (Feller).

5. I received a phone call on July 13, 2021 from Vanessa Aldrich who told me she was the mistress of Azaiez, pregnant with his child and accused Azaiez of assault. I immediately contacted the Board President Weir and board counsel at the time Doug Poneck. I had to leave a voicemail for Weir and I also called another officer of the Board, Tiffanie Harrison. Weir and I spoke later that day and she said she was already aware of the pregnancy with the mistress. Harrison did not seem surprised or concerned by the allegations when I told her.

6. I and other RRISD trustees received an email from Vanessa Aldrich on July 14, 2021 to my RRISD email account which is subject to the Public Information Act. Her email alerted board members to concerns she had about Azaiez though she did not specify her concerns in the email. She sought an opportunity to share her concerns with the board.

7. After the board president, Amy Weir, violated board policy (BED local) by refusing Trustee Danielle Weston and my request for a special meeting in August 2021 to discuss Aldrich's accusations and concerns, Weston and I went public with our concerns in a press release chronicled in this media article: https://texasscorecard.com/local/questions-surround-central-texas-school-district-as-superintendent-is-accused-of-assault/

8. At some point in late summer 2021, I received a copy of an affidavit showing that Azaiez attempted to obtain a protective order against Aldrich. In that affidavit, Azaiez swore that Trustee Weir had informed Azaiez that Aldrich had contacted all of the RRISD trustees with information of his "fathering her child." However, Azaiez had never and to this day has never told me that he fathered a child in 2021 outside of his marriage.

9. By August 2021, I believed that all trustees had knowledge (in some form or another) about the Azaiez-Aldrich relationship.

10. Though all District trustees were aware of Aldrich's allegations about Azaiez, which I know from conversations with them, Trustees Feller, Harrison, and Weir issued a public statement in August of 2021 claiming they had not received "credible information" about the accusations. They called Aldrich's accusations "rumors" in this media article: https://texasscorecard.com/local/questions-surround-central-texas-school-district-as-superintendent-is-accused-of-assault/

11. In an email to the RRISD board from Jeremy Story in August 13, 2021, about Aldrich, he detailed the service of her protective order to Azaiez.

12. During the August 16, 2021, meeting, board president Amy Weir ordered RRISD police officers to physically remove Story during his public comment speaking time. It's my understanding that this was the first time in RRISD history that police have ever been ordered by a trustee to physically remove a public speaker in a board meeting. At other times during public comments, on August 16, 2021, speakers did not speak on items not on the agenda but they were not physically removed by the police in the meeting.

13. On September 1, 2021, Governor Abbott's executive order limiting TOMA requirements due to the pandemic ended. During the board meeting on September 14, 2021, I questioned who made the rules or policy and where those rules or policy were written, but no one could point me to why the community was being limited from entering the board meeting. I viewed the extreme seating restriction as an affront to our community and the Texas Open Meetings Act. As such, I peacefully departed the meeting to demonstrate my opposition to imposing rules that I did not believe to be lawful as I publicly stated prior to my departure.

14. A review of publicly available board meeting agendas and videos, posted on the RRISD website, shows that the Board has never discussed or voted to prosecute Story or Clark for anything.

15. On April 6, 2023, trustee and current board president Amber Feller Landrum posted photos of herself and three other trustees (constituting a quorum) on her campaign Facebook page. In this post she stated that this quorum of trustees and superintendent went to the capital and "advocated for public schools" and "met with two state representatives" privately in their offices. She did not define either the verb "advocate" or "met with." I did not believe that simply observing proceedings in the House gallery would require compliance with TOMA, but her use of two verbs, "advocate" and "met with" concerned me regarding TOMA. My understanding of TOMA is that whenever a quorum of trustees assembles to do anything official on behalf of the District, TOMA requirements apply (posting an agenda, all trustees

Declaration of Mary Bone                                                                                          Page 2

notified of the meeting, etc). I was completely unaware of this assembly of a quorum of trustees, accompanied by the superintendent, during working hours, to meet with elected officials and advocate for policy, was planned or executed until after Feller Landrum posted about it on her Facebook page and included photos. In fact, I do not know what exactly was advocated for, or what conversations/lobbying occurred with this quorum of trustees in the offices while "meeting with" state representatives at the capital. As a trustee, I believe I should have been notified of the assembly of this quorum of trustees, the meeting should have been posted for the public and the public should have been aware and had the opportunity to offer public comments about this activity may a quorum of the Board, all requirements of TOMA. To this day I do not know and there is no record of what this quorum of trustees actually did, discussed, planned, organized or executed as it was all out of the public eye and I was excluded.

16. Around mid-April 2023, I learned (via social media) of a hearing in the matter of Story and Clark v RRISD that occurred on or around April 11, 2023. Even though I am an RRISD trustee, I received no notice of the hearing from any trustee or district official. Learning about it on social media made me believe that I have not been kept informed about relevant events related to this case.

Executed on May 12, 2023.

*Mary Bone*
Mary Bone