**MARY ALICE BONE, Ph.D.**

---

**Page 1**

```
 1            IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF TEXAS
 2                    AUSTIN DIVISION

 3 JEREMY STORY,                     *
         Plaintiff,                  *
 4                                   *
   v.                                *
 5                                   *  CIVIL ACTION NO.
                                     *  1:22-cv-00448-DAE
 6 SUPERINTENDENT HAFEDH             *
   AZAIEZ, TRUSTEES AMBER            *
 7 FELLER, TIFFANIE HARRISON,        *
   AMY WEIR, JUN XIAO, CORY          *
 8 VESSA; OFFICERS JEFFREY           *
   YARBROUGH, JAMES WILLIBY,         *
 9 DEBORAH GRIFFITH, MILTON          *
   POPE, FRANK PONTILLO, RON         *
10 COLE, CHIEF DENNIS WEINER,        *
   and CARLA AMACHER,                *
11 individually, and ROUND           *
   ROCK INDEP. SCHOOL                *
12 DISTRICT,                         *
         Defendants.                 *
13

14 ----------------------------------------------------
             ORAL AND VIDEOTAPED DEPOSITION OF
15
                 MARY ALICE BONE, Ph.D.
16
                      MAY 6, 2025
17
                  (REPORTED REMOTELY)
18 ----------------------------------------------------

19

20      ORAL AND VIDEOTAPED DEPOSITION OF MARY ALICE BONE,

21 Ph.D., produced as a witness at the instance of the

22 Defendants, and duly sworn, was taken in the

23 above-styled and -numbered cause on the 6th day of May,

24 2025, from 9:00 a.m. to 5:52 p.m., before Kristy Owen,

25 CSR, in and for the State of Texas, reported by machine
```

---

**Page 2**

```
 1 shorthand with the witness appearing via Zoom from 3503

 2 Palmer Cove, in the City of Round Rock, County of

 3 Williamson, Texas, pursuant to the Federal Rules of

 4 Civil Procedure.
```

---

**Page 3**

```
 1                  A P P E A R A N C E S
 2 FOR THE PLAINTIFF (via Zoom):
      Mr. Stephen D. Casey
 3    Casey Law Office, P.C.
      P.O. Box 2451
 4    Round Rock, Texas 78680
      stephen@caseylawoffice.us
 5
   FOR THE DEFENDANTS (via Zoom):
 6    Ms. Kathryn E. Long
      Ms. Kelsey McKeag (Exits page 244.)
 7    Thompson & Horton LLP
      500 North Akard Street
 8    Suite 3150
      Dallas, Texas 75201
 9    Phone: (972) 853-5115
      Fax: (713) 583-8884
10    klong@thompsonhorton.com
      kmckeag@thompsonhorton.com
11
12 FOR THE DEPONENT (via Zoom):
      Mr. Tony McDonald
13    The Law Office of Tony McDonald
      1308 Ranchers Legacy Trail
14    Fort Worth, Texas 76126
      Phone:  (512) 200-3608
15    tony@tonymcdonald.com
16
   ALSO PRESENT (via Zoom):
17    Mr. Forrest Gunderson, Videographer
18    Ms. Cindy Hill, General Counsel for Round Rock
      Independent School District
19
      Mr. Jeremy Story, Plaintiff (Enters page 10.)
20
      Ms. Amber Feller-Landrum, Defendant
21
      Ms. Tiffanie Harrison, Defendant (Exits page 30.)
22    (Enters page 224.)(Exits page 249.)
23
24
25
```

---

**Page 4**

```
 1                      I N D E X
 2 Appearances.......................  3
   MARY ALICE BONE, PH.D.
 3    Examination by Ms. Long..................  8
 4    Examination by Mr. Casey.................  229
 5 Changes and Signature.........................  276
 6 Reporter's Certificate.........................  278
 7
 8                      EXHIBITS

 9 NO.  DESCRIPTION                          PAGE

10  1   (Not introduced.)

11  2   (Not introduced.)

12  3   Subpena to Dr. Bone.....................  27

13  4   (Not introduced.)

14  5   (Not introduced.)

15  6   Bone 0016-0020..........................  52

16  7   Bone 0033-0041..........................  54

17  8   Bone 0055-0056..........................  56

18  9   Bone 0054...............................  69

19  10  Bone 0057...............................  73

20  11  Bone 0059...............................  76

21  12  (Not introduced.)

22  13  (Not introduced.)

23  14  (Not introduced.)

24  15  Declaration of Mary Bone.................  50
25
```

---

**EXHIBIT I**    **App. 400**

MARY ALICE BONE, Ph.D.



Page 5

(Exhibits cont'd)

NO.  DESCRIPTION                                    PAGE
16   (Not introduced.)
17   (Not introduced.)
18   (Not introduced.)
19   (Not introduced.)
20   (Not introduced.)
21   Press release............................  92
22   (Not introduced.)
23   (Not introduced.)
24   (Not introduced.)
25   BED (Local)................................ 128
26   8/16/2021 Board Agenda.................... 135
27   (Not introduced.)
28   (Not introduced.)
29   (Not introduced.)
30   (Not introduced.)
31   8/13/2021 email from Mary Bone............. 140
32   (Not introduced.)
33   (Not introduced.)
34   (Not introduced.)
35   (Not introduced.)
36   (Not introduced.)
37   GKDA (Local)............................... 213
38   (Not introduced.)

Page 6

(Exhibits cont'd)

NO.  DESCRIPTION                                    PAGE
39   (Not introduced.)
40   (Not introduced.)
41   7/23/2021 Board Agenda.................... 96
41b  Video..................................... 194

Page 7

Page 8

10        THE REPORTER:  All right.  Thank you.
11   Counsel, you may proceed.
12        MARY ALICE BONE, Ph.D.,
13   having been duly sworn, testified as follows:

EXHIBIT I                    App. 401

MARY ALICE BONE, Ph.D.



**Page 9**

**Page 11**

19    Q. Are you present at this deposition today
20    pursuant to a subpoena?
21    A. Yes, ma'am.
22    Q. And did the subpoena compel you to present
23    yourself for a deposition and to provide testimony?
24    A. I believe that's what it said. I don't have it
25    in front of me.

**Page 10**

**Page 12**

1    Q. And you are not here voluntarily; are you?
2    A. No. I was given paperwork and asked to be
3    here.
4    Q. Okay. Are you a -- currently a trustee on
5    Round Rock ISD's Board of Trustees?
6    A. No.
7    Q. Were you previously a trustee on Round Rock
8    ISD's Board of Trustees?
9    A. Yes.
10    Q. When were you first elected?
11    A. November of 2020.
12    Q. And were you ever reelected?
13    A. No.
14    Q. What was your final date as a trustee of Round
15    Rock ISD?
16    A. That is actually unclear.
17    Q. Can you identify the month you were -- the last
18    -- last a trustee for Round Rock ISD?
19    A. November of 2024.
20    Q. So you were a Round Rock ISD trustee from
21    November 2020 through November 2024?
22    A. Yes.

**EXHIBIT I**                                    **App. 402**

MARY ALICE BONE, Ph.D.



