**FILED**

October 05, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ pg _____
                              DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS - AUSTIN DIVISION

| | | |
|---|---|---|
| **JEREMY STORY,** | § | |
| *Plaintiff,* | § | |
| *v.* | § | **Civil Action No.** |
| | § | **1:22-cv-448** |
| **SUPERINTENDENT HAFEDH AZAIEZ, TRUSTEES AMBER** | § | |
| **FELLER, TIFFANIE HARRISON, AMY WEIR, JUN XIAO,** | § | |
| **CORY VESSA; OFFICERS JEFFREY YARBROUGH, JAMES** | § | |
| **WILLIBY, DEBORAH GRIFFITH, MILTON POPE, FRANK** | § | |
| **PONTILLO, RON COLE, CHIEF DENNIS WEINER, AND** | § | **JURY** |
| **CARLA AMACHER, individually, and** | § | **DEMANDED** |
| **ROUND ROCK INDEP. SCHOOL DISTRICT** | § | |
| *Defendants.* | | |

## PLAINTIFF'S THIRD AMENDED COMPLAINT

COMES NOW, Plaintiff Story to complain of RRISD, its trustees, its superintendent, and its police, who deprived Story of constitutional rights and violated the Texas Open Meetings Act when he tried to: a) reveal Defendants' illegal hiring of Superintendent Azaiez; b) expose Azaiez's assault of his pregnant extramarital girlfriend after she refused to abort his unborn child, and c) object to a tax rate hike during an effectively closed meeting.

Story seeks to enforce the Open Meetings Act against RRISD and enjoin RRISD's unconstitutional as-applied RRISD meeting rules. Story seeks damages for deprivations of his rights, as well as appropriate attorney fees.

This third amendment adds no new claims, other than to restore the requested injunction regarding the 18-seat rule, and is filed to eliminate ambiguities in the second amendment, including a clarification regarding the defendants against whom claims are made, dismiss mooted claims for injunctive relief, clarify that Dustin Clark is no longer party to the dispute, and make minor helpful revisions, including improvements in inadvertent reference numbering and corrections to arguments included in error.

## I.    JURISDICTION

1.      This Court has jurisdiction over this action, as Plaintiff presents a federal question, seeking redress for claims for deprivations of rights protected under the federal Constitution, 42 U.S.C. §§ 1983 *et seq.*, and 28 U.S.C. §§ 1331 and 1343(a)(3), (4).

2.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) to hear Plaintiff's claims under the Texas Open Meetings Act and Texas Education Code, in that these claims form part of the same case or controversy as the federal claims.

3.      Plaintiff's claims for declaratory and injunctive relief are brought pursuant to 28 U.S.C. §§ 2201-2202, by Rules 57 and 65, and the general legal and equitable powers of this court.

## II.    VENUE

4.      Venue is proper in the Western District of Texas under 28 U.S.C. § 1391(b) because: a) events giving rise to Plaintiff's claims occurred in the Western District; and b) Defendants reside in Williamson County, Texas, also in the Western District.

## III.    PARTIES

5.      Plaintiff Jeremy Story is a resident of Round Rock, Texas, and may be contacted at the address of his legal counsel, the undersigned.

6.      Dustin Clark was first listed as a plaintiff in this case, but following the Court's Order of July 26, 2023 (Doc. 43), he hereby withdraws all claims and is no longer a plaintiff in this case.

7.      Defendant Round Rock Independent School District ("RRISD") is an incorporated political subdivision of the State of Texas which may be served through its superintendent, Hafedh Azaiez (or his replacement), at 1311 Round Rock Ave, Round Rock, Texas 78681 ("RRISD Offices").

8.      Defendant Hafedh Azaiez is the current superintendent of Defendant RRISD. He has appeared and may be served through counsel, or as appropriate, his office at 1311 Round Rock Ave, Round Rock, TX 78681, or wherever he may be found.

9.     Defendants Amber Feller (a.k.a., "Amber Feller Landrum"), Tiffanie Harrison, Amy Weir, Jun Xiao,[1] and Cory Vessa ("Defendant Trustees") are elected trustee members of the RRISD Board of Trustees. They have appeared through counsel through which they may be served, or as appropriate at the RRISD Offices or wherever they may be found. (The phrase "Defendant Trustees" includes only these five trustees; the other two trustees, Mary Bone and Danielle Weston, are not defendants.)

10.     Officer Defendants are law enforcement officers working in Round Rock Independent School District, and include: Jeffrey Yarbrough, former Chief of Police (who answers to the Superintendent); James Williby, former Asst. Chief of Police; Detective Sgt. Lauren Griffith (misnamed in the Original Complaint); Sgt. Milton Pope; and Officer Frank Pontillo. Each is sued in his individual capacity based on the deprivation of rights of which each officer was well aware; all have appeared through counsel through which they should be served, or as appropriate at the RRISD Offices or wherever they may be found.

11.     Parking Lot Defendants include Hafedh Azaiez, Officer Ron Cole, PD Chief Dennis Weiner, and Carla Amacher. These defendants are sued in their individual capacities for illicitly attempting to restrain Plaintiff Story's freedom of speech at the September 16th, 2022, Homecoming Football Game at Round Rock High School and later efforts to justify those actions including the September 19th email sent to clarify RRISD's policy on distribution of campaign literature on school grounds.

12.     The phrase "Individual Defendants" herein refers to all of the defendants except the Round Rock Independent School District.

---

[1] Xiao has left the RRISD Board since this case was filed. No claims are made against his replacement.

## IV.   FACTUAL BACKGROUND

**A.**     **Defendants' illegal hiring practice leads to massive controversy.**

13.     Plaintiff Jeremy Story is a taxpayer in the Round Rock Independent School District and has school-age children. He is actively involved in the community and takes an interest in the decisions affecting the public school system in Round Rock ISD, which his taxes support.

14.     On June 14, 2021,[2] the RRISD Board of Trustees voted 5-2 to hire Hafedh Azaiez as the new Superintendent during a special board meeting, in spite of many community members urging a delay in  light of his recent performance in Donna ISD, including but not limited to his abuse of district resources to issue a criminal trespass notice to protect a non-working employee.

15.     The two trustees who voted against the hiring pointed out various troubling issues concerning the hiring process, which appeared to be already decided before it began. Both supportive trustees and some district employees had privately communicated with Azaiez while others were told not to communicate with him.

16.     The five Trustee Defendants employed an illegal "walking quorum" when hiring Azaiez, deliberating and illegally involving other school employees and private citizens to "arrive" at the predetermined decision to hire Azaiez, while excluding two trustees, Mary Bone and Danielle Weston. An email thread indicates that the Trustees were conducting deliberations regarding Azaiez's hiring in private and Azaiez's text messages to his girlfriend indicating his private meetings with Amy Weir prior to his hire.

17.     The advance delivery of interview questions to Azaiez is of particular note. Diane Cox, an ally of the Trustee Defendants, provided the questions to be posed to Azaiez before the questioning began. Plaintiff is aware that Weir, Vessa, and Fuller provided the questions to Cox as their agent,

---

[2] All dates in this document are from 2021 unless otherwise indicated. Additionally, Plaintiff's Proposed Preliminary Injunction Order is attached as Exhibit 1.

to give to Azaiez, so he could project a facade of competence during the interview. This subterfuge exposes the Trustee Defendants' private decision regarding whom they would hire and then acted to manipulate their public proceedings to justify the decision that they had already made in secret.

18.     In July, Plaintiff Story learned that Azaiez, a married man, had assaulted his extra-marital girlfriend, Vanessa Aldrich, because she refused to obtain an abortion after becoming pregnant with his child.

19.     On June 17, the Round Rock ISD Board of Trustees held a regular board meeting. The next three meetings were special meetings, including June 19, July 15, and August 16. No regular meetings were held in July when Story would have been allowed to speak about Azaiez's assault on Aldrich.

20.     The RRISD Board adopts policy BED (Local) to govern public participation, which restricts participation during special or "called" meetings, stating "public comment shall be limited to items on the agenda posted with notice of the meeting" ("Limited Public Comment Rule").[3]

21.     In July, Plaintiff Story and other members of the public contacted the members of Round Rock ISD's Board of Trustees through email and social media to inform them of the allegations against Azaiez. Story offered to provide evidence regarding the issue, as he was personally in contact with Aldrich.

22.     On July 20, Azaiez frivolously attempted to obtain a protective order against Aldrich. His attempt failed in part because his affidavit lacked evidence of family violence by Aldrich against Azaiez. In his supporting affidavit, Azaiez swore that the RRISD board president told him that Aldrich had contacted her, and all board members had received an email with details about his "fathering her child."

---

[3] Exhibit 2, Board Policy BED (Local).

23.     After Azaiez failed in his preemptive and deceptive effort to obtain his own protective

order, and in stark contrast to Azaiez's frivolous filing, Aldrich filed an application for a protective

order against Azaiez based on (1) allegations of family violence by Azaiez and (2) a likelihood of

family violence by Azaiez against Aldrich to occur in the future. Judge Karin Crump of the 53rd

District Court promptly issued the order.

### 1. Trustee Defendants illegally refuse to address Azaiez's bad acts.

24.     Story sent emails to the RRISD Trustees on July 30 and August 2 after Azaiez was served

this protective order, informing the Trustees and offering video evidence of the order being served

on Azaiez at the District's offices.[4]

25.     Story sent emails to the RRISD Trustees on July 30 and August 2 after Azaiez was served

this protective order issued pursuant to a criminal complaint filed by Aldrich informing the

Trustees of these events.[5] The protective order was based on a police complaint filed by Aldrich

for assault alleging that Azaiez threatened to abort their child through physical violence and he

traveled to her home and assaulted her immediately after he was informed by Amy Weir that

Aldrich had contacted the Board.

26.     After hearing the allegations about Azaiez, Trustees Weston and Bone requested a special

meeting; Defendant Weir refused to call a meeting, contrary to RRISD Local Policy BED, which

requires the board president to call a meeting whenever two trustees request such a meeting.

27.     The Board revoted on the hiring of Azaiez on June 29, 2021, an action indicating that its

earlier vote was insufficient.

---

[4] Exhibit 3, Application for Protective Order and Order (July 30th) and associated documents.
[5] Exhibit 4, Story's emails sent to RRISD Board of Trustees.

### 2. *Defendants unconstitutionally silence opposing viewpoints at the August 16 meeting.*

28.     On August 16, the RRISD Board of Trustees held a specially called board meeting with two items on the agenda: (1) COVID-19 Employee Leave and (2) Fall 2021 COVID-19 Health and Safety Protocols.[6]

29.     Because it was a specially called meeting, and not a regular one, the RRISD claimed that the Limited Public Comment Rule governed the meeting.

30.     RRISD Police Det. Sgt. Lauren Griffith was in the parking lot outside the location of the scheduled RRISD board meeting and had been informed that Story was approaching, complete with a description of his clothing. No other individual is known to have been so singled out.

31.     Before Story began to speak during the public comment part of the meeting RRISD Chief of Police Yarbrough, in plain clothes, privately approached Story and demanded that he leave the room so they could speak alone outside. Story refused multiple times, and Yarborough unconstitutionally threatened Story. Story denied causing a problem and attempted to inform Yarborough of others who had yelled and threatened people; Yarborough evinced no interest in others who were behaving badly.

