IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
(AUSTIN DIVISION)

| | |
|---|---|
| **JEREMY STORY,** <br><br> *Plaintiff,* <br><br> v. <br><br> **SUPERINTENDENT HAFEDH AZAIEZ, et al.,** <br><br> *Defendants.* | Case No. 1:22-cv-00448-DAE |

**PLAINTIFF JEREMY STORY'S DECLARATION IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 56**

I, Jeremy Wade Story, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct and based on my personal knowledge:

**A. Identity and Background**

1. I am the Plaintiff in this case. I am over 18 years of age, of sound mind, and fully competent to make this declaration.

2. At all relevant times of the Complaint and for a significant time afterward, I resided within the Round Rock Independent School District ("RRISD"), was a taxpayer of RRISD, and had school-age children who attend or are eligible to attend RRISD schools.

3. I have been actively involved in public affairs concerning RRISD governance, including attending board meetings, speaking during public comment, and communicating with trustees and administrators.

**Third Amended Complaint and Exhibits**

4. I have reviewed the Third Amended Complaint filed in this case (Doc. 49) ("Third Am. Compl.").

5. The factual allegations in the Third Am. Compl. that describe events I personally witnessed, communications I sent, video and documents I obtained or reviewed, and my own conduct and experiences are true and correct to the best of my knowledge.

6. The Third Am. Compl. also describes several public documents and videos (including RRISD board-meeting recordings, public information responses, and state-court filings). I have personally reviewed those documents or videos, either directly from the source or as copies attached to or referenced in the Complaint and Appendix.

7. To avoid repetition, I incorporate by reference as part of this declaration the factual allegations in Sections I–IV and VI–VII of the Third Am. Compl., to the extent they describe:

   a. my identity and role as a taxpayer and parent;

   b. the hiring process and controversy involving Superintendent Hafedh Azaiez;

   c. the protective-order proceedings involving Azaiez and Vanessa Aldrich;

   d. my communications to RRISD trustees and administrators;

   e. the events of the August 16, 2021, board meeting and my removal from that meeting;

   f. my subsequent complaints and grievances to RRISD, the Williamson County Attorney, RRISD Police, and the Texas Education Agency; and

   g. the September 2021 warrant and arrest for "Hindering Proceedings by Disorderly Conduct."

8. When this declaration refers to paragraph numbers from the Third Amended Complaint (Third Am. Compl.), those references are to facts I know from personal knowledge, from

direct observation, from public records I have personally reviewed, or from RRISD's own published video recordings and documents.

**Superintendent Hiring, Protective Order, and My Communications**

9. I attended and followed the June 14, 2021, and related RRISD board meetings regarding the hiring of Superintendent Azaiez, including the controversy over how his hiring was handled. Third Am. Compl. ¶¶ 13–17.

10. In July 2021, I learned that Vanessa Aldrich had sought a protective order against Azaiez based on allegations of assault and threats concerning her pregnancy. I obtained and reviewed the application and order from the Travis County proceeding. Id. ¶¶ 18, 23–25; App'x Ex. 3. I got the information directly from Vanessa.

11. After reviewing those materials, I sent emails and communications to RRISD trustees, including Board President Amy Weir, informing them of the protective-order allegations and offering evidence, including video of the protective order being served upon Azaiez at RRISD offices. Id. ¶¶ 21, 24–26; App'x Ex. 4.

12. In those communications, I urged the Board to investigate and address the allegations, and I requested that they not ignore serious safety and moral concerns while publicly emphasizing "health and safety" for other agenda items.

**August 16, 2021, Special Meeting – My Actions**

13. On August 16, 2021, I attended the RRISD specially called board meeting concerning COVID-19 employee leave and COVID-19 health and safety protocols. Third Am. Compl. ¶ 28.

14. I signed up to speak during the public-comment period for that meeting. It was my intent to speak directly to the posted agenda items, including:

    a.    the Board's stated concern for the health and safety of students and staff;

    b.    the Board's oversight and "supervision of the Superintendent"; and

    c.    the consistency of those statements with the Board's refusal to address the protective-order allegations against Superintendent Azaiez. Id. ¶¶ 28–34.

15. I had reviewed the August 16 agenda and the text of the resolution dealing with COVID-19 and safety and came prepared to read from the resolution during my remarks. Id. ¶¶ 28–33; App'x Ex. 5.

**Events Inside the August 16 Meeting Before My Remarks**

16. During the August 16 meeting, I observed several other speakers use historical and religious analogies and political examples that went beyond the literal language of the agenda. Third Am. Compl. ¶ 37. These included comments referencing:

    a.    Frederick Douglass, used as an example of liberty and resistance to oppression;

    b.    Senator Ted Cruz and his children's private-school mask mandate;

    c.    Jesus of Nazareth and criticism of government "hypocrisy… down to the school board"; and

    d.    accusations that certain trustees or critics were "QAnon," "mobs," or dangerous to children. Id. ¶ 37(a)–(f).

17. None of these speakers were physically removed from the meeting during their remarks. I did not see RRISD Police seize any of those speakers or hear them being told they were off topic in a manner that ended their speaking time.

**My Interaction with Chief Yarbrough Before Speaking**

18. Before I spoke during public comment, Chief Jeffrey Yarbrough, in plain clothes, approached me and attempted to get me to leave the room to speak privately with him in

4

the hallway. Third Am. Compl. ¶ 31.

19. I repeatedly and calmly declined to leave, telling him that I was there to speak during public comment and had not caused any disruption. *Id*.

20. I observed Chief Yarbrough focus on me specifically; I did not see him approach other attendees in the same way prior to their speaking.

