**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **JEREMY STORY,** | § § | |
| *Plaintiff* | § § | |
| **vs.** | § § | **NO. 1:22-CV-448-DAE** |
| **HAFEDH AZAIEZ, et al,** | § § | |
| *Defendants* | § § | |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT**

Plaintiff, Jeremy Story (hereinafter refereed to as "Plaintiff" or "Story") files this reply to Defendant's Round Rock Independent School District's ("RRISD") Response to Plaintiff's Motion for Summary Judgment (Defendant's response herein referred to as "its Response") and in support respectfully shows the Court as follows:

## I.     DEFENDANTS MISCHARACTERIZE THE VIDEO RECORD

Defendants' Response does not create a genuine dispute of material fact. Instead, it confirms the central facts already established by the video record and Defendants' own testimony.

At the August 16, 2021, Round Rock ISD board meeting, numerous speakers used analogies, political rhetoric, and criticism of the Board while discussing COVID policies. Those speakers referenced historical figures, religious figures, and public officials. None were silenced or removed. Plaintiff Jeremy Story used the same rhetorical method: criticizing the Board's claimed concern for "health and safety" by using a protective order against the Superintendent as the logical foil to prove the Board's hypocrisy. Only then was his microphone cut, officers ordered to seize him, and criminal charges later pursued.

Based on Story's use of this "forbidden analogy," Defendants attempt to justify this treatment by labeling Plaintiff "disruptive" and "off topic." But the Supreme Court has made clear that courts must evaluate summary judgment evidence in the light depicted by the video record—not post hoc characterizations of it. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). The video shows a citizen attempting to complete his allotted public comment while reading prepared remarks. What the video also shows is that once Plaintiff's criticism turned toward the Superintendent, the Board abruptly terminated his speech and ordered his removal.

Because the Supreme Court requires courts to view the facts "in the light depicted by the videotape," *Scott v. Harris*, 550 U.S. at 380, Defendants' narrative descriptions cannot create a genuine dispute of fact.

Thus, the undisputed facts establish viewpoint discrimination, retaliatory arrest, and an unreasonable seizure as a matter of law. Defendants' Response relies on narrative characterizations rather than conflicting evidence and therefore cannot defeat summary judgment.

## II.    DEFENDANTS MISCHARACTERIZE THE VIDEO RECORD

Defendants' primary defense is that Plaintiff was speaking "off topic," and therefore his speech was not protected. That argument fails for two independent reasons.

### A. The Forum Allowed Analogical Criticism of Public Policy., Just Not by Story's "Forbidden Analogy."

A school board meeting is a limited public forum, meaning the government may impose reasonable topic restrictions but may not discriminate against speech based on viewpoint. *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106–07 (2001). The record confirms that speakers were routinely allowed to use analogies, historical references, and criticism of government actors while discussing COVID policies. Examples include:

• references to Frederick Douglass (Aug 16 meeting at 1:05:38);

• references to Senator Ted Cruz (Aug 16 meeting at 1:07:38); and

• references to Jesus of Nazareth (Aug 16 meeting at 1:36:18).

These speakers were neither interrupted nor removed.

### B.  Story used a "forbidden analogy," showing discrimination against his <u>viewpoint</u>.

Viewpoint discrimination is "the greatest First Amendment sin." *Honeyfund.com Inc. v. Governor, Florida*, 94 F.4th 1272, 1277 (11th Cir. 2024).

Plaintiff used the same rhetorical method as others—drawing an analogy. Here, he did it between the Board's professed concern for safety and the Superintendent's protective order. Defendants do not dispute that this occurred based on Story's view. *Response* at 7-8. Yet, once the government permits speech on a subject, it cannot allow some viewpoints while silencing others. *Rosenberger v. Rector*, 515 U.S. 819, 829 (1995).

**This is the essential point of disagreement dominating this entire case. Can Story's view of the Board's hypocrisy be permitted free expression; can he use his own logical foils and not those "approved" by the Defendants? The law is clear: Story's viewpoint is protected.**

Thus, Defendant's "great[] First Amendment sin" happened when Story used the "forbidden analogy" of referencing the Superintendent's protective order as a logical foil to point out the hypocrisy of the school board's concern for student safety.

