IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS − AUSTIN DIVISION

| | | |
|---|---|---|
| JEREMY STORY,<br><br>    *Plaintiffs*,<br><br>v.<br><br>SUPERINTENDENT HAFEDH AZAIEZ,<br>TRUSTEES AMBER FELLER, TIFFANIE<br>HARRISON, AMY WEIR, JUN XIAO, CORY<br>VESSA; OFFICERS JEFFREY YARBROUGH,<br>JAMES WILLIBY, DEBORAH GRIFFITH,<br>MILTON POPE, FRANK PONTILLO, RON<br>COLE, CHIEF DENNIS WEINER, and CARLA<br>AMACHER, individually, and ROUND ROCK<br>INDEP. SCHOOL DISTRICT,<br><br>    *Defendants*. | § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO.<br>1:22-cv-00448-DAE |

## DEFENDANTS AMY WEIR, MILTON POPE, AND FRANK PONTILLO'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

KATHRYN E. LONG
State Bar No. 24041679
klong@thompsonhorton.com

K. ADAM ROTHEY
State Bar No. 24051274
arothey@thompsonhorton.com

IBRAHIM YASEEN
State Bar No. 24137674
iyaseen@thompsonhorton.com

**THOMPSON & HORTON LLP**
500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(713) 583-8884 – Facsimile

*Attorneys for the Round Rock ISD Defendants*

Story's Response fails to raise a material fact issue to defeat summary judgment on his viewpoint-discrimination claim against Weir, Pope, and Pontillo, his unreasonable-seizure claim against Pope and Pontillo, and his false-arrest claim against Pope.[1] Story's arguments rest on the false premise that he was speaking on-topic and therefore entitled to keep speaking after he was directed to stop doing so. Because Story believes he was entitled to continue speaking, he argues that his subsequent actions did not hinder the August 16th Meeting and did not give reasonable suspicion for removal or probable cause for arrest. Story's arguments are not supported by the facts or the law.

Story repeatedly cites comments by other speakers who were not removed or arrested. But he ignores that most of his chosen comparators addressed the listed agenda item of COVID-19-related health and safety protocols. He also refuses to acknowledge that his conduct was different from everyone else, which precludes his assertions of viewpoint discrimination and selective enforcement. He also cites no legal authority clearly establishing that it was unreasonable for Defendants to believe his speech was off-topic and not subject to First Amendment protections, or for Pope and Pontillo to believe that his behavior violated Texas Penal Code § 38.13 to overcome their qualified immunity.

I.      **Story's speech regarding the Superintendent was not on topic.**

Story cites *no* authority that his speech was on one of the two agenda topics for the August 16th Meeting. Nor does he cite the topics themselves, App. 227, preferring to recharacterize them as a broad "health and safety" topic that covers "supervision of the Superintendent." Dkt. 140 at 9. He ignores the "COVID-19" modifier before the words health and safety in the agenda item. The First Amendment does not guarantee Story the right to speak in a limited public forum on the topics he sees as being relevant. As long as the narrower interpretation is both viewpoint neutral and reasonable in light of the forum's purpose, it does not violate the First Amendment. *See Fairchild v. Liberty Indep.*

---

[1]     To the extent Story ever asserted an excessive force claim regarding the August 16th Meeting, he makes no attempt to address Defendants' arguments and has abandoned this claim. *Vela v. City of Houston*, 276 F.3d 659, 678 (5th Cir. 2001).

*Sch. Dist.*, 597 F.3d 747, 758 (5th Cir. 2010); *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 346 (5th Cir.2001). And Story was well-aware that his comments regarding the protective order were off-topic.[2] Moreover, Story cites no evidence to controvert Defendants' belief that his discussion regarding the Superintendent and the "protective order" was not an item on the agenda.[3]

Story cannot save his claim by arguing that whether he was on-topic is a "jury question" or that this dispute precludes qualified immunity. Dkt. 140 at 9, 11, 18–19. Indeed, this turns qualified immunity on its head. If reasonable officials could disagree regarding the agenda item's scope, then Story cannot show that all reasonable officials would know that their conduct violated the law. *See Hare v. City of Corinth, Miss.*, 135 F.3d 320, 326 (5th Cir. 1998). Simply put, Story seeks to impose financial liability on three civil servants because Weir interpreted the agenda as written, rather than expand it beyond its plain meaning. Story has not even attempted to identify a law saying this narrower interpretation was unlawful, much less show it violated clearly established law to overcome qualified immunity. And because Story uses his belief that he was on topic to justify his later behavior as lawful, it undermines not only his viewpoint discrimination claim, but also his unreasonable seizure and false arrest claims, and these claims fail.

