IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JEREMY STORY, | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| vs. | § | NO. 1:22-CV-448-DAE |
| | § | |
| HAFEDH AZAIEZ, et al, | § | |
| | § | |
| *Defendants* | § | |

### PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiff, Jeremy Story (hereinafter refereed to as "Plaintiff" or "Story") files this notice of supplemental authority. On March 31, 2026, the Supreme Court issued *Chiles v. Salazar*, No. 24-539, 607 U.S. _____ (2026), attached as Exhibit A. In *Chiles*, the Court reaffirmed the deep and broad historical pedigree of constitutional protection against viewpoint discrimination along with the strict scrutiny standard accompanying that protection, requiring the Colorado federal district court and appellate court for the Tenth Circuit to apply strict scrutiny to Colorado's law which prohibited "conversion" therapy that forbid "effort[t] to change behaviors or gender expressions . . . toward individuals of the same sex." *Slip op.* at 3.

The first three paragraphs in which the Court reviews First Amendment protection against viewpoint discrimination are worth direct quotation:

> The First Amendment "envisions the United States as a rich and complex place" where all enjoy the "'freedom to think as you will and to speak as you think.'" *303 Creative LLC v. Elenis*, 600 U. S. 570, 584, 603 (2023) (quoting *Boy Scouts of America v. Dale*, 530 U. S. 640, 660–661 (2000)). Often, speech may prove illuminating and inspiring. Some-times, it can be misguided, offensive, or cause "incalculable grief." *Snyder v. Phelps*, 562 U. S. 443, 456 (2011). But either way, the First Amendment protects the inalienable right of every individual to decide for himself "how best to speak." *Riley v. National Federation of Blind of N. C., Inc.*, 487 U. S. 781, 791 (1988). In this Nation, no official—"high or petty"—

may command our tongues or silence our voices. *West Virginia Bd. of Ed. v. Barnette*, 319 U. S. 624, 642 (1943).

Consistent with the First Amendment's jealous protections for the individual's right to think and speak freely, this Court has long held that laws regulating speech based on its subject matter or "communicative content" are "presumptively unconstitutional." *Reed v. Town of Gilbert*, 576 U. S. 155, 163 (2015). As a general rule, such "content-based" restrictions trigger "strict scrutiny," a demanding standard that requires the government to prove its restriction on speech is "narrowly tailored to serve compelling state interests." *Ibid*. Under that test, it is "'rare that a regulation . . . will ever be permissible.'" *Brown v. Entertainment Merchants Assn.*, 564 U. S. 786, 799 (2011) (quoting *United States v. Playboy Entertainment Group, Inc.*, 529 U. S. 803, 818 (2000)).

We have recognized, as well, the even greater dangers associated with regulations that discriminate based on the speaker's point of view. When the government seeks not just to restrict speech based on its subject matter, but also seeks to dictate what particular "opinion or perspective" individuals may express on that subject, "the violation of the First Amendment is all the more blatant." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U. S. 819, 829 (1995). "Viewpoint discrimination," as we have put it, represents "an egregious form" of content regulation, and governments in this country must nearly always "abstain" from it. *Ibid*.; see also *Iancu v. Brunetti*, 588 U. S. 388, 393 (2019) (describing "the bedrock First Amendment principle that the government cannot discriminate" based on viewpoint (internal quotation marks omitted)); *Good News Club v. Milford Central School*, 533 U. S. 98, 112–113 (2001); *Barnette*, 319 U. S., at 642.

*Slip Op.* at 8-9.

The Court went on to state, "the spoken word is perhaps the quintessential form of protected speech." *Id.* at 11. The concurrence by by Justices Kagan, joined by Justice Sotomayor, expose the unlevel playing field viewpoint discrimination creates. "A law drawing a line based on the "ideology" of the speaker—disadvantaging one view and advantaging another—skews the marketplace of ideas our society depends on to discover truth." *Id.* (Concurrence at 1; the concurrence is paginated beginning with "1.") (citing *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U. S. at 829).

Critically, the concurrence raises awareness of the likely underlying basis for viewpoint discrimination: an impermissible motive. "[S]uch a law suggests an impermissible motive—that

the government is regulating speech because of its own 'hostility" toward the targeted messages."
(Concurrence at 1) (citing *R. A. V. v. St. Paul*, 505 U.S. at 386).

Here, both thrusts of this supplemental authority are implicated. First, there is no way for
Defendants to evade the viewpoint discrimination imposed on Plaintiff. While permitting wide-
ranging COVID-safety analogies invoking public figures and religious references (Frederick
Douglass, Ted Cruz, and Jesus Christ), Defendants denied Plaintiff's COVID safety commentary
for his analogy invoking the superintendent solely based on Plaintiff's viewpoint. This "suggests
an impermissible motive," *R. A. V. v. St. Paul*, 505 U. S. at 386, protecting the superintendent's
reputation at all costs. This is viewpoint discrimination.

Thus, the message from the Defendants is clear: you can have whatever COVID-safety
ideology you want, but you cannot express it if it involves involves a differing viewpoint about the
superintendent. You could wax long, saying the superintendent was doing his best to promote
COVID-safety, you could say he was the paragon of COVID-safety, you could say the board was
at the height of public protection based on the superintendent's actions for COVID-safety, and be
fine, supported, and be in agreement as a champion of their viewpoint.

But, if you dare espouse a differing viewpoint as did Plaintiff, that the board's approach to
COVID-safety was hypocritical because of their general disregard for safety—while referencing
the superintendent in an analogy, that viewpoint is prohibited and you will be kicked out of the
meeting and arrested. Like *Chiles v. Salazar*, where Colorado singled out sexual orientation
therapy solely based on viewpoint of the therapist, here, the Defendants singled out COVID-safety
speech solely based on the analogy referenced, a forbidden viewpoint-based discrimination.

The Court should consider this newly issued authority in resolving the merits of Plaintiff's
constitutional claims.

RESPECTFULLY SUBMITTED, this day, March 31, 2026.

CASEY LAW OFFICE, P.C.
P.O. Box 2451
Round Rock, Texas 78680
Telephone: (512) 257-1324
Fax: (512) 853-4098


By   /s/ Stephen Casey
    Stephen Casey, Esq.
    Texas Bar No. 24065015
    stephen@caseylawoffice.us

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 31, 2026, a true and correct copy of the above and foregoing *Plaintiff's Notice of Supplemental Authority* was served via electronic means to counsel for Defendants:

THOMPSON & HORTON LLP
500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(713) 583-8884 – Facsimile

Kathryn E. Long
State Bar No. 24041679
klong@thompsonhorton.com
K. Adam Rothey
State Bar No. 24051274
arothey@thompsonhorton.com
Ibrahim Yaseen
State Bar No. 24137674
iyaseen@thompsonhorton.com

By:    /s/ Stephen Casey
     Stephen Casey, Esq.
     Texas Bar No. 24065015
     stephen@caseylawoffice.us