19   Q.  Okay.  Were you on quarantine in late July
20   2021?
21       A.  In late -- yes.
22       Q.  And did you inform the board members and the
23   board counsel that you would be on quarantine, and the
24   first day you could even meet was July 28th, 2021?
25       A.  I don't recall.

MARY ALICE BONE, Ph.D.



93

18    Q.  Did you send an email to Trustee Weir, Trustee
19  Feller, and Doug Poneck that advised them that you
20  weren't available for meetings in person -- that you
21  were available for meetings in person starting
22  Wednesday, July 28th?
23    A.  Yes, in person.
24    Q.  Okay.  And did they talk to you about
25  scheduling a meeting, if you wanted to, potentially the

94

1  week -- the week of August 23rd?
2    A.  At some time later I believe there was an email
3  that stated something.

95

96

17    Q.  I'm going to show you what I've been -- marked
18  and added to the exhibits as Exhibit 41.  And I'll
19  represent to you that Exhibit 41 is a copy of a -- an
20  agenda for a July 23rd, 2021st called board meeting that
21  was canceled, but for the Round Rock ISD Board of
22  Trustees.  And on Exhibit 21 [sic], it indicates that
23  the meeting was a called board meeting to meet in closed
24  session; correct?
25      (Exhibit 41 introduced into the record.)

STOVALL REPORTING & VIDEO, INC.    (214) 695-2024

**EXHIBIT I**                    **App. 404**

MARY ALICE BONE, Ph.D.



**97**

1    A.  That is what it says.
2    Q.  And the subject says, "Pursuant to Texas
3  Government Code under Section 551.071, the Board will
4  meet in consultation with attorney regarding the
5  superintendent's contract."  Did I read that correctly?
6    A.  Yes.
7    Q.  Although it was cancelled, was there a board
8  meeting scheduled for July 23rd, 2021 to discuss the
9  allegations against Dr. Azaiez?
10    A.  I do not recall if this was posted.  I remember
11  -- I do recall this meeting, but I don't remember if it
12  was posted and then officially cancelled or if it never
13  -- there's times that we get agendas that they're never
14  officially scheduled meetings.  I do not recall if that
15  one was officially scheduled or not.
16    Q.  Do you know who authorized the scheduling of a
17  -- scheduling or posting for a July 23rd, 2021 board
18  meeting?
19    A.  It could be the president or superintendent.
20    Q.  Okay.  And the president at the time was Amy
21  Weir?
22    A.  Yes.

**99**

1    Q.  I -- do you have any reason to dispute that it
2  wasn't posted?
3    A.  No.

**98**

22    Q.  My question for you is, do you have any reason
23  to dispute that Exhibit 41, which I showed you, was an
24  agenda that was never posted?
25    A.  You just said that it was posted.

**100**

**EXHIBIT I**    **App. 405**

MARY ALICE BONE, Ph.D.



**105**

**107**

24    Q.  Is the board president the presiding officer
25    over board meetings?

**106**

18    Q.  And at regular board meetings, the public could
19    comment on -- in fall of -- in '21-2022, at regular
20    board meetings, the public could comment on any subject
21    matter; correct?
22    A.  That's what I recall.  Yes.
23    Q.  But at special board meetings, they were
24    limited to discuss the items on the agenda; correct?
25    A.  Yes.

**108**

1    A.  Yes.
2    Q.  And who on the Board makes the determination
3    regarding how to respond when a speaker exceeds their
4    allotted time for speaking?
5    A.  Usually the board president.
6    Q.  Okay.  Who makes the determination of when a
7    speaker is off topic when you're at a special or called
8    board meeting that has limited public comment?
9    A.  The board president.
10    Q.  Okay.  And does the Board vote regarding how
11    the board president should respond or is that just a
12    duty that is given to the board president?
13    A.  The Board can call the decision of the chair
14    and have a vote.
15    Q.  And under the procedure, if somebody moves --
16    let's just assume a board president decides that a
17    speaker's off topic.  Would a board member have to move,
18    and that be -- motion be seconded to a vote to either
19    proceed as the board president has decided or to go
20    against what the board president has decided?
21    A.  I'm not a parliamentarian, but I believe that
22    would be the process.

**EXHIBIT I**    **App. 406**



**109**

3    Q.  Okay.  Shortly after you began as a trustee in
4    the fall of 2020, around that time Dr. Steve Flores, who
5    was the superintendent, resigned and Danny Presley
6    became the -- Daniel Presley became the interim
7    superintendent; correct?
8        A.  Dr. Flores was the time before I became a
9    trustee.  Yes.
10   Q.  And then so shortly after you began, the Board
11   began a superintendent search; correct?
12       A.  It wasn't shortly, but we did a while after I
13   was elected.  Yes.
14   Q.  And Ray & Associates conducted the
15   superintendent search; correct?
16       A.  Yes.
17   Q.  How many candidates were interviewed by the
18   Board?
19       A.  I want to say we started with 11 or 14.
20   Q.  The Board interviewed all of those candidates?
21       A.  Oh, how many the Board interviewed?  I'm sorry.
22   I'm trying to remember.  I really don't recall.  We have
23   video -- we had video interviews with them, but I mean,
24   for sure we interviewed two at the end.  There was
25   multiple rounds.  I really don't recall how many we

**110**

1    personally interviewed.
2        Q.  Yeah.  And it -- it was during COVID and so
3    you're doing it via Zoom --
4        A.  Some of it was online.
5        Q.  Yeah.
6        A.  Yeah.
7        Q.  Was Dr. --
8        A.  And some of it was video.
9        Q.  Was Dr. Azaiez one of the candidates
10   interviewed?
11       A.  Yes.
12       Q.  Did the interviews occur in May 2021?
13       A.  The final interviews.
14       Q.  Okay.
15       A.  Yes.
16       Q.  Did each candidate receive the same questions?
17       A.  Yes.  I recall they did.
18       Q.  And were they written -- were the questions
19   written down?
20       A.  We submitted them prior.  Yes.
21       Q.  Who wrote the questions down?
22       A.  My recollection is that each trustee got to
23   submit questions, so the trustees.
24       Q.  And so who had copies of the questions?
25       A.  Ray & Associates, including Dr. Faltys who led

**111**

1    that, and all the trustees.
2        Q.  Anyone else to your knowledge?
3        A.  I'm sure our legal team.  And Dr. Presley may
4    have.  I don't recall him being involved, but -- but --
5    I don't recall.

**112**

7        Q.  And the Board voted for Dr. Azaiez to be the
8    lone finalist for superintendent by a vote of five in
9    favor and two against; correct?
10       A.  Yes.
11       Q.  And the two votes against Dr. Azaiez becoming
12   superintendent were you and Trustee Weston; correct?
13       A.  Yes.

MARY ALICE BONE, Ph.D.



125

127

2    Q. So generally Trustee Xiao, Vessa, Feller,

3    Weir -- or Landrum, Weir, and Harrison just didn't

4    believe Vanessa Aldrich's allegations against

5    Dr. Azaiez; is that correct?

6    A. That seemed to be what they would say. Yes.

7    Q. Do you recall anything else specifically other

8    than not believing the allegations?