32.     Weir unconstitutionally continued to try to stop Story from beginning his lawfully allowed speech and even asserted at one point that she did not want to allow him to even demonstrate whether his comments were going to be germane. Unlike all other speakers that night, Story's not-yet-uttered comments were unconstitutionally *predetermined* to be irrelevant. Story asserted that his comments *were* going to be germane to the agenda and addressed both agenda items, including item D1 on extra COVID pay for employee sick leave entitled "Adoption of Resolution for Employee Covid-19 Positive Extended Leave During Covid-19 Pandemic, which addressed

---

[6] Exhibit 5, Agenda for the August 16 RRISD Called Meeting.

security and oversight of the superintendent, and item D2 on masking. The agenda items thus included employee sick leave regarding COVID-19 and the choice by RRISD to violate Exec. Order GA-38, prohibiting local governments from requiring masks.[7] When allowed, Story stated:

> "Today I speak on the rule of law, I don't envy your choice today. I trust that most people value each other even though they are on different sides of the issue, I also understand the seriousness of the COVID epidemic. I understand the rule of law, yet several members of this board and Superintendent have another utter disregard for the rule of law. Today you are considering thwarting the Governor's order and the legislature and the Supreme Court of Texas. This will result in tremendous fines to the district. Even today, you violated the rule of law by putting officers in the back of this room in the difficult position of being asked to illegally enforce a last-minute violation of the Open Meetings Act. An agenda item today includes a resolution which includes 80% of the text concerning itself with the safety of public employees and students. The resolutions being considered today include statements like, "the Board of trustees has a substantial public interest in protecting the health and safety of students and community." It talks about "supervision of the Superintendent" and even other things related to public health and public safety. Several of you have demonstrated strong disregard for the rule of law. You consider public safety today by violating the Supreme Court of Texas. Still more, our Superintendent has a protective order filed against him. . . ."

33.    Story was the only speaker that night to read out loud portions of the resolutions on the Agenda. His comments were absolutely germane to the agenda. He questioned the authenticity of the Board's concerns about safety and oversight of the Superintendent as stated in the resolution, as many others had already done that night. Story boldly presented, as a counterexample related to the board's actions regarding COVID, the fact that the board knew about the protective order for family violence against Azaiez but was suppressing discussion on the matter. His comments were directed toward the motives of board members and whether they were really concerned about security and public health, as the resolution stated.

34.    But as soon as Story mentioned this protective order, he was interrupted again by Weir and then by RRISD Police Officers Milton Pope and Frank Pontillo, who approached Story from behind, grabbed his arms, and unlawfully dragged him out of the meeting.

---

[7] The entire meeting is online at https://roundrockisdtx.new.swagit.com/videos/130528 (Story's comments are at 2:47:10–2:49:35).

35.     Along with Weir, Feller and Harrison stated that Story should leave, all of them apparently believing that Story's intended words could not possibly be "related to" an agenda item, and that the danger of allowing those words was so great that he had to be stopped at that moment, before he even had an opportunity to try explaining how his speech was related to the agenda items.

36.     Other speakers spoke on the same theme but used different examples. These speakers were treated unequally and with more latitude on the boundaries of their commentary than Story. No reasonable person could say that some of these comments were as "related to" COVID mitigation measures as Story's comments. The following statements come from individuals standing at the same lectern as Story and can be watched on the District's website. Examples of the "allowed" comments which were determined by RRISD to be "related to" the agenda and therefore permissible in the special meeting include:[8]

   a. Elaine Lee stated: "I'm here to remind you that Senator Cruz who poses as a freedom fighter in front of the camera chooses to send his children to a private school that has a mask mandate. A public health measure that he would ridicule as communism or tyranny. These politicians tell us that refusing masks and vaccines is what freedom looks like in the middle of a deadly pandemic. Why should anyone trust their stage rhetoric over advice from registered health care professionals? The rich and powerful protect their children with private schools while playing political games abusing their power to prevent our children from getting that same protection in public schools"[9] Ms. Lee was not chastised nor cut-off while speaking.

   b. Catherine Wrightmire stated, after speaking briefly on masks: "And I just want to say that there's also a psychological component to all of this. Pertaining to the fear and the effect of the pandemic as it's portrayed in the media. And also, data that's presented to us. and I just want to encourage the audience and the board as homework to consider taking a look at a very famous book. Perhaps you've read it, Frederick Douglass talking of my bondage and my freedom, he was a slave. There's a slave mentality, there's a slaveholder's mentality. And this was prior, he wrote this prior to the Civil War and was an abolition abolitionist prior to the Civil War. But there's psychological things to think about if you take a look at this book. Thank you very much."[10] Ms. Wrightmire was not

---

[8] RRISD maintains this video at https://roundrockisdtx.new.swagit.com/videos/130528,; Story's comments are at 2:47:10–2:49:35, which the Plaintiff asks the Court to take notice of, as the Defendants have requested already in their motions to dismiss. The quotes provided by the undersigned's informal transcription.
[9] *Id.*, Elaine Lee's comments referenced occur at 1:07:38.
[10] *Id.*, Catherine Wrightmire's comments referenced occur at 1:05:38.

chastised nor cut-off.

c.  Don Zimmerman stated: "I'm going to jump to the point here 'cause, all of you know as adults, lots of times when you have arguments and fights, you're really not arguing about the thing you're arguing about. You're arguing about something much, much bigger. This mask mandate is not about safety, It's not about health, It's about a crazed monopoly. Government school that thinks that it's God, and it can save us from disease and death. So let me make something really very clear to you. There's one perfect man who ever lived on this earth. His name was Jesus of Nazareth. This man. Healed the sick. He roused people from the dead. He walked on water, even when it was not sufficiently frozen. He's a miracle worker, and he is mankind's only hope to be saved. From probable disease and from absolutely certain death. So what I'm going to say to this school district - stop trying to play God. You are not God. You cannot save anyone from disease and death. You can't add one hour to anybody's life. No matter what kind of draconian rules and laws that you pass in the name of safety and public health. I'm really fed up with the self-righteousness and hypocrisy of government all over this country, from Washington DC right down to the school board. If somebody needs to wear a mask, that's a decision between them and their physician, and they're capable of making that decision. They have every right to wear a mask, and some people need to. For the rest of us, stop playing God, and get over your power trip."[11] Mr. Zimmerman was not chastised or cut-off.

d.  Jennifer White stated: "But while we're talking about child safety 'cause a lot of people did, let's talk safety. I'm in fear for my daughters. Because the Superintendent, he assaulted a pregnant girl."[12] Ms. White was prevented from speaking further, and other board members spoke over her, but she was not assaulted by RRISD police or removed, though she attempted to keep speaking after she was told to cease speaking.

e.  Jason Schklar stated: "And finally, this is hard to say, but I feel like it's important. As we came to order, we had a trustee protest that she couldn't pack the meeting room with her riotous, unmasked posse of supporters. I want to respect the decorum of this meeting and the diversity of opinions expressed here, but I've got to say that it's frightening. It's frightening to see how a couple of members of Q Anon have infiltrated our school board. Either that, or they see it as politically expedient to align with them. You are content. You are content to let the country burn as you laugh at how fun it is to…."[13] Mr. Schklar was interrupted only long after his verbal assault on specific board members had been launched.

f.  Renata Sims stated: "I would like for this board to show equal regard to all safety concerns parents bring to them, including the one I voiced to you repeatedly regarding the current protective order filed against our Superintendent for alleged family violence mask. Related concerns deserve a hearing, but so do criminal allegations against the only employee. This board is in charge of supervising. Please address all...."[14] Ms. Sims was interrupted and cut-off but was not removed from the room.

---

[11]  Don Zimmerman's comments referenced occur at 1:36:18.
[12]  Jennifer White's comments referenced occur at 2:25:19.
[13]  *Id.*, Jason Schklar's comments referenced occur at 3:01:52.
[14]*Id.* Ms. Sims' comments referenced occur at 1:34:42.

37.     As the above examples show, some speakers ventured far off-topic, attacked individuals, and spoke derisively about those with different opinions. None of these speakers were treated as poorly as Story; none were dragged from the podium by police even though many of the comments could easily be deemed "not germane" to the agenda. Only Story, whose comments were at least as germane as those of other speakers, was treated so harshly. But only Story had been actively working to raise awareness about Azaiez and was seen as a leader of the opposition to RRISD's hurried and secret hiring of a philandering and physically abusive superintendent. Only Story was forcefully removed from the meeting and then charged and arrested.

38.     Story's efforts to obtain justice with law enforcement fell on deaf ears. On August 17 and 18, John McKinney, investigator for the Williamson County Attorney's Office, interviewed Story and accepted his complaint based upon the violation of Story's civil rights at the August 16th meeting.[15] On August 18, Story tried to file a report with the Round Rock Police and Williamson County Sheriff's Office; both refused the report, stating the RRISD Police Dept. had the duty to investigate itself. Story also filed complaints with Jim Williby, RRISD Asst. Chief of Police, and the Texas Education Agency ("TEA").[16]

39.     On August 19, while the Trustees met in closed session, Story asked questions of Yarbrough regarding his threats at the August 16th meeting:

> 00:07:16 - 00:07:32, Yarbrough: The actions that caused you to be removed from the board room was because of the meeting that was being held. It wasn't a regular board meeting. The information on the board and the public comments said you can only speak to the items that were on the board.
> Story: Which I was doing.
> Yarbrough: When you deviated from that.
> Story: I didn't.
> Yarbrough: Okay. You asked for it.
> Story: So, you're saying that the Round Rock police force has the authority to determine whether what I said was germane and then remove me from a building if you don't feel like

---

[15] See Exhibit 6, Story's complaint filed with the Williamson County Attorney's Office.
[16] Exhibit 7 Story's RRISD Complaint, Exhibit 8 Story's TEA Complaint, respectively.

it was? So, you determined that I was not making germane comments and you thought it would be appropriate to use force to drag me out of the building? Is that Round Rock police protocol? . . . Point me to where that's protocol that the police have the authority to determine whether it's germane and then basically yank someone out of the building when they believe it's not.
Yarbrough: Texas Educ. Code 37.105, 38.13, Texas Penal Code 42.05.
Story: That gives you the authority to determine what is germane and then pull me out of the building?
Yarbrough: I encourage you to go and look those up.
Story: I have. I mean, it doesn't give you the authority to determine what's germane it doesn't.[17]

### 3. RRISD turns a blind eye to Azaiez's immoral acts and Story's grievances.

40.     When RRISD police had done nothing in response to Story's August 19 complaint which he had filed with Assistant Chief Williby, who confirmed receipt in writing, Story submitted a legal grievance to RRISD's legal department.

41.     On August 23, the RRISD Board held a called meeting. The initial published agenda for this meeting included an option to act regarding Azaiez's challenged actions. That agenda, however, was unlawfully changed and said option to act removed, in violation of the Open Meetings Act, about an hour before the meeting began.[18]

42.     On September 4, Story submitted a grievance to the RRISD district legal department over the events of August 16 due to no response from RRISD police. Mysteriously, Assistant Chief Williby suddenly responded outside of normal hours of operation that same Friday night to let Story know that the department's internal investigation had led its leadership to conclude they were unable to handle the complaint because the complaint was against high-ranking officials that included the RRISD Police Chief, School Board Trustees, and Superintendent.

43.     On September 9, the TEA confirmed the receipt of Story's complaint and informed him that his complaint was referred to the educator misconduct division.

---

[17] Story's up-close video recording of his conversation with Chief Yarbrough on August 19, 2021 (emphasis added).
[18] Compare Exhibits 9 and 10, the August 23 Original and Amended Agendas, respectively.

**B.     Defendants fail to allow the public into their Sept. 14th board meeting.**

**1.   *The Trustee Defendants unconstitutionally threaten free speech.***

44.     On September 14, the RRISD Board met at a regular meeting. Among those matters considered was a vote on a new mask matrix tied to Austin Public Health and Williamson County and Cities Health Department's "COVID stages."

45.     According to the relevant fire code, the meeting room has a capacity of 375, but all chairs in this auditorium were removed except for 18 chairs set up at least six feet apart. Attendees were unconstitutionally told that unless they sat in one of these government-approved chairs they could not participate in the meeting, even if they spaced out similarly but sat in chairs they personally brought. Defendant Trustees used RRISD police officers to unconstitutionally prevent parents from entering the open meeting room, a wholly irrational, arbitrary, and capricious act.[19]

46.     Though Defendants have asserted otherwise, Story and others were never allowed to enter the room, and others left without being afforded the opportunity to participate.