**My Public-Comment Remarks on August 16**

21. When my name was called to speak, I approached the podium. Video of my remarks is publicly available on RRISD's own website and has been marked as an exhibit in this case. Third Am. Compl. ¶ 32; App'x Ex. 7 (August 16 video); Ex. 8 (Story clip).

22. I began by addressing the August 16 resolution itself. I read from the text concerning the Board's "substantial public interest in protecting the health and safety of students and community"; and the Board's "supervision of the Superintendent." Third Am. Compl. ¶ 33.

23. I explained that I was concerned the Board's stated concern for safety and supervision was inconsistent with its refusal to address the protective-order allegations against Superintendent Azaiez and its use of police officers to enforce a last-minute Open Meetings Act violation. Id. ¶¶ 33–34, 60–77.

24. I did not shout, physically threaten anyone, or refuse to comply with any lawful safety instruction at any time while I was at the podium. Any increase in my volume occurred only after my microphone was cut off and I attempted to finish or object as my speaking time was effectively terminated.

**The Moment I Mentioned the Protective Order and My Removal**

25. As shown on the August 16 video, I was allowed to speak uninterrupted until I mentioned

the protective order against Superintendent Azaiez as an example of the Board's hypocrisy on safety. Third Am. Compl. ¶¶ 33–34; App'x Ex. 7–8.

26. Immediately upon mentioning the protective order, President Weir declared my comments "not germane" or "off topic," cut off my microphone, and instructed officers to remove me. Id. ¶ 34.

27. Officers Milton Pope and Frank Pontillo approached me from behind, took hold of my arms and/or upper body, and physically escorted me out of the meeting room. Id. ¶ 34.

28. I had personally observed other speakers use analogies and references, including accusations of hypocrisy and personal attacks for over student safety, without being seized or removed from the room. I believe I was singled out because my criticism was directed at the Superintendent and Board regarding the protective order.

**Physical Effects and Immediate Aftermath**

29. I have reviewed the body-worn camera and hallway footage from these events and confirm that the videos fairly depict what I experienced at the time.

30. I filed a written RRISD Police complaint with Assistant Chief James Williby describing the August 16 removal and my belief that it violated my rights. Id. ¶ 40 & Ex. 7.

31. I filed a complaint with the Texas Education Agency ("TEA") concerning the Board's actions and RRISD Police conduct. Id. ¶ 43 & Ex. 8.

**September 2021 Warrant and Arrest**

32. On or about September 17, 2021, a warrant for my arrest had been issued based on a charge of "Hindering Proceedings by Disorderly Conduct," signed by Detective Sergeant Lauren Griffith as affiant. Third Am. Compl. ¶ 95 & Ex. 11.

33. I was later arrested at my home on that warrant. I had not committed any offense between August 16 and the time the warrant issued; my only actions in that period were continuing to speak publicly, and to pursue my rights through lawful means. Id. ¶¶ 88–96.

34. I did not receive any warning or notice from RRISD or its police that they believed my August 16 speech constituted a crime until I learned of the warrant.

35. I have reviewed the Affidavit for Warrant of Arrest and Detention prepared by Detective Griffith. To the extent that affidavit alleges that I engaged in repeated, unrelated "outbursts" at the August 16 meeting; refused lawful instructions after multiple warnings; or otherwise substantially obstructed the meeting, those allegations are not accurate descriptions of my conduct as shown by the August 16 video and my own recollection.

**Comparison to Other Speakers and My Understanding of Why I Was Targeted**

36. I attended and have since re-watched recordings of multiple RRISD board meetings surrounding these events. Third Am. Compl. ¶¶ 37, 44–61, 88–92.

37. At those meetings, I saw and heard numerous speakers:

    a. venture far off topic;

    b. harshly criticize trustees, critics, and other community members; and

    c. use analogies and personal attacks—including accusations that I and others were "mobs," "QAnon," or otherwise dangerous—without being seized, arrested, or criminally charged. Id. ¶¶ 37, 44–61, 165–68.

38. To my knowledge, I and my prior co-defendant are the only community members to be physically seized, have an arrest warrant issued, and be criminally prosecuted over speech at or related to RRISD board meetings in this time period.

39. Based on my direct observations and the public record, I believe I was targeted and retaliated against because I criticized Superintendent Azaiez and the Board about the protective order and hiring process at the August 16 meeting and prior meetings.

**Authenticity of Videos and Documents**

40. I have personally reviewed the RRISD-produced videos of the August 16, 2021, board meeting and related body-camera and hallway footage that have been included as exhibits in this case. Third Am. Compl. ¶¶ 32–34, 59–77 & App'x Exhs. 7–8.

41. To the best of my knowledge, those recordings are true and accurate depictions of the events they show.

42. I have also reviewed the printed excerpts of board-meeting transcripts in the Third Amended Complaint and public records attached to the Appendix and confirm that they accurately reflect what is said or shown on the underlying video recordings and documents.

**Summary**

43. I attended the August 16 and surrounding board meetings, spoke during public comment, and criticized RRISD's handling of the Superintendent's protective order and hiring. I was a leader and vocal over this.

44. I was physically seized and removed from the August 16 meeting solely because of my speech, despite other speakers using comparable or more extreme analogies and criticism.

45. After I filed complaints and continued speaking out, RRISD leadership pursued a criminal charge and arrest warrant against me that, to my knowledge, has never been used against other similarly situated speakers.

46. All of the above facts are true and correct to the best of my knowledge and belief.

47. I declare under penalty of perjury that the foregoing is true and correct.

48. Executed on December 30, 2025, in Bastrop County, Texas.

_____
Jeremy Wade Story