All other analogies were permitted. *See* Part II.A, *supra*. Even assuming, arguendo, Story veered off-topic to introduce the analogy, all deponents agreed analogies had to be taken in context and would seem off-topic at first. For example, Tad Cleeves stated to the Board that he was going to talk about "local control" and specifically stated that he was not talking about masks. Mr. Cleeves was allowed to talk off topic for the entire two minutes without interruption. App 279.tx

at 242.50. Defendants ignore this fact throughout their pleadings but emphasize that Plaintiff was "off topic" in a "disruptive" manner. The video speaks for itself, showing this is untrue and substantiates Plaintiff's allegations that he was targeted and discriminated against.

The record establishes viewpoint discrimination, and summary judgment in Plaintiff's favor should issue.

### III.   THE UNREASONABLE SEIZURE CLAIM IS ALSO UNDISPUTED

Defendants concede that officers physically grabbed Plaintiff and escorted him from the meeting.  A seizure occurs whenever officers restrain a person's liberty through physical force or authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). Such a seizure must be supported by reasonable suspicion of criminal activity. Defendants' own witnesses acknowledged that merely speaking off topic is not a criminal offense.[1]

The only alleged justification was that Plaintiff continued speaking after his microphone was cut. Continuing to speak during public comment does not create reasonable suspicion of a crime. Accordingly, the seizure violated the Fourth Amendment.

### IV.   THE RETALIATORY ARREST CLAIM SATISFIES NIEVES AND GONZALEZ

Defendants next argue that the existence of probable cause defeats the retaliatory arrest claim. The Supreme Court rejected that exact argument in *Gonzalez v. Trevino*, holding that selective enforcement of minor offenses against a political critic can support a retaliatory arrest claim even when arguable probable cause exists. *See Gonzalez v. Trevino*, 602 U.S. 653, 664 (2024)

Here the evidence is stronger than in Gonzalez.

---

[1] The Defendants' position is essentially they can cause the disruption by shutting off the microphone and violating Story's First Amendment rights; then, when he objects, that causes the disruption. Defendants cannot manufacture this offense by the constitutional violation. This is improper. *See, generally*, *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965) ("The chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure."). Here, Defendant did chill Story's speech using the criminal code, even when he didn't commit an offense under the statute.

The record shows:

• Plaintiff criticized the Board and Superintendent.

• Defendants escalated the matter to the County Attorney.

• Officers later sought an arrest warrant.

• No other speaker was investigated or charged for conduct that evening.

That selective enforcement falls squarely within the *Nieves* exception.

### V.   QUALIFIED IMMUNITY DOES NOT APPLY

Defendants' final argument is that qualified immunity bars summary judgment. But the doctrine protects reasonable mistakes of law, not constitutional violations committed by officials who lack any understanding of the governing law. Qualified immunity applies only when an official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Critically, the inquiry is objective. The Supreme Court has repeatedly rejected the notion that an official's subjective ignorance of the law can make unconstitutional conduct reasonable. *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (qualified immunity turns on what a reasonable official would understand the law to be).

Defendants' deposition testimony demonstrates that the officers and officials involved had little to no training and no meaningful understanding of the constitutional limits governing public comment at board meetings.[2] Their testimony shows they believed that law enforcement could

---

[2] Pope's understanding of "viewpoint discrimination" never progressed beyond his Mustang/Camaro analogy; he expressly stated he did not "quite understand" the concept and defaulted to following the Board President's orders rather than independently considering Story's First Amendment rights. (Pope at 35:18–25; 36:1–7, 10–11; 168:3–12, 21–25). Yarbrough could not articulate when content-based enforcement at a school-board meeting crosses the constitutional line, even as he admitted that off-topic speech alone is not a crime. (Yarbrough at 100:11–13). Griffith conceded she had no recent, focused First Amendment training beyond academy classes, could not recite the Fourth Amendment without prompting, and drafted her arrest affidavit by largely adopting Pope's narrative rather than testing it against constitutional standards. (Griffith at 17:11–25; 18:1–9; 51:14–25; 139:8–25; 146:19–25; 147:1–3). Azaiez repeatedly emphasized that he is "not a lawyer" and could only speak in vague terms about "administrative decisions,"

simply enforce the Board president's directive to silence a speaker, regardless of the First Amendment implications.