## II.    Defendants did not apply BED (Local) differently; rather, Story's conduct differed.

In support of his viewpoint discrimination claim and his argument that Pope selectively enforced Penal Code § 38.13, Story argues he was treated differently than three speakers who spoke "by analogy" ***about COVID-19 protocols*** and two who spoke about non-agenda items and were directed by Weir to cease doing so.[4] He complains that the two off-topic speakers were "interrupted"

---

[2]    *See* App. 353 (pre-meeting communications with Trustee Weston); App. 199, ¶ 37; App. 102 (Story's written submission to speak during public comment); App. 279 at 2:26:37–2:27:07 (Story argued when Weir told White her comments were off-topic); *Id.* at 2:47-:31–2:47:58 (Story implicitly acknowledged he was going to speak off-topic).

[3]    *See* App. 4, 7–9, 12, 14 ¶¶ 10, 23–28, 37, 44 (Pope); App. 109–10, 113, 114 ¶¶ 12–13, 24–25; 29–32 (Pontillo); App. 198–201, 204–05, ¶¶ 35, 37, 42–43, 46–47, 55 (Weir).

[4]    Defendants addressed these comparators in detail in their response to Story's motion for summary judgment, which is incorporated herein by reference. *See* Dkt. 138 at 8–10.

and "cut-off," but not seized.[5] But he does not directly address, much less with reference to clearly established law, why his actions in continuing to speak loudly after his microphone was turned off and in refusing to leave when directed to do so do not justify treating him differently. This is especially true where one of the two off-topic comparators expressed the same criticism of the Superintendent that Story claims led to his removal. Dkt. 140 at 12.[6] Nor does he show that the narrower interpretation of the agenda items for the August 16th Meeting discriminates based on viewpoint.[7]

Other than citing the general, undisputed proposition that viewpoint discrimination is unconstitutional, Story cites zero authority that he could not be treated differently because he *behaved differently*. He does not respond to the case law that shows the opposite, Dkt. 131 at 13-14, or the case law regarding what it means to be similarly situated. *Id.* at 14-15 (citing *Golden Glow Tanning Salon, Inc. v. City of Columbus, Miss.*, 52 F.4th 974, 978 (5th Cir. 2022) ("Similarly situated means in all relevant aspects alike")). And he cites no facts or law that all reasonable officials would know that the different treatment based on this different conduct violated the law to defeat Defendants' qualified immunity.

## III.    The August 16th Meeting video unequivocally shows Story disturbed the Meeting.

Story's claims all hinge on his assertion that the video proves he did not disrupt the Meeting. Defendants agree that the videos of the August 16th Meeting—the video of the Meeting (App. 279) and body camera footage (App. 93; App. 94)—accurately depict Story's conduct. But rather than

---

[5]    Story complains that the fifth comparator was allowed to speak longer before being cut-off. Weir explained that the fifth comparator was testifying remotely, which meant that Weir could not mute his microphone and there could be no physical removal. Instead, technology personnel had the ability to do so, which contributed to an approximately 10-second delay in cutting him off. App. 203 at ¶ 52.

[6]    Story notes that "Renata Sims referenced the protective order against the Superintendent . . .; she was cut off but not seized"; yet argues, "[t]hat viewpoint—directly criticizing the Superintendent and the Board for hypocrisy in leadership and safety—was the specific motivating perspective that triggered the cutoff and physical removal."