9    A. I do not. That's been many years ago now.

126

128

**EXHIBIT I**                                    **App. 408**

MARY ALICE BONE, Ph.D.



18    Q. Okay. And individuals who wanted to make
19  public comment had to sign up to do so in advance of the
20  meeting; correct?
21    A. Yes.
22    Q. Okay. And if they hadn't signed up in advance
23  of the meeting under the procedures in BED (Local), were
24  they allowed to present public comment?
25    A. I don't recall them being able to. No.

MARY ALICE BONE, Ph.D.



**133**

**135**

1  ISD Board of Trustees was asked to -- to evaluate the
2  COVID safety protocols that would be implemented within
3  Round Rock ISD; correct?
4    A.  We were evaluating them all the time.  Yes.

**134**

5    Q.  And as a result of the rise of the Delta
6  variant of COVID-19, there were concerns raised by
7  certain county health professionals, including Travis
8  County health professionals and -- the people who ran
9  the health departments in Travis County and Williamson
10  County regarding precautions related to the Delta
11  variant?
12    A.  I remember that.
13    Q.  Okay.  Do you recall that in August of 2021 as
14  school -- I'm sorry.
15      At some point before fall of 2021, Governor
16  Abbott issued an executive order that banned school
17  districts from implementing mask requirements; correct?
18    A.  Yes, I remember him issuing that.
19    Q.  And then in the -- in the late summer of 2021,
20  around at the end of summer, right before school began
21  or at the beginning of school, some school districts
22  decided to have mask requirements even though it went
23  against the governor's executive order; correct?
24    A.  Correct.
25    Q.  Okay.  And in August of 2021, the Round Rock

**136**

9    Q.  Okay.  Was the regular board meeting for Round
10  Rock ISD's Board in August '21, did it occur on August
11  19th, 2021?
12    A.  Yes, it appears it did.
13    Q.  So just three days later after the August 16th
14  called -- called board meeting; correct?
15    A.  Correct.
16    Q.  And because the August 16th board meeting --
17  can you see the August 16th agenda now?
18    A.  I can.
19    Q.  Okay.  And because the August 16th board
20  meeting was a called board meeting, public comment under
21  policy was limited to items on the agenda; correct?
22    A.  Correct.
23    Q.  Okay.  And the items on the agenda for the
24  August 26th board meeting were -- there were two items
25  on the agenda; correct?

EXHIBIT I

App. 410

MARY ALICE BONE, Ph.D.



**137**

1    A.  It appears that way.  I'd have to look at the
2  whole agenda to -- to verify, but it looks like there's
3  two under D.  Yes, there's two.  Thank you.
4    Q.  And the first item on the -- on the board
5  agenda for August 16th, 2021 was "Adoption of resolution
6  for employee COVID-19 positive extended leave during
7  COVID-19 pandemic."  Did I read that correctly?
8    A.  You did.

**138**

20    Q.  And the other item in the agenda was "Fall 2021
21  COVID-19 health and safety protocols."  Did I read that
22  correctly?
23    A.  Yes.
24    Q.  And was that -- although there were a lot of
25  safety protocols, was one of the emphasis on student

**139**

1  masks?
2    A.  I would assume.  At that point, masking was
3  what I recall being the largest topic with COVID-19.
21    Q.  I'm handing you what's marked as Exhibit -- or
22  that's been marked as Exhibit 31.  And again, this is a
23  document that you produced to us, I think.  Let me see
24  if I can find the number at the bottom.  Or somebody
25  produced to us, you or Trustee Weston.  And it appears

**140**

1  to be something that you wrote after Danielle Weston
2  sent an email to fellow elected republicans in
3  Williamson County in the city of Round Rock.  Do you
4  recall sending the email that's in Exhibit 31?
5    (Exhibit 31 introduced into the record.)
6    A.  I -- I do recall sending that.
7    Q.  Okay.  And this was prior to the August 16th
8  board meeting; correct?
9    A.  I would have to look at the date.  It's been
10  years, and those are just a few days.
11    Q.  Okay.  It's August 13th.
12    A.  Yep.  So that would be prior.  Yes.
13    Q.  And so Friday August 13th, you send this email;
14  and Monday the 16th, there's this called board meeting.
15  Correct?
16    A.  Yes.
17    Q.  Now I'm going to go down and look at Trustee
18  Weston's email.  She sent the email on August 12th at
19  10:00 p.m.; correct?
20    A.  That is what it says.  Yes.
21    Q.  And she addressed it to "Fellow elected
22  republicans in Williamson County in city of Round Rock."
23  Correct?
24    A.  Yes.
25    Q.  And she says, "I write to" -- "to you to inform

**EXHIBIT I**                    **App. 411**

MARY ALICE BONE, Ph.D.

141

1  you that our school district is under attack from
2  individuals in pursuit of lawlessness.  Trustee Mary
3  Bone and I need reenforcements.  We need your help.
4        No doubt you have read that Dallas ISD,
5  Houston ISD, and Austin ISD have decided to defy
6  Governor" -- "Gov. Abbott's executive order GA-38, dated
7  29 Jul 2021, which prohibits any government entity from
8  imposing a mask requirement.  As you know, executive
9  orders have the force of law.
10       This morning at 9:30 a.m., Mary and I received
11 a notice that a RRISD Board of Trustees meeting has been
12 called by Board President Amy Weir for 5:30 p.m. on
13 Monday, 16 August 2021.  The email we received states
14 the following as the reason for the meeting:  'Due to
15 the conflicting mandates by the stake [sic]" -- "state
16 and local governments and the TROs that are being fought
17 in court right now, we will need to have a meeting on
18 COVID'" -- "'on COVID protocols.'"  Have I read that
19 correct so far?
20    A.  Yes.
21    Q.  "We have no" -- then she continues, "We have no
22 doubt that this meeting has been set to call for a vote
23 to join those rogue school districts and impose a mask
24 mandate in Round Rock ISD, which sits in your city and
25 county.  I am not aware of any other time that our

142

1  School District or City or County Government has called
2  a meeting to contemplate violating the law.  Mary and I
3  cannot properly address this alone.  We need all hands
4  on deck.  We need you, and so do our students and
5  community."  Did I read that correctly?
6     A.  Yes.
7     Q.  Okay.  At the -- as of August 12th, when you
8  received the email, did you believe that there was no
9  doubt that the August 16th called board meeting was set
10 to call for a vote to impose a mask mandate in Round
11 Rock ISD?
12    A.  I honestly don't remember what I thought at the
13 time.  That appears to be what Danielle thought.
14    Q.  Okay.  It says, "Interestingly, the posted
15 agenda item for the meeting uses this vague word" --
16 "wording, 'Fall 2021 COVID-19 health and safety
17 protocols.'  The item is posted such that the Board is
18 empowered to take action to vote on a mask mandate.  I
19 have attached a screenshot of the agenda to this email."
20 Did I read that correctly?
21    A.  Yes.
22    Q.  Okay.  "We need you to email the School Board
23 and Superintendent and share your thoughts on this.  We
24 need you to alert the media.  We need you to show up to
25 the meeting and explain the importance of lawful