47.     No action was taken regarding the District's mask policy; Defendant Weir blamed the inaction on a public disruption that occurred "outside" of the room.[20]

48.     Board President Weir called the September 14 meeting to order at 5:31 p.m., opening with these speech-chilling verbal instructions:

> Before we start, the rule of the meeting tonight, based on the administration's rules, is the number of seats in here are the number of seats, you are not allowed to bring your own seat, you are not allowed to sit on the floor. I'm going to give you one warning, and then we will have to escort you out.

---

[19] Defendants may point out that a remote cafeteria location was available to watch the meeting. Such an arrangement does not comport with the agenda, which did not include that remote option; Gov. Abbott had eliminated any option to ignore the Texas Open Meetings Act with regard to such approaches. Defendants also only militantly enforced spacing requirements in the board room and did not enforce the same spacing rules in the remote cafeteria location. The cafeteria location was merely feet down the hall from the board room.

[20] The meeting was captured on video by the district, and the recording constitutes an official record of the district, a government agency. The Court is hereby requested to take judicial notice of the meeting's recording at https://roundrockisdtx.new.swagit.com/videos/139574 (beginning at 46:59), as well as the other public documents and videos within this Complaint.

49. Weir then threatened attendees, indicating mere disagreement with these "rules" would constitute a "meeting disruption" – a criminal offense under the Penal Code cited repeatedly by Trustee Weir, who claimed the statute allowed her to remove those she deemed disruptive.

50. When Trustee Bone objected to the arbitrary rules and insisted on knowing who was responsible for the rule, Azaiez wrongly responded that, "There were no rules, it was a decision we made… I made ... and we had this setup for like several meetings now . . . ."

51. The Board then improperly voted 5-2 to adopt the "administration rules" of arbitrarily limiting seating as described. Trustee Weir stated, "it passes, Officer Williby, can we please have those without… can we remove those not in the chairs provided by the administrators" to the objections of public attendees who came to speak and asserted that the Board was violating the Open Meetings Act. No such vote was on the agenda. Trustee Harrison asked for the Board to go into executive session, implying that the Board could use that excuse to clear the room, but its legal counsel advised that the Board cannot enter executive session in such a manner.


9/14/21 - 18 seats


6/2021- 90+ seats


8/2019- 250 seats

52. After a recess, Trustees Weston and Bone left the meeting, concerned about Open Meetings violations to which they did not wish to contribute.


~300+
September 22, 2021
Agenda: Censure
Bone&Weston

53. Story asserts that the seating rule was mere pretext to keep out the Board's critics and submits that the seating arrangement was less restrictive during the actual high COVID case period. Comparison images are to the right of the text above.

54. As shown by the images, RRISD did not constrain attendance at its board meetings when COVID risk was much higher, and when parent interest was not at the level later achieved by its Board's actions with regard to masking, hiring of the Superintendent, and other issues which generate parent interest.

55. Additionally, the Court should note that the Board that limited attendance to 18 on September 14 is the same board that allowed 300 people to attend a board meeting on September 22, a week later, though there had been no change in the rate of COVID cases or risk.

56. The Board regulates meeting arrangements so as to control the number of people who are expected to attend and their expected viewpoint. The RRISD Board and Azaiez knew the politics of the crowd outside the room on September 14, and Azaiez admitted that he made the decision to allow only 18. From the video of the September 22 meeting, the crowd appeared to be even, based on the crowd reaction to speakers making different points.

### 2. Trustee Defendants unconstitutionally prohibited free speech outside the meeting.

57. As described above, the Trustee Defendants allowed only 18 seats for parents.

58. This impromptu rule was enforced nowhere else in RRISD and created only for this specific meeting. For example, about 100 students simultaneously meeting directly across the hall from the board meeting were not required to observe social distancing or reduce their meeting capacity below room capacity. In addition, a called board meeting was held on September 22nd, about a week later. No new pronouncements regarding COVID restrictions or threat level had been issued by any health authority during the time between the two meetings, and no excuse for a change between the two meetings existed. The Board did not impose any of the seating capacity and spacing requirements that it had required earlier.[21] A view of the meeting video for September

---

[21] See https://roundrockisdtx.new.swagit.com/videos/140200. The five Trustee Defendants had planned on censuring trustees Bone and Weston at that meeting, stopped only by an injunction.

22nd and all other called meetings show that speakers during called meetings occasionally veer off-topic from time to time without militant enforcement of subject matter discussion.[22]

59. During this time, individuals showed pictures of the room's set-up during severe periods of district COVID restrictions, which demonstrated that more people were allowed to be in the room during that time than during the current Sept. 14 meeting.

60. Two district police, Officers Pope and Pontillo, kept Jeremy Story and many other parents from entering the room during the board meeting. COVID was mentioned as an excuse, but no COVID-restrictions were in place – the limitations were enforced by police who remained silent, surfed the internet on their mobile devices, ignored community members, refused to answer questions, and refused to explain (1) why the restrictions were in place, (2) what rule had been implemented, (3) what authority even made the rule, (4) who had instructed them to stand in the room's entry and unconstitutionally block its access, and (5) refused to involve their supervisor, Asst. Chief Williby, who was hiding inside the board meeting room and watching the interaction through the door window.

61. While playing guardians of the Board's meeting room, Defendant Officers Pope and Pontillo refused to even answer the question, "Can we walk around you?" They simply physically prevented entrance.

62. Jeremy Story, Dustin Clark, Michelle Evans, and others asked the RRISD police officers to identify who was instructing them to restrict access to the boardroom, arguing that, as the published location for the meeting, it should be open. For approximately 45-minutes of questioning, the officers remained silent and refused to answer.

---

[22] Plaintiff does not seek militant policing, but only the end of selective enforcement, and retaliation of their opponents.

63.     RRISD Asst. Superintendent Daniel Presley came out of the board room and attempted to browbeat the crowd in the hall into silence. After realizing that the crowd would not be intimidated, he went back inside the meeting room.

64.     While the police continued to refuse to identify who gave them authority to act in this manner, one police officer nodded to indicate that authority came from Police Chief Jeffrey Yarbrough.

65.     As the board meeting started, the police allowed some people in solely based on the officers' personal judgment, e.g., one person stated that she was speaking first. Others were prohibited without any discernible reason. Their actions were capricious and arbitrary, exercised with unbridled discretion.

66.     During this period, Story attempted to enter multiple times, each time stating that he was no threat. He was simply attempting to enter the room, but Defendants Officers Pope and Pontillo physically blocked the door.

67.     Story, and several others attempted to cite law to Defendant Officers, who gave no substantive response.

68.     Officer Chavez was instructed by Asst. ISD Police Chief Williby to reference a penal code statute. With Williby watching from behind the door window, Chavez left the meeting room and, while standing between Pontillo and Pope, announced: "This is what we are operating under - the Texas Education Code section 37.105:

> 'A school administrator, school resource officer, or school district peace officer of a school district may refuse [to] allow a person to enter on or may eject a person from property under the district's control if the person refuses to leave peaceably on request.'"

69.     Chavez's reading was deliberately deceptive because he read only a part of the law and thereby misrepresented Texas law by his omission of the full statute, which states:

A school administrator, school resource officer, or school district peace officer of a school district may refuse to allow a person to enter on or may eject a person from property under the district's control if the person refuses to leave peaceably on request, and: (1) the person **poses a substantial risk of harm to any person**; or (2) the person **behaves in a manner that is inappropriate for a school setting** and: (A) the administrator, resource officer, or peace officer **issues a verbal warning to the person that the person's behavior is inappropriate and may result in the person's refusal of entry or ejection**; and (B) the person **persists in that behavior.**

TEX. EDUC. CODE § 37.105(A) (emphasis added).

70.     The Officer Defendants consistently misrepresented and willingly misapplied § 37.105(A), as Defendant Police Chief Yarbrough cited § 37.105(A) on August 19 to Story in the hallway when the two of them were discussing meeting ejections. (See ¶¶ 40-41, *supra*.)

71.     In reading only half of § 37.105, Defendant Officer Chavez demonstrated that he obviously knew what the rest of the unread portion stated, or he would have not stopped reading the statute *mid-sentence*. When Story and others brought this to his attention and showed that the rest of the statute made the law inapplicable, Chavez had no explanation and did not change his behavior.

72.     Story and others pointed out to Pope and Pontillo, who were guarding the board meeting doors, no one wanting to enter the room appeared to be a "substantial risk of harm to any person."

73.     Those seeking to enter, including Story, had a protracted discussion with Pope and Pontillo, reading the Open Meetings Act, seeking to determine what law the officers were using to prevent district taxpayers from entering the room. These officers referred to their supervisor, Williby, as an authority, who was watching from a window in the door to the meeting room.

74.     After Chavez attempted to misuse Texas Education Code § 37.105, another person in the area read the text of the Texas Education Code § 26.007 to Officer Defendants Pope and Pontillo:

Sec. 26.007. ACCESS TO BOARD MEETINGS. (a) A parent is entitled to complete access to any meeting of the board of trustees of the school district, other than a closed meeting held in compliance with Subchapters D and E, Chapter 551, Government Code.

TEX. EDUC. CODE § 26.007(a).

75.     The attempted conversation about the law continued between the officers and others refused entry into the public meeting, with the officers wholly unwilling to explain why § 37.105 applied to the situation, and how § 26.007 did not.[23]

76.     During the discussion, an unidentified school district staff member was allowed to go into the meeting room, but district taxpayers were told that there were limited seats in the room and that could not be exceeded. Taxpayers stated that they had brought their own chairs and could easily space their chairs in the 375-chair room that was only seating 18 at the time, to no avail.

77.     During these events, Assistant Chief Williby was inside the room and looked through the door windows to observe Pope and Pontillo: (1) using force against Story by bear-hugging him around a pole, cutting his back, and slamming him to the ground and (2) prohibiting the public from entering the board meeting. Plaintiff Story's back was cut, and he bled on his shirt. Story's back is shown below:



---

[23] All of the events described outside the board room were recorded and those recordings are available for examination.

78.     RRISD Officer Defendants caused this injury to Story, as included in the police report of the City of Round Rock. At trial, witnesses will testify that Story was not bleeding before the encounter, but was bleeding after.

79.     None of these actions were in keeping with Officer Defendants' public duties but appeared to be intended to physically intimidate and humiliate Story. Had the officers intended to simply remove him from the area, their actions would have been different.

80.     Defendant Officer Yarbrough (Chief) and Defendant Officer Williby (Asst. Chief) were both present during this meeting and supervisors to these officers, and neither did anything to protect Story's civil rights, though both should have intervened. Every reasonable officer should have known that Story's and others' civil rights were being violated; the public has a right to attend board meetings in person and speak under federal and Texas law, and such rights were obvious and clearly established at the time.

### 3. Trustee Defendants unconstitutionally prohibited Free Speech inside the meeting.

81.     A later review of the meeting's video kept by RRISD[24] revealed that Board President Weir had announced that the reduced seat capacity of 18 seats in a 375-seat lecture hall was a decision by Azaiez, which was far reduced from the number allowed at the height of COVID.

82.     When challenged by Trustees Bone and Weston, Board President Weir accepted the decision of Superintendent Azaiez as controlling, failing to recognize that creating board meeting rules is the province of the Board, not its employees.

83.     After Trustee Weir refused to recognize Board authority over its own proceedings, Weir militantly announced an unconstitutionally vague policy regarding conduct and mentioned Texas Penal Code section 38.13 (Hindering Proceedings by Disorderly Conduct) and section 42.05

---

[24] RRISD maintains the video at https://roundrockisdtx.new.swagit.com/videos/139574, judicial notice of which is requested at this time.