But constitutional rights cannot depend on whether government officials have chosen to educate themselves about them. If the doctrine operated that way, officials who remained ignorant of constitutional limits would receive greater protection than those who made reasonable efforts to comply with the law. This cannot be the standard.

The Supreme Court has expressly rejected that result. Qualified immunity protects reasonable mistakes, not the absence of basic constitutional knowledge. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."). Qualified immunity does not exist to shield "the plainly incompetent." *Id*.

Nor does it allow officers to rely blindly on the instructions of another official when constitutional violations are apparent. The Fifth Circuit has held that officers remain responsible for ensuring their conduct complies with clearly established law. *See Mesa v. Prejean*, 543 F.3d 264, 271 (5th Cir. 2008).

The constitutional rule at issue here was long established before the August 2021 meeting: government officials may not suppress speech in a limited public forum based on viewpoint. *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106–07 (2001); *Rosenberger v. Rector*, 515 U.S. 819, 829 (1995); *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 758–59 (5th Cir. 2010).

Because that principle was clearly established, Defendants cannot avoid liability by claiming ignorance of it. Otherwise, the doctrine would create the perverse result that officials who remain uninformed about constitutional limits are more protected than those who make reasonable

---

even as he admitted that applying different standards to critics can be unequal. (Azaiez at 71:1–11; 96:3–15; 110:11–17, 18–23).

efforts to follow the law. The qualified immunity doctrine does not permit such a paradox.

Accordingly, Defendants are not entitled to qualified immunity.

## VI.   CONCLUSION

Defendants' Response ultimately rests on reframing undisputed events rather than disputing them. The video evidence, deposition testimony, and Defendants' own admissions establish that:

a.   speakers criticizing COVID policy and the Board were allowed to finish speaking;

b.   Plaintiff was cut off immediately after criticizing the Superintendent;

c.   officers physically seized Plaintiff despite the absence of any criminal conduct; and

d.   Defendants later escalated the incident into criminal charges that were never applied to any other speaker.

The First Amendment does not allow government officials to permit criticism in a public forum until the criticism becomes uncomfortable. Nor does the Fourth Amendment allow law enforcement to physically remove a speaker from a public meeting absent reasonable suspicion of criminal conduct. And the Constitution certainly does not permit officials to convert protected speech into a criminal case after the fact.

Because the material facts are undisputed and the law is clearly established, Plaintiff is entitled to judgment as a matter of law on his First Amendment and Fourth Amendment claims.

Plaintiff therefore respectfully requests that the Court grant Plaintiff's Motion for Summary Judgment.

RESPECTFULLY SUBMITTED, this day, March 16, 2026.

CASEY LAW OFFICE, P.C.
P.O. Box 2451
Round Rock, Texas 78680
Telephone: (512) 257-1324
Fax: (512) 853-4098


By    /s/ Stephen Casey
    Stephen Casey, Esq.
    Texas Bar No. 24065015
    stephen@caseylawoffice.us


## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2026, a true and correct copy of the above and foregoing *Response to Defendants Dr. Hafedh Azaiez's, Jeffrey Yarbrough's, and Lauren Griffith's Motion for Summary Judgment* was served via electronic means to counsel for Defendants:

THOMPSON & HORTON LLP
500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(713) 583-8884 – Facsimile

Kathryn E. Long
State Bar No. 24041679
klong@thompsonhorton.com
K. Adam Rothey
State Bar No. 24051274
arothey@thompsonhorton.com
Ibrahim Yaseen
State Bar No. 24137674
iyaseen@thompsonhorton.com


By:    /s/ Stephen Casey
    Stephen Casey, Esq.
    Texas Bar No. 24065015
    stephen@caseylawoffice.us