[7]    Story cites Azaiez's alleged "admissions" to support that he was treated differently. That Azaiez testified that "in part" it wasn't unreasonable for Story "from his perspective" to believe his comments were safety-related does not mean his comments were related to **COVID-19** health and safety or that directing him to stop speaking was due to animus against his viewpoint. *See* Dkt. 133-15, Azaiez Depo. at 98:7–18, 110:9–23 (admitting that "hypothetical[ly]" applying different standards could be "perceived as" unequal treatment, which is far from asserting that anyone *did* apply different standards). The fact that others spoke off-topic is of no moment if their conduct was not the same as Story's *Id.* at 77:17–24.

support Story's version of events, the videos buttress Defendants' entitlement to summary judgment. Story's contention that because he was "peaceful," and did not "physically interfere" with the Meeting, he did not disrupt the Meeting is of no moment. Dkt. 140 at 8. Story cites no authority that his "ordinary disagreement with the chair's decision"—including admittedly raising his voice, continuing to speak off-topic after being instructed to stop, arguing with Weir's instructions to remove him, and resisting removal—is not a disturbance (the proper term from Penal Code § 38.13). Dkt. 140 at 8.

Under the plain meaning of disturb—"to interfere with; interrupt"—the videos show that he did so.[8] Prior to being called to speak, Story answered a question directed at Weir when the Trustees were discussing social distancing (App. 93; App. 279 at 3:01-04), argued with Weir over her determination that another speaker's comments were off-topic, continuing long enough for her to warn him, "You have to stop. You will be asked to leave."[9] App. 279 at 2:26:37–2:27:07; App. 145, ¶ 25; App. 161 at 1:18–1:18:28. Among other things, he interrupted Weir's admonition to stay on topic (App. 279 at 2:47:31–2:47:58), spoke over her when she directed him to stop speaking regarding the protective order (*id.* at 2:48:59–2:49-09), spoke louder when his microphone was cut off (App. 94 at 00:30–00:40), refused to comply with Pope's and Pontillo's request that he leave (App. 94 at 0:40–0:50), and continued to loudly speak off-topic and argue about his removal (App. 94 at 0:50-1:01; App. 279 at 2:49:00-2:49:35). All these actions interrupted the Meeting's purpose and interfered with Weir's attempts to move onto the next speaker and keep the Board Meeting on track and on topic.

Story cites *Scott v. Harris*, 550 U.S. 372 (2007), and argues that the Court should reject Defendants' "post hoc narrative" where it conflicts with the video. First, Defendants' assertions are *supported by* time-stamped citations to the videos. Story does not cite any timepoint that contradicts what Defendants say the video shows. Second, *Scott* did not reject a party's chosen descriptors for

---

[8]    *Disturb*, Merriam-Webster, https://www.merriam-webster.com/dictionary/disturb (last visited Mar. 4, 2026).

[9]    Calling out from the audience violated Board policy which states that "the audience shall not enter into discussion or debate on matters being considered by the Board, unless requested by the presiding officer." App. 208.

behavior observed on a video. It rejected a plaintiff's attempt to cherry-pick facts without addressing the facts on the video that he did not like. *Id.* at 378-80. The Court held that the respondent could not avoid a conclusion that he was driving recklessly by ignoring his high speed and swerving around cars, pointing instead to the fact that he used his turn signal, "slowed" for intersections, and managed not to run anyone off the road. *Id.* Likewise, Story cannot avoid a conclusion that he disturbed the Meeting by noting that he didn't "physically disrupt" it and wasn't violent.

Story also fails to acknowledge contrary case law from his own legal history. In *Story v. Gravell*, No. 24-50646, 2025 WL 2602550, at *3 (5th Cir. Sept. 9, 2025), he argued that he "had not violated any rules of decorum," when he "politely told Gravell he had not ever been previously warned in the meeting as being disruptive," and "politely requested to stay" after being directed to leave. Appellant's Brief, *Story*, 2025 WL 2602550, at *3 (2024 WL 4628218, at *23). The Fifth Circuit disagreed, saying his "extended colloquy . . . , all while being warned to discontinue," constituted "a sustained violation of the court's decorum rules." *Story*, 2025 WL 2602550, at *3 (affirming dismissal of viewpoint discrimination claim because Story had "not plausibly pleaded [ ] he was treated differently from anyone who committed a sustained violation of the [ ] decorum rules.").

Because Story disturbed the Meeting, there was reasonable suspicion to remove him and probable cause for his arrest. And because he does not point to anyone else who behaved similarly and was not removed or arrested, he does not raise a fact issue to maintain his viewpoint discrimination claim, show selective enforcement, or overcome Defendants' qualified immunity.