143

1  governance to the trustees during public comments.  We
2  also need your help in preparing for how to move forward
3  in that event" -- "in the event that a majority (four of
4  seven) trustees vote to violate the law and unleash
5  chaos in our city and county.  The Travis County judge
6  and Austin mayor have decided to fuel the chaos and have
7  both issued their own mask mandates for schools.  Nine
8  of 55 RRISD campuses are in those jurisdictions.  Those
9  elected leaders have stepped forward to support the
10 unlawful mask mandate put forward by AISD.  Those
11 elected officials are now on the field and fully
12 participating."  Did I read that correctly?
13    A.  Yes.  Yes.
14    Q.  Okay.  And then it concludes in the last two
15 paragraphs, "For reasons unknown to Mary and I, RRISD
16 has declined to pursue the more prudent path that
17 Leander ISD, Georgetown ISDs and Pflugerville ISD have
18 chosen.  All of those districts have wisely issued
19 statements that they will be abiding by Governor
20 Abbott's executive order and that masks will be optional
21 in their school districts.  None of them have called for
22 a meeting on the subject."  Correct?
23    A.  Yes.
24    Q.  Okay.  And then you responded to Trustee
25 Weston's email and copied the individuals she had

144

1  initially copied on her email; correct?
2     A.  It appears that way.  Yes.
3     Q.  And the email is titled "All hands on deck."
4  Correct?
5     A.  Yes.
6     Q.  Okay.  And the email was sent to Bill Gravell.
7  I may be pronouncing this wrong.
8     A.  Yeah, that's Bill Gravell.  Yes.
9     Q.  Okay.  And who is Bill Gravell?
10    A.  He was the county judge for Williamson County
11 at the time.
12    Q.  Okay.  And Cynthia Long.  And who is Cynthia
13 Long?
14    A.  She was a commissioner of Williamson County.
15    Q.  And who is C.Morgan@roundrocktexas.gov?
16    A.  He is the mayor of Round Rock.
17    Q.  And Commissioner Precinct 3 for Williamson
18 County.  Who was the commissioner of Precinct -- who was
19 the Commissioner of Precinct 3 for Williamson County?
20    A.  I don't know which one is three.
21    Q.  Doyle Hobbs.  That's Dee Hobbs; correct?
22    A.  That is correct.
23    Q.  And who is Doyle Hobbs?
24    A.  He is the county attorney for Williamson
25 County.

EXHIBIT I                           App. 412

MARY ALICE BONE, Ph.D.

145

1    Q. Kristinstevens@roundrocktexas.gov.  Who is
2  Kristin Stevens?
3       A. She is a city council member for Round Rock.
4    Q. And who is Matt Baker?
5       A. He is also a city council member at Round Rock.
6    Q. Who is Michelle Ly or Ly?
7       A. She is -- Ly.  She is a city council member at
8  Round Rock.
9    Q. Who is Paul Leal?
10      A. He -- Paul Leal is a constable in Williamson
11  County.
12    Q. Who is Rene Flores?
13      A. He's also a council member in Round Rock.
14    Q. And who is Russ Boles?
15      A. He is a county commissioner in Williamson
16  County.
17    Q. And in your responsive email, you also seek the
18  help from these elected officials to help the Round Rock
19  ISD students; correct?
20      A. Correct.
21    Q. And you also stated, "Just as" -- you state,
22  "Just as the political grandstanding the mayor of Austin
23  and judge stepped up to help AISD, we need you to step
24  up to help RRISD families."  Is that correct?
25      A. That is correct.

146

1    Q. In the closing of your email, you state,
2  "Finally, I ask in advance that you understand the
3  urgency and seriousness of this situation, not for
4  Danielle and I, but for our families."  On Sep- --
5  August 13th, why did you think this was an urgent
6  matter?
7       A. We had families that had been reaching out to
8  us that their students couldn't be masked, they needed
9  to be back in school.  These were students, you know --
10  you know, some families worried about suicide if their
11  kids weren't going to return, if they had to wear masks.
12  It was -- the stories were horrific, and so it was
13  urgent.
14    Q. Were the emails in Aug- --- August 31st -- wait
15  a minute.  Sorry.
16       Were the emails from you and Trustee Weston in
17  Exhibit 31, were they precipitated by the notice of the
18  August 16th called board meeting?
19      A. I don't know what -- why Danielle started her
20  email.  I just responded.
21    Q. Okay.  Was it urgent on August 13th to you
22  because you knew decisions were -- could be made at the
23  August 16th board meeting?
24      A. I would assume so.  That's the only place that
25  we can make decisions as the Board is in a board

147

1  meeting.
2    Q. Did you believe that there was going to be
3  action taken potentially at the August 16th board
4  meeting regarding a mask mandate at Round Rock ISD?
5       A. Just a discussion of possible actions, so I
6  don't remember what I was thinking.  But it could have
7  been.
8    Q. And was there a lot of discussion and public
9  comment at the August 16th board meeting regarding a
10  mask mandate?
11      A. If I recall, I believe there was.
24    Q. Were you aware that Jeremy Story was going to
25  be at the August 16th board meeting?

148

1       A. No.
2    Q. Did -- Jeremy Story spoke during public comment
3  at the August 16th board meeting; correct?
4       A. That is correct.
5    Q. And prior to Mr. Story speaking in public
6  comment, Trustee Weir told him that his comment was
7  limited to matters on the agenda; correct?
8       A. I do recall her specifically telling only him
9  that.  Yes.

EXHIBIT I

App. 413

MARY ALICE BONE, Ph.D.



18    Q. (By Ms. Long)  Mr. Story was allowed to proceed
19    with his public comment to talk about the executive
20    order and the resolution regarding COVID health and
21    safety protocols; correct -- when he was talking about
22    those issues; correct?
23    A.  He started to talk about them, yes.
24    Q.  Okay.  And when he brought up the protective
25    order, Trustee Weir interrupted him and said that is not

MARY ALICE BONE, Ph.D.



153

1  on the agenda; correct?
2      A.  That is what I heard.  Yes.
3      Q.  Okay.  When Trustee Weir advised that that was
4  not a matter on the agenda, did Jeremy Story start --
5  stop speaking?
6      A.  I couldn't tell.  It looked like they were
7  talking over each other and somebody was talking over
8  Trustee Weir even.
9      Q.  So Mr. Story was talking over Trustee Weir and
10  Trustee Weir was talking over Mr. Story; correct?
11      A.  It appeared that way.  Yes.

16      Q.  And even as the officers were escorting him
17  from the meeting room, you could still hear Mr. Story
18  speaking in the background; correct?
19      A.  Yes, I remember him talking.
20      Q.  And you could hear him on that recording even
21  though he was no longer at the microphone; correct?
22      A.  I do recall that.  Yes.