(Disrupting Meetings or Processions) as laws which Weir would enforce using RRISD police.

84. In a discussion between Defendant Weir and Trustees Bone and Weston, Weir arbitrarily decided to enforce an 18-chair limit and deny admission to all other prospective attendees, based in part on an unannounced, off-agenda 5-2 vote to support the restriction, irrespective of the Open Meetings Act, with the blessing of its counsel, Doug Poneck. Poneck apparently, yet wrongly, approved that an ISD board president has unbridled discretion to change the seating rules of an open meeting to disallow the public from attending the meeting on such pretext.

85. The seating issue was not on the agenda, listed as an action item, or otherwise published to the public. Trustee Xiao stated that the 18-chair limitation vote was not on the agenda. Weir agreed, but then held the vote anyway. Both Xiao and Weir showed an intentional willingness in the face of obvious unlawful and unconstitutional actions to deny the community access to an open meeting, knowing they were violating Texas law, particularly while voting on a tax rate.

86. Trustees Weston and Bone left the meeting over Open Meetings concerns, as Weir continued to enforce an unconstitutionally arbitrary rule reducing seating from 375 to 18, acting as if such rule was inviolate and could not be changed because the Board voted to affirm the rule.

87. Although President Weir alluded to the occasionally enforced rule not to "criticize" individuals, she wielded it unequally, allowing citizen commentator Doug McLean to accusingly allege during his period at the public microphone, "First of all, I do want to recognize Trustee Weston and Bone who have endangered everyone in here by not wearing masks."

88. During this meeting, Dustin Clark attempted to instruct the Board that (1) it was violating the Texas Open Meetings Act multiple times in its votes on unannounced topics and arbitrary seating rules, (2) the Board had failed to allow even the 18 chairs to be filled by those who wished to attend the meeting, and (3) the Board was prohibited by law from raising taxes without allowing public participation in the meeting. Weir instructed Williby to remove Clark from the meeting.

89.     The Defendant Trustees then unlawfully voted to set a tax rate, though many who live in the district were unlawfully prevented from any meaningful participation in the hearing, including Jeremy Story, who came to address the RRISD Board but was not given the opportunity due to the actions of the Superintendent, named law enforcement officers, and Trustee Defendants.[25]

90.     During the discussion, the RRISD Board's attorney was asked if such a vote would be legal, and he replied, "Is this on? So we're going to have to look at that. I couldn't tell you off the top of our head, if that's correct or not. If we're going to have an issue about whether there's a unanimous vote that obviously we want to confirm whether that's indeed the case. so maybe we put it to a vote and then see what happens."[26]

91.     Pleas of "let us in!" from outside the artificially limited meeting room can be heard many times in the video of this meeting, coming from residents denied access to this public meeting.

92.     After the vote, Defendant Weir in her arbitrary, capricious, overly broad, unbridled, and unequally applied discretion, allowed Mr. McCullough, another public speaker, to directly criticize Trustee Bone without enforcing the "no criticism" rule. The Board went to a closed meeting after unlawfully passing the tax increase, hearing McCullough's statement, and another minor vote. After the Board came back from its closed meeting, the Board voted to make public a TEA letter referred to as the "TEA Corrective Action Plan". The Board then abruptly adjourned at 6:40 pm.

93.     The Board later issued a misleading press release blaming its lack of ability to accomplish its business on public disruption.[27] However, the Board had not attempted to dismiss the meeting over disruption, irrespective of activities in the hall, until the Board learned that Round Rock City police had agreed to come to the meeting. RRPD had been called by Story who, after being pushed

---

[25] See Exhibit 11, September 14 Mtg Minutes. Tex. Educ. Code § 44.004(f) states, "The board of trustees, at the meeting called for that purpose, shall adopt a budget to cover all expenditures for the school district for the next succeeding fiscal year. Any taxpayer of the district may be present and participate in the meeting."

[26] This comment is at the 43:16 of the meeting video, https://roundrockisdtx.new.swagit.com/videos/139574.

[27] Exhibit 12 Trustees Weston and Bone Press Release and TRO.

to the floor by RRISD police officers Pope and Pontillo while Asst. Police Chief Jim Williby and Chief Yarborough approvingly watched, called 911 and cited a letter he had received from Williby himself which stated a refusal to investigate Yarbrough and encouraged Story to seek help from other agencies.

### 4. Defendants cause arrest of Plaintiff Story with trumped-up charges.

94.     Jeremy Story attempted to file reports regarding his ejections from board meetings with RRISD Police, Round Rock Police Department, Williamson County Sheriff and District Attorney.

95.     On the morning of September 17th, an unlawful RRISD-originated warrant was issued for Story (and Clark) for "Hindering Proceedings by Disorderly Conduct," a Class A misdemeanor. The arrest warrant was signed by Officer Defendant Lauren Griffith, with cooperation of Officer Defendant Pope.[28] The warrant included false information regarding Story's behavior, alleging that Story received warnings while speaking about unrelated topics and had verbal outbursts, among other statements.

96.     Plaintiffs later learned that Azaiez communicated via text and other means with the Williamson County Judge and other county officials to encourage the county to arrest Plaintiffs. Azaiez employed his personal police force to create a false affidavit, secure an arrest warrant and then encouraged the retaliatory arrests

## C.     The RRISD Board showed at its September 22 meeting that it cavalierly violates the Open Meetings Act and prefers some speakers over others.

97.     The RRISD held a called meeting on September 22nd which centered around the five Trustee Defendants attempting to pass a resolution censuring Trustees Bone and Weston, citing their actions taken to support Story and those who agreed with him as reasons for the censure. Just before the meeting began, a state trial court enjoined the resolution, but the Board discussed and

---

[28] TEX. PEN. CODE § 38.13.

decided to take comment on the subject matter.

98.    During this meeting, RRISD Board President Defendant Weir interrupted Michelle Evans.

The exchange between them includes the following:

> EVANS: I'm here to demand that you return to normalcy. If you can allow sporting events, you can allow pep rallies and dances, you can allow parents to attend award ceremonies and graduations. You're currently excluding parents from campuses and denying students the right to freely assemble.
>
> Put simply, we're done.
>
> We're done asking for permission from activist bureaucrats.
>
> We're done with your attempts to silence us.
>
> We're done with our children being used as political pawns in your virtue signaling game.
>
> We're done with being willfully ignored.
>
> We're done being threatened from the dias.
>
> We will be heard and we will rise up.
>
> We will not tolerate the wasting of our tax dollars on lawsuits because you refuse to admit you are on the wrong [overlapping].
>
>> WEIR: We got to stick to [overlapping]
>>
>> (interrupting to stop based on subject matter of Evan's speech)
>
> EVANS: That's a mask mandate. [applause]
>
> We will be stewards of the constitution and we will demand compliance [overlapping].
>
>> WEIR: Your time has expired. [overlapping]
>
> EVANS: I don't get my time back? [background]
>
>> WEIR: Your time has expired.
>
> EVANS: I was interrupted. [background] you gave people time. [background].
>
>> WEIR: everybody gets one minute. If your one minute is up . . . [background] We're going to take a five-minute recess.
>
> *(The Board took the indicated recess.)*
>
>> WEIR: [noise] We're going to call back to order. We did have a suggestion that, in order to stop the interruptions of our speakers, if you feel so moved, instead of clapping and cheering, jazz hands. [laughter] We're going to go now to Michael Bennett and then after that is Renalda Simms.

99.     Summarizing the above, Defendant Weir interrupted the speaker when Evans mentioned the mask lawsuit, as Weir decided that the subject matter of her comments was not related to the agenda. When corrected, Weir did not give her any additional time, and when many meeting attendees expressed their collective irritation regarding that decision, Weir stopped the meeting, discussed the issue with her board in secret, and then came back to the open meeting and announced a suggestion that bystanders use "jazz hands" to indicate their position.

100.    Plaintiff is not before this Federal Court to nitpick the RRISD Board leadership, but this event demonstrates the problem. Weir did not like what she was hearing, so she interrupted the speaker, and then when the crowd showed its displeasure, she stopped the meeting, conveyed an illegal conclave with a few other board members who are friendly to her, and then opted to announce her suggestion after what can only be considered to be an illegal executive session.

101.    This September 22, 2022 meeting included off-topic attacks on Board's critics, including:

HERNANDEZ: I am Jessie Hernandez, father of two in the district and a veteran myself. I was initially going to give a speech on how the board needs to be more forceful, but that's no longer necessary.

These people are a mob. (Referring to the Board's critics in the audience.)

They're thugs, and they would like nothing more than to append your authority by violently and physically removing you from where you sit.

I've seen these people in their Facebook groups encouraging violence, looking for ivermectin among other insane things.

They lie, they cheat. [noise] I'm talking. [noise] They lie, they cheat, they obstruct.

Don't ever let them get the best of you.

These people will take sheep dewormer in an attempt to justify seeking to inflict death upon the children of this district.

These people are recruited [overlapping].

          WEIR: Got to be f1, f2, or f3. (Instructing to stay on agenda topics.)

[overlapping]

>> Again, they along with them are a very slim minority [noise] of the district population.

What was it? nine percent that opted out of the mass mandate?

UNIDENTIFIED TRUSTEE: Point of order.

WEIR: What's your point, trustee [inaudible]

UNIDENTIFIED TRUSTEE: I can't even understand what he's saying. Please refrain from talking while he's talking. I can't even hear to tell if he's off topic because you all are talking during his one minute.

WEIR: I agree. It is very difficult to hear.

WEIR: If you'll hold on, you've got about 10 seconds left.

HERNANDEZ: The only thing I want to say is I support the censure and that is all, and thank you for your time. [applause][29]

102.     Reviewing, Defendant Weir employed a militant standard against Plaintiff Story at a previous meeting, Dustin Clark at another meeting, and Michelle Evans earlier in the same meeting, but then allowed Mr. Hernandez to attack political opponents with accusations that they "seek to inflict death on the children of the district" and use violence to get their way. Mr. Hernandez was not arrested, but the crowd was chastised for interfering with his speech.

103.     The Limited Public Comment Rule was thus employed strictly against Plaintiff and his allies, but lackadaisically enforced against allies of the Trustee Defendants.

104.     Even since the events described herein, the RRISD Board has taken different turns with regard to meeting comments. On January 6, 2022, now President Feller stated that she will allow non-germane comments "as long as they circle back around to the topic eventually."

105.     Azaiez successfully chilled criticism against him. No one has been arrested since Plaintiff was jailed for discussing Azaiez's infidelities using comment time. And since that time, the Limited Public Comment Rule is used inconsistently and based on the whims of the chair of the meeting to run roughshod over speakers who are disfavored and otherwise ignored. Defendant Feller replaced Weir as Chair and has continued these tactics. Subsequent to the August and September board meetings, the Defendant Trustees worked together to simply exchange the officer

---

[29] See https://roundrockisdtx.new.swagit.com/videos/140200, starting at 43:55.

positions among themselves to aid this plan. Harrison has worked as Secretary and timekeeper of the board during public comments to aid in this scheme.

106.    To clarify, all of the named Officer Defendants were well aware of the claims Story had made against them before the September meeting began, including their Chief of Police, and the Superintendent, because Story had filed complaints that discussed them all. They had ample motivation to target Story.

107.    The trier of fact should consider that the Individual Defendants arranged Story's arrest based all this activity over alleged verbal offenses lasting a few seconds at a board meeting, and concluded with Plaintiff in the county jail, after an arrest worthy of an Al Qaida operative, ending with two men in jail when others who have actually committed real crimes have been released.