**IV.    Story's argument regarding Penal Code § 38.13 ignores the language of the statute.**

Story defends his unreasonable seizure and false arrest claims against an argument that Defendants do not make—at no point have Defendants equated "off-topic" speech with criminal hindering of a meeting. *See* Dkt. 140 at 13. Defendants have repeatedly emphasized that it was Story's conduct following the admonition to stop speaking off-topic that led to his removal and arrest. Story

argues that no reasonable person could interpret his behavior as violating the Texas Penal Code. But his entire argument is devoid of legal citations and does not even refer to the language of Section 38.13. Yet Story asks this Court to find that Defendants' determination that they had a reasonable suspicion or probable cause that he had violated Section 38.13 was objectively unreasonable under clearly established law. The Court should deny his request.

Section 38.13 of the Texas Penal Code states:

(a)      A person commits an offense if he intentionally hinders an official proceeding by noise *or* violent *or* tumultuous behavior *or* disturbance.

(b)      A person commits an offense if he recklessly hinders an official proceeding by noise *or* violent *or* tumultuous behavior *or* disturbance and continues after explicit official request to desist.

(c)      An offense under this section is a Class A misdemeanor.

TEX. PENAL CODE § 38.13 (emphasis added). That is *all* it states. It does not say one must be "physically disruptive or threatening to safety." *Compare id. with* Dkt. 140 at 14.

The rules of statutory construction and the Texas Code Construction Act tell us that, when terms are not defined in statute and have not obtained a technical meaning, they "shall be read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE § 311.011. According to Black's Law Dictionary, to "hinder" means: "(1) (Of progress) to slow or make difficult; to hamper; (2) To hold back; or (3) (Of action) to impede, delay, or prevent." HINDER, Black's Law Dictionary (12th ed. 2024). It does not require that the hindrance be physical, violent, or threatening. Story's continued off-topic speech, arguing with Weir's determination, and refusal of Weir's and officers' directives certainly slowed and impeded Weir's ability to recognize the next speaker and keep the Meeting focused on agenda items. *Cf.* Dkt. 13 (quoting *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 433 (6th Cir. 2009) (citations omitted)) ("Unstructured, chaotic school board meetings not only would be inefficient but also could deny other citizens the chance to make

6

their voices heard."). This was done via the noise[10] of Story's admittedly raised voice. It was also caused by a disturbance,[11] as Story interrupted Weir and the Meeting's progress.

Nor can Story show that his arrest was not supported by probable cause for purposes of his false arrest claim against Pope. Story's behavior is similar to other behavior found disruptive by Texas courts. *Phillips v. State* describes a series of events that, while they unfolded in a slightly different order, are remarkably similar. No. 12-24-00267-CR, 2025 WL 2620379 (Tex. App.—Tyler Sept. 10, 2025). Phillips, like Story, began to read prepared comments during his turn to speak and was directed to "redirect the focus of his speech to the agenda item." *Id.* at *1. Phillips raised his voice and argued with the presiding officer. *Id.* He continued to do so after the chair terminated his comment period. *Id.* Unlike Story, Philips did not have to be physically removed from the microphone. But, like Story, as he walked away, he called out to address the room and complain about his treatment. Then, when the chair reminded attendees that speakers must speak on an agenda item, Phillips called out from the gallery. *Id.* Phillips was warned he would be removed if he continued his "outbursts from the crowd," but his outbursts continued and he was physically removed, continuing to argue as he was. *Id.* at *2. On appeal from his conviction for hindering proceedings by disorderly conduct, Phillips argued that the chair "unlawfully and unconstitutionally interrupted his comment period," making the termination "void;" and because his conduct occurred during his comment period, he reasoned he did not hinder the meeting. *Id.* at *5. The court rejected his argument and upheld his conviction. *Id.*

Story's behavior was no different in degree than Phillips—and certainly not so much more so to show that his disruptive behavior was protected by clearly established law. Story's unsupported

---

[10]   Noise is "[a] sound that is characteristic of a person, animal, or thing". NOISE, Oxford English Dictionary, https://www.oed.com/dictionary/noise_n?tab=meaning_and_use&tl=true#1368315490 (last visited Mar. 4, 2026)