156

5      Q.  Did Trustee Weir ever say anything to you that
6  the reason she had him removed from the meeting was
7  because he was speaking out about Dr. Azaiez and the
8  allegations against him?
9      A.  I don't think she ever stated that exactly, no.
10      Q.  Anything like that?
11      A.  I would say there was lines of speech that
12  could be per- -- that I would take that way.  Yes.
13      Q.  Okay.  What are they?
14      A.  Going back to July where she didn't want this
15  -- she did not want this discussed in public.
16      Q.  And that was --
17      A.  And that --
18      Q.  - Jul- -- okay.  Going back to July.  That was
19  your --
20      A.  Yeah.
21      Q.  -- your July phone conference with her;
22  correct?
23      A.  Yep.
24      Q.  Which occurred on July 13th; correct?
25      A.  Correct.

EXHIBIT I                    App. 415

**MARY ALICE BONE, Ph.D.**

157

1  Q. After you talked to Vanessa Aldrich; correct?
2  A. Correct.
3  Q. And that was before Jeremy Story had sent any
4  email to the Board; correct?
5  A. Correct.

14  Q. Okay. Anything that she specifically said that
15  said, "This is the reason I asked Mr. Story to be
16  removed from the August 16th board meeting"?
17  A. No. She never said, "This is the reason why."
18  No.

158

12  Q. (By Ms. Long) Did you -- and who actually
13  removed Mr. Story from the board meeting?
14  A. I'm not -- I don't know their names.
15  Q. Okay. One of them was Frank Pontillo, Round
16  Rock ISD Police Officer Frank Pontillo. Have you ever
17  spoken with Frank Pontillo?
18  A. I would not know if I have. I just know most
19  of the officers, not by their first names.
20  Q. Have you ever spoken to Frank Pontillo
21  regarding Jeremy Story?
22  A. Not that I recall. If I did, I wouldn't have
23  known that it was him.
24  Q. Did you ever talk to Frank Pontillo about the
25  removal of Jeremy Story from the August 16th board

159

1  meeting?
2  A. No.
3  Q. Do -- are -- the other officer was Sergeant
4  Milton Pope. Have you ever spoken to Sergeant Pope?
5  A. I've probably talked to Sergeant Pope before
6  and after.
7  Q. Do you remember ever talking to Sergeant Pope
8  about Mr. Story?
9  A. I do not.
10  Q. Do you remember ever talking to Sergeant Pope
11  about Mr. Story's removal from the August 16th board
12  meeting?
13  A. I do not recall talking to them about it.
14  Q. Okay. Do you have any reason to believe that
15  Frank Pontillo was personally upset because Mr. Story
16  was raising allegations against Dr. Azaiez?
17  A. I would have no reason.
18  Q. Do you have any reason to believe that Frank
19  Pontillo was motivated by Mr. Story's past speech
20  regarding Dr. Azaiez when he removed him from the August
21  16th board meeting?
22  A. I wouldn't have a reason.
23  Q. Do you have any reason to believe that Sergeant
24  Pope had any personal animosity towards Jeremy Story
25  because of the allegations he was making against

160

1  Dr. Azaiez?
2  A. I wouldn't have any reason.
3  Q. Would you have any reason to believe that
4  Sergeant Pope was motivated by any animus regarding
5  Mr. Story's speech when he removed Jeremy Story from the
6  August 16th board meeting?
7  A. I wouldn't have a reason.
8  Q. Okay. Did you ever speak to former Chief
9  Jeffrey -- former Round Rock ISD Police Chief Jeff
10  Yarbrough regarding Jeremy Story?
11  A. I don't recall talking to him about it.
12  Q. Do you ever -- did you ever speak to Chief
13  Yarbrough about Jeremy Story's removal from the August
14  16th board meeting?
15  A. I don't recall talking to him about it.
16  Q. Do you have any reason to believe that Chief
17  Yarbrough had, you know, any personal animosity towards
18  Jeremy Story because of the allegations he was making
19  against Dr. Azaiez?
20  A. I don't have a reason.
21  Q. Okay. Do you have any reason to believe that
22  Chief Yarbrough was trying to retal- -- he himself was
23  trying to retaliate against Mr. Yarbrough with respect
24  to any issues regarding removal of Jeremy Story from the
25  August 16th board meeting?

**EXHIBIT I**          **App. 416**



161

1   A. Can you repeat that? I'm sorry. I think I got
2   mixed up --
3       Q. I know.
4       A. -- on the names. Sorry.
5       Q. So do you think Chief Yarbrough, his -- any of
6   his actions towards Jeremy Story on August 16th, 2021,
7   including any involvement in the removal from the August
8   16th board meeting was motivated for Chief Yarbrough by
9   Mr. Story's prior speech or allegations against
10  Dr. Azaiez?
11      A. I -- I wouldn't know.
12      Q. Okay. And when Trustee Weir made -- gave any
13  directives regarding Jeremy Story, was -- was there any
14  motion by the Board -- by anyone on the Board to
15  challenge that decision?
16      A. We didn't have time.
17      Q. Did you or Trustee Weston ever make a motion?
18      A. I didn't have time to make a motion.
19      Q. So you didn't?
20      A. So I did not.
21      Q. Okay. Did you ever speak with Dr. Azaiez
22  regarding Jeremy Story's removal from the August 16th
23  board meeting?
24      A. I think we had a closed session maybe one time,
25  but we didn't really even -- I don't recall talking

162

1   about it. I think we talked about the case, but that's
2   it.
3       Q. Did Dr. -- Dr. Azaiez ever mention any type of
4   directives or instructions he had given the police
5   regarding Mr. Story's removal from the August 16th board
6   meeting?
7       A. No.

163

18      Q. Did Trustee Weir advise anyone else at the
19  August 16th meeting that the items that they were
20  speaking about were not on the agenda?
21      A. If I recall, she may have redirected people to
22  get back on topic.

164

MARY ALICE BONE, Ph.D.



165

167

166

168

7    Q. (By Ms. Long)  Remember when we looked at the
8    July 23rd, 2021 agenda where there was going to be
9    discussion about the allegations, and it specifically
10   had an item for closed session to discuss Dr. Azaiez's
11   contract; correct?
12   A. Correct.
13   Q. Was there a similar agenda item or closed
14   session item on the August 16th board meeting?
15   A. No.
16   Q. Other than the text within the resolution --
17   which was an attachment, that's not an agenda item,
18   that's a document -- was there an agenda item for the
19   August 16th board meeting that talked about Dr. Azaiez's
20   employment with Richards- -- with Round Rock ISD?
21   A. I don't recall there being one.  No.
22   Q. Was there an agenda item on the August 16th
23   board meeting regarding evaluation of the
24   superintendent?
25   A. No.

EXHIBIT I    App. 418

MARY ALICE BONE, Ph.D.

**169**

1     Q. Was there an agenda item on the August 16th
2 board meeting regarding the superintendent's contract?
3     A. No.
4     Q. Was there any -- could the Board have voted
5 based upon the agenda for the August 16th board meeting
6 to do anything with respect to Dr. Azaiez's employment
7 at Round Rock ISD?
8     A. Yes.
9     Q. On August 16th without posting anything --
10 okay.
11     A. We -- we could have voted to post something on
12 it about his employment. Yes.
13     Q. For in the future; correct?
14     A. Correct. Which is what we have to do. Yes.
15     Q. Yes. But you could not actually discuss or
16 take any action regarding Dr. Azaiez at this August 16th
17 board meeting based upon the posted agenda; correct?
18     A. And then, just so you're clear, people
19 have told us that putting something on the agenda is an
20 action. So that's why when you say "action," I take it
21 differently.