108.    Lastly, the trier of fact should consider that trustees of public-school government entities are regulated by state law to protect the right to petition as reflected in the Texas Open Meetings Act. The State Legislature has mandated that "Members of a governmental body subject to the Open Meetings Act (OMA) are required to participate in education training sessions pursuant to section 551.005 of the Texas Government Code," which requires each school district trustee to become trained in the Open Meetings Act within 90 days of taking office.[30]

**D.    The District treats Story's grievances unequally.**

109.    As detailed here, the District has a pattern of treating Story differently from all others.

   ***i.    Grievance hearing on 10/13/22- related to board meeting removal and abuse of Story.***

110.    Story filed his grievance with RRISD on 9/4/21 concerning his abusive removal. The District did not respond and later claimed the grievance had been "lost in their spam filter."  Over a year later, on 10/13/2022 the Board finally held a grievance hearing with Story.

---

[30] See https://www.texasattorneygeneral.gov/open-government/governmental-bodies/pia-and-oma-training-resources/open-meetings-act-training (last accessed on August 22, 20220). Tex. Gov't Code § 551.005.

111.    District policy GF Local, and GKA State Legal policy state grievances involving people forcefully removed from district property must "permit the complainant to address the board in person within 90 calendar days of filing the initial complaint." The Trustee Defendants cooperated together to intentionally delay the grievance hearing for Story well beyond their own stated policy even amidst the objections of Trustees Bone and Weston.

112.    Defendant Trustees have shown every attempt to unlawfully go beyond a normal Trustee's powers and use their positions on the District's school board to delay justice in an effort wear down Story and diminish his efforts to petition the District and chill his speech.

113.    District policy GKA Legal states, "At the time a person is refused entry to or ejected from a school district's property, the district shall provide to the person written information explaining the appeal process." RRISD has never provided such documentation to Story.

114.    District policy GKA Legal also states, "The board shall adopt a policy that uses the district's existing grievance process [see FNG, GF] to permit a person refused entry to or ejected from property controlled by the district to appeal such refusal of entry or ejection. The policy must permit a person appealing under this section to address the board in person within 90 days of the commencement of the appeal, unless the appeal is granted before the board considers the appeal." RRISD violated this policy willfully by waiting over a year to respond to Story's grievance.

115.    Over a year later, on October 13, 2022, the Board finally held the grievance hearing. Numerous other grievances were heard by the Board in this period even though the reasons for these other grievances occurred after Story's grievance. As the grievance hearing first started defendant Trustees Weir, Feller, Vessa and Harrison attempted to have the hearing closed and held in secret. Story and his counsel objected, citing district and state policy that disallowed this action. When pressed repeatedly the defendant Trustees finally relented and opened the meeting to the public.

116.    The grievance hearing was never completed. On the date of the hearing, the errant board members and district counsel, Cindy Hill, had Story and his lawyer wait for over four hours outside the board room before beginning the hearing. When Story tried to walk into the board room to inform the board of the delay, Hill blocked the door and Story with her body and commanded Story to stop by saying, "You will not go into that board room!" Within minutes of beginning the hearing, Trustees Vessa, Weir Feller, and Harrison recused themselves from the hearing. (Xaio, the other Defendant Trustee, had resigned by the time of the grievance). Trustee Amber Feller then declared that there was no quorum to hear Story's grievance.

117.    The Defendant Trustees repeated the exact steps of the errant attempt to deny Story a fair grievance hearing both in the private closed session and in the public open session. Weir, Feller, Vessa and Harrison recused themselves over again in the public session and declared quorum was no longer maintained.

118.    Even though Trustees Weir, Feller, Vessa and Harrison all asserted they had lawfully recused themselves from Story's hearing they later reversed course. After the November 2022 election and new attempt to deprive Story of first and fourth amendment rights in the homecoming game parking lot, the district suddenly informed Story's lawyers that the board wanted to retry hearing Story's grievance.

### ii. *Second Attempt at Grievance hearing on January 12, 2023.*

119.    Once Trustees Weir, Feller[31], and Harrison had secured positions for their friends on the school board they attempted to once again silence Story's restraint grievance. After months of inaction, Cindy Hill, RRISD's counsel, suddenly rescheduled the hearing for January 12th, 2023.

120.    Trustees Feller and Weir recused themselves from the hearing. Harrison did not attend.

---

[31] Amber Feller may also be known as Amber Landrum. For simplicity this pleading continues to use Feller.

121.    Though she recused herself, Trustee Feller participated in a vote on the matter after the recusal regarding who would preside.

122.    Feller was aware that recusing herself from a grievance hearing and then participating in it was unlawful because that issue was relevant to TEA's previous decision to send a monitor to the district in 2021 while she was a board member.[32]

123.    Story has the oldest two grievances in the district and they are still not completed. No other grievance has been delayed, failed or carried out in the same manner. Story asserts that this deliberate denial and unequal treatment is yet another action taken in violation of his rights.

### iii. Grievance on Homecoming Incident also treated unequally.

124.    Also on January 12, 2023, the RRISD Board discussed the homecoming game incident detailed below. During the hearing, Trustee Weir recused herself, and then participated as a witness, a plan approved of by RRISD's counsel, Cindy Hill, though she was aware that recusing herself from a grievance and then participating in the hearing was unlawful, as discussed above.

125.    During this hearing, the packets of information provided to Story and to the Board were different, and included false information in the Board's packets concerning a false assault claim by RRISD Area Superintendent Amacher. The Board's counsel, Cindy Hill, decided to make the divergent packets so she could include false statements concerning Story's behavior during the Homecoming events.

126.    The revelation of the differing packets and the stark realization by all Board members created confusion, and then postponed. Trustees Bone and Weston argued for the equal treatment

---

[32] See Monitor Appointment, attached as Exhibit 13. Texas Education Agency had sent a Monitor, David Faltys, to be sent to the district, an action was taken because the board had previous members who recused themselves but, continued to participate in a hearing. In subsequent meetings with the board after his appointment, Faltys further instructed the board about a strikingly similar past violation. In addition, Jeff Cotrill, Deputy Commissioner of the TEA for Governance and Accountability also visited the district and warned the board about their past actions during the 2021-2022 school year. Weir and Landrum were members of the board when this prior violation occurred, and they went beyond her role to ensure Story's grievance against her would be silenced.

of Story while Feller and Weir actively pushed for proceeding with the unequal treatment grievance hearing without allowing Story access to the differing information. No action on this grievance has occurred since.

127.    Shortly after Story's hearing Area Superintendent Amacher suddenly resigned.

128.    It has been the stated and observed practice of the board and district to always have all evidence in both the grievant and the board's packet in all other grievances before the board. Story was treated unequally through premeditated action by Hill, Weir and Feller in his grievance hearings to silence his First and Fourteenth Amendment Rights.

**E.      NEW - September 16th, 2022, Homecoming Game First Amendment Violation.**

129.    Story attended the Friday September 16th, 2022, homecoming football game at Round Rock High School. The public was invited to the game.

130.    Story and other interested parents passed out fans in the parking lot next to the Round Rock High School football stadium. The fan listed the names of five candidates for the RRISD School board printed on them with checked boxes next to the names as shown in the image to the right.

131.    Story and his companions passed out fans to pedestrians who said "yes" when offered one. Story passed out fans for an hour without incident.

132.    RRISD officers observed the fan distribution without comment or action. The Principal of Round Rock High School, Matt Groff walked by, warmly greeted Story and others, and told them to "Have a great game."



133.     Around an hour in, a single female RRISD officer, Connie Garza, approached the group. She told them that she had been told by "someone" to tell the group to stop distributing their materials.

134.     Story politely told Garza that they were exercising political free speech and asked what rule or law she was enforcing. The officer responded to the group by stating, "I am exercising my political free speech rights. I am telling you all not to take those fans."

135.     Story and two other distributors, Christie Slape and Don Zimmerman told the officer that her actions were unconstitutional. Garza then attempted to push the phone that Story was using to record her out of his hand, as demonstrated by Story's phone video, identified as Exhibit 14. The officer denied on the video that she tried to push Story's camera away.

136.     Within about ten minutes of the initial confrontation, Officer Ron Cole approached the group with a team of officers that included newly hired Chief Dennis Weiner. Officer Cole asked the group to stop passing out flyers and leave, but he did not command them to do so. He stated that he was only requesting on behalf of Superintendent Azaiez.

137.     During Story's discussion with Officer Cole, Cole 1) did not know under what law authorized him to disrupt the distribution; 2) did not know what if any policy he was enforcing and was not there to enforce school policy; 3) did not know if he was enforcing a penal code provision; 4) was not demanding that Plaintiff leave, but only requesting that he stop passing out fans; and 5) acknowledged that Story and his group had been polite the entire time.

138.     Story and his group affirmed to Officer Cole that they would neither voluntarily stop passing out flyers nor leave based on a request alone unless there was an allegation of a violation of a specific policy or law.

139.     Cole told them that he would need to confer. Seven minutes later, Round Rock Learning Community Area Superintendent Dr. Carla Amacher engaged Story in a discussion. Amacher

claimed that she was told by legal counsel to admonish Story and the others but refused to identify who advised her and she stated that she was asking them to stop but never formally demanded it. During the interaction Christie Slape asked Amacher to show the group the policy that was being violated, but Amacher was unable to do so.

140.    After about five minutes, Amacher walked off and Officer Cole demanded that the group stop distribution of the fans and leave. However, he would not affirm that he was speaking on behalf of the District, so the group continued the distribution.

141.    Amacher then returned and officially demanded on behalf of the District that the group leave, but then clarified that they only needed to stop passing out the fans.

142.    After Amacher left, the officers threatened to arrest Story and the group if they refused to leave. Story clarified that with the officers that Amacher had only required them to stop passing out flyers. The officers agreed while the Police Chief Weiner looked on.

143.    Story and the others stated that they would comply but protested that it was a violation of their rights. All members of the group returned the flyers to their cars and entered the game. No further materials were distributed.

144.    On September 19, 2022, Cynthia L. Hill, General Counsel for Round Rock Independent

School District, sent an email attached as Exhibit 15. In the email, she stated:

> Dear Candidates,
> The purpose of this correspondence is to ensure that there are no misunderstandings concerning distribution of campaign materials on District premises.
>
> The District has very clear and consistent policies regarding distribution of non-school literature such as campaign materials. I would direct you all Board Policy GKDA(Local) which provides that:
>
> > Written or printed materials, handbills, photographs, pictures, films, tapes, or other visual or auditory materials not sponsored by the District or by a District-affiliated school-support organization shall not be sold, circulated, distributed, or posted on any District premises by any District employee or by persons or groups not associated with the District, except in accordance with this policy.
>
> Pursuant to Board Policy, campaign materials *may not* be distributed at student events such as sporting contests or performances without prior review and permission from District administration.
>
> We request that you inform your campaign staff and/or volunteers about these restrictions. Please be advised that:
>
> > Failure to comply with this policy regarding distribution of non-school literature shall result in appropriate administrative action, including, but not limited to, confiscation of nonconforming materials and/or suspension of use of District facilities. Appropriate law enforcement officials may be called if a person refuses to comply with this policy or fails to leave the premises when asked.
>
> As potential Trustees, I am sure that you will all strive to: (1) uphold all district policies; (2) treat others with respect; and, (3) refrain from verbally threatening or intimidating staff members on or off school property.
>
> If you have any questions, please do not hesitate to contact me.

145.    RRISD Board Policy GKDA(Local) is available online and attached as Exhibit 16. The

policy governs distribution of materials "on any District premises", subject to several exceptions.

146.    Policy GKDA(Local) prohibits a specific set of material distribution on "District

premises", e.g., materials which are obscene, endorse dangerous activities, promote drug use, and

advocate lawless actions, to name a few.

147.    Policy GKDA(Local) governs review of materials which are not prohibited to be approved

stating, "All nonschool literature intended for distribution on school campuses or other District

premises under this policy shall be submitted to the Superintendent or designee for prior review."

148.     GKDA(Local) instructs "Each campus principal shall designate times, locations, and means by which non-school literature that is appropriate for distribution, as provided in this policy, may be made available or distributed to students or others at the principal's campus."