[11]   DISTURBANCE, Black's Law Dictionary (12th ed. 2024) ( an "act causing annoyance or disquiet, or interfering with a person's pursuit of a lawful occupation or the peace and order of a neighborhood, community, or meeting"); *see also* DISTURBANCE OF A PUBLIC MEETING, Black's Law Dictionary (12th ed. 2024) ("The "unlawful interference with the proceedings of a public assembly.").

assertions—that do not analyze or even reference the statutory language and contain no supporting case law—are insufficient to establish a material issue of fact regarding whether his behavior caused a disturbance, or that it was objectively unreasonable for Pope and Pontillo to believe it did. As such, Story's unreasonable seizure claim cannot survive.

**V.    The "independent intermediary" doctrine bars Story's claims.**

Story cites no legal authority to support that the independent intermediary doctrine does not preclude his unreasonable seizure and false arrest claims. Story's argument boils down to his disagreement with how Pope's narrative—and the Warrant Affidavit—characterized his behavior. Story does not consider talking over the presiding officer or suddenly calling out from the gallery to argue with her to be an outburst, a raised voice to be yelling or screaming, or any of these things combined with refusing to leave the podium to be a "major disruption." Dkt. 140 at 15-16. In short, Story thinks his behavior was acceptable because he disagreed with Weir's interpretation of the agenda.

Without evidence of a knowing, intentional, or recklessly false statement, the independent intermediary's determination that there was probable cause for Story's arrest insulates Pope and Pontillo from the unreasonable seizure claim and Pope from the false arrest claims. *See* Dkt. 145, pp. 8–9; *Russell v. Altom*, 546 F. App'x 432, 436–37 (5th Cir. 2013); *United States v. Tarango-Hinojos*, 791 F.2d 1174, at 1176 (5th Cir. 1986); *see also* App. 8–10, 12–14, ¶¶ 26–30, 39–43 (Pope); App. 113–16, ¶¶ 23– 29, 35–37, 39. Even if the descriptors Pope used in his report were too "dramatic," Story points to no case law showing that is the equivalent of deliberately and recklessly providing false, material information or making a knowing and intentional omission. *See Nerio v. Evans*, 974 F.3d 571, 577 (5th Cir. 2020). Nor does he define the terms he objects to—probably because the terms fit his behavior.[12]

---

[12]    "Yell" means "to utter a loud cry, scream, or shout." YELL, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/yell (last visited Mar. 6, 2026). "[S]cream," means, among other things, "to speak or write with intense emotion" and "to protest, demand, or complain vehemently." SCREAM, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/scream (last visited Mar. 6, 2026). While an outburst can mean an "outbreak of violence," it can also mean an outbreak of "fervor" or "indignation," or "angry *or* vehement utterance." OUTBURST, Oxford-English Dictionary, https://www.oed.com/dictionary/outburst_n?tab=meaning_and_use (last

It is far from a deliberate or reckless falsehood to describe Story's behavior as observed and heard as "yelling," screaming", or "outburst." Nor is it a stretch to describe it as a "major disruption" to the Meeting, which had to wait for Story to be removed, yelling the entire time, before it could proceed.[13]

## VI.    Story's attempt to distinguish *Heaney* falls flat.

Story's argument that *Heaney v. Roberts* is not dispositive of Pope's and Pontillo's qualified immunity from his unreasonable seizure claim is devoid of actual legal authority. 846 F.3d 795 (5th Cir. 2017). Story argues that *Heaney* doesn't apply because Pope and Pontillo admitted the removal required discretion. But Pope and Pontillo made no such admission.[14] Further *Heaney* never says that the exercise of discretion eliminates immunity. Quite the opposite—it distinguished a prior case where immunity did not apply because the officer was "only following orders" despite being "well aware" of concerns with the order and having "ample time and reasons to conclude that he was carrying out an illegal act." *Id.* at 804 (distinguishing *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273 (5th Cir. 2002)). And even if Story could show his comments were on an agenda item, *Heaney* emphasized that the sergeant-at-arms was not required to "cross-examine and second-guess" the presiding officer where, as here, the officers did not have "ample time" to consider the debate over the agenda item's scope.

Nor does *Heaney* support Story's argument that his speech was like those of others who "used analogies and sharp rhetoric." Dkt. 140 at 17. Story claims that, because Pope testified that saying things you "don't like" is insufficient to justify arrest, they should have known not to remove him.