**170**

1     Q. (By Ms. Long) So based upon the posted agenda
2 for the August 16th board meeting, the Board could not
3 discuss or vote to take any action other than setting a
4 meeting to discuss it in the future regarding
5 Dr. Azaiez's employment, performance, or contract;
6 correct?
7     A. Correct. Yes.
8     Q. That's because an item was not posted on the
9 agenda for that; correct?
10     A. Correct.

**171**

10     Q. (By Ms. Long) Dr. Bone, before the August 16th
11 board meeting, do you know if Dr. Azaiez was aware that
12 Jeremy Story was emailing board members regarding
13 Vanessa Aldrich's allegations against Dr. Azaiez?
14     A. Yes.
15     Q. Okay. How do you know that?
16     A. There was the press release, there was emails
17 going back and forth, there was the meeting that you
18 referenced -- the July 23rd meeting with his contract,
19 which had been scheduled as you pointed out. So he
20 would had to have known.
21     Q. And he knew about the allegations being made.
22 Did he know about Jeremy Story's involvement in those
23 allegations?
24     A. Oh, I'm -- I'm sorry. I -- you would have to
25 ask him. I don't know what he knew.

**172**

1     Q. Okay. So as you -- just to clarify, as you sit
2 here today, you don't know if Dr. Azaiez actually knew
3 that Jeremy Story was sending emails or advising people
4 about Vanessa Aldrich's allegations against him or the
5 protective order prior to the August 16th board meeting?
6     A. I would have to review if -- I don't remember
7 if he was on Jeremy's email that was sent to us, the one
8 that I recall.
9     Q. But the only way it would be is if he copied
10 him on the emails?
11     A. If he copied him or if one of the trustees
12 would have forwarded it and possibly copied all the
13 other trustees. The -- well, emails go back and forth
14 like crazy.



**EXHIBIT I**          **App. 419**

173

2    Q.  You and me both.  We'll just -- I just want to
3  make sure it's all clear.  So the August 19th board
4  meeting was a regular board meeting; correct?
5    A.  Yes, ma'am.  Thank you.
6    Q.  You're welcome.  And that meant that people
7  that were signed up to speak in public comment could
8  speak on any matter even if it was not an agenda item;
9  correct?
10    A.  Correct.
11    Q.  Okay.  And I'm going to show you the
12  12-minute-and-50 -- starting with the
13  12-minute-and-58-second mark of the video of the August
14  19th, 2021 board meeting.  And is that an image of board
15  president at the time, Amy Weir?
16    A.  Yes, ma'am.
17    Q.  Okay.  And so it appears she was present at the
18  August 19th, 2021 board meeting; correct?
19    A.  Yes.
20    Q.  And if the board president is present and
21  doesn't otherwise recuse themself, do they serve as the
22  presiding officer for the board meeting?
23    A.  Yes.
24    Q.  Okay.
25        (Recording playing.)

174

1    Q.  And she announced that the next speaker would
2  be Dustin Clark; correct?
3    A.  Correct.
4    Q.  And I'll represent to you that we've talked
5  about Mr. Clark some today.  He used to be a plaintiff
6  in this lawsuit.  Okay?
7    A.  Okay.
8        (Recording playing.)
9    Q.  (By Ms. Long)  Okay.  So in the August 19th
10  board meeting, the regular board meeting, Dustin Clark
11  was able to speak for three minutes about the
12  allegations against Dr. Azaiez, the restraining order,
13  and his belief that the trustees were making inaccurate
14  statements regarding that information; correct?
15    A.  Correct.
16    Q.  And he was not interrupted by any member of the
17  Board of Trustees; correct?
18    A.  Correct.
19    Q.  And he was not escorted from the meeting room;
20  correct?
21    A.  Correct.
22    Q.  And this was just three days after the August
23  16th board meeting; correct?
24    A.  Correct.
25    Q.  And then right after Dustin Clark, Board

175

1    Q.  President Weir indicates that Jeremy Story is the next
2  public commenter; correct?
3    A.  I don't know.  I -- didn't lis- -- I didn't
4  hear that.
5        (Recording playing.)
6    A.  I don't have sound.
7    Q.  And that is Jeremy Story; correct?
8    A.  That is correct.
9    Q.  Do you have sound now?
10        (Recording playing.)
11    A.  Yes.
12        (Recording playing.)
13    Q.  And were you able to view that?
14    A.  I was.
15    Q.  And Dustin Clark and then Jeremy Story spoke
16  back to back at the August 19th board meeting; correct?
17    A.  Yes, it appears that way.
18    Q.  And Jeremy Story was able to speak for the
19  entire three minutes until -- or the entire time until
20  his time expired; correct?
21    A.  Yes.
22    Q.  And he was able to speak about the restraining
23  order against Dr. Azaiez; correct?
24    A.  Yes.
25    Q.  And he was able to talk without interruption

176

1  about the allegations against Dr. Azaiez, including an
2  alleged assault; correct?
3    A.  Correct.
4    Q.  Okay.  And -- and that -- and at a regular
5  board meeting, you can make comments on any matter not
6  on the agenda; correct?  Or any matter, even if it's not
7  on the agenda item; correct?
8    A.  No.  There are still limits to speech.
9    Q.  Okay.  Well, you can't -- there's personnel
10  matter that should be in closed session, you know,
11  educational rights for students that should be closed
12  session, certain threats should be in -- you know,
13  cannot be count --
14    A.  Yes, ma'am.
15    Q.  But generally, you can talk on topics that are
16  not on the agenda; correct?
17    A.  Correct.
18    Q.  Okay.  And Mr. Story was afforded that
19  opportunity at the August 19th, 2021 board meeting;
20  correct?
21    A.  I haven't fully reviewed that agenda.  I don't
22  know if that was an on-topic or off-topic item.
23    Q.  But he was able to speak for his entire time at
24  the --
25    A.  Yes.

EXHIBIT I                          App. 420

MARY ALICE BONE, Ph.D.



177

1    Q. -- regular board meeting; correct?
2    A. Yes, ma'am.
3    Q. Okay. Just three days after he was stopped
4 because President Weir said it was not an agenda on the
5 -- a topic on the August 16th, 2021 agenda; correct?
6    A. I -- yes.

178

1    Q. Okay. Do you know -- and you may not know --
2 do you know if the governor's executive order regarding
3 open meetings had any discussion of seating capacity
4 limitations?
5    A. I do not recall that it did.
6    Q. Okay. Did the executive order, you know, that
7 allowed for certain allowances under the Texas Open
8 Meetings Act discuss social distancing?
9    A. I do not recall that it had that.
10    Q. Under -- and I know you're not a lawyer, I'm
11 just general -- but you're trained as a board member
12 regarding the Texas Open Meetings Act; correct?
13    A. Correct.
14    Q. Okay. So based on your training, is there
15 anything under the Texas Open Meetings Act that requires
16 a governmental entity to hold a meeting in a space that
17 allows for a particular seeing capacity?
18    A. Not that I know of.