149.     Plaintiff Story has defended his distribution with two arguments, which include:

   a.   Story implicitly received permission by Matt Groff, the Principal of Round Rock High School, when Groff passed by Story and took no action. Story argues that the subject policy was followed, as Groff viewed the fan distribution with a cordial greeting before passing by them and continuing to the game. As Groff was the campus principal, his lack of opposition indicated that the distribution was appropriate.

   b.   The District's interference with distribution of the challenged materials on parking lots of public school stadiums violated Story's right to be exercise free speech.

150.     As detailed in this section, Defendants Hafedh Azaiez, Officer Ron Cole, PD Chief Dennis Weiner, and Carla Amache acted together to chill Plaintiff Story's speech during this event, threatening arrest in an off-and-on again set of demands during an event where no rule or law authorized such demands, and has continued in this effort by sending out the above memo.

**F.     Trustee Defendants violate TOMA by their joint appearance at the Texas State Legislature and exclusion of the disfavored trustees.**

151.     During the 2023 legislative session, Trustee Defendants traveled to Austin to testify before the state legislature. Separately, Trustees Bone and Weston traveled to the capitol. Trustees Bone and Weston did not know the Trustee Defendants were at the capitol or that they would be testifying. The Trustee Defendants made no public announcement about their plans to testify that day, as Trustees Bone and Weston testify in their declarations, attached as Exhibits 17 and 18.

152.     The Trustee Defendants thus met to discuss public business in private without an exception, a violation of the Texas Meetings Open Act.

153.    Further, Plaintiff learned from a recent school board meeting on May 18, 2023, that the Board has never taken up Story's litigation in an executive session, yet each of the Trustee Defendants executed an agreement for the District to pay for their personal legal defense.

154.    During the May 18, 2023 board meeting, Trustee Bone moved that the named Trustee Defendants be required to repay the portion of the legal expenses for their personal defense and open an investigation into these agreements. Trustee Bone also stated she had learned the Superintendent signed off on these agreements without the Board's approval, which has never discussed this litigation in public or private session, making the payments a violation of the Texas Open Meetings Act, assuming a non-public vote of the Board occurred.

155.    Through lengthy public information requests delayed by the RRISD, Plaintiff has now acquired an email showing Weir initiating a board discussion via email with the other six trustees regarding the hiring of Superintendent Azaiez.  Such discussion was not at a called or regular board meeting and clearly violates the Texas Open Meetings Act. Exhibit 19.

156.    This email production also includes a second email showing Xiao initiating a board discussion via email with all board members while also trying to involve the TEA Commissioner and a Texas State Board of Education member. Exhibit 19.

157.    Additionally, a series of text messages in a group text show Trustees Weir, Feller (now Landrum), Harrison, Vessa and Xiao collaborating together in discussion with the Superintendent while leaving Trustees Bone and Weston out. Exhibit 20.

158.    All of these incidents show the individual Trustee Defendants violating the Texas Open Meetings Act by conducting school business using a walking quorum, at best.

## G. Trustee Defendants infringe free speech and right to petition as a custom to control RRISD board meetings.

159. Story attempted to expose the Trustee Defendants' further wrongful actions to use the school district to silence their opposition during the June 8, 2023, board meeting, where Landrum was presiding. Specifically, closed session agenda item E.3 entailed a discussion of censure of Trustee Bone and was placed on the agenda at the behest of Trustee Markum.

160. Story signed up to speak on the closed session agenda item and began speaking at his allotted time but was interrupted by Landrum in the first 20 seconds of his speech and prevented from continuing solely on the grounds that his discourse was not germane to the agenda.

161. Story asked why his speech was not germane and Landrum refused to explain and merely reiterated her contention that he was not germane. Consequently, he was unable to finish his argument that that the real reason Bone was being subjected to censure was for her exposure of Landrum, Weir, Marku, Zarate, and Harrison's wrongful conduct at the prior board meeting. Specifically, at the immediately preceding May 18, 2023, meeting, Bone had moved to stop district funding of individual liability defenses for Weir, Landrum, and Harrison, in this suit and further to force repayment of district funds already spent thereon.

162. To prevent these disclosures, Landrum departed from her formerly stated rule allowing speakers to "wander", and instead demonstrated Landrum's decidedly different treatment based on the content of Story's speech, and lack of equal treatment.

163. Trustee Zarate also attempted to silence story by unlawfully trying to make a point of order during Story's interrupted speech.

164. Later in the meeting, agenda item E.3 was moved into open session, proving that Story's comments were germane, and appear to have been deliberately censored by Landrum and Zarate.

165.    Defendant Trustees passed a resolution targeting their opponents on January 20, 2022.

Trustee Feller then began adding this statement to the 'silencing statement' at every board meeting

immediately preceding public comments:

> "AS A SECOND REMINDER, THE BOARD ADOPTED AN ANTI-HATE
> RESOLUTION ON JANUARY 20TH, 2022, WHERE THE BOARD
> REAFFIRMED ITS COMMITMENT TO THE WELL-BEING AND SAFETY OF
> ALL PEOPLE, REGARDLESS OF RACE, COLOR, NATIONAL ORIGIN,
> RELIGION, SEX, GENDER IDENTITY, GENDER EXPRESSION, SEXUAL
> ORIENTATION, DISABILITY, AGE OR POLITICAL BELIEFS, AND
> STANDS AGAINST SPEECH THAT INCITES HATRED AND VIOLENCE
> TOWARDS ANY PERSON. PLEASE NOTE THAT WHILE THE PUBLIC
> DOES HAVE THE RIGHT TO SPEAK, THAT RIGHT IS NOT UNLIMITED."

166.    During the meeting, Trustee Bone referenced examples of speech before the RRISD Board

where Trustee Defendants made no effort to 'condemn' speech that was hateful, e.g., when Story

and Clark were accused of being white supremacists. In that case, Feller actually facilitated such

comments by taking time to silence the audience who reacted in frustration to these hate comments.

167.    Other examples include a speaker during the RRISD board meeting on May 19, 2022,

where one public commenter, Noah Schwartz, clearly violated the Trustee Defendants' hate speech

rule by calling those who believe in the traditional family as white supremacists, racists, and

terrorists. Schwartz stated that such people should have their kids taken away. Trustee Feller went

further by taking time to silence audience gasps of shock by temporarily pausing the person's

public comments and instructing the audience to 'please be quiet…he has the right to speak.'[33]

168.    In stark contrast, shortly after Schwartz spoke, during the same May 19, 2022 meeting,

Dustin Clark was stopped in the middle of his comments by Trustee Feller, who demanded that he

stop speaking because part of what he was saying was not on the Board Agenda. However, this

was a general board meeting where comments are allowed even if not related to an agenda item.

---

[33] All now recognize that "Noah Schwartz" was actually Alex Strenger, who appeared and made the outrageous statements. Feller failed to recognize that "Noah" was an outlandish parody or stop his statements because they supported her favored viewpoint.

169.    While Clark waited at the speaking stand, Feller then feigned impartiality similar to her behavior in Story's grievance hearings and debated with Trustees Bone and Weston:

> "Feller: YES. WHAT IS YOUR POINT?
> Weston: YOU JUST TOLD HIM HE HAD TO IF HE WAS GOING TO SPEAK ON THE TOPIC, ON AND OFF THE AGENDA THAT HE HAD TO SELECT SPEAKING OFF, WHERE IS THAT WRITTEN?
> Feller: WE TAKE OUR ON-AGENDA SPEAKERS FIRST. THAT IS WRITTEN
> Weston: WHERE DOES IT SAY THAT IF YOU'RE SPEAKING ON AND OFF THAT YOU HAVE TO SELECT OFF? WHERE IS THAT WRITTEN? I'VE READ THE BOARD AND OPERATING PROCEDURES MORE TIMES THAN I WOULD EVER WANT TO. IT'S NOT IN THERE.
> Feller: TRUSTEE WESTON, I'M JUST TRYING TO KEEP THE CONSTRAINTS FAIR FOR EVERYBODY AND EQUAL.
> Weston: THEN LET HIM FINISH, PLEASE."

170.    Feller also attempted to use board counsel, Valerie Carrillo, to aid her in her scheme. Trustee Feller stopped her pursuit only after board counsel Carrillo publicly contradicted Feller's reasoning by pointing out this was not how Trustee Feller or the board had acted in the past.

171.    Sgt. Lauren Griffith conducted the interviews and took affidavits from Round Rock ISD defendant officers that were full of material falsehoods which were ultimately used to arrest Story. Story has since learned that Griffith has a public bias against Christians. In a June 18, 2021 Round Rock ISD publicized news story Griffith shared that her encounter with a Christian who told her they formerly believed "all gay people went to hell" was "the most powerful and memorable statement ever made to me by a coworker." Griffith went further to use this interaction with a Christian to imply that the historical and traditional Christian viewpoint that homosexuality was immoral as "ignorant, judgmental and uneducated."

172.    Story is well known as a pastor and Christian leader in the community. He has also affirmed his status as a pastor and religious leader in his public comments. He has never made any negative comments in board meetings regarding homosexuals or other religions.

173.    Nevertheless, Weir, Feller and Harrison's public example and policy have encouraged other community members to use public comments to categorize Story and others who have spoken out against the Trustee Defendants as hateful and disruptive. These public comments against Story have not been curtailed in spite of the repeated statements by Feller at each board meeting, creating an atmosphere of unequal treatment at board meetings of public comments based on viewpoint. The 'hate' policy and repeated declarations before public comments by Weir and then Feller have incited personal 'hateful' public comments in board meetings against Story and creating an environment that discourages Story and similarly minded community members from speaking.

174.    Weir and Feller's statements before public comments while serving as board President and the policy passed by the board violate Story's constitutional rights. His arrest further silence many in the community from speaking out of fear of reprisal. *Zapach v. Dismuke*, 134 F. Supp. 2d 682 (E.D. Pa. 2001); *Bach v. Sch. Bd. of City of Virginia Beach*, 139 F. Supp. 2d 738, 741 (E.D. Va. 2001). *Gault v. City of Battle Creek*, 73 F. Supp. 2d 811 (W.D. Mich. 1999).

## V.    PROPOSITIONS OF LAW FOR PLAINTIFF'S § 1983 CLAIMS

175.    42 U.S.C. § 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of "any rights, privileges, or immunities secured by the Constitution and laws."

176.    To state a claim under section 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

177.    Put another way, to state a cause of action under § 1983 for violation of the Due Process Clause, plaintiffs must show they have asserted a recognized liberty or property interest within the purview of the Fourteenth Amendment, and that they were intentionally or recklessly deprived of

that interest, even temporarily, under color of state law. *Griffith v. Johnston,* 899 F.2d 1427, 1435 (5th Cir. 1990).

## A.     School Districts are liable under § 1983 for constitutional violations.[34]

178.    Municipal entities, including independent school districts, are "persons" under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). As such, school districts can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. *Id.* at 690-91.

179.    Under Texas law, the final policymaking authority in an independent school district rests with the district's board of trustees. *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003); Tex. Educ. Code § 11.151(b).

180.    To invoke municipal (or school district) liability, a plaintiff must identify (1) an official policy, of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy. *Pineda v. Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (quoting *Piotrowski* at 578).

## B.     Supervisors may be held liable for their own actions under § 1983.

181.    In *Bowen v. Watkins*, 669 F.2d 979, 988 (5th Cir. 1982), the Fifth Circuit observed that supervisory officials cannot be held liable solely on the basis of their employer-employee relationship with a tortfeasor *but* may be liable when their own action or inaction, including a failure to supervise that amounts to gross negligence or deliberate indifference, is a proximate cause of the constitutional violation.

---

[34] Plaintiff recognizes that this claim was previously dismissed without prejudice but asserts that the pattern is better established in this amendment.