---

visited Mar. 5, 2026). It is also defined as a "sudden expression of a strong feeling." OUTBURST, Britannica Dictionary, https://www.britannica.com/dictionary/outbursts (last visited Mar. 5, 2026).

[13]    DISRUPTION, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/disruption (last visited Mar. 5, 2026) ("a break or interruption in the normal course or continuation of some activity, process, etc"); MAJOR, Oxford English Dictionary, https://www.oed.com/dictionary/major_adj?tab=meaning_and_use#38194291 (last visited Mar. 5, 2026) ("serious or big").

[14]    Story cites no such admission by Pontillo because it does not exist. As for Pope, Story points to testimony that whether he is obligated to remove someone from the meeting when requested depends on the reason for the request. Dkt. 132-12 at 25:18-23, 27:24-28:5. But Pope consistently maintained that disrupting the meeting by refusing to stop talking about something not on the agenda was a valid reason for removal. *See, e.g., id.* at 49:16–50:4; App. 8 at ¶¶ 26–27. Both officers also testified that they believed Story was speaking off-topic and disrupting the meeting, and had no reason to believe Weir had any other motive for directing his removal. App. 8 at ¶¶ 25–30; App. 113 at ¶¶ 24–25.

But he does not point to any evidence that his removal or arrest was motivated by dislike of his speech. Weir, Pope, and Pontillo each denied that Story was removed because of what he said. App. 9 at ¶ 28; App. 114 at ¶ 29; App. 204 at ¶¶ 46, 55. Indeed, the fact that Weir did not direct the officers to remove others who criticized the Board or administration cuts against the conclusion that it was Story's critical viewpoint—and not his off-topic speech—that led to his removal.

But most importantly, Story cannot meet his burden to how that Pope's and Pontillo's actions were objectively unreasonable under clearly established law without citing that law himself. *Clarkston v. White*, 943 F.3d 988, 993 (5th Cir. 2019) ("The plaintiff has the burden to point out the clearly established law."). Accordingly, they are entitled to qualified immunity regarding Story's removal.

## VII.    Story's arguments do not overcome Defendants' qualified immunity from all claims.

Defendants have shown *supra* that Story failed to show that their actions violated clearly established law. Story's broad arguments regarding qualified immunity include recitation of undisputed principles of law—that the video from August 16th Meeting establishes what occurred (Dkt. 140 at 7-8, 18), viewpoint discrimination is unconstitutional (*id.* at 11, 18), and qualified immunity does not protect those who knowingly violate the law. *Id.* at 18. He offers no authority to support how he seeks to apply these standards to the facts—much less to show that their application to those facts was clearly established to overcome Defendants' qualified immunity. He cites no case law to show that Defendants should have known that his disruption of the Meeting was not a disturbance, or that Weir's (as the presiding officer) interpretation of the scope of agenda items should not have been credited. Most egregiously, his argument that no reasonable officer could conclude he violated Penal Code § 38.13 does not even quote the statute, much less cite authority to show why his conduct at the Meeting does not meet the statutory standard. His failure to point to clearly established law showing that Defendants' behavior was unlawful does nothing to overcome their qualified immunity and defeats all claims against them. Summary judgment should, therefore, be granted.

Respectfully submitted,

/s/      *Kathryn E. Long*
KATHRYN E. LONG
State Bar No. 24041679
klong@thompsonhorton.com

K. ADAM ROTHEY
State Bar No. 24051274
arothey@thompsonhorton.com

IBRAHIM YASEEN
State Bar No. 24137674
iyaseen@thompsonhorton.com

**THOMPSON & HORTON LLP**
500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(713) 583-8884 – Facsimile

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this document has been served

upon all parties via the Court's electronic filing system on this 16th day of March, 2026.

Stephen D. Casey
CASEY LAW OFFICE, P.C.
P.O. Box 2451
Round Rock, Texas 78680
stephen@caseylawoffice.us

Warren V. Norred
Solomon G. Norred
NORRED LAW, PLLC
515 E. Border St.
Arlington, TX 76010
warren@norredlaw.com

/s/      *Kathryn E. Long*
Kathryn E. Long

11