EXHIBIT I                    App. 421



197

198

199

1    Q.  Okay.  Did you ever speak to doc- -- Detective
2    Lauren Griffith regarding Jeremy Story?
3        A.  I did not.
4        Q.  Did you ever have any conversate- -- did you
5    ever have any conversations with Detective Lauren
6    Griffith about Mr. Story's arrest?
7        A.  I do not recall any conversations with her.
8        Q.  Do you have -- do you know if -- if detect- --
9    sorry.
10           Have you ever met Detective Lauren Griffith?
11       A.  I have met her just in the board room.
12       Q.  Have you had any specific interactions with
13   Detective Lauren Griffith?
14       A.  I can't recall specific interactions, but we do
15   lots of tours of schools, and officers are there.  It's
16   very possible that I interacted with her, but I just
17   don't recall specific interactions.
18       Q.  Are you aware of any interactions that
19   Detective Lauren Griffith had with Jeremy Story?
20       A.  I am not.
21       Q.  Do you know if Detective Lauren Griffith had
22   any knowledge about Jeremy Story's involvement in any
23   publication of the allegations against Dr. Azaiez or the
24   protective order issued against him?
25       A.  I don't know what she knew.  I don't have any

200

1    information.
2        Q.  Do you have any reason to believe that
3    Detective Lauren Griffith bore any personal animus
4    against Jeremy Story?
5        A.  I don't have any reasons.
6        Q.  Do you have any reason to believe that
7    Detective Lauren Griffith engaged any in retaliation
8    against Jeremy Story regarding any prior speech he had
9    engaged in?
10       A.  I don't have any knowledge.
11       Q.  Okay.  Do you have any reason to believe that
12   Detective Lauren Griffith herself would falsify
13   information in a warrant affidavit for Mr. Story's
14   arrest?
15       A.  I don't have any information.
16       Q.  Do you have any reason to believe that Sergeant
17   Milton Pope, the African American police officer we saw
18   in the video, had any personal animus towards Jeremy
19   Story?
20       A.  I don't have any reason to believe that.
21       Q.  Other than the fact that Sergeant -- we talked
22   previously, Sergeant Pope was one of the people who
23   escorted Mr. Story out from the Sep- -- August 16th
24   board meeting; correct?
25       A.  That is what you've told me.

MARY ALICE BONE, Ph.D.



201

```
 1    Q.  Okay.
 2    A.  Yeah.
 3    Q.  And when we talked about that -- and I don't
 4  want to mischaracterize your testimony -- but I believe
 5  you said you, at -- at the time of the August 16th board
 6  meeting, you didn't have -- you know, you didn't know or
 7  have reason to believe that Sergeant Pope knew about
 8  Mr. -- before that board meeting knew about Mr. Story's
 9  involvement in -- in discussing allegations against
10  Dr. Azaiez or the protective order; correct?
11    A.  Correct.  I don't have any knowledge to that.
12    Q.  And other than the fact that he heard Mr. Story
13  speak at the August 16th board meeting, do you think
14  that -- do you have any reason to believe that Sergeant
15  Pope had any further information regarding Mr. Story's
16  speech regarding allegations against Dr. Azaiez between
17  the August 16th board meeting and the September 14th
18  board meeting?
19    A.  I don't know what he would have known.
20    Q.  Okay.  And Sergeant Pope allegedly provided
21  Detective Lauren Griffith with information about the
22  August 16th board meeting for use in the warrant
23  affidavit, those are one -- some of the allegations in
24  the lawsuit.  Do you have any reason to believe that
25  Sergeant Pope would intentionally falsify allegations
```

202

```
 1  against Mr. Story?
 2    A.  I don't have any reason why he would do that.
```

203

```
15    Q.  Did you ever have any conversations with anyone
16  at Williamson County about Mr. Story's arrest?
17    A.  I do not recall having any conversations.
18    Q.  Are you aware of any communications between any
19  Round Rock ISD trustee and Williamson County about
20  Mr. Story's arrest?
21    A.  I do not recall anybody having conversations.
22    Q.  Are you aware of any communications between
23  Dr. Azaiez and Williamson County about Mr. Story's
24  arrest?
25    A.  I do not know of any.
```

204

**EXHIBIT I**                    **App. 423**

MARY ALICE BONE, Ph.D.



2    Q.  Okay.  Do you know if anyone from Round Rock
3    ISD, either a trustee, superintendent, or an employee,
4    exerted any influence over anyone at Williamson County
5    to pressure them into arresting Jeremy Story?
6    A.  I do not have knowledge of that.
7    Q.  Do you know if anyone at -- do you know if
8    anyone from Round Rock ISD ever met or spoke with the
9    magistrate judge who signed the arrest warrant?
10    A.  I don't have knowledge of that other than the
11    rumor.

**EXHIBIT I**                              **App. 424**

**MARY ALICE BONE, Ph.D.**



277

278

1     IN THE UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF TEXAS
2         AUSTIN DIVISION
 JEREMY STORY,      *
3    Plaintiff,  *
            *
4  v.       * CIVIL ACTION NO.
        * 1:22-cv-00448-DAE
5        *
 SUPERINTENDENT HAFEDH  *
6 AZAIEZ, TRUSTEES AMBER  *
 FELLER, TIFFANIE HARRISON, *
7 AMY WEIR, JUN XIAO, CORY  *
 VESSA; OFFICERS JEFFREY  *
8 YARBROUGH, JAMES WILLIBY, *
 DEBORAH GRIFFITH, MILTON  *
9 POPE, FRANK PONTILLO, RON *
 COLE, CHIEF DENNIS WEINER, *
10 and CARLA AMACHER,    *
 individually, and ROUND   *
11 ROCK INDEP. SCHOOL    *
 DISTRICT,      *
12   Defendants.   *
13
      REPORTER'S CERTIFICATION
14    DEPOSITION OF MARY ALICE BONE, Ph.D.
        MAY 6, 2025
15
16    I, Kristy Owen, Certified Shorthand Reporter, duly
17 qualified in and for the State of Texas, do hereby
18 certify to the following:
19    That the witness, MARY ALICE BONE, Ph.D., was duly
20 sworn by the officer and that the transcript of the oral
21 deposition is a true record of the testimony given by
22 the witness;
23    I further certify that pursuant to FRCP Rule
24 30(f)(1) that the signature of the deponent:
25    _X_ was requested by the deponent or a party before

279

1 the completion of the deposition and that the signature
2 is to be before any notary public and returned within 30
3 days from date of receipt of the transcript.  If
4 returned, the attached Changes and Signature Page
5 contains any changes and the reasons therefor:
6    __ was not requested by the deponent or a party
7 before the completion of the deposition.
8    I further certify that I am neither counsel for,
9 related to, nor employed by any of the parties or
10 attorneys in the action in which this proceeding was
11 taken, and further that I am not financially or
12 otherwise interested in the outcome of the action.
13
14    Certified to by me this 27th day of May, 2025.
15
16
17
18    KRISTY OWEN, RPR, Texas CSR 10790
    RPR Expiration Date:  9-30-2026
19    CSR Expiration Date:  7-31-2026
20    STOVALL REPORTING & VIDEO, INC.
    Firm Registration No. 10259
21    1414 Creekview Drive
    Lewisville, Texas  75067
22    Phone:  (214) 695-2024
23
24
25