## C. Police may be held individually liable under § 1983.

182. Recovering monetary damages from individual police officers requires overcoming their defense of qualified immunity, but qualified immunity is not provided to officials who knew or reasonably should have known that their actions would violate constitutional rights of others, or when actions are taken with the malicious intention to cause a deprivation of constitutional rights or other injury. *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S. Ct. 2727, 2737 (1982).

## VI. COMMON FACTS AND LEGAL BASIS FOR CLAIMS

183. At all times relevant, Defendants were acting under color of state law because they were employed by or performing official duties. The Trustee Defendants acted as school trustees, restricting Story from participating in public board meetings and supporting retaliatory arrests.

184. Each of the Individual Defendants knows that RRISD board meetings are open meetings where individuals petition the District and exercise free speech and equal public rights as citizens.

185. The Individual Defendants' actions described here were under color of policy or custom of RRISD, a local government, where each defendant acted independently to support the restrictive and unequal participation under the pretext of COVID-19 mitigation measures, in spite of the fact that each individual defendant obviously knew of the unequal treatment given to Plaintiff and the rest of the public because the same building housed other events with people who were not so restricted which they would have seen or been aware of that same day.

186. Plaintiff alleges his claims are based on obvious and clearly established rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

187. Defendants knew or should have known that they were violating Plaintiff's constitutional rights by prohibiting his speech, assembly, and petition, and by arresting him in retaliation for his viewpoint and the lawful expression thereof, which are protected under federal and state law.

188.    Plaintiff has suffered and are suffering irreparable harm from the Individual Defendants' retaliatory and discriminatory actions challenged here, as he were forcibly manhandled unnecessarily, prevented from publicly participating in RRISD events designed for petitioning the RRISD Board of Trustees, and then arrested without cause.

189.    Plaintiff has no way to know that these same events will not happen the next time that he addresses the RRISD Board, as no Individual Defendant has admitted that he was wrong. If anything, Defendants have leaned into their deliberately abusive approach, and have telegraphed that they will repeat these actions again if irritated, irrespective of any COVID-19 concern exists.

190.    Thus, Plaintiff has no adequate remedy at law to correct the deprivation of his rights while these unconstitutional policies and tactics remain.

191.    Unless the misuse of the Limited Public Comment Rule and the 18-Seat Rule are enjoined, Plaintiff will continue to suffer irreparable injury and chilled exercise of fundamental rights whenever the Board wants to railroad an agenda item without pesky public participation. Even if the 18-Seat Rule is not employed today, RRISD has not shown any lack of enthusiasm for repeating that error, so the issue is repeatable and will evade review.

192.    As each action described by each named defendant was an act of spite, Defendants are liable to Plaintiff under a "class of one" analysis for their failure to give equal treatment to all speaking before the RRISD Board, as discussed in *Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074-75 (2000).

# VII.   CAUSES OF ACTION

A.      **Defendants Azaiez, Feller, Harrison, Weir, Xiao, Vessa, Pope, Pontillo, Williby, and Yarbrough violated Story's rights protected by the First Amendment, enforced through the 14th Amendment and 42 U.S.C. § 1983.**

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. CONST. amend. 1.

193.    The First Amendment to the United States Constitution guarantees the right of United States citizens to petition their government for redress, which includes the right to do so without the government retaliating against the petitioner. The First Amendment applies to the states via the Fourteenth Amendment's due process clause. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995); *Rolf v. City of San Antonio*, 77 F.3d 823, 827 n. 18 (5th Cir. 1996).

> ### *1.      Defendants Weir, Pope, Pontillo, and Yarbrough violated Story's First Amendment Right to Petition and Free Speech by use of RRISD's "BED Local" Policy as applied (Aug. meeting).*

194.    Individual Defendants Weir, Pope, and Pontillo infringed Story's right to petition and free speech, preventing Story from exercising these rights by ejecting Story from the August meeting, treating him unequally in comparison with other individuals present at these meetings, based on content and viewpoint discrimination as enshrined in Defendants' Limited Public Comment Rule and other policies, which are unconstitutional as applied. These policies violate Plaintiff's rights of free speech, guaranteed by the First Amendment. and 42 U.S.C. § 1983.

195.    Plaintiff seeks economic damages and injunctive relief to prevent such behavior by Defendants going forward, including against RRISD itself.

> **2.** *Defendants Trustee Defendants, Dr. Azaiez, Williby, and Yarbrough use of the 18-Seat Rule violated Story's First Amendment Right to Petition and Free Speech and TOMA (Sept. meeting)..*

196. As described supra, the Trustee Defendants, Azaiez, Williby and Yarbrough violated Plaintiff's exercise of his First Amendment's Right to Petition and Right to Free Speech by implementation of the 18-Seat Rule, which was an irrational rule in which COVID provided a pretext to restrict public input during a tax rate hearing.

197. Specifically, Azaiez admitted that he implemented the 18-seat cap for the September 14th meeting and is seen in police cam footage coordinating with Yarbrough and other police during the September meeting, as he was aware that the crowd would likely be hostile. Though the room holds 375 people, Azaiez ordered the room to have 18 seats and disallowed individuals from bringing in their own seats and maintaining spacing in the huge room, and then the Trustee Defendants ratified these actions, which violated Story's right to petition and free speech.

198. Thus, the Trustee Defendants and Defendant Azaiez use of the 18-Seat Rule violated the Texas Open Meetings Act, as it made a sham of what should be an open public meeting, particularly when the meeting that day was for a tax vote where Texas law requires the ability of those governed to give feedback to the District.

199. Additionally, Officer Chavez acted as an agent of RRISD in violating the Texas Open Meetings Act by deliberately instructing Story from entering the meeting room, citing only parts of actual law to unconstitutionally excuse their actions to prevent Story from petitioning his government. As a supervising authority, Defendant Williby was more than merely indifferent to the constitutional deprivations, but approving of the event, which lasted over an hour and during which time his inaction and support was tantamount to approval of the actions by Chavez, Pontillo and Pope.

### 3. Defendants Azaiez, Yarbrough, Pope, Pontillo, Williby, and Griffith violated Story's right to exercise rights without retaliation.

200. Plaintiff's constitutional rights to petition and free speech without fear of retaliation for exercising free speech was infringed by Officer Defendants Pope and Pontillo, who acted directly with Story and responsible in their individual capacity. Defendant Williby is liable in his personal capacity as the supervisor of Pope and Pontillo and directly instructed and approved of their behavior. These Officer Defendants targeted Story on behalf of their management, Superintendent Azaiez, and his effective manager, Defendant Trustee Weir, who abused and attempted to intimidate Story so he would refrain from exercising his rights, and removing or keeping him from what should be public meetings by forcible removal, excessive force, and arrest.

201. Defendant Officers Pope and Pontillo directly acted to remove Story from a public meeting, using excessive force while doing so. Defendant Officer Williby is responsible as their manager, who was present and did not intervene, though he knew that excessive force was being employed.

202. While Officer Griffith did not participate in the manhandling of Story, she completed the arrest warrant for Story, just a few days after the September 16th meeting, with help from Pope, knowing that it contained falsehoods. Then in her Case Supplemental Report (October 12th), she indicated that she is collecting witness statements from Trustee Defendants Weir, Feller, and Harrison, who are all of like mind and would no doubt give the same report. Griffith never interviewed Trustees Bone or Weston, who are on the "wrong" side of the RRISD Board and would give a different view.

203. Defendants' above-described retaliatory actions based on the content and viewpoint of Story's speech violated his First Amendment right to petition and was designed to deter others with similar viewpoints from exercising their right to free speech in the future.

204.    In an ineffectual attempt to ratify an action, the board voted illegally that their seating "rules" constitute a policy, the enforcement of which directly caused Plaintiff's injuries. Thus, this policy is necessarily attributable to the policy maker. *See Pineda v. City of Houston*, 291 F.3d 325, 330-31 (5th Cir. 2002).

205.    Individual Defendants have mentioned Texas Penal Code § 42.05 in support of their actions regarding Story, but that statute is not applicable, because Plaintiff Story did not "substantially obstruct or interfere with the ordinary conduct of a meeting." The video record shows that Story simply sought to speak on issues facing the RRISD board, similarly to others.

206.    Additionally, as a leader of those who have sought to expose Superintendent Azaiez's background and ongoing moral dalliances, Story has been targeted by both the RRISD Trustee Defendants, Superintendent Azaiez, and his military arm, the RRISD police. And RRISD police have not disappointed Azaiez or Weir, as Defendant Yarbrough attempted to intimidate Story into silence or leaving; Defendant Weir immediately ordered his removal without cause, Officers Pope and Pontillo forcefully removed Story, all with the approval of Defendant Azaiez.

207.    Though Yarbrough did not manhandle Story himself, he was in the room the entire time, speaking with board members, staff, and law enforcement agents, directly supervising Pope and Pontillo, who played the part of hired goons sent to mindlessly guard the doors at the August 16th meeting, which kept out Board critics.  Shortly afterward, on August 19th, he also stood with a group of other officer defendants surrounding him outside the board room and falsely defended their actions when Story engaged Yarbrough in the conversation documented in this suit.

Pontillo also helped concoct a false narrative in his incident report, stating that Yarbrough warned Story after an outburst, though no such outburst or warning occurred. The meeting itself shows no outburst, and no police camera shows an outburst. Considering the historically unprecedented action to catalyze the arrest of a parent at their home and the large amount of national and local

press coverage of Story's removal from the board meeting, it is clear Yarbrough and Williby would have reviewed the false affidavit used for Story's arrest before submitting it. Pontillo, Pope, Williby, and Yarbrough are lying to create a narrative to support their actions which the evidence denies. Thus, Yarbrough and Williby should be held liable because they were actively engaged in supervising the series of RRISD police actions which led to Story's arrest.

**D.      RRISD, Azaiez, Officer Cole, Chief Weiner, and Amacher violated Story's First Amendment Right to Freedom of Speech at the Homecoming Event.**

208.    The First Amendment to the U.S. Constitution provides that:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. CONST. amend I.

209.    As noted *supra.* At the direction of Azaiez, Officer Cole, Chief Weiner, and Dr. Amacher all attempted to frustrate Story's free speech rights by first asking him to cease distribution of RRISD candidate campaign fans and ultimately ordering him to cease distribution at the September 16th, 2022, football game. These actions were undertaken without lawful authority and violate the plain meaning of RRISD Board Policy GKDA(Local) which expressly excepts "distribution of materials by an attendee to other attendees at a school-sponsored meeting intended for adults and held after school hours" …as noted *supra.*

210.    Defendants violated Story's exercise of free speech by interfering with his distribution of the campaign fans. General Counsel Hill formalized the RRISD's abusive policy in her September 19, 2022, email where she interpreted the Constitution and RRISD Board Policy GKDA(Local) to prohibit distribution of the fans and consequently to have furthered the First Amendment violation.

211.    The Fifth Circuit's ruling in *Chiu v. Plano Indep. Sch. Dist.,* 339 F.3d 273 (5th Cir. 2003) clearly supports passing out literature under similar circumstances and the Supreme Court of the

United States recent ruling in *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022) indicate aggressive moves by the Supreme Court to protect First Amendment Rights in school contexts. In this case, the exercise of Free Speech was in a parking lot with those passing by; the lot is colorably a public forum where such exercise should be expected and allowed.

212.    As described, Plaintiff Story ascribes liability for this violation of the First Amendment to RRISD and Azaiez, who issued the chilling instruction and approved Story's harassment.

### E.    Defendants Weir, Feller, Pope, Pontillo, Williby, and Yarbrough violated Plaintiff's Right to Equal Protection and Due Process protected by the Fourteenth Amendment and 42 U.S.C. § 1983.

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend XIV.

213.    At all times relevant to this Complaint, Defendant Officer Pope, Pontillo, Williby, and Yarbrough were acting under color of state law because they were employed by and performing official duties. These officers violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be treated equal to all other citizens giving feedback to the RRISD Board.