**EXHIBIT I**

**App. 425**

EXHIBIT

Bone Ex. 31

**From:** Doyle Hobbs
**To:** Stephanie Lloyd; Peggy Vasquez; Corby Holcomb
**Subject:** FW: All Hands on Deck
**Date:** Friday, August 13, 2021 1:24:26 PM
**Attachments:** image_6487327.JPG

---

**From:** Mary Bone <mary_bone@roundrockisd.org>
**Sent:** Friday, August 13, 2021 1:04 PM
**To:** Danielle Weston <danielle_weston@roundrockisd.org>
**Cc:** Bill Gravell <bgravell@wilco.org>; Cynthia Long <clong@wilco.org>; cmorgan@roundrocktexas.gov; Commissioner Pct 3 <comm3@wilco.org>; Doyle Hobbs <DHobbs@wilco.org>; kristinstevens@roundrocktexas.gov; mattbaker@roundrocktexas.gov; michelley@roundrocktexas.gov; Paul Leal <paul.leal@wilco.org>; reneflores@roundrocktexas.gov; Russ Boles <russ.boles@wilco.org>
**Subject:** Re: All Hands on Deck

**EXTERNAL email: Exercise caution when opening.**

Danielle,

Thank you for the articulate email that sums up what we need from our fellow elected officials.

Elected officials,

Danielle and I need your HELP to protect the almost over 46,000 students of Round Rock ISD. These students and their families are also constituents of those of you we have copied on this email. These students and families also need your help. Just as the political grandstanding the Mayor of Austin and Judge stepped up to help AISD we need YOU to step up to help RRISD families.

ALL we need is public statements of assurance that the City of Round Rock and Williamson County stand with the Texas law and Governor of Texas, this seems like a simple thing to ask. We need to know that our elected City and County officials will use all taxpayer resources to protect our families from lawlessness.

We understand school politics are not glamorous but we are on the frontlines of protecting the most treasured population in our community, our children. If our elected officials will not stand up with us to protect the rights of this population then what will you stand up for?

We attend many meetings where elected officials over and over again state that School Board Trustees are on the front lines, well we are needing to call up your help to support the front lines in this issue. We asked some of you in the spring to help with issues and rights of students and didn't receive any help. This time I will not forget and stay silent about those that choose to help and those that use excuses or stay silent about helping children from lawlessness. ALL we are asking is for you, elected officials, to speak up that you are going to use all your authority to uphold the current Texas law and stand with our Texas Governor and Attorney General.



**EXHIBIT I**                    **App. 426**

If you have any questions please don't hesitate to reach out. I know I have met many of you and look forward to working and meeting those of you I haven't had the opportunity to meet. We need your help. Please don't fail our families and students by staying silent. Collaborative government is not only expected but demanded by our constituents, this is a great time to show our community how we can work together for their best interest.

Finally I ask in advance that you understand the urgency and seriousness of this situation, not for Danielle and I, but for our families. I pray the tone of this email is not too harsh and that your hearts are open to the pure intentions and emotion that this email was written with to protect our students. Our shared constituents are needing us to work together and pleading for our help, the future of our City and County hinge on our children's education.

Best Regards,
Mary Bone
███████

On Thu, Aug 12, 2021 at 10:00 PM Danielle Weston <danielle_weston@roundrockisd.org> wrote:

Fellow elected Republicans in Williamson County and the City of Round Rock,

I write to you to inform you that our school district is under attack from individuals in pursuit of lawlessness. Trustee Mary Bone and I need reinforcements. We need your help.

No doubt you have read that Dallas ISD, Houston ISD and Austin ISD have decided to defy Gov Abbott's executive order GA-38 (dated 29 Jul 2021) which prohibits any government entity from imposing a mask requirement. As you know, executive orders have the force of law.

This morning at 9:30 AM, Mary and I received a notice that a RRISD board of trustees meeting has been called by board president, Amy Weir, for 5:30 PM on Monday, 16 August 2021. The email we received states the following as the reason for the meeting:
"Due to the conflicting mandates by the state and local governments and the TROs that are being fought in court right now we will need to have a meeting on COVID protocols."

We have no doubt that this meeting has been set to call for a vote to join those rogue school districts and impose a mask mandate in Round Rock ISD which sits in your city and county. I am not aware of any other time that our school district or city or county government has called a meeting to contemplate violating the law. Mary and I cannot properly address this alone. We need all hands on deck.
We need you and so do our students and community.

Interestingly, the posted agenda item for the meeting uses this vague wording "Fall 2021 Covid-19 Health and Safety Protocols." The item is posted such that the board is empowered to take action to vote on a mask mandate. I have attached a screenshot of the agenda to this email.

We need you to email the school board and superintendent (board_of_roundrockisd.org) and share your thoughts on this. We need you to alert the media. We need you to show up to the meeting and explain the importance of lawful governance to the trustees during



**EXHIBIT I**              **App. 427**

public comments. We also need your help in preparing for how to move forward in the event that a majority (4 of 7) trustees vote to violate the law and unleash chaos in our city and county. The Travis County Judge and Austin Mayor have decided to fuel the chaos and have both issued their own mask mandates for schools.  Nine of 55 RRISD campuses are in those jurisdictions. Those elected leaders have stepped forward to support the unlawful mask mandate put forward by AISD. Those elected officials are now on the field and fully participating.

What is at stake? The physical and mental health of our youth and the preservation of law and order. Our community deserves stability and predictability... Especially for our children. Parents need to know that our schools are places where the law and parental rights are respected. Now is not a time to blend in with the wallpaper and hope nobody notices. Now is the time to step forward and stand for what is right and to protect our children.

I spoke to Mayor Craig Morgan and County Judge Bill Gravell earlier today and shared all of this with them. Mary and I spend much of our time attending numerous Republican club meetings in the area. Everywhere we go citizens see what we are doing and they ask what they can do to help. People are watching and paying attention to which of their elected leaders is doing the heavy lifting and leading. Mary and I are fearless and smart. We are also in the minority on the school board. We cannot do this by ourselves.

For reasons unknown to Mary and I, RRISD has declined to pursue the more prudent path that Leander ISD, Georgetown ISD's and Pflugerville ISD have chosen. All of those districts have wisely issued statements that they will be abiding by governor Abbott's executive order and that masks will be optional in their school districts. None of them have called for a meeting on the subject.

We are on the side of the law and the angels. We need your help to protect our children and our community from those who seek to sow chaos and lawless rebellion.  You can reach me at my number below or via email.  We look forward to letting folks know everywhere we go that you were there when it mattered.

Danielle Weston

**EXHIBIT I**                    **App. 428**



EXHIBIT I

App. 429