214.    Trustee Defendant Weir infringed Story's right to equal protection by treating him differently than she treated other speakers, and approved removal of Story from the Board's August public meeting. Officer Defendants Pope and Pontillo removed Story.

215.    Trustee Feller infringed Story's right to equal protection by treating him differently from other speakers, and improperly involving herself in Story's grievances by recusing and then participating in those processes as described supra, which she had not done before or since regarding other grievances.

216.    Additionally, Yarbrough treated Story unequally by harassing him in an attempt to chill his voice at the August meeting, while not asking others to behave or refrain from speaking, violating his duty to provide equal protection under the Constitution.

217.    Chief Yarbrough was present for both RRISD board meetings, personally supervising his officers and affirmatively participating and approving of the actions by Pope and Pontillo, and thus liable for a failure to supervise them under the Fourteenth Amendment, as he approved of the actions taken in a direct manner, during which Story's right to free speech and right to petition was violated. He also participated in actively supervising the creation and official submission of a false affidavit to arrest Story in a historically unprecedented action. He carefully worked to actively approve of the actions behind closed doors while working hard to keep his name off public documents. At any time in the process the false affidavit arrest of Story could have been stopped by Yarbrough but, Yarbrough instead took action to facilitate the arrest. He was present at all times during these events and would have clearly known the affidavit to be false and misleading.

218.    Later on, Defendant Williby also treated Story unequally by refusing to investigate Story's complaint and act on it. Only with Williby and Yarbrough's proactive and persistent personal involvement and supervisory actions over a 30 day period were Story's false affidavit and resulting arrest successfully facilitated.

219.    The arbitrary determination by school officials regarding who and how many are allowed into the meeting room in September also violates the "unbridled discretion" prohibition when the decisions are based on who is present and their politics.

220.    Defendant Trustees' speech policy, as applied, violates the Due Process Clause of the Fourteenth Amendment, as it was employed against Story's disfavored content.

221.    As detailed in the fact section, Defendants Weir, Pontillo, and Pope acted out of spite to punish the Plaintiff for his temerity, demonstrated by the Board's varying tolerance for

commentary that was "related to" vaguely worded agenda items. This unequal treatment merits liability under the "class of one" doctrine described in *Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074-75 (2000).

222. For their own actions as the direct supervisors of their officers and approval of their brute behavior at different times, Williby and Yarbrough have supervisory liability for the actions of Pope, Pontillo, and Chavez.

## F. Defendants Weir, Pope, Pontillo, and Griffth violated Plaintiff's Fourth Amendment Right to be Free of Unreasonable Arrest and Excessive Force under § 1983, as well as Williby and Yarbrough for their supervisory roles during the RRISD meetings.

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

223. To establish a claim of excessive force under the Fourth Amendment, plaintiffs must demonstrate: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009).

224. Officer Defendants Pope and Pontillo intentionally used unreasonable force and seizure against Plaintiff in retaliation for exercise of his constitutional right to petition and free speech without probable cause. Defendant Weir authorized and instructed RRISD police to remove Story.

225. As the supervisor who was watching the proceedings of the August RRISD board meeting and responsible for the conduct of Pope and Pontillo, Defendant Williby is responsible for his officers' unconstitutional behavior of which he approved.

226.    As the supervisor who was watching the proceedings and responsible for the conduct of Pope and Pontillo during the September board meeting. Officer Williby is also responsible for these violations as their supervisor who, not only was indifferent, but approved of the actions. Even a cursory review of Section 38.13 of the Texas Penal Code (Hindering Proceedings by Disorderly Conduct) militates against an allegation against Plaintiff by RRISD. Williby not only reviewed Section. 38.13 at the time of the violation but also intentionally instructed one of his officers to read the penal code in a way to intentionally mislead the public and facilitate the violation of Story's rights.

227.    As noted previously Yarbrough and Williby supervised the false affidavit creation and submission process which directly resulted in Story's arrest. Williby also used his supervisory authority to halt an investigation into Yarbrough, Pope and Pontillo. An unbiased investigation would have led any reasonable person to prevent the creation of the false allegations and misleading statements in the affidavit.

228.    Had Defendants Weir, Pope, Pontillo, and Williby allowed those at the August and September meetings to participate as was their right under Texas and Federal law to allow, the meeting would have proceeded without issue.

229.    Defendants appear to believe that they can break Texas law and violate obvious, well-established rights, both constitutional and statutory, and then arrest and punish dissenters for raising their voice in protest. However, Plaintiff Story asserts that such actions violate the Fourth Amendment's prohibition against unreasonable search and seizure.

230.    At the least, the events as they unfolded indicate that the individual who signed the warrants was not an "independent magistrate", but either a co-conspirator, or given false information, as the county worked in unlawful cooperation with individuals at the county:

    a.    The County Sheriff refused to work with Story initially and refused to take a complaint

in the 30-day period before Story's arrest;

    b.  The County Attorney took no action after Story filed his complaint and later recused himself due to conflict of interest, sending the matter to the Texas Attorney General;

    c.  County officials at private events stated that Story was guilty and made inaccurate statements in support of his arrest;

    d.  Superintendent Azaiez exchanged texts with the Williamson County Judge during this period regarding Story; and then

    e.  Williamson County acted on the District's faulty affidavit within eight hours and then made special exceptions to jail Story when the County was not jailing others similarly accused.

231.    Additionally, the warrant affidavit supporting the arrest had many errors, all of which caused the magistrate to issue the warrant based on falsehoods, including:

    a.  The warrant alleges Story agreed with Weir that he could not speak on a non-germane topic. Story never agreed to her assertion this was legal; he merely said what he was going to speak on was germane. His comments were germane.

    b.  The warrant implies Weir interrupted Story after he started speaking to tell him his comments were non-germane. As the video shows, this never happened. Weir banged her gavel and immediately yelled, "That's inappropriate!" and ordered Story removed.

    c.  The warrant states Story had several outbursts while speaking. Video evidence shows this to be false; the affidavit is simply wrong.

    d.  The warrant stated that Story "continued to have outbursts" after a warning from Weir, which is not true. Story spoke peacefully and calmly. Story did not get loud until RRISD police were forcing him out of the room.

    e.  The warrant states the Officer Pope understood Weir to want Story removed, as though Pope has authority to remove disfavored dissidents. Pope began acting before any instruction was given; Pope did not remove others when Weir banged her gavel.

    f.  Lastly, the warrant either intentionally or negligently conflates two separate events. First, it alleges that officers warned Story several times to leave the meeting because of his speech. In fact, the officers approached Story, who was quietly waiting for the meeting to start, and requested that Story leave even before the meeting started, giving no reason. As they were unlawfully trying to single Story out, a board member questioned them and stated that they had no right to prevent parents from standing at the back of the room. All of this is purposefully left out of the warrant.

### G. Azaiez and Trustee Defendants Feller, Harrison, Weir, Xiao, Vessa violated the Texas Open Meetings Act (Tex. Gov't Code § 551).

#### 1. Violations concerning the August RRISD meeting by use of a walking quorum and secret meeting in hiring Azaiez.

232. The Trustee Defendants violated the Open Meetings Act with secret meetings to arrange for the hiring of Azaiez, deliberately excluding Trustees Bones and Weston from deliberations concerning Azaiez. (The issue is not that Azaiez was hired at a meeting, but that he was hired before the meeting with a secret walking quorum of discussion, and the meeting was a mere ruse.)

233. Plaintiff asserts that all named Individual Defendant board members are responsible for ensuring that meetings remain open, and thus they should be liable for that failure.

#### 2. Violations concerning the September RRISD Board Meeting.

234. The Trustee Defendants prevented Plaintiff from entering an open meeting by creating an official policy, the 18-Seat Rule, employed to keep out Story and the public.

#### 3. Injunction and attorney fees are appropriate for TOMA violations.

235. Plaintiff seeks a permanent injunction against RRISD, the Trustee Defendants, and Azaiez to prevent further application of the 18-seat rule, and attorney fees as allowed under the Texas Open Meetings Act to a prevailing party. While Defendants may argue that the 18-Seat Rule is no longer employed and the issue moot, there is no indication by any agent of RRISD that its actions as to this matter were incorrect, and no assurance that it will not happen again. As the Court can take judicial notice that even today, certain government authorities are again attempting to scare the American populace into useless mask practices, inane social distance rules are not far behind. Thus, the claim is not moot and Plaintiff does not seek a mere advisory opinion.

## VIII. ATTORNEYS' FEES

236. Pursuant to 18 U.S.C. § 1988(b), Plaintiff seeks an award of his reasonable attorneys' fees, costs, and expenses.

237.    Pursuant to Tex. Gov't Code § 551.142(b), Plaintiff seeks an award of his reasonable attorneys' fees, other costs, and expenses.

## IX.   DEMAND FOR TRIAL BY JURY

238.    Plaintiff demands a jury by trial for all issues so triable.

## X.   CONDITIONS PRECEDENT

239.    Plaintiff has met all conditions precedent. Though unnecessary due to constitutional allegations, Plaintiff has filed related grievances with the District.

## XI.   PRAYER

Plaintiff pray that Defendants be cited to appear and answer, and, after trial, Plaintiff is granted all relief to which they are entitled, comprising:

a.   A permanent injunction prohibiting Defendants and their agents from enforcing the challenged provisions of their Limited Public Comment Rule based on content and limited seating policy;

b.   An award of nominal, compensatory, and punitive damages to Plaintiff from all Individual Defendants, jointly and severally, for their actions undertaken in violation of Plaintiff's constitutionally protected rights.

c.   Reasonable and attorneys' fees, costs, and expenses.

d.   All further relief to which Plaintiff may be entitled.

Respectfully,

/s/ Warren V. Norred
Warren V. Norred, TBN 24045094; warren@norredlaw.com
Norred Law, PLLC; 515 East Border Str.; Arlington, TX 76010
P: 817-704-3984; F: 817-524-6686
Attorneys for Plaintiff

Certificate of Service – I certify that I served this proposed Third Amended Complaint by the Court's ECF service to the emails of opposing counsel on this September 29, 2023.

s/Warren V. Norred
Warren V. Norred

I, JEREMY STORY, a citizen of the United States and a resident of the State of Texas, declare under penalty of perjury under 28 U.S.C. § 1746 that the allegations contained in Section 4, are true and correct. Many of these statements I know to be true even though I was not present because the official RRISD videos of board meetings are available, and I have had access to public documents, including the documents attached and filed with this Third Amended Complaint, which are true copies of the originals.

Executed this September 29, 2023 in Round Rock, Williamson County, Texas,



Jeremy Wade Story

**Appendix of Exhibits Concurrently Filed**
Exhibit 1 - Plaintiff's Proposed Preliminary Injunction Order
Exhibit 2 - Board Policy BED (Local)
Exhibit 3 - Application for Protective Order and Order and associated documents
Exhibit 4 - Story's emails sent to RRISD Board of Trustees
Exhibit 5 - Agenda and Minutes for the August 16 RRISD Called Meeting
Exhibit 6 - Story's complaint filed with the Williamson County Attorney's Office
Exhibit 7 - Story's RRISD Complaint
Exhibit 8 - Story's TEA Complaint
Exhibit 9 - August 23 Original Agenda
Exhibit 10 - August 23 Amended Agenda
Exhibit 11 - September 14 Minutes Approved in October
Exhibit 12 - August 3 Press Release of Trustees Weston and Bone
Exhibit 13 - TEA Notice of Appointment of Monitor
Exhibit 14 - September 16, 2022 Homecoming Game video
Exhibit 15 - September 19, Letter of Cynthia Hill
Exhibit 16 - RRISD Board Policy GKDA(Local)
Exhibit 17 - Affidavit of Bone
Exhibit 18 - Affidavit of Weston
Exhibit 19 – Email Thread - RRISDBoard
Exhibit 20 - Azaiez Text Messages